Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

Eugene M. LaFlamme *(admitted pro hac vice)*
Jared B. Giroux *(admitted pro hac vice)*
Jillian L. Lukens (*admitted pro hac vice)*
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| STEPHANIE WADSWORTH<br>Individually and as Parent and Legal Guardian<br>of W.W., K.W., G.W., and L.W., minor children,<br>and MATTHEW WADSWORTH, | ) | |
| Plaintiffs, | ) | Case No. 2:23-cv-00118-NDF |
| v. | ) | JURY TRIAL DEMANDED |
| WALMART INC. and JETSON ELECTRIC<br>BIKES, LLC, | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AS TO THE DEPOSITIONS OF PLAINTIFFS' MINOR CHILDREN**

---

**NOW COME** the Defendants, Walmart, Inc. and Jetson Electric Bikes, LLC, by their attorneys, McCoy Leavitt Laskey LLC and Crowley Fleck, PLLP, and hereby submit the following response to Plaintiffs' Motion for Protective Order as to the Depositions of Plaintiffs' Minor Children (ECF No. 61):

**INTRODUCTION AND FACTS**

This case involves a residential house fire that occurred on February 1, 2022, at approximately 4:00 a.m. (ECF No. 1, Compl. ¶ 33). Plaintiffs generally allege that the fire originated at a Jetson Plasma model hoverboard in G.W. and L.W.'s bedroom. (Compl. *Generally*). Mrs. Wadsworth and W.W. suffered personal injuries in the fire. Mr. Wadsworth was not home at the time of the fire. K.W., G.W. and L.W. all escaped from the house without personal injuries. All six of the Plaintiffs have raised emotional distress claims. Although Plaintiffs have not itemized their damages, the damage claims are expected to be well in excess of $1 million. Plaintiffs have also alleged punitive damages.

Defendants deny that the fire started at the Jetson hoverboard and contend that the fire started outside the residence at a smoking shed that was immediately adjacent to the house. Mrs. Wadsworth smoked at least one cigarette sometime between 1:30 a.m. and 2:00 a.m. on February 1, 2022, in the smoking shed before going to bed. (LaFlamme Dec. Ex. A, S. Wadsworth Dep. 89:9-90:8). She also had about 10 alcoholic drinks the evening before the fire after she put the kids down and until she went to bed at 2:00 a.m. (S. Wadsworth Dep. 62:24-64:7; 90:9-24). Both Mr. and Mrs. Wadsworth also smoked cigarettes in the smoking shed throughout the day in the 24 hours before the fire. (S. Wadsworth Dep. 71:7-25; LaFlamme Dec. Ex. B, M. Wadsworth Dep. 99:8-11). Additionally, Mrs. Wadsworth likely used an electric space heater that was in the smoking shed when she smoked between 1:30 a.m. to 2:00 a.m. as she typically used the space

heater during the evening hours when it was cold. (S. Wadsworth Dep. 71:21-72:10). Neither Mr. nor Mrs. Wadsworth witnessed the incipient stages of the fire.

The Wadsworth children that Plaintiffs seek to protect from sitting for a deposition are four of the six Plaintiffs in this case. All four children were home at the time of the fire and at least three of the four children witnessed the early stages of the fire. Some of the children were recorded on body camera footage immediately after the fire and indicated that the fire started outside the house – where the smoking shed was located. Moreover, minor Plaintiff G.W. and L.W. were asleep in their bedroom where the Jetson hoverboard was located when the fire started. Plaintiffs G.W. and/or L.W. apparently told their father, Matthew Wadsworth, that when they woke up there was fire on the window and wall by their bed. (M. Wadsworth Dep. 91:14-93:1).

Below is an excerpt of a diagram of G.W. and L.W.'s bedroom taken from Ex. 18A from Detective Jeff Sheaman's deposition.




(LaFlamme Dec. Ex. C, Dep. Ex. 18A).

Detective Sheaman was the Sweetwater County Sherriff's origin and cause investigator for this fire. The hoverboard at the time of the fire was located by the doorway approximately where the blue circle is located on the above diagram. (LaFlamme Dec. Ex. D, Sheaman Dep. 235:14-236:7). Although G.W. and L.W. were in their bed, they both escaped through their bedroom door without injury, despite first seeing fire at the bedroom window right next to their bed. (Sheaman Dep. 236:2-237:8). By exiting their bedroom door, they would have traveled directly adjacent to or over the subject hoverboard. If the fire started at the hoverboard and G.W. and L.W. first saw fire at the window by their bed, then that means the fire would have had to travel from the hoverboard location as shown in the excerpt of Ex. 18A above through the bed and to the window.

