# EXHIBIT D

Page 1

1        UNITED STATES DISTRICT COURT
2        IN AND FOR THE DISTRICT OF WYOMING
3     ---------------------------------------
4     STEPHANIE WADSWORTH, Individually and
      as Parent and Legal Guardian of W.W.,
5     K.W., G.W., and L.W., minor children,
      and MATTHEW WADSWORTH,
6
                         Plaintiffs,
7
              -against-                      Case No.:
8                                            23-cv-00118-NDF
9     WALMART, INC. and JETSON ELECTRIC
      BIKES, LLC,
10
                         Defendants.
11
      ---------------------------------------
12
13              Thursday, November 16, 2023
14              9:46 a.m.
15
16         Deposition of JEFF SHEAMAN, taken by
17    Plaintiff, pursuant to Notice, held at The Hampton
18    Inn, 1055 Wild Horse Canyon Road, Green River,
19    Wyoming, before Denise Nowak, a Shorthand Reporter
20    and Notary Public within and for the State of Idaho,
21    appearing remotely.
22
23
24
25

1               MR. LaFLAMME:  What am I looking for?
2       Potentially annotated.
3               THE WITNESS:  Yeah, I can see it down
4       here.
5               MR. CURRAN:  Yeah, it should be at
6       the top of the zoom window for the -- with the
7       tools, the view options or the screen shot options.
8               MR. LaFLAMME:  I wonder if I have to
9       be the one to put it up?
10              Oh, view options, annotate.  There we
11      are.  Thank you.
12              MR. CURRAN:  Yes, sir.
13      BY MR. LaFLAMME:
14         Q.   All right.  So we're looking in
15      bedroom 4, and that's where you can see my little
16      pencil at this point, correct?
17              Can you see that or no?  Maybe not.
18         A.   I cannot.
19         Q.   Okay.
20         A.   Now I can.
21         Q.   So you can see that blue circle --
22         A.   Yes.
23         Q.   -- that I put on Exhibit...
24         A.   18.
25         Q.   18 here, correct?

Page 236

1           A.    Yes.
2           Q.    Okay.  And it's your understanding
3    that that's the outlet area where the hoverboard
4    was in front of --
5           A.    Yes.
6           Q.    -- correct?
7           A.    Correct.
8           Q.    Okay.  And then the window in the
9    bedroom, that's this opening that we see on the
10   north wall, correct?
11          A.    Yes.
12          Q.    Okay.  So the -- if the fire had
13   started in bedroom 4 by where the hoverboard was
14   located, and the kids did not wake up until after
15   the window broke, that fire would have had to
16   travel through their bed, correct?
17                MR. AYALA:  Object to the form.
18          A.    That's correct.
19   BY MR. LaFLAMME:
20          Q.    Okay.  And Layne and Gunner were not
21   injured in this fire, correct?
22          A.    No, they weren't.
23          Q.    And Layne and Gunner able to get out
24   of their bedroom through their bedroom door, and
25   then ultimately through the garage door without any

1        injuries, correct?
2                A.      Correct.
3                Q.      Okay.  So if the fire had started at
4        this hoverboard, and traveled to the window enough
5        to break the window before the kids -- before the
6        boys before woke up, that bed would have likely
7        caught fire, correct?
8                A.      You would think so, yes.
9                Q.      Okay.
10                       MR. LaFLAMME:  If you'd share this as
11       18A?
12                       MR. CURRAN:  Yes, sir.
13                       MR. LaFLAMME:  Thank you.
14                       MR. CURRAN:  I have it saved.  I'll
15       get it uploaded here in a moment.
16                       Do you still need the image shared?
17                       MR. LaFLAMME:  No, you can take it
18       down.  Thank you.
19                       MR. CURRAN:  Thank you.
20       BY MR. LaFLAMME:
21                Q.     When Mr. Wadsworth said that he was
22       concerned about the shed outside of the bedroom as
23       a potential area of origin, that isn't in your
24       report at all, is it?
25                A.     No.

