Taly Goody, Esq.
Wyoming Bar No.: 8-6737
Greyson M. Goody, Esq.
GOODY LAW GROUP
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
          greyson@GoodyLawGroup.com

T. Michael Morgan, Esq*
Florida Bar No.: 062229
Rudwin Ayala, Esq*
Florida Bar No.: 84005
MORGAN & MORGAN, P.A
20 N. Orange Ave, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: mmorgan@forthepeople.com
          rayala@forthepeople.com
*Pro Hac Vice
Attorneys for
Plaintiffs

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>    Plaintiffs,<br><br>    v.<br><br>WALMART, INC. and JETSON ELECTRIC BIKES, LLC,<br><br>    Defendants. | Case No.: 2:23-cv-00118-NDF<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND EXPERT DISCLOSURES

**COMES NOW,** the Plaintiffs, Stephanie Wadsworth, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, (hereinafter "Plaintiffs") by and through their counsel of record Rudwin Ayala, Esquire and Morgan & Morgan

and does hereby submit this Memorandum of Law in Support of Plaintiff's Motion to Amend Expert Disclosures and states as follows:

## I.    **Matter Before the Court**.

The matter before the Court is Plaintiff's Motion to Amend Expert Disclosures.

## II.    **Question Presented**.

1. *Whether this Honorable Court should grant Plaintiff's Motion to Amend Expert Disclosures.*

   **Suggested Answer**: Yes.

## III.    **Factual and Procedural Background**

This matter stems from a Hoverboard which exploded and caught fire in the Plaintiffs' home, causing severe injuries to the Plaintiffs.

As outlined in the Order on Initial Pretrial Conference served on November 1, 2023, Plaintiffs were given a deadline of June 14, 2024 to designate their expert witnesses. Defendant was given until July 31, 2024.  An extension of these deadlines of 30 days was granted due to conflicts involving trials which were set in other matters which prevented Plaintiffs' expert from having the time and ability to prepare for this case and be available for consolation on this matter. Pursuant to the extension, Plaintiff disclosed expert witnesses on July 14, 2024, and Defendants are set to disclose their experts on September 13, 2024.

However, since the Plaintiffs' disclosed their expert witnesses, depositions of some medical providers have taken place, including the deposition of Dr. Scott Sulentich of Rock Springs Plastic Surgery Center, and Dr. Giovanni Lewis of the University of Utah, and of Plaintiffs' expert life care planner, Dr. Ronald Snyder. Many other treaters are yet to be deposed. In fact, early attempts at setting the depositions of treaters proved challenging with their schedules and requirements,

which is why the first treaters' depositions could not occur under August, after Plaintiffs' expert disclosure deadline. See **Exhibit A**.

During Dr. Snyder's deposition on August 14, 2024, he testified that Plaintiffs' main plastic surgeon, Dr. LaChapelle, refused to return Dr. Snyder's attempts to contact him. Additionally, Dr. Snyder did not have the benefit of the deposition transcripts of Dr. Sulentich, Dr. Lewis, or any of the treating plastic surgeon and burn specialists. **Exhibit B.**

Dr. Lewis was unable to testify knowledgably during her deposition on August 5, 2024 of the specific care rendered to Mrs. Wadsworth, Weston Wadsworth or about their prognoses. In fact, she stated that reassessment after the patients' fourth round of laser treatment would give the best idea of future care needed, and specific conversation with other physicians would be required. She further stated that Dr. Callie Thompson and Dr. LaChapelle are the attending physician's for the laser treatment that Mrs. Wadsworth and Weston Wadsworth are receiving as part of their plastic surgery burn care, respectively. **Exhibit C**.

After multiple attempts of contacting Dr. LaChapelle and Dr. Thompson by phone proved unsuccessful, on August 27, 2024, the risk manager at the University of Utah finally contacted Plaintiffs' counsel via email informing Plaintiffs that it was University of Utah's policy for the treaters not to speak with attorneys or life care planners relating to litigation. **Exhibit D**. As such, neither Dr. Thompson nor Dr. LaChapelle would or will communicate with Plaintiffs' counsel or Dr. Snyder regarding Plaintiffs' future care needs outside of any testimony they give in deposition. On September 3, 2024, Plaintiffs filed their Motion for Leave to Amend Expert Disclosures.

Therefore, Plaintiffs have been forced to retain a plastic surgery expert to discuss Mrs. Wadsworth's treatment and her future care needs. Plaintiffs will also need this expert to discuss the future care needs of W.W.

