Ronald E. Synder, M.D.
08/14/2024

Page 1

```
 1               UNITED STATES DISTRICT COURT

 2           IN AND FOR THE DISTRICT OF WYOMING

 3    STEPHANIE WADSWORTH, individually )
                                        )
      and as Parent and Legal Guardian  )
                                        )
 4    of W.W., K.W., G.W. and L.W.      )
                                        )
      minor children, and MATTHEW       )
                                        )
 5    WADSWORTH,                        )    Case No.:
                                        )
             Plaintiffs,                )    2:23-cv-00118-NDF
                                        )
 6                vs.                   )
                                        )
      WALMART, INC. and JETSON          )
                                        )
 7    ELECTRIC BIKES, LLC,              )
                                        )
             Defendants.                )
13
                          - - -
14
                Wednesday, August 14, 2024
15
                          - - -
16            Videoconference deposition of

17   RONALD E. SYNDER, M.D. was taken via Zoom,

18   before Elizabeth M. Kondor, Certified Court

19   Reporter and Notary Public, on the above date,

20   commencing at 11:00 a.m.

21

22            LEXITAS LEGAL PHILADELPHIA

23          1600 MARKET STREET, SUITE 1700

24         PHILADELPHIA, PENNSYLVANIA 19103

25               (215) 504-4622
```

Ronald E. Synder, M.D.
08/14/2024

Page 7

```
 1      Q.    You have not done a life care plan
 2   for Weston Wadsworth, correct?
 3      A.    That is correct.
 4      Q.    And you're not offering any opinions
 5   in this case as to a potential life care plan
 6   for Weston Wadsworth?
 7      A.    Correct, not at this point, but I may
 8   be asked in the future, but at this point, I
 9   have not.
10      Q.    Okay.
11            And just so we're perfectly clear as
12   to what I am questioning you on here today, the
13   only opinions that you are offering in this case
14   presently is the life care plan opinions for
15   Stephanie Wadsworth, true?
16      A.    That is true.  That is correct.
17      Q.    And although you met the Wadsworth
18   children on your home visit, you have not done a
19   life care plan for any of them, including
20   Weston, and are not offering any opinions here
21   today on any life care plan issues related to
22   any other members of the Wadsworth family,
23   correct?
24      A.    That is correct.
25      Q.    And I understand that you are based
```

Ronald E. Synder, M.D.
08/14/2024

Page 37

1  just as a matter of housekeeping, why don't we
2  mark this as the next exhibit in line.  And I'll
3  pull it up.
4         (Exhibit 62, 6/6/24 letter to C.
5   LeChapelle from R. Snyder, is received and
6   marked for identification.)
7     Q.   Dr. Synder, if you could confirm - so
8  this would be Exhibit 62 - this is the letter to
9  Dr. LeChapelle with the accompanying
10 questionnaire, you probably can't see it, but it
11 is 19 pages long.  Is that the questionnaire
12 that you would have sent to Dr. LeChapelle?
13    A.   That is correct.  And we did get
14 notification they had received it by certified
15 mail so they did receive it.
16    Q.   And this would have been sent on June
17 6, 2024, as you noted, via certified mail and
18 through the certified mail process, as well as
19 it sounds like your recent conversation with his
20 office, he did receive this, correct?
21    A.   Correct.
22    Q.   Hold on one second.  I apparently
23 didn't shut my office phone off.
24         Sorry about that.
25         Have you ever spoken with

Ronald E. Synder, M.D.
08/14/2024

Page 38

```
 1   Dr. LeChapelle?
 2       A.    I have not.
 3       Q.    Has anyone from your office spoken
 4   with Dr. LeChapelle?
 5       A.    We have not.  Yesterday I reached out
 6   saying, Hey, where is this?  And I think one
 7   person spoke to one of his secretaries or
 8   whatever.  They did some research.  And I was
 9   asked to -- or they were asked to take this
10   report and fax it to them, which was faxed
11   yesterday to them.
12       Q.    And at least, as you sit here today,
13   I think you previously testified, you don't have
14   a completed copy of the questionnaire that you
15   sent to Dr. LeChapelle?
16       A.    I do not have a returned copy, that's
17   correct.
18       Q.    Okay.
19             And when you say "returned," just so
20   we're speaking the same language, you don't have
21   a returned or a completed copy of this
22   questionnaire, correct?
23       A.    Correct, yes.  I have what I sent
24   them and I expect for them to sign it, complete
25   it and return it back to me.  And I do not have
```

Ronald E. Synder, M.D.
08/14/2024

Page 39

```
 1   anything of that nature, that's correct.
 2        Q.    Are there any of Stephanie
 3   Wadsworth's treating physicians that you --
 4   strike that.
 5              Have you spoken with any of Stephanie
 6   Wadsworth's treating physicians?
 7        A.    I have not.  After I saw the patient,
 8   I had some discussions with plaintiffs' counsel,
 9   as far as needing to get some additional
10   clarification, because I'm not a plastic
11   surgeon.  And in order for me to put particular
12   procedures in, it would be inappropriate for me
13   to add those procedures.
14              And you'll see in my life care plan,
15   I have a list of procedures that I presume the
16   patient is going to be needing, but I could not
17   put in because that's outside of my wheelhouse.
18   So I presume in the future, there will be some
19   additional experts or counsel will set up an
20   appointment for me to speak with those treating
21   physicians.  But at this point, none of that has
22   been arranged at this point.
23        Q.    And it sounds like Dr. LeChapelle is
24   the only one that you've actually reached out to
25   as part of your work in this case?
```

Ronald E. Synder, M.D.
08/14/2024

Page 171

| | |
|---|---|
| 1 | like Mrs. Wadsworth, there have been the |
| 2 | occasional patients that you've treated even in |
| 3 | your private practice with burns, fair? |
| 4 | A.   Absolutely fair. |
| 5 | Q.   And in what you do as a life care |
| 6 | planner, even if you don't have an abundance of |
| 7 | patients in private practice with burns that |
| 8 | you're treating, as a life care planner, do you |
| 9 | speak with and learn from some of those |
| 10 | specialists that are treating the particular |
| 11 | patient whom you're asked to make |
| 12 | recommendations for future care? |
| 13 | A.   That's correct. |
| 14 | Q.   You were asked earlier on in the |
| 15 | deposition about the scope of your work in this |
| 16 | case.  And you have not prepared a life care |
| 17 | plan for Weston, correct? |
| 18 | A.   That's correct. |
| 19 | Q.   And, in fact, I instructed you to |
| 20 | focus your efforts on preparing your |
| 21 | recommendations and any opinions you had as to |
| 22 | Mrs. Wadsworth's future medical care needs, |
| 23 | fair? |
| 24 | A.   That's correct. |
| 25 | Q.   If, after receipt of depositions of |