Taly Goody, Esq.
Wyoming Bar No.: 8-6737
Greyson M. Goody, Esq.
GOODY LAW GROUP
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
greyson@GoodyLawGroup.com

T. Michael Morgan, Esq*
Florida Bar No.: 062229
Rudwin Ayala, Esq*
Florida Bar No.: 84005
MORGAN & MORGAN, P.A
20 N. Orange Ave, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: mmorgan@forthepeople.com
rayala@forthepeople.com

*  *Pro Hac Vice*
*Attorneys for*
*Plaintiffs*

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC. and JETSON ELECTRIC BIKES, LLC,<br><br>Defendants. | Case No.: 2:23-cv-00118-NDF<br><br>JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF JOSEPH FILAS**

    **COMES NOW,** the Plaintiffs, Stephanie Wadsworth, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, (hereinafter "Plaintiffs") by and through their counsel of record Rudwin Ayala, Esquire and Morgan &

1

Morgan, and pursuant to Fed. R. Civ. P. 26 and Fed. R. Evid. 702, submit this Brief in Support of Motion to Exclude the Purported Expert Testimony of Joseph Filas, and showing this Honorable Court as follows:

## I. FACTS

### A. Background

Defendants have retained Joseph Filas, a certified fire investigator to offer opinions as to the origin and cause of the fire at the Wadsworth residence on February 1, 2022. Filas authored a report on September 13, 2024, related to his review and ultimate opinions in the case. See Filas Report, attached as Exhibit "A". According to Filas, he attended joint inspections at the Wadsworth property on May 18, August 2, and August 3, 2022; attended a joint evidence examination at the Palmer Engineering facility in North Salt Lake City, Utah on October 30, 2023; and reviewed multiple case materials including various deposition transcripts, photographs, and literary materials/resources.

### B. Filas Opinions

Filas' final expert report issued on September 13, 2024, provided the following opinions:

1. The fire originated at the plastic shed located below the Bedroom #4 window along the north exterior wall of the structure.

2. The probable cause of the fire was the ignition of combustible materials from heat generated by the smoldering coal of an improperly discarded cigarette that ignited adjacent combustible materials.

3. The opinions expressed by Detective Jeff Sheaman with the Sweetwater County Sherriff as to the origin and cause of the fire are inaccurate. The opinions are not consistent with witness

statements, proper identification of fire patterns, dynamics of fire development, arc mapping analysis, overall methodology of fire investigations, and all known data.

4. The opinions expressed by Mr. Shulz with M.J. Schulz & Associates as to the origin and cause of the fire are inaccurate. The opinions are not consistent with witness statements, proper identification of fire patterns, dynamics of fire development, arc mapping analysis, overall methodology of fire investigations, and all known data.

Despite the conclusions reached, Filas is unqualified to render the aforementioned opinions as a result of his lack of true expertise in this field, his flawed methodology, and his reliance on unreliable scientific principles, i.e. arc mapping provided by Strandjord and the fire dynamic analysis provided by Mr. Gorbett. As explained below, Filas' opinions are inadmissible for several reasons.

## II.   SUMMARY OF ARGUMENT

Each of Filas' opinions must be excluded because they fail to meet the admissibility standards of Rule 702 due to either a lack of qualifications, a failure to establish a reliable methodology, a failure to apply a methodology reliably, or a combination thereof.

First, Filas is not qualified to render opinions related to origin and cause of the fire since according to his CV, he lacks experience with investigating fire and explosions related to personal mobility devices like hoverboards. See CV, attached as Exhibit B. Nothing in his CV or report specifically identifies education, training, or background in arm mapping or fire dynamics analysis. He has no specific certification in arm mapping or fire dynamics analysis, no professional experience with arc mapping, fire dynamics analysis, or origin and cause outside of his expert witness consulting work, and he has never taught or authored any publications relating to fire origin and cause. See Exhibit B. Experience with fireplaces, as evidenced by the two publications

he has listed on his CV, does not translate to adequate knowledge and background relating to investigating cases involving hoverboards.

Second, Filas' opinions are not based on sufficient facts and data, as he omitted evidence that necessarily should have been included for a full and adequate analysis.

