# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH, | Case No.: _____ |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| WALMART, INC. and JETSON ELECTRIC BIKES, LLC, | |
| Defendants. | |

## COMPLAINT

**COMES NOW** the Plaintiffs, STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH (referred to hereinafter as "Plaintiffs"), by and through undersigned counsel hereby files their Complaint against Defendants WALMART, INC. and JETSON ELECTRIC BIKES LLC, and state the following:

## SUMMARY OF THE ACTION

1.     Plaintiffs brings this civil action to recover for the catastrophic and permanent burn injuries, pain and suffering, mental anguish, and loss of consortium sustained when a defective and unreasonably dangerous hoverboard, a Jetson Plasma

Iridescent Hoverboard Item #081199103159 (hereinafter "Subject Hoverboard"), exploded and caught fire while in Plaintiffs' home. The Subject Hoverboard was defective, hazardous, and malfunctioned when Plaintiffs were using it in a reasonably foreseeable and intended manner.

2.      Plaintiffs now sue Defendants for their roles in designing, manufacturing, importing, distributing, selling, and supplying the Subject Hoverboard in its defective condition and for otherwise causing the incident and Plaintiff's horrific burn injuries.

## THE PARTIES

3.      At all times herein relevant, STEPHANIE WADSWORTH ("Stephanie") has been a resident of Sweetwater County, Wyoming.

4.      At all times herein relevant MATTHEW WADSWORTH ("Matthew") has been a resident of Sweetwater County, Wyoming. Matthew is Stephanie's spouse.

5.      W.W. is a minor child and Stephanie and Matthew are W.W.'s parents and legal guardians.

6.      K.W. is a minor child and Stephanie and Matthew are K.W.'s parents and legal guardians.

7.      G.W. is a minor child and Stephanie and Matthew are G.W.'s parents and legal guardians.

8.      L.W. is a minor child and Stephanie and Matthew are L.W.'s parents and legal guardians.

9. At all times herein relevant, Defendant WALMART, INC., (referred to hereinafter as "Walmart") was and is a Delaware corporation with its principal place of business at 702 Southwest 8th St, Bentonville, AR 72716.

10. Walmart is a multinational retail corporation that operates a chain of discount department stores and grocery stores in the United States. According to its website, Walmart offers the convenience of one-stop shopping from grocery and entertainment to sporting goods and crafts.

11. Walmart derives substantial revenue from selling, distributing, and/or delivering hoverboards to consumers throughout the United States. Walmart sold, distributed, and/or delivered the Subject Hoverboard to Plaintiff that was involved in the incident, which forms the basis for this Complaint.

12. At all times herein relevant, Defendant JETSON ELECTRIC BIKES, LLC, (referred to hereinafter as "Jetson") was and is a New York limited liability company with its principal place of business at 86 34th St., 4th Fl., Brooklyn, NY 11232.

13. Jetson is in the business of and derives substantial revenue from designing, manufacturing, assembling, producing, marketing, selling, distributing, servicing, maintaining, and repairing hoverboards.

14. Jetson has been selling, distributing, and delivering its hoverboard products and services directly to businesses including Walmart.

15. Jetson designed, manufactured, assembled, and produced the Subject Hoverboard and sold, distributed, and delivered the Subject Hoverboard directly to

Walmart with the purpose and expectation that Walmart would sell and supply the Subject Hoverboard into the stream of commerce.

## **JURISDICTION & VENUE**

16.     Jurisdiction is based on diversity of citizenship pursuant to U.S.C. § 1332, as this an action for damages that exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and therefore within the jurisdictional requirements of this Honorable Court.

17.     Pursuant to 28 U.S.C. § 1391(b)(2), an action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The acts and omissions alleged in this Complaint occurred in Wyoming.

18.     At all times herein relevant, Walmart was regularly doing business within the State of Wyoming and sold products within the state of Wyoming that it marketed, inspected, serviced, and sold.

19.     Walmart was at all times material hereto in the business of distributing, marketing, importing, inspecting, maintaining, servicing, and selling hoverboards, including the Subject Hoverboard that was involved in the incident, which forms the basis for this Complaint.

20.     Walmart regularly solicits business or engages in other persistent courses of conduct and derives substantial revenue from goods used or consumed or services rendered to persons in and from the state of Wyoming.

