Timothy M. Stubson, Wyo. Bar. No. 6-3144
Holly Tysse Wyo. Bar. No. 7-5553
Brandon E. Pryde Wyo. Bar. No. 8-6883
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-265-2279
tstubson@crowleyfleck.com
htysse@crowleyfleck.com
bpryde@crowleyfleck.com

and

Eugene M. LaFlamme *(admitted pro hac vice)*
Jared B. Giroux *(admitted pro hac vice)*
Jillian L. Lukens *(admitted pro hac vice)*
McCoy Leavitt Laskey LLC
N19 W24200 Riverwood Drive, #125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH, <br><br> Plaintiffs, <br><br> v. <br><br> WALMART INC. and JETSON ELECTRIC BIKES, LLC, <br><br> Defendants. | Case No. 2:23-cv-00118-NDF <br><br> DEFENDANTS JETSON ELECTRIC BIKES, LLC AND WALMART INC.'S MOTION TO EXCLUDE TESTIMONY OF BILL ROBINSON; **MEMORANDUM IN SUPPORT OF MOTION** |

Defendants, Walmart Inc. and Jetson Electric Bikes, LLC, respectfully request that this

Court exclude any opinion testimony from Green River Assistant Fire Chief Bill Robinson

4

pursuant to Federal Rules of Civil Procedure 702 with respect to any origin and cause opinions as they are unreliable and speculative. Defendants further incorporate into this memorandum the arguments and authorities presented in the accompanying summary judgment motion.

## BACKGROUND

Defendants hereby incorporate the "Background" section of the Memorandum in Support of their Motion to Exclude the Testimony of Jeff Sheaman.

Green River Fire Department Assistant Fire Chief Bill Robinson assisted Detective Sheaman with his fire investigation. Although Plaintiffs have not formally designated Robinson as an expert, it is anticipated that Plaintiffs may attempt to elicit expert testimony from him regarding his origin and cause opinions. While Robinson concluded that the fire originated in G.W. and L.W.'s bedroom at the Jetson Plasma hoverboard, Robinson's investigation was even more limited than Detective Sheaman's investigation.[1]

Robinson's total investigation was limited to an approximate two-hour site visit on the day of the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 61:18-20, 126:2-14, 130:14-16). Robinson completed his report on February 9, 2022. (LaFlamme Dec. ¶¶ 7-8, Ex. 1: Robinson Dep. 51:18-52:3; Ex. 2: Robinson Report). Robinson agreed that he tries to follow NFPA 921 – Guide for Fire and Explosion Investigations when he conducts his investigations. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 106:15-20).[2] In addition, Robinson further agreed that an origin and cause investigator should continue to evaluate additional fire evidence as it is discovered and that an

---

[1] Defendants have filed a Rule 702/*Daubert* motion to exclude Detective Sheaman's opinion testimony as unreliable that has been filed contemporaneously with this motion.

[2] The court reporter for Asst. Chief Robinson's deposition was remote and there were some issues with the transcription for this portion, but all references were to NFPA 921. NFPA 291 is the Recommended Practice for Water Flow Testing and Marking of Hydrants, which is not an issue in this case, and there is no NFPA 29 code or standard.

investigator needs to "consider all evidence." (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 129:24-130:9).

When he issued his report, however, Robinson was not aware of the extensive evidence that had been identified since he ceased his investigation. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 181:22-182:4). Robinson did not participate in the May 18, 2022 site inspection, the August 2 and 3, 2022 site inspection, the October 30, 2023 evidence inspection, or the February 29, 2024 hoverboard inspection (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 144:14-24, 181:22-182:4). All of these inspections were critical steps to identify facts related to the fire's origin and cause.

Robinson did not interview any witnesses. (LaFlamme Dec. ¶7, Ex. 1: Robinson 122:15-16). He did not review any of the body camera footage. (LaFlamme Dec. ¶7, Ex. 1: Robinson 122:20-22). He was not aware of the Wadsworth children's statements after the fire that indicated that the fire started outside. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 133:14-18, 180:1-4). He did not review any of the interviews conducted by Detective Sheaman. (LaFlamme Dec. ¶7, Ex. 1: Robinson 122:17-19). He did not know about the smoking shed. (LaFlamme Dec. ¶7, Ex. 1: (Robinson 132:18-22, 146:19-147:4, 179:16-21). He did not know that Mrs. Wadsworth had smoked in the smoking shed a couple of hours prior to the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 146:19-147:4).

