Timothy M. Stubson, Wyo. Bar. No. 6-3144
Holly Tysse Wyo. Bar. No. 7-5553
Brandon E. Pryde Wyo. Bar. No. 8-6883
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-265-2279
tstubson@crowleyfleck.com
htysse@crowleyfleck.com
bpryde@crowleyfleck.com

and

Eugene M. LaFlamme *(admitted pro hac vice)*
Jared B. Giroux *(admitted pro hac vice)*
Jillian L. Lukens *(admitted pro hac vice)*
McCoy Leavitt Laskey LLC
N19 W24200 Riverwood Drive, #125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH ) <br> Individually and as Parent and Legal Guardian ) <br> of W.W., K.W., G.W., and L.W., minor children ) <br> and MATTHEW WADSWORTH, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> WALMART INC. and ) <br> JETSON ELECTRIC BIKES, LLC, ) <br>   ) <br>   Defendants. ) | Case No. 2:23-cv-00118-NDF <br><br> DEFENDANTS JETSON ELECTRIC BIKES, LLC AND WALMART INC.'S MOTION TO EXCLUDE TESTIMONY OF DEREK KING; **MEMORANDUM IN SUPPORT OF MOTION** |

Defendants, Walmart Inc. and Jetson Electric Bikes, LLC, respectfully request that this Court exclude any testimony from Plaintiffs' expert Derek King pursuant to Federal Rules of Civil Procedure 702. As explained further below, King is unqualified to opine that the simultaneous failure of two cells within the hoverboard caused the fire, he failed to consider all the relevant evidence and therefore his opinions are unreliable, and the reasoning and methodology he employed in reaching his conclusions were neither scientifically viable nor applicable to the facts of the case. As a result, his conclusions are speculative and unreliable, and this Court should preclude him from testifying.

## BACKGROUND

Defendants hereby incorporate the "Background" section of the Memorandum in Support of their Motion to Exclude the Testimony of Jeff Sheaman.

Plaintiffs have designated Derek King as a retained expert to offer opinions regarding the cause of the fire. (Plts' Initial Expert Witness Discl. Doc 73, p. 4). King issued his report on July 12, 2024. (Plts' Initial Expert Witness Discl. Doc 73-3). While defendants challenge all of King's conclusions, this motion specifically addresses the following conclusions of King:

1. Careful and prudent manufacturers and distributors of consumer products should perform competent FMEAs or similar risk assessments to eliminate or reduce potential dangers associated with their products. It appears unlikely that Jetson performed a competent risk assessment for the subject hoverboard.

2. Inspection and analysis of the subject board and cells indicates the ruptured cells were more likely caused by an internal short rather than external heating.

(Id. at 13).

## LEGAL STANDARD

Rule 702 calls upon courts to act as gatekeepers to ensure that expert testimony is both reliable and relevant. *Rutstein v. Cindy's Trucking of Ill., Inc.*, 2012 WL 8813611, at *3 (D. Wyo.

Aug. 8, 2012). The proponent of the testimony bears the burden of "proving the foundational requirements of Rule 702 by a preponderance of the evidence." *Davenport v. Menard, Inc.*, 2016 WL 1298636, at *2 (D. Wyo. Jan. 28, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Fulfilling the gatekeeper duty requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts. *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* (quoting *Kumho*, 526 U.S. at 149).

"To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not mere 'subjective belief or unsupported speculation.'" *Id.* (quoting *Daubert*, 509 U.S. at 590). Any "inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Id.* (quoting *Daubert*, 509 U.S. at 590).

> To assist in the assessment of reliability, the Supreme Court in Daubert listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.

*Id.* at 991-92 (citing *Daubert*, 509 U.S. at 593–94).

# ARGUMENT

**I.       King's Fire Cause Opinions Are Unreliable.**

The analysis conducted by King in formulating his opinions and ultimate conclusion on which Plaintiffs' cause of action relies fails to meet the standard of reliability pertaining to "scientific knowledge." *See Goebel*, 346 F.3d at 991-92. King's proffered methodology has not been and cannot be subject to any testing nor has it been peer-reviewed and it is well outside the generally accepted method for gathering the relevant scientific evidence. In addition to lacking a reliable methodology, King's opinions are inconsistent with the generally accepted method for fathering the relevant scientific evidence. King failed to consider critical evidence and does not have the requisite knowledge, skill, experience, training or education to offer expert testimony in this case. Thus, King's opinions must be excluded.