In fact, Detective Sheaman also could not answer how G.W. and L.W. escaped their bedroom uninjured if the fire started at the hoverboard and G. W. and L.W. first saw fire at their bedroom window, which is what woke them up. (Sheaman Dep. 321:17-323:6).

The smoking shed was located just outside G.W. and L.W.'s bedroom. (M. Wadsworth Dep. 111:12-16). Below is a copy of Ex. 29 from Mr. Wadsworth's deposition which shows the location of the smoking shed just outside G.W. and L.W.'s bedroom by their bedroom window.






(LaFlamme Dec. Ex. E, Dep. Ex. 29; M. Wadsworth Dep. 101:24-103-6).

Given the above circumstances, the Wadsworth children are critical eyewitnesses to the fire. They each also have independent damage claims in this case. Defendants first requested the Wadsworth children's depositions in February 2024. On February 21, 2024, the parties agreed on

March 20, 2024 for the depositions, and the four depositions were scheduled in two hour intervals. On February 22, 2024, Plaintiffs advised that they would be filing a motion for a protective order, but did not indicate the nature or scope of the protective order sought.

On March 13, 2024, Plaintiffs contacted Defendants and advised that the Wadsworth children's depositions could not go forward on March 20, 2024, due to a conflict with some doctors' appointments. Plaintiffs then offered additional dates, one of which was March 21, 2024. Plaintiffs did not raise the issue of a protective order during this exchange. On March 14, 2024, the parties selected March 21, 2024 as the rescheduled deposition date. On March 15, 2024, Plaintiffs then raised the issue of a protective order again for the first time since February 22, 2024, and Plaintiffs filed the instant motion for a protective order that same day after Defendants stated that they would not stipulate to the motion. Given this filing, Defendants adjourned the Wadsworth children depositions that were scheduled for March 21, 2024 until the protective order issue is resolved.

## ARGUMENT

### I. Defendants Should not be Barred from Deposing Four of the Six Plaintiffs in this Matter.

Plaintiffs seek to bar Defendants from deposing the Wadsworth children. In so doing, Plaintiffs do not cite any law or case that specifically supports their position, but rather rely on the general "good cause" standard under Fed. R. Civ. P. 26(c). Plaintiffs correctly cite that they have the burden to prove good cause for the protection sought. Significantly, Plaintiffs do not state that the children will forego testifying at trial.

In support of the motion, Plaintiffs filed a letter from Mindy Tollefson who is a therapist that has treated the Wadsworth children. Ignoring the unfounded allegations that defense counsel will attempt to "coerce" testimony from the children or "implant suggestions" in their memory,

Ms. Tollefson suggests that the children should not sit for a deposition because it could "potentially trigger regression and impede their healing process." While Defendants certainly sympathize with the circumstances that the children experienced and the trauma they encountered, they have, however, each brought personal injury claims through their parent guardians.

Protective orders prohibiting depositions are rarely granted. *Bucher v. Richardson*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). A party seeking to quash a deposition has a "heavy burden of demonstrating good cause" that the deposition should not be taken. *Bucher*, 160 F.R.D at 92. The party seeking to prevent a deposition must show "extraordinary circumstances that present a particular and compelling need for such relief." *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (citing *Bucher*, 160 F.R.D. at 92). "Conclusory assertions of injury" do not suffice to prevent a deposition. *Bucher*, 160 F.R.D. at 92.

This Wadsworth motion is similar in scope to the protective order sought in *Kuyper v. Board of County Comm. Of Weld County*, 2010 WL 4038831 (D. Colo. 2010)[1]. In that case, minor plaintiff K.K. sought a protective order to prevent the minor's deposition. The plaintiffs alleged that defendant improperly placed the foster child in their foster home who later sexually assaulted plaintiff K.K., who was three years old at the time. K.K. was seven years old when her deposition was sought. In support of the motion, K.K. filed an under oath statement from her psychologist that "[f]urther examination and questioning at this point would likely cause devastating psychological effects." While acknowledging the difficult nature of the circumstance, the *Kuyper* Court held that the deposition should go forward with reasonable accommodations.

[1] The *Kuyper* case is attached to the Declaration of Eugene LaFlamme at Ex. F.

In another similar case, the United States District Court for the Eastern District of Oklahoma also agreed that a protective order should not be granted to prevent defendants from taking a minor plaintiff's deposition. See *Halley v. State of Oklahoma*, 2016 WL 4995393 (E.D. Okla. 2016)[2]. As with the Wadsworth Plaintiffs, the plaintiff in *Halley* also argued that the protective order should be granted to protect the minors' mental and emotional health. In denying the protective order, the *Halley* Court noted that such reasoning did not rise to the level of "extraordinary circumstances." *Halley*, 2016 WL 4995393 at 2.