1          A.    -- yes.
2          Q.    -- by the time the fire got interior,
3    correct?
4          A.    Right.
5          Q.    If you could look at Exhibit 18,
6    which is the diagram, the floor plan of the
7    Wadsworth residence.
8          A.    (Witness complies.)
9          Q.    And we agreed that the hoverboard is
10   on the north wall of the bedroom in the designation
11   where the electrical outlet is shown, correct?
12         A.    Yes.
13         Q.    And I think on Exhibit 18 A you
14   actually circled it, but you we're looking at
15   Exhibit 18 here, correct?
16         A.    Correct.
17         Q.    You were asked some questions by
18   counsel that wouldn't it make sense if the fire
19   started at the hoverboard there, that the fire
20   would then go up the roof, down the wall on -- by
21   where the window is and break out the window in the
22   process of the fire promulgation, correct?
23              MR. AYALA:  Form.
24         A.    Yes.
25   BY MR. LaFLAMME:

Page 322

1    Q.    Okay. And do you recall that --
2    A.    I do.
3    Q.    -- kind of thing?
4    A.    Yeah.
5    Q.    And I think you agreed that it would
6  make sense for the fire to start at the hoverboard,
7  go up to the ceiling, come down the wall, and then
8  below out the window --
9    A.    Yes.
10   Q.    -- correct?
11   A.    Yes.
12   Q.    Okay. How would the boys get out of
13 the bedroom uninjured if that happened?
14   A.    The that's a good question. And
15 that's one I can't answer.
16         I know that based off their testimony
17 saying they felt heat, they saw flames. I don't
18 know how intense -- if it did start there at that
19 hoverboard. I don't know how intense that flame
20 was at that point, and that's what make me question
21 if that window was actually broke out or open at
22 that point, because it sure wouldn't be open in
23 February. If that fire had already reached to the
24 point where it broke the window, it's hard to
25 believe that they would escape without injury.

1    Q.    And Gunner said, in your interview
2    with him on March 4 2022, by the time I woke up
3    there was no window, correct?
4    A.    Yes, I remember him saying that.
5    Q.    Do you recall him saying that?
6    A.    I do.
7    Q.    All right.  The kids never
8    indicated -- Gunner and Layne never indicated that
9    they heard any popping noises, correct?
10   A.    Right.
11   Q.    Have you ever seen a -- or heard a
12   lithium ion battery pack fail?
13   A.    I have not.
14   Q.    All right.  You don't know what noise
15   it makes?
16   A.    I mean if you watch like a YouTube
17   video like the YouTube video I watched, but really
18   I don't remember if it's like a popping noise or
19   anything like that, so.
20   Q.    Okay.  You are aware it at least
21   makes a noise?
22   A.    Oh yeah.
23   Q.    And popping is probably the best type
24   of description for it --
25   A.    Yes.

1                REPORTER'S CERTIFICATE
2
        STATE OF IDAHO            )
3                                 )  ss.
        COUNTY OF FREMONT          )
4
5
                    I, Denise Nowak, Court Reporter and
6    Notary Public in and for the State of Idaho, do
     hereby certify:
7                   That prior to being examined,
     Jeff Sheaman, the witness named in the foregoing
8    deposition, was by me duly sworn to testify to the
     truth, the whole truth, and nothing but the truth;
9                   That said deposition was taken
     down by me in shorthand at the time and place
10   therein named and thereafter reduced to typewriting
     under my direction, and that the foregoing
11   transcript contains a full, true, and verbatim
     record of said deposition.
12                  I further certify that I have no
     interest in the event of the action.
13                  WITNESS my hand and seal this 6th
     day of December, 2023.
14
15
16
17
18
19
20
21
22
23                  Denise Nowak
                    Notary Public in and for
24                  the State of Idaho
25   My Commission Expires:  3/13/2027