Furthermore, Plaintiffs, in their initial disclosure, did not disclose a forensic economist, who would be pricing out the life care plan and offering opinions as to the loss of services for Plaintiffs. As testified to by the life care planner in deposition, his pricing will require an economist to best calculate the costs of future medical care needs relating to Stephanie and Matthew Wadsworth. Since the life care plan produced is still requiring completion of a necessary, and major, component regarding future care needs for Mrs. Wadsworth, the economist is not yet able to prepare or produce such an economics report.[1]

## IV.    **Argument**

### A.  **Legal Standard**

"The District Court has wide discretion in its regulation of pretrial matters." Sil–Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir.1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). *Accord* Street v. Curry Bd. of Cnty. Comm'rs, No. CIV 06–0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). Despite this "broad discretion in managing the pretrial schedule," the Tenth Circuit has concluded that "total inflexibility is undesirable." Summers v. Mo. Pac. R.R. Sys., 132 F.3d 599, 604 (10th Cir. 1997). The advisory committee notes to rule 16 state:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery. Fed.R.Civ.P. 16(b)(4) advisory committee's note to 1983 amendment.

---

[1] Dr. Snyder awaits relevant information relating to Weston Wadsworth's future prognosis relating to plastic surgery to finalize a future care plan for those injuries he suffered as well.

"Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6. *See* Advanced Optics Electronics, Inc. v. Robins, 769 F.Supp.2d 1285, 1313 (D.N.M.2010)(Browning, J.)(noting that the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the scheduling order.")

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request. In Advanced Optics Electronics, Inc. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order. 769 F.Supp.2d at 1313 n. 8. In Street v. Curry Bd. Of Cnty. Comm'rs, however, the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery ... [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11.

Where a motion to amend is pursued after a scheduling order deadline, a two-step analysis is required. The movant must first show they have "good cause" for seeking the scheduling deadline under Rule 16(b) of the Federal Rules of Civil Procedure. Once the movant satisfies the "good cause" requirement, the movant must then pass for the requirements for amendment under Rule 15(a). Colorado Visionary Acad. v. Medtronic, Inc., 194 F.R.D. 684, 687 (D. Colo. 2000). "Good cause" for modifying a scheduling order requires diligence and a conscientious attempt to comply with the court's scheduling order. People's Trust Federal Credit Union v. National Credit Union

Administration Board, 350 F.Supp.3d 1129 (2018).  In other words, the "good cause" standard for amending a pleading after the scheduling order deadline does not focus on the bad faith of the movant or the prejudice to the opposing party, rather it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment Colorado, at 687.

Under the second step of the analysis a Court of Appeals will consider four factors to determine whether the district court abused its discretion by excluding a witness:

1)  The prejudice or surprise in fact of the party against whom the excluded witness would have testified;

2)  The ability of that party to cure the prejudice;

3)  The extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court; and

4)  Bad faith or willfulness in failing to comply with the court's order.

Burkcs v. Oklahoma Pub. Co., 81 F.3d 975, 979 (10th Cir. 1996).

Finally, the decision to exclude evidence is a drastic sanction. Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 604 (10th Cir. 1997); Coleco Indus., Inc. v. Berman 567 F.2d 569, 576, n. 14 (3d Cir. 1997).

### B.  Plaintiffs have good cause to amend their expert disclosures

Plaintiffs have diligently pursued their claims and could not have anticipated Dr. LaChappelle's lack of cooperation in their case.  Plaintiffs counsel has acted in good faith to bring this issue to the Court's attention in a timely manner. An order denying Plaintiffs motion would severely prejudice Plaintiffs. Without a plastic surgeon to recommend future care, Plaintiffs will not be able to present all the relevant evidence to the jury. This case is similar to Street v. Curry Board of County Commissioners, 2008 WL 2397671.   There, "the Court found that the plaintiff

had 'shown good cause for a delay in seeking leave to amend," because she 'was diligent in pursuing discovery…[and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." Id. at 423, (quoting Street v. Curry Board of County Commissioners, 2008 WL 2397671 at *11). As in Street, Plaintiffs discovered Dr. LaChappelle's lack of cooperation during discovery, and promptly brought the issue before this Court. Like the Plaintiff in Street, Plaintiffs have shown good cause to amend their expert disclosures.

In Markham v. BTM Corp., 2009 WL 4507942, at *2 (D. Kan. Dec. 2, 2009), the Court allowed the parties the ability to add new experts, and even add a new claim, beyond the times set forth in the scheduling order. In that case, the discovery deadline had passed, but discovery was still ongoing. The Markham Court stated that "justice is best served by giving plaintiff latitude to amend his complaint…" and that any possible prejudice to defendant in permitting the proposed amendment can be averted. The Court allowed the Defendant to add a new expert failure to warn expert in that matter, as a way of averting any prejudice. Additionally, the Markham Court allowed Plaintiff two add two new medical experts, specifically stating that "**any potential prejudice to defendant in permitting the late designation of experts can be avoided by similarly permitting defendant the opportunity to retain and designate a new medical expert and/or allowing defendant's current medical expert to amend his report and deposition testimony**.". Markham, 2009 WL 4507942 at *3 [emphasis added].