Third, numerous peer-reviewed articles exist establishing the unreliable nature of arc mapping to determine fire origin, and stressing the significant concerns with presentation of such evidence in litigation. Arc mapping cannot be used to determine the origin of a fire, despite Filas' reliance on it.

Lastly, even if this Court concludes that Filas is qualified to opine on origin and cause in this case, he failed to demonstrate that he utilized a reliable methodology in reaching his opinions as to the origin and cause of the fire. No inspection was performed of all electrical circuits at the Wadsworth residence, Filas relied on Strandjord's and Gorbett's findings despite the subjective and unreliable nature of their work, he ignored key testimony from witnesses describing the fire on the inside of the home that would have established the origin of the fire on the inside of the home as well as the presence of the shed intact upon the children's exiting the home during the fire[1], and <u>only</u> relied upon his subjective belief that the fire began outside and essentially dismisses ever other potential explanation for this fire, including childrens' depositions and Det. Sheaman's deposition. Filas does little to explain what specifically he disagrees with from (1) Det. Sheaman's investigation and analysis; (2) Michael Schulz's investigation and analysis; (3) Derek King's investigation and analysis; or any other piece of evidence. Blanket statements that all other

---

[1] Filas makes a reference to the deposition testimony of minor K.W. in which she described seeing the entire shed when she was outside, not melted (Ex. A at page 26), but simply ignores the comment and focuses on other excerpts he believed to be more favorable to his overarching opinion.

4

investigator's got it wrong, without citation to the source and basis of his opinion is exactly the type of evidence intended to be excluded.

As such, Filas' opinions must be excluded for lack of sufficient reliability.

### III. ARGUMENT AND CITATION TO AUTHORITY

Fed R. Evid. 702 governs the admissibility of expert testimony, providing as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to facts of the case.

Fed. R. Evid. 702

Despite the relatively liberal language employed in Rule 702, The Supreme Court of the United States clarified—in no uncertain terms—that the text of Rule 702 requires judges to serve as gatekeepers in determining the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Daubert v. Merrel Dow Pharmaceutical, Inc.*, 509 U.S. 579, 592-93 (1993). The gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595). As the Supreme Court explained in *Daubert* and *Kumho*, Rule 702 requires the district court to ensure that an expert's testimony is both relevant and reliable before it may be admitted, regardless of whether the testimony is scientific or based on technical or other specialized knowledge. *See Kumho Tire Co.*, 526 U.S. at 147; *Daubert*, 509 U.S. at 589.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Trial courts

routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702. The elements for consideration are whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260. "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). A trial court has broad latitude in evaluating each of these factors. *See Kumho Tire Co.*, 526 U.S. at 152 (appellate courts review a district court's decision to exclude an expert's testimony under an abuse of discretion standard); *see also*, *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1340 (the district court's decision to exclude an expert will not be disturbed on appeal unless it is "manifestly erroneous") (internal quotations omitted). "[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's notes to 2023 amendments. *Hickcox v. Hyster-Yale Grp., Inc.*, 715 F. Supp. 3d 1362, 1380 (D. Kan. 2024)

For the reasons below, Filas' expert opinions fail to meet the admissibility requirements dictated by Rule 702 as interpreted by *Daubert* and its progeny.

### A. Filas is not qualified to testify competently as to arc mapping.

A review of Filas' CV demonstrates that he lacks the education or experience necessary to make him an expert in the field of arc mapping, fire modeling, and origin and cause analysis relating to personal mobility devices such as hoverboards. Additionally, Filas has no publications relating to origin and cause investigations of hoverboard fire investigations. Filas relies completely on Strandjord and Gorbett as it relates to arm mapping and fire modeling and dynamics, and did nothing to verify their computations, methodology, or corroborate that their processes were reliable. Furthermore, Filas is also not a metallurgist and is not educated, trained, or experienced as a metallurgist to render opinions regarding the melting of materials, including smoldering fires from cigarettes, are entirely baseless. The entirety of his fire origin and cause opinions amount to nothing more than a stacking of inferences and uncorroborated assumptions.