21.    Walmart expects and should reasonably expect its acts to have consequences in Wyoming and derives substantial revenue from commerce with citizens and residents of the state of Wyoming, as well as from interstate commerce.

22.    Walmart regularly transacts business with citizens of residents of the state of Wyoming and contracts to supply its goods and services to the state of Wyoming.

23.    Walmart owns, uses, and possesses real property situated in the state of Wyoming. Indeed, Walmart on their website advertises the fact that Walmart owns, uses, and possesses 14 physical locations within the state of Wyoming:



Select a location from the list:    Wyoming    ⌄

From our humble beginnings as a small discount retailer in Rogers, Ark., Walmart has opened thousands of stores in the United States and expanded internationally. Learn more about the stores located in Wyoming.

Retail Units:

- Supercenters: 12
- Sam's Clubs: 2
- Total Retail Units: 14

24.     At all times herein relevant, Jetson was regularly doing business within the state of Wyoming and sold products within the state of Wyoming that it marketed, inspected, serviced, and sold.

25.     Jetson regularly solicits business or engages in other persistent courses of conduct and derives substantial revenue from goods used or consumed or services rendered to persons in and from the state of Wyoming.

26.     Jetson purposefully availed themselves to Walmart and the state Wyoming with the goal of reaching Wyoming consumers and offering their products for sale in Walmart stores located in Wyoming. Pictured below is Jetson's hoverboard advertised and sold in Walmart located at 201 Gateway Blvd, Rock Springs, WY 82901.



27.    Jetson was at all times material hereto in the business of distributing, marketing, importing, inspecting, maintaining, servicing, selling, and manufacturing hoverboards, including the Subject Hoverboard.

28.    Jetson regularly solicits business or engages in other persistent courses of conduct and derives substantial revenue from goods used or consumed or services rendered to persons in and from the state of Wyoming.

29.    Jetson expects and should reasonably expect its acts to have consequences in Wyoming and derives substantial revenue from commerce with citizens and residents of the state of Wyoming, as well as from interstate commerce.

30.    Jetson regularly transacts business with citizens of residents of the state of Wyoming and contracts to supply its goods and services to the state of Wyoming.

## FACTS

31.    In December 2021, Matthew purchased the Subject Hoverboard from Walmart located at 201 Gateway Blvd, Rock Springs, WY 82901.

32.    A hoverboard is a type of toy that resembles a skateboard but instead of wheels, it uses two gyroscopically stabilized pads for the user to stand on and control the direction of travel by shifting their weight. A rider stands on two foot pads, one on either side of the board, and controls the speed and direction of the hoverboard by leaning forward or backward. Hoverboards are powered by rechargeable, typically lithium-ion, batteries and have electric motors in the wheels that enable movement.

33.    On February 1, 2022, at or around 4:00 A.M., emergency personnel were dispatched to Plaintiffs' residence in reference to a house fire.

34.    While Plaintiffs were sleeping, the Subject Hoverboard's lithium ion battery malfunctioned experiencing thermal runaway which caused the Subject Hoverboard to suddenly ignite causing a fire that burned down Plaintiffs' house while Plaintiffs were inside.

35.    As a result of the defective Subject Hoverboard, Stephanie suffered devastating burns covering 35% of her body, requiring months of hospitalization,

requiring painful debridement and skin-grafting procedures, and leaving Stephanie with severe and permanent scarring to her body.

36.   As a result of the defective Subject Hoverboard, W.W. suffered devastating burns on the right leg, bottom of the left foot, entire right hand, and lower back, requiring months of hospitalization, requiring painful debridement and skin-grafting procedures, and leaving W.W. with severe and permanent scarring to his body.

37.   As a result of the defective Subject Hoverboard, K.W. suffered devastating burns on her foot, requiring hospitalization and medical treatment.

38.   Additionally, Plaintiffs W.W., K.W., G.W., and L.W., have sought professional mental health services to treat the mental anguish and emotional distress inflicted upon them as a result of the defective Subject Hoverboard.

39.   Defendants Walmart and Jetson were well aware of the risks to human health posed by the defective Subject Hoverboard. Defendants knew, or should have known, that the Subject Hoverboard could pose significant health risks to consumers.