Robinson also was not aware that electrical arcing was found in the smoking shed and that no electrical arcing was found in G.W. and L.W.'s bedroom as even acknowledged by Plaintiffs' origin expert, Michael Schulz. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 180:13-19; ¶9, Ex. 3: Schulz Dep. 15:2-15). He agreed, however, that "if there was no arcing anywhere in the boys' bedroom," that would cause him to further investigate whether the area of origin was actually in the bedroom. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 132:2-6). The identification of electrical

arcing (*i.e.,* arc mapping) is used to help determine the fire's origin and spread. *See* NFPA 921 (2021 ed.) § 3.3.9. (LaFlamme Dec. ¶10, Ex. 4: NFPA 921 (2021 ed) p. 14).

In authoring his report, Robinson also incorrectly believed that the hoverboard was "plugged in" and charging at the time of the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 46:13-24, 128:2-22). Robinson believed that the hoverboard was charging based on information that he received from Detective Sheaman. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 128:2-22).  The outlet Sheaman identified, however, was not an outlet in G.W. and L.W.'s bedroom, but rather it was a kitchen outlet located on the other side of the party wall between the bedroom and kitchen. (LaFlamme Dec. ¶9, Ex. 3: Schulz Dep. 82:13-84:11, 108:7-12). As even Plaintiffs' area of origin expert conceded, there is no evidence that the hoverboard was plugged in and charging at the time of the fire. (Id. at 11:19-13:3). Robinson also agreed that he would need to "look at it a little bit" (*i.e.,* investigate further) if the hoverboard was not plugged in and charging at the time of the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 129:6-23).

Robinson further conceded that the fire pattern seen on the outside of the house could have been caused by the shed burning and that he would "absolutely," especially in light of the children's post fire statements, "need[s] to investigate it further." (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 137:4-16). Robinson also agreed that based on the additional information provided to him during his deposition, that he would want to "conduct more investigation" into the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 156:7-157:4, 184:12-23). Further, under NFPA 921, based on the additional information identified in the investigations after he issued his report, Robinson would have to classify the fire origin as "undetermined" until the investigation is complete. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 156:7-157:4, 179:3-15).

## **LEGAL STANDARD**

7

Rule 702 calls upon courts to act as gatekeepers to ensure that expert testimony is both reliable and relevant. *Rutstein v. Cindy's Trucking of Ill., Inc.*, 2012 WL 8813611, at *3 (D. Wyo. Case 2:21-cv-00095-NDF Aug. 8, 2012). The proponent of the testimony bears the burden of "proving the foundational requirements of Rule 702 by a preponderance of the evidence." *Davenport v. Menard, Inc.*, 2016 WL 1298636, at *2 (D. Wyo. Jan. 28, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Fulfilling the gatekeeper duty requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts. *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* (quoting *Kumho*, 526 U.S. at 149).

"To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not mere 'subjective belief or unsupported speculation.'" *Id.* (quoting *Daubert*, 509 U.S. at 590). Any "inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590).

> To assist in the assessment of reliability, the Supreme Court in Daubert listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or

potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.* at 991-92 (citing *Daubert*, 509 U.S. at 593–94).

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id.* at 992 (citing *Daubert,* 509 U.S. at 595). "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

## ARGUMENT

### I.    Assistant Chief Robinson's Origin and Cause Opinions are Unreliable as he Failed to Complete his Investigation Consistent with NFPA 921.