**A.      King's opinion that two individual cells short-circuited simultaneously and caused the fire is unsupported by any scientific, peer-reviewed, tested or recognized methodology and are therefore unreliable and inadmissible.**

"Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Id.* at 992 (citing *Daubert,* 509 U.S. at 595). "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

7

A court should not allow an expert to offer an opinion that does not rely on proper methodologies and is therefore speculative. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221-22 (10th Cir. 2003). King's opinions are pure litigation constructs and unreliable as he uses no peer reviewed or scientific methodology to reach his conclusions. He did no testing to support his opinions. (Giroux Dec. ¶6, Ex. 1: King Dep. 106:12-14). As a result, no objective examination of his opinions can be conducted, and they are incapable of scientific scrutiny.

In fact, neither King nor anyone else possesses a reliable scientific methodology for determining when a lithium-ion cell is the cause of a fire as opposed to when it is merely a victim – particularly in a hoverboard. (*See e.g.* Giroux Dec. ¶7, Ex. 2: Nagourney, T., Jordan J. Marsh, L. et al, *The Implications of Post-Fire Physical Features of Cylindrical 18650 Lithium-Ion Battery Cells*, Fire Technol 57, 1707-1722 (2021) (https://doi.org/10.1007/s10694-020-01077-8)). King acknowledged as much in his deposition, as he testified that lithium-ion battery cells can fail when they are subject to an external fire attack. (Giroux Dec. ¶6, Ex. 1: King Dep. 190:7-10). He stated that when lithium-ion battery cells fail in a fire due to external fire attack, the appearance is similar to the cells that allegedly failed in this case. (Id. at 192:9-19).

Remarkably, however, King does not simply opine that a single cell failed due to an internal short-circuit. Rather, he opines that <u>two</u> individual cells (numbers 4 and 10) within the battery pack for the hoverboard short-circuited and failed at substantially the same time. (Id. at 190:20-191:9). To understand how preposterous this opinion is, it is important to understand how a short circuit occurs. To have a short circuit, the anode (negative side) and cathode (positive side) need to communicate with each other. (Id. at 75:18-22). Each lithium-ion battery cell, however, is manufactured with a polymer-based separator that prevents the anode and cathode from communicating. (Id. at 87:25-88:14). Therefore, to have a short circuit, the separator must fail. (Id.

at 88:11-14). For King's theory to be correct, there would need to be two separately manufactured cells (cells 4 and 10) that had an identical failure with the separator at virtually the same time. (Id. at 88:25-90:6).

King has never had another case where two individual cells short-circuited and failed at the same time. (Id. at 191:10-12). That is likely because it has never happened before and simply cannot happen. Even King acknowledged the absurdity of his conclusions. King testified that an internal short-circuit within a lithium-ion battery should only affect that singular cell. (Id. at 190:15-19). He testified that two cells short-circuiting and failing at the same time was "unusual" and was a "coincidence." (Id. at 191:10-192:2). King has not done any research to determine the percentage chance of that coincidence. (Id. at 192:4-6). No peer reviewed or valid scientific methodology supports King's opinions and ability to discern that two cells short-circuited and failed at the same time to cause the fire as opposed to merely being a victim of the fire.

As gatekeeper, the Court must examine the methodology the expert has used in reaching his or her conclusions. *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). The burden is on the expert and the party proffering the expert to explain the methodologies and principles supporting the opinion. *Id.*; *see generally Mitchell v. Gencorp Inc.,* 165 F.3d 778, 781 n.2 (10th Cir. 1999) ("considering his testimony that no exposure data existed and the fact that he failed to support his opinion with evidence of the methods he used and the scientific data supporting his conclusions, the district court correctly excluded his testimony"). Here, it is undisputed that no such methodology exists and that the principles supporting King's opinions are woefully inadequate. *See Mitchell*, 165 F.3d at 781 n.2. Thus, as to the four factors used in determining the soundness of the methodology under *Daubert*, Plaintiffs are unable to satisfy their burden. *Daubert*, 509 U.S. at 593-95.