Given the above authorities and in the interests of justice, Plaintiffs' motion for protective order to prevent the Wadsworth children's depositions should be denied.

**II. While Defendants are Willing to Consider Reasonable Restrictions, the Restrictions Proposed by Plaintiffs are not Reasonable.**

In the alternative, Plaintiffs propose five separate restrictions or requirements that should be ordered if the Court denies their request to prevent the Wadsworth children's depositions. Those five restrictions or requirements are:

1. Allowing a parent to be in the deposition with the children;
2. Limiting the deposition to one hour, with breaks as needed;
3. Limiting the deposition to the topics of what the children saw and what injuries they suffered;
4. Precluding difficult or convoluted questions, as well as leading questions;
5. Precluding the use of any pictures, videos, surveillance or camera footage from the day of the fire.

(ECF No. 61, Pl. Br. Pg. 4).

Taking the above proposals in turn, with respect to the request to have a parent in the deposition room, Defendants do not have an objection to one parent attending the deposition provided the parent does not communicate (verbal or nonverbal) with the child during the deposition questioning and does not interrupt the proceedings in any manner.

[2] The *Halley* case is attached to the Declaration of Eugene LaFlamme at Ex. G.

While Defendants will agree to a reasonable time limit, limiting the deposition to one hour with breaks "as needed" is not reasonable. Defendants initially set the depositions at two-hour intervals with the expectation that each deposition would likely go about two hours. While some of the depositions may go over two hours, others may be under two hours. A lot depends on what answers the children provide and the extent that such answers need to be explored further. In that regard, Defendants propose a limit of two and a half hours per child of deposition questioning time with reasonable breaks. Any breaks, however, should not count toward the deposition time. Defendants will also agree to make good faith efforts to move the depositions forward in an expedient manner.

In *Kuyper*, the plaintiffs suggested that if defendants are allowed to take the minor's deposition, that the deposition should be limited to three hours. In *Halley*, the plaintiff proposed a two-hour time limit as one of the restrictions for the minor deposition. Further, in *Edgin v. Blue Valley*, 2021 WL 1750861 (D. Kan. 2021)[3], the *Edgin* Court advised defendants to "aim in good faith to keep the deposition under three hours." Therefore, Defendants' proposed time limit of two and a half hours per child of deposition questioning is in line with the restrictions the courts considered in the *Kuyper*, *Halley* and *Edgin* cases.

As to the third proposed restriction, it is not reasonable to limit the scope of the deposition to what the children saw and what injuries they suffered. Additional questions will likely be asked about what they heard or were told by other people about the fire, what they know about their parents' smoking habits, their use of the subject hoverboard, and other matters relevant to this case.

As to the fourth proposed restriction, this is too vague of a proposed restriction. Moreover, leading questions are allowed as part of cross examination. Defendants will be allowed to ask

[3] The *Edgin* case is attached to the Declaration of Eugene LaFlamme at Ex. H.

leading questions of adverse witnesses at trial and are allowed to do so during discovery. If Plaintiffs do not agree with how a question is phrased, they are welcome to object to the form of the question on the record. In addition, this type of restriction was considered and rejected by the *Edgin* Court. *See Edgin*, 2021 WL 1750861 at 3. The *Edgin* Court agreed that defendants should not be restricted in the type of questions they are allowed to ask.

Finally, as to the fifth proposal, Defendants also cannot agree to this proposed restriction. Pictures and diagrams will likely be used to assist the questioning when discussing where the children saw the fire, what path they used to escape the room and the house and other questions regarding specific positions of certain items or people's movements. With respect to the proposed restriction for no videos or camera footage, that is also unreasonable. The children are on body camera stating that the fire started outside the house. They make similar statements on video when they were interviewed by Detective Sheaman about one month after the fire at the Sherriff's Office that would also support a conclusion that the fire started outside. This video footage may be shown to refresh their recollection of these statements.

While Defendants are open to reasonable restrictions, the ones proposed by Plaintiffs are not supported by the above cited cases.

## **CONCLUSION**

Based on the foregoing reasons, this Court should deny Plaintiffs' protective order request to prevent Defendants from deposing the Wadsworth children. Further, any restrictions placed on the depositions should be reasonable and in line with the legal authorities cited above.

**McCOY LEAVITT LASKEY LLC**

Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: March 22, 2024

By:______________________________

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens (*pro hac vice)*
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

and

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 22, 2024, a true and correct copy of the foregoing was electronically served to all counsel of record.

**EUGENE M. LaFLAMME, Esq.**