Similar to the status of the case here, the discovery deadline has passed, but extremely relevant and necessary discovery is still ongoing as depositions of treating physicians and providers are still being taken and scheduled. It is through these depositions, and the process of scheduling them, that Plaintiffs learned of Dr. Lewis' inability to opine as to future care needs, and

of other treaters unwillingness to discuss those matters of future care with Plaintiffs' counsel or life care planner outside of a deposition setting. The depositions are still being scheduled and taking place.

Additionally, when Plaintiffs' counsel discovered Dr. LaChappelle  (and all other University of Utah providers) would not cooperate, he also discovered that Plaintiffs' life care planner was unable to complete his opinions relating to plastic surgery future care and prognosis due to the lack of cooperation and lack of deposition testimony to rely upon. On August 14, 2024, the day of his deposition, Plaintiffs' life care planner communicated to Plaintiffs' counsel that he had not been able to communicate with Dr. LaChapelle despite multiple attempts, and that an additional expert in the field of plastic surgery would thus be required. Additionally, given that the life care plan still could not be completed, it could not be accurately "priced out" by an economist. Plaintiffs have retained forensic economist. Plaintiffs have a separate plastic surgery who will be able to offer the opinions necessary regarding Plaintiffs' future prognosis and care needs. Plaintiffs will be ready to disclose the additional experts immediately upon entry of an Order granting the instant Motion.

**C. Granting Plaintiffs' Motion would not be detrimental to Defendants or unduly delay the case**

In the instant case, there would be no prejudice to the Defendant, as it is expected that a plastic surgeon, whether a treating one or an expert, would testify in this case regarding Plaintiffs treatment and future medical needs. It is also expected that, in this type of case, an expert economist would be required to testify. Furthermore, Defendants are not required to disclose their experts until September 13, 2024.  Defendants would not be prejudiced in any manner from disclosing an expert in the same specialties; in fact, it is likely they have already obtained such experts. Defendants would have the ability to cure any alleged prejudice by taking the deposition of the

experts prior to trial. Allowing the addition of these necessary experts would not affect, impact, or disrupt the orderly and efficient trial of this case, as there is plenty of time to depose these experts. See National Distillers and Chem. Corp. v. Brad's Mach. Prods., Inc., 666 F.2d 492, 497 (11th Cir. 1982) (finding that twenty-one days of notice of new witness prior to commencement of trial sufficient); Davis v. Duplantis, 448 F.2d 918, 921 (5th Cir. 1971) (finding eight days notice of testimony of witness not listed in pretrial order sufficient). The Court just entered an Amended Scheduling Order on September 3, 2024, and prior to entry of said Amended Scheduling Order the Court was advised of this request to add the two expert witnesses. The trial has now been moved to March 2025 at the request of the Defendants due to conflicts with the previously scheduled trial period. Therefore, given the additional time allotted for pretrial, the notice provided Defendants of the need for these experts, and the time in which Plaintiffs became aware of the issue, Plaintiffs' should be entitled to add the necessary expert witnesses stated herein.

This request is made in good faith and with no intent to delay Plaintiffs claims from coming to a resolution.

## V.    Relief Requested

Pursuant to the Federal Rules of Civil Procedure, Plaintiff respectfully requests that this this Honorable Court grant this Motion and allow Plaintiffs to amend their expert witness list.

Date: September 13, 2024                  Respectfully submitted,

*/s/ Rudwin Ayala*
**RUDWIN AYALA, Esq.***
Florida Bar No.: 84005
**MORGAN & MORGAN, P.A**
1700 Palm Beach Lakes Blvd, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 764-2220
Facsimile: (561) 764-2270
Primary Email: rayala@forthepeople.com

Secondary Email: sleroy@forthepeople.com
*Pro Hac Vice Attorney for Plaintiffs*

 And,

 /s/ Taly Goody
**TALY GOODY, ESQ**.
Wyoming Bar No.: 8-6737
**GREYSON M. GOODY, ESQ.**
**GOODY LAW GROUP**
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
*Attorney for Plaintiffs*

 /s/ T. Michael Morgan
**T. MICHAEL MORGAN, ESQ**.*
Florida Bar No.: 062229
Kentucky Bar No.: 94856
**MORGAN & MORGAN, P.A**
20 N. Orange Ave., Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Primary Email: mmorgan@forthepeople.com
Secondary Email: akelseyflowers@forthepeople.com
*Pro Hac Vice Attorney for Plaintiffs*