The reliability requirement is designed to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)(quoting *Daubert*, 509 U.S. at 597). As it relates to qualifications, "[a] witness is *qualified* as an expert if he is the type of person who should be testifying on the matter at hand." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021) (emphasis original); *see, In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) ("in determining whether a proffered expert is 'qualified' to offer an opinion, courts generally look to evidence of the witness's education and experience and ask whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise"). And while it is true that a witness may be qualified as an expert based on experience alone, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Payne v. C.R. Bard,*

*Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015) (quoting *Frazier*, 387 F.3d at 1261). When scrutinizing the 'knowledge' prong of Rule 702, one factor that courts consider "is whether other experts exist who are more specifically qualified. *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, at 81 (2d Cir. 1997)

To that end, metallurgy is defined as "[t]he branch of engineering concerned with the production of metals and alloys, their adaptation to use, and their performance in service; and the study of chemical reactions involved in the processes by which metals are produced, and the laws governing the physical, chemical, and mechanical behavior of metallic materials. Metallurgy, DICTIONARY OF MATERIALS SCIENCE (1st Edition, 2003). Metallurgy involves understanding the composition and behavior of metals and routinely requires the application of microscopic methodologies. Metallurgical failure analysis is the process by which a metallurgist determines the mechanism that has caused a metal component to fail. S.V. Hainsworth, *Critical Assessment 26: Forensic Metallurgy-The Difficulties"* 33 (14) MAT. SCI. AND TECH.1553-59 (2017). Although some general scientific principles apply to both electrical engineering and metallurgy, "…most fire investigators and/or electrical engineers do not possess professionally based, specialized scientific knowledge about metallurgy and are therefore not qualified to give an opinion involving forensic metallurgy, phase transformations in metal and alloys, or to conduct a high magnification examination of electrical conductor artifacts." Thomas R. May, Esq. and David J. ICove, Ph.D., P.E., *Arc Mapping Methodologies & The Pursuit of Magical Globules, Notches, & Beads: A Bridge Too Far to Establish Fire Origin?*, 7    Lincoln L. Rev. 37 (2020); See also *Cole's Tool Works v. Am. Power Conversion Corp.*, No. 2:06CV169-P-A, 2009 WL 901764 (N.D. Miss. Mar. 31, 2009) (holding that a forensic electrical engineer with decades of experience in investigating electrical aspects/causes of fire and other events confirmed the reliability of his

opinions through published, peer-reviewed literature, testing, and *independent metallurgical analysis*."(*emphasis added*). Filas has no metallurgical-related educational qualifications and scientific expertise, including but not limited to: (a) specific coursework, (b) scientific research, (c) submission or publication of associated literature, (d) lecturing engagements, or (e) any other scholarly work in the areas of metallurgy or material science. See Exhibit B. Without that education or experience, he is woefully unqualified to offer opinions which he is basing on any arc mapping analysis. Furthermore, nothing in his education, training, or experience outlines his qualifications to discuss and interpret fire modeling. In fact, interestingly Filas' only experience with origin and cause investigation come with his consultation work for lawyers and insurance companies. See Exhibit B. Filas' opinions amount to nothing more than speculative inferential leaps.

Furthermore, Filas has never published any literature on any relevant topic to the issues present in this case. He has two publications related to fireplaces from 2010 and 2013. Ex. B. Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury." *City of Hobbs v. Hartford Fire Ins. Co.,* 162 F.3d 576, 587 (10th Cir. 1998) (citation omitted). Mr. Filas is not qualified and does not meet the requirements of *Daubert* and rule 702 Fed. R. Evid. in order to testify competently regarding the matters he intends to address.

### B. Filas' opinions are not based on sufficient facts or data.

Rule 702 also involves a quantitative analysis that utilizes necessarily complete data to ensure that conclusions reached are satisfactorily accurate and not merely the product of assumptions. Peer-reviewed publications explaining arc mapping methodologies directs practitioners to conduct the investigation to disprove alternative hypotheses because "an expert's

failure to explain or adequately disprove alternative theories of causation makes his or her theory speculative and conclusory." *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010).