40.   Defendants negligently distributed, marketed, imported, inspected, maintained, serviced, and/or sold the defective Subject Hoverboard that could unexpectedly and without warning burst into flames.

41.   The Subject Hoverboard is defective in its design, manufacture, and/or warning.

42.   The defective condition of the Subject Hoverboard rendered the product unreasonably dangerous for its designed, intended, and foreseeable uses.

43.   The risk of danger associated with designing, manufacturing, distributing, supplying, and selling the Subject Hoverboard as it was outweighs any real or perceived benefits. At the time the Subject Hoverboard was designed, manufactured, distributed, supplied, and sold, alternative designs, formulations, and methods of manufacturing existed that would have resulted in a safer and more useful product with little to no increase in cost.

44.   The Subject Hoverboard's defective and unreasonably dangerous condition existed at the time the Subject Hoverboard left Jetson's final possession, custody, and control. The Subject Hoverboard's lithium ion battery malfunctioned and experienced thermal runaway which caused the Subject Hoverboard to suddenly ignite and it remained in its defective and unreasonably dangerous condition until and throughout the incident which forms the basis of this lawsuit.

45.   The Subject Hoverboard's defective condition actually and proximately caused Plaintiff's injuries.

46.   Upon information and belief, Defendants prioritized profits over safety, knowingly disregarding the defective and hazardous nature of the Subject Hoverboard.

47.   Upon information and belief, there are numerous documented instances where similar hoverboards designed, manufactured, distributed, supplied, and sold by Defendants failed in a similar manner. Despite this knowledge, Defendants took no action and allowed the Subject Hoverboard to remain in the market, recklessly and intentionally disregarding the potential risks and safety concerns.

## COUNT I—STEPHANIE WADSWORTH NEGLIGENCE AGAINST
## WALMART, INC.

48.     Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

49.     Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

50.     Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Stephanie.

51.     On February 1, 2022, Stephanie was using the Subject Hoverboard for its ordinary purpose.

52.     Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

53.     Walmart was under a duty to properly and adequately inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including Stephanie.

54.     Walmart owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

55.    Walmart owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

56.    Walmart breached the above duties.

57.    Walmart's breach of the above duties actually and proximately caused injury and damage to Stephanie.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II – STEPHANIE WADSWORTH STRICT LIABILITY AGAINST WALMART, INC.

58.    Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

59.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

60.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Stephanie.

61.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a

foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

62.    Walmart is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including Stephanie.

63.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Walmart.

64.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including Stephanie.

65.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Walmart.

66.    As a direct and proximate result of the Subject Hoverboard's defective condition, Stephanie sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and

suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT III – STEPHANIE WADSWORTH BREACH OF WARRANTY AGAINST WALMART, INC.

67.     Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

68.     Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

69.     Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Stephanie.

70.     Walmart placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Walmart knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

71.     On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Walmart.

72.     Walmart warranted and represented safe operation and performance of the Subject Hoverboard to Stephanie during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

73.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Walmart because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

74.    Walmart's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including Stephanie.

75.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

76.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

77.    The defects above directly and proximately caused the subject incident and injuries to Stephanie.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and

suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IV – STEPHANIE WADSWORTH NEGLIGENCE AGAINST JETSON ELECTRIC BIKES, LLC.

78.     Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

79.     Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

80.     Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

81.     On February 1, 2022, Stephanie was using the Subject Hoverboard for its ordinary purpose.

82.     Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

83.     Jetson was under a duty to properly and adequately design, manufacture, inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary

circumstances, would come into contact with the Subject Hoverboard, including Stephanie.

84.    Jetson owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

85.    Jetson owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

86.    Jetson breached the above duties.

87.    Jetson's breach of the above duties actually and proximately caused injury and damage to Stephanie.

**WHEREFORE,** Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT V – STEPHANIE WADSWORTH STRICT LIABILITY AGAINST JETSON ELECTRIC BIKES, LLC.

88.    Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

89.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

90.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

91.    Jetson sold and ultimately placed the Subject Hoverboard into the stream of commerce.

92.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

93.    Jetson is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including Stephanie.

94.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Jetson.

95.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including Stephanie.