"Courts readily accept NFPA 921 as a barometer for determining the reliability of methods used by fire investigation experts." *Philmar Dairy, LLC v. Armstrong Farms*, No. 18-CV-0530 SMV/KRS, 2019 WL 3070588, at *9 (D.N.M. July 12, 2019) (collecting cases). "Courts frequently exclude expert testimony for failure to comply with NFPA 921 in circumstances where the expert explicitly relies on NFPA 921 in reaching his or her conclusion." *See Schlesinger v. United States*, 898 F.Supp.2d 489, 504 (E.D.N.Y. 2012). When an origin and cause expert does not apply the principles and methods of NFPA 921, then their opinions may be excluded as unreliable. *See Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060 (8th Cir. 2005); *see also Presley v. Lakewood Engineering and Mfg. Co.,* 553 F.3d 638 (8th Cir. 2009).

Here, Robinson agreed that he tries to follow NFPA 921 for his origin and cause investigation. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 106:15-20). NFPA 921 requires that origin and cause investigators follow a systematic approach which is based on the scientific method. *See* NFPA 921 (2021 ed.) § 4.2. (LaFlamme Dec. ¶10, Ex. 4: NFPA 921 (2021 ed) p. 20). The scientific method instructs origin and cause investigators to collect data, analyze the data, develop hypotheses, test the hypotheses and then select a hypothesis. *See* NFPA 921 (2021 ed.) §§ 4.3 to 4.3.7. (LaFlamme Dec. ¶10, Ex. 4: NFPA 921 (2021 ed) pp. 20-21). In addition, to conduct a proper origin and cause investigation under the scientific method, "**all collected and available data should be analyzed using principles of the scientific method**." *See* NFPA 921 (2021 ed.) § 4.4.5; *see also* § 18.4 and § 19.4 (**emphasis added**). (LaFlamme Dec. ¶10, Ex. 4: NFPA 921 (2021 ed) pp. 22, 226, 233).

Robinson, however, was unable to consider all the collected and available data related to the fire because his investigation was limited to an approximate two-hour site inspection on the date of the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 61:18-20, 126:2-14, 130:14-16). Robinson completed his report on February 9, 2022. (LaFlamme Dec. ¶¶ 7-8, Ex. 1: Robinson Dep. 51:18-52:3; Ex. 2: Robinson Report.) When Robinson wrote his report, he was not aware of the extensive evidence that had been identified since he ceased his investigation. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 181:22-182:4). Robinson, like Detective Sheaman, did not participate in the May 18, 2022 site inspection, the August 2 and 3, 2022 site inspection, the October 30, 2023 evidence inspection, or the February 29, 2024 hoverboard inspection (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 144:14-24, 181:22-182:4). Robinson also was not privy to the information identified through discovery in this case. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 181:22-182:4).

Moreover, when presented with some of the evidence that was identified in these follow up inspections and through discovery in this case, Robinson conceded that he would want to "conduct more investigation" into the fire. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 156:7-157:4, 184:7-23). Further, under NFPA 921, due to the fact that he would want to "conduct more investigation," Robinson indicated that he would have to classify the fire origin as "undetermined" until the investigation is complete. (LaFlamme Dec. ¶7, Ex. 1: Robinson Dep. 156:7-157:4, 179:3-15). Simply, Robinson did not have access to all the evidence related to this fire. As a result, Robinson's investigation was incomplete and, consequently, his opinions are unreliable as they do not consider all of the evidence identified following his February 9, 2022 report.

Based on the above, Robinson's origin and cause opinions are unreliable and should be barred under the Court's gatekeeper duty per Rule 702.

## II.    PLAINTIFFS HAVE NOT DESIGNATED ROBINSON AS AN EXPERT.

In addition to the above arguments, Plaintiffs did not designate Robinson as an expert. As a result, Robinson should not be permitted to offer any expert opinion testimony in this case. F.R.C.P. 26(a)(2)(A).

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant the Motion and bar Assistant Chief Robinson from offering any fire origin and cause opinion testimony. Assistant Chief Robinson, however, may still testify as a fact witness about the observations he made during his limited investigation.

**McCOY LEAVITT LASKEY LLC**

Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: December 2, 2024                By: _____

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens (*pro hac vice*)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

and

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 2, 2024, a true and correct copy of the foregoing was electronically served to all counsel of record.

**EUGENE M. LaFLAMME, Esq.**