9

The case of *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206 (10th Cir. 2004) is directly on point. In *MagneTek*, a fire destroyed a restaurant in Lakewood, Colorado. *Id.* at 1207. The plaintiff claimed that the light ballast manufactured by defendant MagneTek caused the fire. *Id.* The plaintiff's expert, Dr. Romig, opined that heat from the ballast was sufficient to cause combustible materials in the ceiling to catch fire. *Id.* at 1211. Wood normally will not catch fire until exposed to a heat source of 400°. *Id.* at 1215. The evidence was that the maximum temperature the ballast could have reached was 340°. *Id.* Romig posited the theory of pyrolysis, which hypothesizes that wood can catch fire at temperatures below 400° if it is exposed to such temperatures over a long enough period of time. *Id.* at 1209.

The district court found that Romig's theory was unreliable and it had not been reliably applied to the facts of the case. *Id.* at 1211. The Tenth Circuit Court upheld the district court's decision and explained that several of the *Daubert* Court's non-dispositive factors supported the decision, including insufficient testing, a lack of evidence showing how Romig's opinion could be tested and his theory's applicable rate of error, and questions about his theory in the scientific community. *Id.* at 1212-13.

Truck Insurance introduced three publications to support the pyrolysis theory underpinning Romig's opinion. *Id.* at 1211. The Tenth Circuit noted that while all three did indeed posit that pyrolysis could explain the origin of some fires, all three articles cast doubt on the general scientific acceptance, the methodology, and the adequacy of the experimentation underlying pyrolysis. *Id.* Therefore, the Tenth Circuit held the theory was insufficiently reliable to form the basis of expert testimony because:

> when considering the temperatures at issue here, the long term, low temperature ignition of wood is an hypothesis which has not been subjected to sufficient testing. Without such testing, there are few if any reliable principles about the phenomenon and methods to determine when the phenomenon might occur."

10

*Id.* at 1212.

King's opinion is even more unreliable than Romig's because he did not cite *any* articles in support of his hypothesis that two separately manufactured cells within the battery pack for a hoverboard could short-circuit and fail at substantially the same time. (See generally Giroux Dec. ¶6, Ex. 1: King Dep. 198-199). King did not conduct any testing to support his hypothesis. (Id. at 106:12-14). The reason for that is there is no reliable scientific methodology to determine when a lithium-ion cell is the cause of a fire as opposed to when it is merely a victim. As King himself acknowledged, when lithium-ion battery cells fail in a fire due to external fire attack, the appearance is similar to the cells that failed in this case. (Id. at 192:9-19). King's opinion is unreliable and must be excluded because it cannot be tested, there is no way to determine his theory's rate of error, and there is no support for his theory in the scientific community. *MagneTek*, 360 F.3d at 1212-13.

    **B.**    <u>**King's opinion that the fire started at the hoverboard is unreliable because he failed to consider critical evidence.**</u>

Not only was King's methodology unreliable, but he failed to consider critical evidence in reaching his conclusions. The primary goal of *Daubert's* gatekeeping requirement is to ensure the reliability and relevancy of expert testimony. *Bunting v. Jamieson*, 984 P.2d 467, 471 (Wyo. 1999). The expert opinion must be based on reliable methodology and reliably flow from that and the facts at issue. *Id.* at 471 (quoting *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 152 (3rd Cr. 1999)). "An expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

King's conclusion that the fire started at the hoverboard does not reasonably flow from the facts of the case because he performed a very limited investigation and failed to consider critical

11

evidence. In fact, all King did in this case is visually examine the subject hoverboard, the subject hoverboard CT scans and an exemplar hoverboard.

The list of things King did not do and the evidence he failed consider are far greater. He did not review any of the body camera footage and was not aware of statements made on that footage by the Wadsworth children or Mr. Pasborg. (Giroux Dec. ¶6, Ex. 1: King Dep. 49:1-24). He did not participate in the May 18, 2022 site inspection, the August 2 and 3, 2022 site inspection or the October 30, 2023 evidence inspection. (Id. at 31:22-24)(Giroux Dec. ¶8, Ex. 3: Sign-In Sheet from the October 30, 2023 Lab Exam at Palmer Engineering and Forensics). All of these inspections were critical steps to identify facts related to the fire's origin and cause.