Filas' reliance on Strandjord's analysis and conclusions failed to take into account sufficient facts and data relating to the conductors of the entire house. Concluding that the origin and cause of the fire was at the outside shed because of purported arcing found there, despite the lack of evidence to identify whether it was a causal arc or victim arc[2], and because of the purported lack of arcing inside the home, again fails to take into account the entirety of the facts or data. As stated earlier, Strandjord did not examine the branch circuits outside of the one for Bedroom 4. This is significant because without doing so he could not determine whether any other part of the home was energized when the fire was inside Bedroom 4. Filas essentially adopting Strandjord's conclusion that the fire originated at the shed and then severed the overhead service triplex to the residence is speculative, at best, as he did nothing to actually confirm or rule out whether the remainder of the home was de-energized at the time the fire was in Bedroom 4. This is the exact type of speculative testimony that must be excluded from a jury's consideration.

Filas' reliance upon Strandjord's arm mapping analysis leaves him susceptible to the same pitfalls as Strandjord. Primarily, that Strandjord admitted that he did not attempt to search for arcing locations at the site where he removed the branch circuit for Bedroom 4. "It was determined that that would be better conducted in the laboratory setting." See Exhibit C to Plaintiffs' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF BRIAN STRANDJORD, AND BRIEF IN SUPPORT THEREOF at page 45. Strandjord took no pictures or even attempted to conduct such a search at the location. *Id.* at pages 46 and 49. It could have been done, but he felt

---

[2] Strandjord defined victim arcs as those that result from fire attacking an energized circuit, whereas a causal arc would be an arcing event that ignites a fire. Exhibit B of the Motion to Exclude Strandjord's Purported Expert Testimony at page 66.

it would be more productive to collect the evidence and examine it at the lab. *Id*. at pages 48 and 49. Filas' reliance upon the arc mapping is misplaced, as it is clear that Strandjord's analysis was nothing more than speculative and incomplete. Filas' conclusion that "there were no locations of arcing within the interior of the structure" is inaccurate, as that was never verified. See Exhibit A at page 14. Filas' conclusion that an "electrical arc occurred at the portable electric heater extension/power cord located at the interior of the shed" is not supported by any demonstrable evidence, which is further alarming given the fact that Strandjord himself stated in deposition that he did not know what cable or origin of the cable in the shed. See Exhibit C to Plaintiffs' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF BRIAN STRANDJORD, AND BRIEF IN SUPPORT THEREOF. Filas states that "it was determined that the arc to the extension cord and power cord of the portable electric heater in the shed occurred first and then was followed by the loss of power to the structure. Arc mapping analysis is consistent with the origin of the fire at the interior of the shed." Exhibit A at pages 14-15. He provided no factual support, no evidence to establish this as true. Filas fails to test this theory and demonstrate his methodology and results that render him able to conclude that the arcing in the shed occurred first and was followed by loss of power to the structure. With complete lacking of scientific principles and objectivity, this opinion becomes an ipse dixit argument of what Filas "sees" or believes without any reproduceable or peer-reviewed literature backed authority.

 This is only reaffirmed by his conclusions relating to the fire modeling.

> Fire dynamics analysis is consistent with a fire origin at the exterior of the structure. Fire
> dynamics analysis was consistent with a fire origin at the shed, impacted the window, breaking the window, severed the overhead service drop conductors, and progressed into the bedroom through the bedroom window. The fire then developed and spread within the bedroom and remaining portions of the structure until the fires were extinguished by the fire department. Then the fire developed within

11

> the structure and spread from the natural outgrowth of a fire within the bedroom. The window failure, and the presence of Gunner and Layne Wadsworth within the bedroom, is consistent with an exterior fire origin. The window failure resulted from flame and heat impingement at the exterior of the windowpane. For this to occur from the interior, a significant fire must develop within the room of origin capable of breaking the window. The presence of Gunner and Layne Wadsworth is not consistent with the development of a fire within the bedroom to break the bedroom window before injuring the occupants of the room. Furthermore, the pressures within the room are generally not sufficient to break a window.
>
> Fire models are consistent with an origin hypothesis at the exterior of the structure, rather than an interior fire origin at Bedroom #4. Burn tests of an exemplar shed are consistent with the shed capable of burning and producing flames, and fire plumes reaching the overhead service drop conductors and Bedroom #4 window.