96.     On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Jetson.

97.     As a direct and proximate result of the Subject Hoverboard's defective condition, Stephanie sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VI – STEPHANIE WADSWORTH BREACH OF WARRANTY AGAINST JETSON ELECTRIC BIKES, LLC.

98.     Stephanie re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

99.     Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

100.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

101.    Jetson placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or

unknown dangers. Jetson knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

102.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Jetson.

103.    Jetson warranted and represented safe operation and performance of the Subject Hoverboard to Stephanie during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

104.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Jetson because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

105.    Jetson's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including Stephanie.

106.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

107.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including

Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

108.    The defects above directly and proximately caused the subject incident and injuries to Stephanie.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, NEGLIGENCE AGAINST WALMART, INC.

109.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

110.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

111.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to W.W.'s parents.

112.    On February 1, 2022, W.W. was using the Subject Hoverboard for its ordinary purpose.

113.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

114.    Walmart was under a duty to properly and adequately inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including W.W.

115.    Walmart owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

116.    Walmart owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

117.    Walmart breached the above duties.

118.    Walmart's breach of the above duties actually and proximately caused injury and damage to W.W.

WHEREFORE, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-

economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VIII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, STRICT LIABILITY AGAINST WALMART, INC.

119.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

120.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

121.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to W.W.'s parents.

122.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

123.    Walmart is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including W.W.

124.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Walmart.

125.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including W.W.

126.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Walmart.

127.    As a direct and proximate result of the Subject Hoverboard's defective condition, W.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IX—STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, BREACH OF WARRANTY AGAINST WALMART, INC.

128.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

129.  Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

130.  Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to W.W.'s parents.

131.  Walmart placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Walmart knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

132.  On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Walmart.

133.  Walmart warranted and represented safe operation and performance of the Subject Hoverboard to W.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

134.  The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Walmart because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

135.  Walmart's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably

dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including W.W.

136.  The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

137.  For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

138.  The defects above directly and proximately caused the subject incident and injuries to W.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT X – STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, NEGLIGENCE AGAINST JETSON ELECTRIC BIKES, LLC.

139.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

140.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

141.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

142.    On February 1, 2022, W.W. was using the Subject Hoverboard for its ordinary purpose.

143.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

144.    Jetson was under a duty to properly and adequately design, manufacture, inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including W.W.

145.    Jetson owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

146. Jetson owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

147. Jetson breached the above duties.

148. Jetson's breach of the above duties actually and proximately caused injury and damage to W.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XI – STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, STRICT LIABILITY AGAINST JETSON ELECTRIC BIKES, LLC.

149. Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

150. Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

151.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

152.    Jetson sold and ultimately placed the Subject Hoverboard into the stream of commerce.

153.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

154.    Jetson is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including W.W.

155.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Jetson.

156.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including W.W.

157.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Jetson.

158.    As a direct and proximate result of the Subject Hoverboard's defective condition, W.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XII – STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, BREACH OF WARRANTY AGAINST JETSON ELECTRIC BIKES, LLC.

159.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of W.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

160.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

161.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

162.    Jetson placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Jetson knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product

for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

163. On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Jetson.

164. Jetson warranted and represented safe operation and performance of the Subject Hoverboard to W.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

165. The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Jetson because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

166. Jetson's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including W.W.

167. The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

168. For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including W.W., who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

169.    The defects above directly and proximately caused the subject incident and injuries to W.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of W.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XIII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, NEGLIGENCE AGAINST WALMART, INC.

170.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

171.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

172.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to K.W.'s parents.

173.    On February 1, 2022, K.W. was using the Subject Hoverboard for its ordinary purpose.

174.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a

foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

175. Walmart was under a duty to properly and adequately inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including K.W.

176. Walmart owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

177. Walmart owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

178. Walmart breached the above duties.

179. Walmart's breach of the above duties actually and proximately caused injury and damage to K.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XIV—STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, STRICT LIABILITY AGAINST WALMART, INC.

180.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

181.   Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

182.   Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to K.W.'s parents.

183.   Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

184.   Walmart is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including K.W.

185.   The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Walmart.

186.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including K.W.

187.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Walmart.

188.    As a direct and proximate result of the Subject Hoverboard's defective condition, K.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XV—STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, BREACH OF WARRANTY AGAINST WALMART, INC.