King neglected to review the majority of the depositions taken in this case. Prior to drafting his report, the only depositions King reviewed were those of the corporate representatives of Walmart and Jetson. (Giroux Dec. ¶6, Ex. 1: King Dep. 33:8-13). After issuing his report and a few days before his deposition, King "skimmed" Sheaman's deposition, but he acknowledged he did not read much of it. (Id. at 33:8-34:6). Those were the only depositions King reviewed. (Id. at 34:17-19). By contrast, he did not review the depositions of Stephanie Wadsworth, Matthew Wadsworth, or any of their four children. (Id. at 34:7-16). He did not review the deposition of Ryan Pasborg, the good Samaritan first to arrive on the scene that assisted in getting the Wadsworth family out of the house, or any of the other fact witnesses in this case. (See generally Id. at 34:17-19).

King also failed to review a number of relevant documents in this case. He testified that he did not review the Jetson or Walmart document productions, and had not seen any of the UL test reports or certification records. (Id. at 65:25-66:5). King stated he normally would have requested to see the defendants' document productions. (Id. at 68:12-15). Simply put, King did not review

any of the eyewitness testimony or any of the defendants' document production before issuing his report and testifying.

King did not review any photographs from the lab inspection where the arcing in the smoking shed was identified and assessed in detail. (Id. at 197:6-9). He testified that his focus was only on the hoverboard and whether it had a failure. (Id. at 145:3-6, 183:4-12). King did not assess any other potential causes. (Id. at 120:22-25). He did not do anything to assess whether the fire could have started at the smoking shed. (Id. at 189:25-190:3). He acknowledged that there was arcing found on in the smoking shed, but there was no electrical arcing in G.W. and L.W.'s bedroom or in the hoverboard. (Id. at 90:23-92:3, 195:24-196:2). King did not know where the electrical service came into the house (it came in directly above the smoking shed). (Id. at 92:15-17). The location of the electrical service is the reason there was no arcing in the house – because the electrical service was severed by the fire at the smoking shed. He was not aware that Mrs. Wadsworth was smoking in the shed about two hours before the fire. (Id. at 197:10-21). King also was not aware that Mrs. Wadsworth had about ten alcoholic drinks the evening before the fire, prior to going to bed around 2:00 a.m. (Id. at 197:22-25).

King acknowledged that as an expert conducting an investigation, it is important to have all the information about the fire loss. (Id. 196:7-20). The physical evidence, witness statements and testimony in this case all suggest that the fire started outside at the smoking shed. However, King failed to consider any of it. Rather, he omitted the evidence and testimony that suggested the fire started in the smoking shed because it cripples his opinion. As such, King's opinion that the fire started at the hoverboard due to the near simultaneous short-circuit of two cells does not "reliably flow from . . . the facts at issue" and must be excluded. *Bunting*, 984 P.2d 467 at 471

13

(quoting *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 152 (3rd Cir. 1999)). There simply is too great an analytical gap between the data and Mr. King's proffered opinion. *Id.*

        **C.**        <u>**King does not have the training and experience to offer an opinion that the near simultaneous failure of the cells within the hoverboard caused the fire.**</u>

For opinions to be admissible, the witness must be qualified as an expert by knowledge, skill, experience, training or education. *Sinclair Wyoming Ref. Co. v. A&B Builders*, *Ltd.*, No. 15-CV-91-ABJ, 2018 WL 4698781, at *2 (D. Wyo. Sept. 11, 2018). This was King's first hoverboard case. (Id. at 90:7-11). King has never been identified as the primary expert by a party who claimed there was a lithium-ion battery failure that caused a fire. (Giroux Dec. ¶6, Ex. 1: King Dep. 16:14-18). He only got his Professional Engineer designation a year ago. (Id. at 21:4-10). King did not know what NFPA code applied to origin investigations. (Id. at 31:25-32:2). He has never worked for a company that designs or manufactures lithium-ion battery products. (Id. at 20:15-18). King has never been involved in the design or manufacture of a lithium-ion battery pack. (Id. at 20:22-25). He did not even know that UL 2580 was the standard that applied to lithium-ion battery cells and therefore did not consult with it at all in his analysis. (Id. at 50:23-51:1, 69:5-16). King was not aware that the battery cells in the subject hoverboard were UL certified and would have gone through a test process to get that UL 2580 certification. (Id. at 140:19-25).