Ex. A at page 42.

Filas also that "fire modeling of the structure fire was conducted by Mr. Gorbett with Fire Dynamics Analysts. The fire models were developed with an interior fire origin and an exterior fire origin. The fire models are consistent with an origin hypothesis at the exterior of the structure." Ex. A at page 15.

Filas provides no specific facts, analysis, calculations, references…anything, for his conclusions. All of these statements are simply assumptions, inferences upon inferences, speculation…the type of testimony that is unreliable and misleading to a jury. As such, Filas' opinions must be excluded for lack of sufficient reliability.

Not only is this a representation of faulty reasoning based on insufficient facts and data, but it further demonstrates a failure to abide by the scientific method set forth in NFPA 921, which he included in his report as a resource he relied upon as part of his analysis. There is a massive analytic gap between the data and the opinions proffered, which this Court must refuse to admit as expert testimony. *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997). To allow Filas to offer

any expert testimony in this case would be sanctioning guesswork and validating the following assumptions without factual basis:

- Arc mapping completed by Strandjord is reliable and acceptable evidence;
- Fire burn and fire dynamic modeling performed by Mr. Gorbess is reliable and acceptable evidence;
- The electrical arcing identified in the shed was a causal arc, as opposed to a victim arc;
- No arcing existed inside the home;
- The rest of the home was de-energized at the time the fire existed in Bedroom 4;
- The fire investigator who reviewed the physical evidence at the scene and concluded Bedroom 4 was the origin was wrong or lied;
- The children's testimony that when they arrived outside during the fire that the shed was still intact was wrong or they lied;
- The presence of the hoverboard in Bedroom 4 was just a coincidence;
- The fire scene evidence, as reported by the investigators, is unreliable;
- The service triplex could have only been severed by a fire originating outside the home.

These assumptions are not reasonably based on any reliable principles of law or fact, and are exactly the type that must be rejected due to the likelihood of misleading a jury.

### C. Filas failed to employ a reliable methodology in reaching his opinions concerning the origin of the fire.

The court has discretion to determine how to perform its gatekeeping function under Daubert. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). "The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R.,* 215 F.3d 1083, 1087 (10th Cir. 2000) (citations omitted). To determine whether an expert's testimony is sufficiently reliable to satisfy the requirements of Rule 702, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004). The court is duty-bound to exercise its gatekeeping function to

weed out unreliable expert testimony. *Hickcox v. Hyster-Yale Grp., Inc.*, 715 F. Supp. 3d 1362, 1377 (D. Kan. 2024)

If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong [of the *Daubert* analysis] would be, for all practical purposes, subsumed by the qualification prong. Thus, it remains a basic foundation for admissibility that proposed expert testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Frazier*, 387 F.3d at 1261 (quotation and citation omitted).

"Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Frazier*, 387 F.3d at 1261. Thus, the inquiry into reliability must focus on "principles and methodology" and not the expert witness's conclusions. *In re Com. Fin. Servs., Inc.,* 350 B.R. 559, 566 (Bankr. N.D. Okla. 2005)(quoting *Daubert*, 509 U.S. at 594-95). "In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005).

The Supreme Court in Daubert listed four non-exhaustive factors that a trial court may consider in making its reliability assessment: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1278 (W.D. Okla.

2018). The answer to most of these as it relates to Strandjord and his involvement in this case is in the negative.

1. **The Expert's technique or theory cannot be adequately tested.**

Filas' technique was flawed and relied upon subjective actions by other experts, mainly. Without the results of the arc mapping and the fire modeling, Filas has nothing he could rely on to conclude that the fire originated outside the home. Thus, reliance on the arc mapping is problematic given the significant credibility shortcomings with that analysis.[3] Filas relies upon Gorbett's subjective computations based upon mathematical equations that he himself puts into the modeling software, and the subjective inspection of Bedroom 4's circuit by Strandjord (to the exclusion of the remainder of the home). Filas report is devoid of actual detailed description of his methodology, other than his conclusions that he believes that other experts' work is consistent with the origin and cause of the fire being the shed. Furthermore, Filas makes a reference to a burning cigarette in the shed, and yet there is no evidence that there was a burning cigarette left in the shed. When the basis of his opinions rest on conjecture and hypotheticals, that is the tell-tale sign that the technique utilized is inadequate and cannot be tested, thereby rendering it unreliable.