189.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

190.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

191.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to K.W.'s parents.

192.    Walmart placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Walmart knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

193.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Walmart.

194.    Walmart warranted and represented safe operation and performance of the Subject Hoverboard to K.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

195.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Walmart because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

196.    Walmart's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including K.W.

36

197.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

198.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

199.    The defects above directly and proximately caused the subject incident and injuries to K.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XVI – STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, NEGLIGENCE AGAINST JETSON ELECTRIC BIKES, LLC.

200.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

201.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

202.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

203.    On February 1, 2022, K.W. was using the Subject Hoverboard for its ordinary purpose.

204.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

205.    Jetson was under a duty to properly and adequately design, manufacture, inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including K.W.

206.    Jetson owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

207.    Jetson owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

208.    Jetson breached the above duties.

209.    Jetson's breach of the above duties actually and proximately caused injury and damage to K.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XVII – STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, STRICT LIABILITY AGAINST JETSON ELECTRIC BIKES, LLC.

210.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

211.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

212.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

213.    Jetson sold and ultimately placed the Subject Hoverboard into the stream of commerce.

214.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

215.    Jetson is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including K.W.

216.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Jetson.

217.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including K.W.

218.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Jetson.

219.    As a direct and proximate result of the Subject Hoverboard's defective condition, K.W. sustained injuries.

WHEREFORE, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the

future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT XVIII – STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, BREACH OF WARRANTY AGAINST JETSON ELECTRIC BIKES, LLC.

220.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of K.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

221.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

222.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

223.    Jetson placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Jetson knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

224.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Jetson.

225.    Jetson warranted and represented safe operation and performance of the Subject Hoverboard to K.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

226.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Jetson because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

227.    Jetson's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including K.W.

228.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

229.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including K.W., who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

230.    The defects above directly and proximately caused the subject incident and injuries to K.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of K.W., a minor child, demands judgment against Defendant, JETSON

ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XIX—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, NEGLIGENCE AGAINST WALMART, INC.

231.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

232.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

233.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to G.W.'s parents.

234.    On February 1, 2022, G.W. was using the Subject Hoverboard for its ordinary purpose.

235.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

236.    Walmart was under a duty to properly and adequately inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard

in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including G.W.

237.   Walmart owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

238.   Walmart owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

239.   Walmart breached the above duties.

240.   Walmart's breach of the above duties actually and proximately caused injury and damage to G.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT XX—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, STRICT LIABILITY AGAINST WALMART, INC.

241.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

242.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

243.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to G.W.'s parents.

244.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

245.    Walmart is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including G.W.

246.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Walmart.

247.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including G.W.

248.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Walmart.

249.    As a direct and proximate result of the Subject Hoverboard's defective condition, G.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT XXI—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, BREACH OF WARRANTY AGAINST WALMART, INC.

250.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

251.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

252.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to G.W.'s parents.

253.    Walmart placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Walmart knew or should have known that ultimate users,

operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

254.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Walmart.

255.    Walmart warranted and represented safe operation and performance of the Subject Hoverboard to G.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

256.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Walmart because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

257.    Walmart's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including G.W.

258.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

259.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including

Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

260.   The defects above directly and proximately caused the subject incident and injuries to G.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, NEGLIGENCE AGAINST JETSON ELECTRIC BIKES, LLC.

261.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

262.   Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

263.   Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

264.    On February 1, 2022, G.W. was using the Subject Hoverboard for its ordinary purpose.

265.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

266.    Jetson was under a duty to properly and adequately design, manufacture, inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including G.W.

267.    Jetson owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

268.    Jetson owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

269.    Jetson breached the above duties.

270.    Jetson's breach of the above duties actually and proximately caused injury and damage to G.W.

WHEREFORE, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the

future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXIII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, STRICT LIABILITY AGAINST JETSON ELECTRIC BIKES, LLC.

271.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

272.   Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

273.   Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

274.   Jetson sold and ultimately placed the Subject Hoverboard into the stream of commerce.

275.   Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

276.   Jetson is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed,

sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including G.W.