Although King has very limited experience as an expert witness, his opinions have been excluded or limited on multiple occasions. (Id. at 27:9-13; see Giroux Dec. ¶9, Ex. 4: *Ibarra v. Further Motion, Inc.*, No. 22-cv-14067, 2023 LEXIS 79285, at *24-25 (S.D. Fla. May 1, 2023) (excluding King's opinions "that design alternatives *could* include software modifications, as well as the opinion that there is the likelihood of a defect in the source code based upon the number of lines of code . . . [because the opinions were] speculative, and therefore, unreliable); Giroux Dec. ¶10, Ex. 5: *Bettencourt v. Sharkninja Operating LLC.*, No. 22-cv-09091, 2024 LEXIS 111877 at

14

*19-21 (N.D. Cal. June 25, 2024) (excluding three of King's five opinions because they were "unsupported speculation," "not based on a body of known facts or . . . ideas inferred from such facts or accepted as true" and therefore unreliable); *see generally Moore v. National Presto Industries, Inc.*, 603 F. Supp. 3d 676 (W.D. Wisc. 2022) (granting summary judgment in favor of defendants because King's opinions were not based on sufficient facts and data and he failed to use reliable methods)).

Because King chose not to conduct a proper investigation, ignored facts, used no scientific peer reviewed methodology and has done no testing, his opinions fall outside the realm of science and lack any indicia of reliability and by knowingly proffering such opinions, King is unqualified as an expert. *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1147 (D. Wyo. 2020) (unsupported conjecture is inadmissible).

**II.    King should be precluded from offering any testimony regarding the alleged inadequate risk assessments or FMEAs for the subject hoverboard and its batteries.**

As he did in *Bettencourt* and *Moore, supra*, King contends that a reasonable manufacturer would have employed a systematic Failure Modes and Effects Analysis (FMEA). However, King cites no evidence that Jetson failed to conduct an adequate risk assessment or FMEA. In fact, King did not even review any of the discovery documents that Jetson produced in this case. (Id. at 65:25-66:5).

King was not aware that the battery cells in the subject hoverboard were UL certified and would have gone through a test process to get that UL 2580 certification. (Id. at 140:19-25). Once again, King "provides only rank speculation" that Jetson failed to design and manufacture a safe product. *Moore*, 603 F. Supp. 3d at 683. As the Court did in *Bettencourt* and *Moore*, King's opinions regarding the alleged deficiencies in Jetson's risk assessments and FMEAs must be excluded.

15

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant the Motion and preclude Derek King from testifying at trial.

                                              **McCOY LEAVITT LASKEY LLC**
                                              Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: December 2, 2024        By: _[signature]_

                                              Eugene M. LaFlamme *(pro hac vice)*
                                              Jared B. Giroux *(pro hac vice)*
                                              Jillian L. Lukens *(pro hac vice)*
                                              McCoy Leavitt Laskey, LLC
                                              N19 W24200 Riverwood Drive, Suite 125
                                              Waukesha, WI 53188
                                              (P) 262-522-7000
                                              elaflamme@MLLlaw.com
                                              jgiroux@MLLlaw.com
                                              jlukens@MLLlaw.com

                                              and

                                              Timothy M. Stubson, Wyo. Bar No. 6-3144
                                              Brandon E. Pryde, Wyo. Bar No. 8-6883
                                              Holly L. Tysse, Wyo. Bar No. 7-5553
                                              Crowley Fleck, PLLP
                                              111 West 2nd Street, Suite 220
                                              Casper, WY 82601
                                              (P) 307-232-6901
                                              tstubson@crowleyfleck.com
                                              bpryde@crowleyfleck.com
                                              htysse@crowleyfleck.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2024, a true and correct copy of the foregoing was electronically served to all counsel of record.

                                              _[signature]_
                                              **EUGENE M. LaFLAMME, Esq.**

17