2. **The Expert's theory has been subjected to peer review or publication**

The theory of arc mapping for purposes of analyzing fire origin has been subjected to peer-review. *Daubert* states that "publication in a peer-reviewed journal [is] a relevant, though not dispositive, consideration in assessing the validity of a particular technique or methodology on which an opinion is premised." *Daubert*, 509 U.S. at 594. Nevertheless, publication and peer review "serve[s] as independent indicia of the reliability of the . . . technique" and "demonstrate[s] a measure of acceptance of the methodology within the scientific community." *Ruiz-Troche v.*

---

[3] Plaintiffs would refer the Court to their analysis in the Motion to Exclude the Purported Expert Testimony of Brian Strandjord, and Brief in Support Thereof.

15

*Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 84 (1st Cir. 1998); see also *Daubert*, 509 U.S. at 593 ("[S]ubmission to the scrutiny of the scientific community is a component of 'good science.'"). To prevent duplication of analysis, Plaintiffs would refer the Court to Section III.C.2. of their Motion to Exclude the Purported Expert Testimony of Brian Strandjord, and Brief in Support Thereof, which they further rely upon herein.

Like Strandjord, Filas has not cited to one peer-reviewed article or literature specifically addressing the reliability of arc mapping.

3. **The technique utilized by Filas does not have a known or potential rate of error, and there are no true standards controlling the technique's operation in the context of fire origination.**

Filas has not identified truly what his technique was to analyze the data, only what some of the data provided and his subsequent conclusions. There is not analysis or technique given by Filas in his report for arriving at his opinions. Because of this, his report is completely unreliable. It was Filas' duty and obligation to detail in his report the technique utilized with sufficient particularity for reader to be able to identify his technique and methodology involved in analyzing the data and coming to his opinions. He has not done so.

Furthermore, to prevent duplication of analysis, Plaintiffs would refer the Court to Section III.C.3. of their Motion to Exclude the Purported Expert Testimony of Brian Strandjord, and Brief in Support Thereof, which they further rely upon herein as it relates to arc mapping.

Whatever method was employed by Filas equates to a subjective analysis that cannot be trusted.

4. **The theory of origin and cause has been accepted in some of the relevant scientific community**

"[G]eneral acceptance in the scientific field is highly probative of the reliability of a scientific procedure." *State v. Montalbo*, 73 Haw. 130, 138 (1992). "'General acceptance' . . .

16

means consensus drawn from a typical cross-section of the relevant, qualified scientific community." 31 Cal. Jur. 3d Evidence § 441 (2020). "[T]rial courts, in determining the general acceptance issue, must consider the quality, as well as quantity, of the evidence supporting or opposing a new scientific technique. Mere numerical majority support or opposition by persons minimally qualified to state an authoritative opinion is of little value." *People v. Leahy*, 8 Cal. 4th 587, 612 (1994) (emphasis added).

In *Santos v. State Farm Fire & Cas. Co.*, 28 Misc. 3d 1078, 905 N.Y.S.2d 497 (Sup. Ct. 2010), the general acceptance of computer fire modeling for use in determining fire origin and causation was at issue in New York. The plaintiff contended that the engineering expert's proposed computer fire model was unsuited for and not generally utilized to determine fire origin and causation. The plaintiff's fire investigation expert opined that computer fire modeling is not generally accepted as an investigative tool in the fire investigation community due to speculation related to building construction and materials used — and also that the computer fire model could not be used to determine fire causation. The opposing expert, a professor with a PhD in chemistry, testified that: (a) "the underlying equations and laws of physics [related to computer fire modeling] have been generally accepted in the fire science community;" (b) "fire modeling of fire dynamics is not a new science;" (c) his testimony was not to "state the cause and origin of the fire but rather to apply the computer dynamics to see how the fire would spread;" (d) "the results of the fire modeling established that there was a timeline that matched a particular origin of the fire, that the damage in the building corresponded to the results of the modeling, and that the determination of fire dynamics in that particular theory [the timeline] is generally accepted for that purpose;" (e) and"[t]he computer fire modeling essentially verified the hypothesis as to the ignition source or cause of the fire [and is] "never … accepted for determining the origin of the fire [but