277.   The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Jetson.

278.   The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including G.W.

279.   On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Jetson.

280.   As a direct and proximate result of the Subject Hoverboard's defective condition, G.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

**COUNT XXIV—STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, BREACH OF WARRANTY AGAINST JETSON ELECTRIC BIKES, LLC.**

281.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of G.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

282.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

283.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

284.    Jetson placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Jetson knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

285.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Jetson.

286.    Jetson warranted and represented safe operation and performance of the Subject Hoverboard to G.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

287.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Jetson because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

288.    Jetson's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including G.W.

289.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

290.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including G.W., who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

291.    The defects above directly and proximately caused the subject incident and injuries to G.W.

WHEREFORE, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of G.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-

economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXV—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, NEGLIGENCE AGAINST WALMART, INC.

292.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

293.    Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

294.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to L.W.'s parents.

295.    On February 1, 2022, L.W. was using the Subject Hoverboard for its ordinary purpose.

296.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

297.    Walmart was under a duty to properly and adequately inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including L.W.

298.   Walmart owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

299.   Walmart owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

300.   Walmart breached the above duties.

301.   Walmart's breach of the above duties actually and proximately caused injury and damage to L.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT XXVI—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, STRICT LIABILITY AGAINST WALMART, INC.

302.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

303.   Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

304.    Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to L.W.'s parents.

305.    Walmart knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

306.    Walmart is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including L.W.

307.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Walmart.

308.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including L.W.

309.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Walmart.

310.    As a direct and proximate result of the Subject Hoverboard's defective condition, L.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXVII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, BREACH OF WARRANTY AGAINST WALMART, INC.

311.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

312.   Defendant Walmart is in the business of distributing and selling hoverboards, including the Subject Hoverboard.

313.   Walmart inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to L.W.'s parents.

314.   Walmart placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Walmart knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the

product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

315.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Walmart.

316.    Walmart warranted and represented safe operation and performance of the Subject Hoverboard to L.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

317.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Walmart because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

318.    Walmart's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including L.W.

319.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

320.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including Stephanie, who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

321.   The defects above directly and proximately caused the subject incident and injuries to L.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, WALMART, INC., for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXVIII—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, NEGLIGENCE AGAINST JETSON ELECTRIC BIKES, LLC.

322.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

323.   Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

324.   Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

325.   On February 1, 2022, L.W. was using the Subject Hoverboard for its ordinary purpose.

326.    Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

327.    Jetson was under a duty to properly and adequately design, manufacture, inspect, test, label, provide adequate warnings for, package, distribute and/or sell the Subject Hoverboard in a reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances, would come into contact with the Subject Hoverboard, including L.W.

328.    Jetson owed a duty to adequately test, inspect, and assure the quality of the Subject Hoverboard before placing it into the stream of commerce.

329.    Jetson owed a duty to provide adequate warnings, instructions, and information with the Subject Hoverboard.

330.    Jetson breached the above duties.

331.    Jetson's breach of the above duties actually and proximately caused injury and damage to L.W.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-

economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

### COUNT XXIX—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, STRICT LIABILITY AGAINST JETSON ELECTRIC BIKES, LLC.

332.   Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

333.   Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

334.   Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

335.   Jetson sold and ultimately placed the Subject Hoverboard into the stream of commerce.

336.   Jetson knew or in the exercise of due care should have known that the Subject Hoverboard was in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to product users, consumers, and/or bystanders.

337.   Jetson is strictly liable as the Subject Hoverboard was not properly and adequately designed, manufactured, inspected, tested, labeled, packaged, distributed, sold, or had adequate warnings for, and the Subject Hoverboard was not in a

reasonably safe condition so as to not present a danger to users and/or bystanders who reasonably and foreseeably, under ordinary circumstances would come into contact with the Subject Hoverboard, including L.W.

338.    The Subject Hoverboard was defective and in an unreasonably dangerous condition for users, operators, and/or consumers when sold and distributed by Jetson.

339.    The Subject Hoverboard was unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including L.W.

340.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition and sold and maintained by Jetson.

341.    As a direct and proximate result of the Subject Hoverboard's defective condition, L.W. sustained injuries.

**WHEREFORE**, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXX—STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, BREACH OF WARRANTY AGAINST JETSON ELECTRIC BIKES, LLC.