17

can help in determining the cause]." The court's analysis led to exclusion of the computer fire model because:(a)"[w]hile computer fire modeling may be generally accepted in the scientific community for predicting the course of fires given a particular set of circumstances and, therefore, useful in fire prevention and safety, [the expert] has not demonstrated its general acceptance in fire investigation"; (b) "[f]ire modeling carries with it a 15% to 20% mar-gin for error assuming all conditions are correct but could be as high as 80 percent depending upon the real conditions [and the expert] acknowledged that there could be a difference between the material represented in a table and the actual material at the fire scene"; (c) "the regulatory agencies that utilize computer fire modeling (the Department of Energy and Nuclear Regulation Commission, the Department of Defense, the Department of Agriculture and ATF) 'are involved in risk assessment as opposed to fire investigation based on scientific standards"; (d)"[t]hese models in general are designed to start with the ignition of a fire under preset conditions and predict the time factors and conditions of growth and sometimes decay. They are not designed to recreate a particular fire by working backward from a set of final observations to determine what the starting or even intermediate conditions were."

Additionally, citing to NFPA 921, as Strandjord did in his report and deposition, for the proposition that arc mapping is accepted as a reliable methodology is misleading and a misstatement of its inclusion in the NFPA 921 standard. It is no longer listed as one of the four main methods for establishing fire origin, and as has been demonstrated by a leading authority in the field (Babrauskas), has extreme limitations that render it unreliable.

To state that fire origin and cause analysis that relies on arc mapping and fire modeling for its conclusion is generally accepted in the relevant scientific community would be stretching the truth.

For these reasons, Filas' opinions and the methodology employed, must be rejected by this Court.

## V. CONCLUSION

Based on the foregoing evidence, arguments, and authority, Plaintiffs respectfully request that this Court issue an Order excluding Filas' opinions in their entirety for failure to meet the admissibility standards set forth by Rule 702 and as interpreted by Daubert and its progeny.

Date: December 2, 2024

Respectfully Submitted,

/s/ Rudwin Ayala
**RUDWIN AYALA, Esq.**\*
Florida Bar No.: 84005
**MORGAN & MORGAN, P.A**
1700 Palm Beach Lakes Blvd, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 764-2220
Emails: rayala@forthepeople.com
sleroy@forthepeople.com
*Admitted Pro Hac Vice*

And,
/s/ Taly Goody
**TALY GOODY, ESQ.**
Wyoming Bar No.: 8-6737
**GREYSON M. GOODY, ESQ.**
**GOODY LAW GROUP**
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Emails: taly@GoodyLawGroup.com
greyson@GoodyLawGroup.com
*Local Counsel*

/s/ T. Michael Morgan
**T. MICHAEL MORGAN, ESQ.**\*
Florida Bar No.: 062229
Kentucky Bar No.: 94856
**MORGAN & MORGAN, P.A**

>20 N. Orange Ave., Suite 1600
>Orlando, FL 32801
>Telephone: (407) 420-1414
>Emails: mmorgan@forthepeople.com
>akelseyflowers@forthepeople.com
>*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2024, a true and correct copy of the foregoing Brief was electronically served to all counsel of record by using the CM/ECF system:

Counsel for Defendants:

Eugene M. LaFlamme – elaflamme@MLLlaw.com
Jared B. Giroux – jguiroux@MLLlaw.com
Jillian L. Lukens – jlukens@MLLlaw.com

>*/s/ Rudwin Ayala*
>**RUDWIN AYALA, Esq.**
>Fla Bar No.: 84005
>*Admitted Pro Hac Vice*