342.    Plaintiff, Stephanie Wadsworth, as Parent and Legal Guardian of L.W., a minor child, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

343.    Defendant Jetson is in the business of manufacturing, marketing, repairing, servicing, maintaining, distributing, and selling hoverboards, including the Subject Hoverboard.

344.    Jetson inspected, distributed, sold, and/or ultimately placed the Subject Hoverboard into the stream of commerce, selling it directly to Walmart.

345.    Jetson placed the Subject Hoverboard on the market and into the stream of commerce with knowledge that it would be used without inspection for defects or unknown dangers. Jetson knew or should have known that ultimate users, operators, consumers, and/or bystanders would not and could not properly inspect the product for defects and dangerous conditions, and that detection of such defects or dangers would be beyond the capabilities of such persons.

346.    On the date of the subject incident, the Subject Hoverboard was substantially unchanged from its condition as sold and maintained by Jetson.

347.    Jetson warranted and represented safe operation and performance of the Subject Hoverboard to L.W. during its initial sale to them by way of their business. Such warranties and representations included specifically representations that the Subject Hoverboard was fit for the purposes it was intended to be used.

348.    The Subject Hoverboard was defective and in an unreasonably dangerous condition when sold and maintained by Jetson because of design, manufacturing, inspection, and warning defects that caused the Subject Hoverboard to suddenly ignite.

349.    Jetson's lack of inspection, testing, or quality control in connection with the Subject Hoverboard's performance, coupled with its representations and warranties about safe performance, rendered the Subject Hoverboard unreasonably dangerous and unfit for ordinary purposes intended and expected by ordinary consumers, including L.W.

350.    The Subject Hoverboard failed to perform safely as warranted and represented by Walmart in connection with its sale.

351.    For the reasons set forth above, the Subject Hoverboard was defective and unreasonably dangerous to foreseeable users and/or bystanders, including L.W., who came into contact with the Subject Hoverboard in an ordinary and foreseeable manner.

352.    The defects above directly and proximately caused the subject incident and injuries to L.W.

WHEREFORE, Plaintiff, STEPHANIE WADSWORTH, as Parent and Legal Guardian of L.W., a minor child, demands judgment against Defendant, JETSON ELECTRIC BIKES LLC, for all injuries and damages sustained as a result of the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-

economic damages, mental anguish, emotional distress, pain and suffering, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XXXI—MATTHEW WADSWORTH LOSS OF CONSORTIUM AGAINST WALMART, INC.

353.   Plaintiff, Matthew Wadsworth, re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

354.   As a result of the tortious and negligent behavior by Walmart described herein, Matthew's close familial relations with his spouse Stephanie have suffered devastating injuries. This has caused Matthew mental anguish and a loss of companionship, solace, comfort, fellowship, society, affection, love, guidance, and assistance in his close familial relationships.

355.   By reason of the foregoing, Walmart is liable to Matthew for compensatory damages in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## COUNT XXXII—MATTHEW WADSWORTH LOSS OF CONSORTIUM AGAINST JETSON ELECTRIC BIKES, LLC.

356.   Plaintiff, Matthew Wadsworth re-alleges and incorporates paragraphs 1 through 47 of this Complaint as if fully stated herein.

357.   As a result of the tortious and negligent behavior by Jetson described herein, Matthew's close familial relations with his spouse Stephanie have suffered devastating injuries. This has caused Matthew mental anguish and a loss of

companionship, solace, comfort, fellowship, society, affection, love, guidance, and assistance in his close familial relationships.

358.   By reason of the foregoing, Jetson is liable to Matthew for compensatory damages in amounts to be proved at trial, together with interest, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1. For an award of damages, including nominal and compensatory damages, including past and future pain and suffering, past and future treatment costs, and other amounts as allowed by law and in an amount to be determined;

2. For an award of punitive damages as allowed by law and in an amount to be determined;

3. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

4. For prejudgment interest on all amounts awarded; and

5. Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs, STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH, hereby demand a jury of six (6) persons on all issues so triable.

Date: July 6, 2023                                          Respectfully submitted,

                                                            */s/ Taly Goody*
                                                            **TALY GOODY, ESQ.**
                                                            Wyoming Bar No.: 8-6737
                                                            **Goody Law Group**
                                                            58 Malaga Cove Plaza
                                                            Palos Verdes Estates, CA 90274
                                                            Telephone: (310) 893-1983
                                                            Primary Email:
                                                            Taly@GoodyLawGroup.com

                                                            **T. MICHAEL MORGAN, Esq.***
                                                            Florida Bar No.: 062229
                                                            Kentucky Bar No.: 94856
                                                            **MORGAN & MORGAN, P.A.**
                                                            20 N. Orange Ave., Suite 1600
                                                            Orlando, FL 32801
                                                            Telephone: (407) 420-1414
                                                            Primary Email:
                                                            mmorgan@forthepeople.com
                                                            Secondary Email:
                                                            akelseyflowers@forthepeople.com
                                                            Tertiary Email:
                                                            phillip@forthepeople.com

                                                            *Counsel for Plaintiffs*
                                                            **Wyoming Pro Hac Vice Pending*

# United States District Court
## For The District of Wyoming

I, Margaret Botkins, Clerk of Court for the United States District Court
for the District of Wyoming, do hereby certify that

## TALY GOODY

was duly admitted and qualified to practice as an Attorney in the

District Court on the 30th day of June, 2023.

In testimony whereof, I hereunto set my hand and affix the seal of said Court,
at my office in Cheyenne this 30th day of June, 2023.



*Clerk of Court*

Case 2:23-cv-00118-NDF   Document 1-3   Filed 07/06/23   Page 1 of 2

JS 44   (Rev. 10/20)
# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH

**DEFENDANTS**
WALMART, INC. and JETSON ELECTRIC BIKES, LLC

**(b)** County of Residence of First Listed Plaintiff    SWEETWATER
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    SALINE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Taly Goody of Goody Law Firm 58 Malaga Cove Plaza, Palos Verdes Estates, CA 90274 (310) 893-1983 and T. Michael Morgan of Morgan & Morgan, P.A. 20 N. Orange Ave., Ste 1600 Orlando, FL 32801(407) 420-1414

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV |
| | **PERSONAL INJURY**<br>☒ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Negligence, Strict Liability,Breach of Warranty due to Hoverboard's lithium ion battery causing house fire and catastrophic burns

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ Over $75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
June 5, 2023

SIGNATURE OF ATTORNEY OF RECORD
Taly Goody

Digitally signed by Taly Goody
Date: 2023.06.05 11:34:24 -0700'

*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

JS 44 Reverse (Rev. 10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

|                          |                        |
|--------------------------|------------------------|
|                          | Plaintiff,             |
| vs                       | Case Number:           |
|                          | Defendant.             |

## STIPULATION OF CONSENT TO TRIAL BEFORE UNITED STATES MAGISTRATE JUDGE ENTRY OF FINAL JUDGMENT BY UNITED STATES MAGISTRATE AND CONSENT TO APPEAL TO UNITED STATES COURT OF APPEALS

The undersigned parties, by and through their attorneys, are fully aware of the right to trial of the captioned proceeding before a Judge of the United States District Court for this District and do hereby specifically waive trial before the District Judge and consent to (jury/non-jury) trial before a United States Magistrate Judge and specifically authorize entry of final judgment by the United States Magistrate Judge, pursuant to 28 U.S.C. 636(c), Fed.R.Civ.P. 73.

_____          _____

_____          _____

_____          _____

_____          _____

      Plaintiff(s)                              Defendant(s)

After completing this form, counsel are **required** to e-mail it to: consents@wyd.uscourts.gov.  Alternatively, the form may be mailed to the following address: U.S. District Court, 2120 Capitol Avenue, Room 2131, Attention: Consent Clerk, Cheyenne, Wyoming 82001.  **Do not e-file this document!**

# 28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment

**(c)**Notwithstanding any provision of law to the contrary—

**(1)**Upon the consent of the parties, a full-time United States magistrate judge or a part time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdiction, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

**(2)**If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

**(3)**Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

**(4)**The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection.

**(5)**The magistrate judge shall, subject to guidelines of the Judicial Conference, determine whether the record taken pursuant to this section shall be taken by electronic sound recording, by a court reporter, or by other means.

A consent form is attached and also available on the Court's website at:
http://www.wyd.uscourts.gov/htmlpages/forms.html#CivilForms