# EXHIBIT 4

Case 2:23-cv-00118-KHR   Document 105-5   Filed 12/02/24   Page 2 of 11

Ells, Andrew 7/18/2024
For Educational Use Only

Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...

2023 WL 4263674 (S.D.Fla.) (Trial Motion, Memorandum and Affidavit)
United States District Court, S.D. Florida.

Jason IBARRA, Plaintiff,

v.

FUTURE MOTION, INC., a Delaware Corporation, Defendant.

No. 22-cv-14067-WM.
January 31, 2023.

### Defendant Future Motion, Inc.'s Motion to Exclude the Testimony of Plaintiff's Named Experts David Rondinone and Derek King and Memorandum in Support

Defendant, FUTURE MOTION, INC. ("Defendant" or "Future Motion"), respectfully move to exclude the proposed testimony of Plaintiff's expert witnesses David Rondinone and Derek King, because none of their testimony meets the requirements for admissibility under Rule 702 of the Federal Rules of Evidence. Future Motion submits the following Memorandum in support of their Motion.

### INTRODUCTION

Plaintiff Jason Ibarra sued Defendant Future Motion, Inc. after he fell off his Onewheel+ on or about February 12, 2021 and injured his wrist. Plaintiff claims that his Onewheel+ is defective in design, manufacture, warnings, and/or that Future Motion was negligent. Yet as of January 2023, over a year after this case was initiated and four months before trial, Plaintiff has not come forward with any facts to prove that his Onewheel+ was defective, that Future Motion was negligent, or that any alleged negligence caused his incident.

As discussed below, to support his case, Plaintiff identified two liability experts, Dr. David Rondinone and Derek King, M.S. Plaintiff produced the report from both experts on July 22, 2022. After review of the Onewheel+ source code, Plaintiff's experts submitted a supplemental report on September 13, 2022, and after receiving Future Motion's expert reports, Plaintiff's experts submitted a rebuttal report. The opinions expressed by Dr. Rondinone and Mr. King are undeveloped, untested and woefully lacking in the relevancy and reliability required for admissibility under Fed. R. Evid, 702, as explained in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L. Ed.2d 469 (1993) and its progeny. Accordingly, the opinions of Dr. Rondinone and Mr. King should be excluded, and neither should not be allowed to testify in this case.

### BACKGROUND

#### A. The Onewheel+

This case arises out of an incident in Jensen Beach, FL when Plaintiff fell from a Onewheel+ ("Subject Onewheel") electric skateboard manufactured by Future Motion. Below is a photo of the Onewheel+ at issue in this case:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

As the name suggests, the Onewheel+ has one wheel, and is otherwise comprised of a motor, battery, footpads and electronic components that allow it to self-balance. *See* Declaration of Kathleen K. Curtis, "Curtis Decl.," Ex. A. A rider stands sideways on the board like a traditional skateboard. *See* Curtis Decl., Ex. A at p. 12. To make the board go forward, a rider leans forward, and to slow down or stop, a rider leans backwards. *See* Curtis Decl., Ex. A at p. 13. The board is fully rider active as the rider entirely controls how fast or slow he or she is going. *See* Curtis Decl., Ex. A at p. 13. Like most recreational activities, it takes time to become proficient, or to transition from a novice to higher skill level. *See* Curtis Decl., Ex. B at p. 32:10-17.

The Onewheel+ is equipped with a safety feature called pushback. *See* Curtis Decl., Ex. A at p. 15. When the board is being ridden at a high rate of speed or the battery is getting very low, the front of the board will lift to push the rider's center of gravity backwards as a signal for the rider to lean back and slow down or stop. *See* Curtis Decl., Ex. A at p. 16. If a rider disregards and actively counters pushback, a rider can exceed the board's limits and lose control, or can run out of battery. *See* Curtis Decl., Ex. A at p. 16. The importance of pushback and the need to follow it are extensively warned about by Future Motion in the Owner's Manual, in post-purchase emails sent to new purchasers, on the Onewheel app most riders (including Plaintiff) use in connection with the board and elsewhere. *See* Curtis Decl., Ex. A at pp. 15-17.

### B. The February 12, 2021 Incident

Plaintiff purchased a used Onewheel+, electric skateboard secondhand from the Onewheel Marketplace sometime between October 2020 and January 2021. *See* Curtis Decl., Ex. B at pp. 157:6-158:5. Plaintiff was not able to verify when he purchased the Subject Onewheel nor who he purchased the board from. *See* Curtis Decl., Ex. B at pp. 157:6-158:5.

Plaintiff believes he owned the Subject Onewheel for approximately a month prior to the incident. *See* Curtis Decl., Ex. B at p. 78:16-19. He described it as his "go-to" board, and he used it nearly every day prior to the incident. *See* Curtis Decl., Ex. B at p. 78:10-23.

On the day of the incident, a gentleman was coming to Plaintiff's home to look at some scuba gear he had listed for sale. Curtis Decl., Ex. B at p. 84:7-25. While they were in his garage looking at the scuba equipment, the man asked him what the Onewheel was. Curtis Decl., Ex. B at pp. 86:18-87:3. Plaintiff offered to show him; he proceeded to unplug it, put on a helmet, and ride it out of his garage. He accelerated quickly, traveling approximately 20 feet from the back of the garage to the front. Curtis Decl., Ex. B at p. 88:11-14, 90:6-14. 45. Plaintiff does not know how fast he was going, only that he accelerated "quickly." *See* Curtis Decl., Ex. B at p. 90:6-17 Plaintiff claims that as he accelerated toward the driveway, the Onewheel "nosedived" right at the edge of the garage. See Curtis Decl., Ex. B at pp. 86:18-87:3. Notably, there is a one-inch drop from the concrete garage floor to the paved driveway. Curtis Decl., Ex. F. Plaintiff claims that when he fell from the board, he landed approximately one to two feet in front of the board, which did not move after he fell off it. *See* Curtis Decl., Ex. B at p. 89:2-12. Plaintiff is unable to explain why he fell; the board did not operate unusually in any way leading up to the fall. Curtis Decl., Ex. B at pp. 110:1-6, 114:20-22.

Plaintiff did not charge the board after the incident, but a few months after his fall, his wife was able to turn it on and ride it with no issues. *See* Curtis Decl., Ex. B at pp. 111:17-112:6.

In March of 2021, Plaintiff responded to a Facebook post stating in reference to the February 12, 2021 incident, "yeah, I'm always ready to tuck and roll when on a ride. In this case was just moving it from the back of the garage to the front and a little bit too quickly, wasn't mentally prepared for it and the whole "ride" lasted all of 30 feet." *See* Curtis Decl., Ex. B at p. 162:16-24; Curtis Decl., Ex. D at p. 6. In response to plaintiff attorney Lowell McKelvey asking him what caused his fall on his post, Plaintiff wrote, "I forget it was on the low-speed setting for my kids and I quickly hit top speed. I think the nose pushed up/back and I didn't have time to react, so I basically tripped over the front foot pad." *See* Curtis Decl., Ex. B at p. 165:11-13; Curtis Decl., Ex. D at p. 7.

Case 2:23-cv-00118-KHR   Document 105-5   Filed 12/02/24   Page 4 of 11

Ells, Andrew 7/18/2024
For Educational Use Only

Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...

### C. Board Inspection and Test Ride.

The Subject Onewheel was inspected and test ridden on May 11, 2022 and May 12, 2022 and was attended by Plaintiff's counsel, Plaintiff's expert Derek King, Defendant's counsel and Defendant's expert. *See* Curtis Decl., ¶ 8. Future Motion employee John "Jack" Mudd performed a test ride of Plaintiff's Onewheel+. *See* Curtis Decl., ¶ 8. When Mr. Mudd test rode the board, he connected the board to his mobile application and noted that the board had been ridden for 409 miles and connected in "Elevated" mode. *See* Curtis Decl., ¶ 8. Mr. Mudd experienced no problems with Plaintiff's Onewheel+ during the test ride. *See* Curtis Decl., ¶ 8. He rode the board in all four modes and noted that he felt pushback in every mode. *See* Curtis Decl., ¶ 8.

### D. Plaintiff's Expert Reports

On July 22, 2022, in accordance with the Court's Scheduling Order, Plaintiff identified his experts and produced reports. His expert disclosure included only one report concerning liability, which report came from Dr. David Rondinone and Derek King, M.S. from Berkley Engineering and Research, Inc. *See* Curtis Decl., Ex. E. The expert report includes a case summary, each expert's qualifications, materials reviewed, a discussion of how a Onewheel board works, a discussion of the FMEA process and their opinions. Their opinions contain the following conclusions:

1. The owner's manual warned of situations where nose-down ground contact may occur and the rider could be thrown from the board, and this risk should be mitigated by design.

2. The incident described is not warned of in the owner's manual.

3. They offered possible alternative designs, including:

a. Wheels under the front bumper

b. Unspecified "software modifications that control board behavior"

c. The inclusion of either visual or audible warnings

4. A properly designed device should not throw a rider when it would be possible to bring the board to a stop in a controlled fashion. Pushback as a tactile warning and warnings in the app are the only warnings provided. [1] Pushback may not be obvious to a rider, especially with limited experience.

5. Non-ambiguous warnings could easily be provided, either visually or audibly.

*See* Curtis Decl., Ex. E at pp. 13-14.

After review of the source code for the Onewheel+, Plaintiff's experts submitted a supplemental report on September 13, 2022. *See* Curtis Decl., Ex. E at p. 26. The supplemental report also came from Dr. Rondinone and Mr. King. *See* Curtis Decl., Ex. E at p. 26. The supplemental report contained a summary of the source code review and its contents and their conclusions based on the review. Due to the sensitivity of Future Motion's source code, the opinions are not discussed in detail herein and Future Motion respectfully refers the Court to the opinions as set forth in the report filed under seal. *See* Curtis Decl., Ex. E at pp. 27-28. Notably, they failed to identify a single defect, let alone one that could have caused the subject incident.

Finally, on September 30, 2022, Plaintiff's experts submitted a rebuttal report to Defendant's expert reports. *See* Curtis Decl., Ex. E at p. 29. The rebuttal report again came from Dr. Rondinone and Mr. King. *See* Curtis Decl., Ex. E at p. 29. The rebuttal report contained an analysis of Defendant's expert reports and made a couple follow-up points:

1. An audio warning method could have warned Mr. Ibarra that his rapid acceleration was too demanding for the board, and he could have had time to react leading to a different situational outcome.

2. Redundant warnings are desirable from a safety design perspective.

3. The "possibility" exists that the controller experienced an intermittent software defect that interrupted the controller's ability to balance Plaintiff.

4. The Onewheel is not comparable to skateboards, snowboards, or bicycles in that it requires the rider to learn how the software will partially dictate the board's response to the rider's behavior, and the rider is completely dependent on the limitations and decision-making of the Onewheel's software and hardware system.

5. The owner's manual does not warn of or describe acceleration limitations of the board, which Future Motion has always been aware of.

6. The garage floor (smooth, flat, hard, and level) fits the description for where fangs or a similar rolling mechanism on the underside of the Onewheel bumpers would likely help.

7. Future Motion and other single wheel devices currently have audible warnings incorporated into the designs, and such an implementation could have been done by Future Motion on the Onewheel+.

*See* Curtis Decl., Ex. E at pp. 30-32.

## ARGUMENT

### I. LEGAL STANDARD.

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F. 3d 358, 371 (5th Cir. 2000). Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Case 2:23-cv-00118-KHR   Document 105-5   Filed 12/02/24   Page 6 of 11

Ells, Andrew 7/18/2024
For Educational Use Only

Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...

"To qualify as an expert, the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Gusman v. Archer Shipping, Ltd.*, 2021 WL 3486750, at *2 (E.D. La. 2021) (Africk, J.) (quoting *United States v. Hicks*, 389 F. 3d 514, 524 (5th Cir. 2004) (internal quotations omitted). Further, Rule 702 states that an expert's qualification is determined by his knowledge, skill, expertise, training, or education. *Id*.

Under Rule 702, the district court acts as a "gatekeeper" in determining the admissibility of expert witness testimony and opinions: "[t]he trial judge must *ensure* that any and all scientific testimony or evidence admitted is *not only relevant, but reliable*." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (emphasis added). Reliability factors considered by the court include: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (internal citations omitted).

Another factor considered by courts fulfilling their *Daubert* gatekeeping role is whether the expert's testing was conducted for the *purpose of litigation. Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1317 (9th Cir. 1995) (emphasis added) (One "very significant fact to be considered" is whether an expert proposes to testify regarding "research they have conducted independently of the litigation."). *See also Sumner v. Biomet, Inc.*, 434 F. App'x. 834, 842-43 (11th Cir. 2011) (stating the reliability of expert opinions is greater where the expert's opinion arises out of activities that they conducted independent of the litigation). That the research has been conducted independently of litigation provides "important, objective proof that the research comports with the dictates of good science." *Daubert II*, 43 F.3d at 1317. "[E]xperts whose findings flow from existing research are less likely to have been biased toward a particular conclusion by the promise of remuneration . . . ." *Id*.

Thus, as explained by the United States Court of Appeals for the Eleventh Circuit, "[r]ulings on admissibility under *Daubert* inherently require the trial court to conduct an *exacting analysis* of the proffered expert's methodology." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (emphasis added). "The importance of *Daubert's* gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. (quoting *Kumho Tire Co, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). This is because an "expert's opinion can be both powerful and quite misleading because of the difficulty in evaluating it." *Id*. (quoting *Daubert*, 509 U.S. at 595). The proponent of the testimony has the burden to show that (1) the "expert is qualified to testify competently regarding the matters he intended to address; (2) the expert's methodology and opinions are "sufficiently reliable"; and (3) that "the testimony assists the trier of fact." *Id*. (internal citation and quotation marks omitted). The burden on the proponent is "substantial" and the admissibility of the testimony must be shown by a preponderance of the evidence. *Cook ex. Rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

## II. PLAINTIFF'S EXPERTS' OPINIONS SHOULD BE EXCLUDED.

Plaintiff's experts' opinions are the type of fundamentally unsupported opinions routinely excluded by Courts. None of the opinions have been tested, or otherwise validated in any way. Indeed, most of them are completely undeveloped and speculative. Plaintiff's experts have offered opinions related to alternative designs, warnings, and source code - all of which are inadmissible.

### A. Plaintiff's Experts' Alternative Design Opinions are Undeveloped and Fatally Flawed.

**Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...**

The alternative design opinions supplied by Plaintiff's experts do not meet the minimum standard for proving the admissibility of their opinions. "[T]he proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Watkins v. Telsmith, Inc.* 121 F.3d 984, 992 (5th Cir. 1997) (finding that the district court did not err in excluding an expert's opinion where the expert did no testing and proposed his alternative designs "without ... any scientific approach to the proposition at all.") "Alternative designs by definition include elements of science, technology and methodology." *Id.* at 991. In *Watkins*, the plaintiff's expert's opinion on the allegedly defective design of a conveyor manufactured by defendant were excluded, where the expert did no testing of his theory, nor did the expert make any drawings or perform any calculation that would allow for a finding that the opinions "were supported by valid engineering principles." *Id.* at 992; *see also*, *Cummins v. Lyle Industries*, 93 F.3d 362, 368-69 (7th Cir. 1996) (excluding expert's opinions on a trim press that were not tested or otherwise subjected in any way to the scientific method, "[the district court] must rule out subjective belief or unsupported speculation" (internal citations omitted); *Peitzmeier v. Hennessey Industries, Inc.* 97 F.3d at 293, 296-98 (8th Cir. 1996) (excluding defect opinions related to a tire-changing machine where the opinions were not supported by any testing, had not been subjected to peer review or otherwise shown to meet the standards set forth in *Daubert*).

### 1. Plaintiff's Experts' Audible Warning Opinion is Unreliable and Fatally Flawed.

Plaintiff has the burden to show by a preponderance of the evidence that the opinions proffered by his experts meet the standard for reliability. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Plaintiffs' experts opined in both their initial report and their rebuttal report that "[n]on-ambiguous warnings could easily be provided, either visually or audibly, directly by the board." *See* Curtis Decl., Ex. E at p. 13. This opinion is completely undeveloped and unreliable.

Plaintiff's experts conclude in their initial report that an audible warning "could easily be provided." *See* Curtis Decl., Ex. E at p. 13. They have not tested their hypothesis of using an audible warning. Plaintiff's experts stated in their rebuttal report that "it is beyond [their] scope to . . . perform prototype testing to explore the audible warning concept." *See* Curtis Decl., Ex. E at p. 32. There has been no showing here that Plaintiff's experts' opinion is the result of any type of methodology, much less a scientifically reliable one. Plaintiff's experts never even opine that an audible warning is necessary - only that it is an alternative design implementation that *could* have been done by Future Motion. *See* Curtis Decl., Ex. E at p. 32 (emphasis added). Their opinion is purely speculative. This type of "imprecise" and "unspecific" expert opinion lacks reliability and additionally "they fail to assist the trier of fact in any meaningful way." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).

In addition and fatally, Plaintiff's experts never opine that some type of audible warning would have actually prevented this accident from happening. At most they state that an "audible warning method *could* have warned Mr. Ibarra that his rapid acceleration was too demanding for the board . . . ." *See* Curtis Decl., Ex. E at p. 30 (emphasis added). Plaintiff's experts recognize that the hypothetical audio warning is intended to be a "redundant" warning in addition to pushback. *See* Curtis Decl., Ex. E at p. 31. Plaintiff claims that he didn't feel pushback in this incident. *See* Curtis Decl., Ex. B at p. 106:21-23. If an audible alarm was triggered by the same conditions that trigger pushback, there is no evidence that an audible alarm would have sounded in this case - let alone sounded with sufficient time for Plaintiff to perceive and respond to it. Plaintiff traveled all of 20 feet in a matter of seconds. Because Plaintiff's experts' audible warning opinion is just a conceptual possibility, and there has been no showing that its inclusion would have had any impact on this accident, this opinion must be excluded.

### 2. Plaintiff's Experts' Small Wheels Under the Board Theory Should Be Rejected.

Plaintiff's experts opined that small wheels under the front of the Onewheel+ should have been installed to mitigate the effects of nose-down contact.[2] Assuming that adding two additional wheels to a product called a "Onewheel" could ever be a reasonable alternative,[3] it is evident that Plaintiff's experts did no testing of their proposed alternative design to determine if it would have

Case 2:23-cv-00118-KHR   Document 105-5   Filed 12/02/24   Page 8 of 11

Ells, Andrew 7/18/2024
For Educational Use Only

Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...

any impact on the incident in this matter. In fact, fatal to their opinion, Plaintiff's experts do not even opine that the addition of the proposed alternative design would have changed the results of this incident.

Plaintiff's experts' opinion on the inclusion of small wheels rests on no testing or other scientific methodology to support that it is relevant or reliable. They have not tested or otherwise explored whether the proposed alternative would work in the circumstances underlying this case, or in the myriad of off-road environments that Onewheel+ boards can be used such as sand, dirt, mud, etc. They have not evaluated whether the one-inch lip between Plaintiff's concrete garage floor and paver driveway would have impacted how such wheels would function. They have not evaluated whether a rider's momentum would still cause a fall if the nose of the board touches down to such small wheels.

In addition, "the alternative to the product design must increase the overall safety of the product. It is not sufficient that the alternative design would have reduced or prevented the harm the Plaintiff suffered if the alternative would introduce into the product other dangers of equal or greater importance." *Restatement (Third) of Torts: Product Liability* cmt. b to § 16. Plaintiff's experts have not looked into potential risks created by putting wheels below the current level of the board that could come in contact with the ground during turning maneuvers. They have not considered the risk of such wheels becoming clogged with debris during off-road riding. They have not evaluated the risk of unintended rapid acceleration and/or the inability of a rider to stop a board if a board is being ridden with small wheels on the ground. Moreover, the opinion is not supported by the evidence. These additional wheels are available as after-market parts and Plaintiff could have opted to install them. He chose not to do so. He owns multiple Onewheels which he continues to ride, and he has not installed added wheels to any of them even after he fell. The absence of such added wheels is not a cause of the incident. In short, none of the factors to which a court can look to determine whether a proposed alternative design should be admitted have been shown here. The proposed alternative has not been tested, subjected to peer review, there is no known potential error rate, there are no existing standard and the technique has not been shown to be generally accepted in the relevant scientific community. Instead, this is exactly the type of fundamentally unsupported opinion which should be excluded as it offers no assistance to the trier of fact. *McDowell, 392 F.3d at 1299*. Accordingly, Plaintiff's experts' opinions as they relate to small wheels must be excluded.

### B. Plaintiff's Experts' Warnings Opinions are Unreliable and Speculative.

Courts applying *Daubert* and *Kumho Tire* in the context of warnings opinions have held that the same reliability analysis that applies to design and other technical opinions applies also to warnings opinions. *See, e.g., Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 538 (7th Cir. 2000) ("The same reliability requirements that apply to alternative design apply to alternative warnings"). Federal courts have held that where an expert lacks data or scientific studies in forming his warnings opinions, such opinions are unreliable. *Early v. Toyota Motor Corp.*, 486 F. Supp. 2d 633, 639 (E.D. Ky. 2007). In *Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 541-42 (D.N.J. 2001), the district court held that an expert's warnings opinion fell "short of the reliability standards of Rule 702" where he cited literature regarding warnings and manuals but did not discuss "how they informed his analysis," did not "test[] the effectiveness of any proposed instructions or warnings" and "was not aware of any other manufacturer of similar equipment which used instructions or warnings that he claimed were lacking on the [subject product]." (citing *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076 (8th Cir. 1999)).

Courts have also excluded warnings testimony where the expert has not "performed any specific tests nor provided reliable research as to the adequacy of the [product's] warnings or of plaintiffs' possible reactions to any warnings." *Ortiz-Semprit v. Coleman Co.*, 301 F. Supp. 2d 116, 120 (D.P.R. 2004). *See also Moore v. P&G Clairol, Inc.*, 781 F. Supp. 2d 694, 704 (N.D. Ill. 2011) (finding warnings opinion inadmissible where expert "did no testing to reveal how a consumer interprets the dye's allergy test instructions."); *Winebarger v. Boston Scientific Corp.*, 2015 WL 1887222, *7 (S.D. W.Va., Apr. 24, 2015) (excluding expert opinion regarding labelling where expert did not provide any "scientific basis" for his opinion, but claimed it was based on "convention").

Even if Plaintiff's experts' opinions were supported by testing or literature, or were generally accepted by the scientific community, (which they are not) they would still be inadmissible due to their complete lack of relevance to the facts, here. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993) (mandating that the trial court determine, as part of its gate-keeping role, that the subject testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"); *see also City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue).

Plaintiff's experts made only vague conclusions and recommendations relating to the warnings provided by Future Motion. They criticized that "the owner's manual does not warn about or describe acceleration limitations . . . ." *See* Curtis Decl., Ex. E at p. 31. They also state that if Future Motion cannot mitigate the risk of a rider being thrown from the Onewheel, then "clear warnings must be provided." *See* Curtis Decl., Ex. E at p. 13. [4]

The warnings opinions offered by Plaintiff's experts are untested and unfounded. Plaintiff's experts are once again speculating that the addition of these few warnings discussed would make any difference. They do not give an example of what a warning about acceleration limits would look like or even describe what "clear warnings" they believe are necessary to mitigate the risk of falling from a Onewheel+. They have not performed a single test relating to the warnings nor provided any research or scientific findings showing that any of Future Motion's warnings were inadequate. More fundamentally, they have failed to address the fact that Plaintiff already understood the risk associated with accelerating too quickly. *See* Curtis Decl., Ex. C at p. 109:3-18. Additional warnings would not have changed his behavior when he already understood how to accelerate. Finally, even if they had completed those necessary steps, Plaintiff's experts still never identified how the addition of the suggested warnings would have had any impact on Plaintiff's accident. For these reasons, Plaintiff's experts' opinions related to warnings must be excluded.

### C. Plaintiff's Experts' Opinions Related to Source Code are Completely Undeveloped and Speculative.

As a threshold matter, Plaintiff's experts are not qualified to offer opinions on Future Motion's source code. "To meet the qualification requirement, a party must show that its expert has sufficient knowledge, skill, experience, training, or education to form a reliable opinion about an issue that is before the court." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 U.S. Dist. LEXIS 36950, at *7 (N.D. Fla. Feb. 28, 2021) (quotation omitted). Although the qualification standard is not stringent, if an expert is relying primarily on experience "then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. (quotation omitted). Both Dr. Rondinone and Mr. King are mechanical engineers. There is zero reference to any education or experience with the design or evaluation of firmware or source code in either their reports or their CVs. There is no indication that they have ever reviewed or opined upon the design and function of source code. While the standard is not stringent, source code is a highly technical, specialized topic. Plaintiff's experts purport to have sufficient expertise to testify not only about the design and operation firmware, but also about product design and mechanical operation, accident reconstruction, and the efficacy and development of warnings. While Future Motion has separate experts to address mechanical/electrical engineering and accident reconstruction, warnings, and firmware, Plaintiff has proffered only the experts from BEAR for all such topics. They are jacks of all trades and masters of none - certainly not experts regarding firmware. *See Lowery v. Sanofi-Aventis LLC*, No. 7:18-cv-00376-RDP, 2021 U.S. Dist. LEXIS 43905, at *30 (N.D. Ala. Mar. 9, 2021) (excluding family practice doctor from testifying as an expert on orthopedics, otolaryngology, and infectious disease, characterizing him as a "Jack of all trades, expert in none"). Indeed Courts have even recognized that "[t]he Court is a jack of all trades and master of none. In other words, the Court is a generalist--a generalist which relies on specialists where the Court otherwise lacks expertise." *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 480 (E.D. Tex. 2020). Therefore, as Plaintiff's experts are clearly not specialists, but instead can only offer general opinions, they provide no benefit to the Court. Permitting unqualified experts to

offer opinions on such a technical topic would significantly prejudice Future Motion. The Court should exclude all opinions related to source code because Plaintiff's experts are not qualified to offer such opinions.

Additionally, the opinions are speculative and not helpful to the trier of fact. Plaintiff's experts had two full days to complete a full review of the source code for the Onewheel+ and then completed a supplemental expert report concerning the source code. *See* Curtis Decl., Ex. E at p. 27. The opinions set forth in this supplemental report concerning source code are entirely speculative and lack any specificity or detail. Plaintiff's experts do not identify *any* defect in the source code, and offered only one condition which *could* possibly disable the motor without additional warnings. *See* Curtis Decl., Ex. E at p. 27. Even that one condition offered is untested, entirely speculative and not shown to have existed in this case.

The supplemental report from Plaintiff's experts state that there is a statistical probability of a certain number of defects based on the number of lines of code. *See* Curtis Decl., Ex. E at p. 27. They failed to identify *any* defect in the source code of the Onewheel+ after two full days of review by two experts. Further, they never state that one of the speculative "anticipated" defects was the cause of Plaintiff's accident. *See* Curtis Decl., Ex. E at p. 28.

"[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *National Union Fire Insurance Co. of Pittsburgh v. Tyco Integrated Security, LLC*, 2015 WL 11251759 *2 (S.D. Fla. July 6, 2015).* Moreover, where a theory can be tested, "sound scientific principles counsel that such testing should be performed." *In re. Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 978 F. Supp. 2d 1053, 1078 (C.D.Cal. 2013) (excluding expert opinion of purported software bug that had been identified but not tested). The expert testimony concerning the source code fails to point to a defect in the code and fails to state how any "assumed" defect would have had any impact on Plaintiff's accident, let alone providing a solution that would have prevented Plaintiff's accident.

This opinion is wholly lacking in specificity or detail, and is entirely speculative. Here, because Plaintiff's experts' opinions on the Onewheel+ source code are nothing more than a speculative possibility, it must be excluded.

## CONCLUSION

None of the opinions expressed by Plaintiff's experts, Dr. Rondinone and Mr. King, come close to meeting the relevancy and reliability requirements for admissibility under *Fed. R. Evid. 702*, as explained in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L. Ed.2d 469 (1993) and its progeny. Accordingly, the opinions of Dr. Rondinone and Mr. King should be excluded, and neither should not be allowed to testify in this case.

## CERTIFICATE OF CONFERENCE

Per Local Rule 7.1(a), it is hereby certified that on Tuesday, January 21, 2023, counsel for Defendant, Kathleen Curtis, spoke by telephone with counsel for Plaintiff, Jeffrey Weiskopf, in a good faith effort to resolve the issues raised in the instant motion and was unable to do so.

## REQUEST FOR HEARING

Per Local Rule 7.1(b), Defendant Future Motion, Inc. respectfully requests oral argument. Oral argument would be helpful to the Court, because, inter alia, Plaintiff's experts' opinions include reference and analysis of novel issues related to warnings and

**Jason IBARRA, Plaintiff, v. FUTURE MOTION, INC., a..., 2023 WL 4263674...**

source code for which oral argument on the issues would be beneficial to the Court. Defendant estimates that thirty minutes per side would be required for oral argument.

## Footnotes

| | |
|---|---|
| 1 | This statement from Plaintiff's experts is entirely false. Their own report discusses warnings in the owner's manual, and Plaintiff agreed that Future Motion provided him with safety and operations information through the owner's manual. *See* Curtis Decl., Ex. E; Curtis Decl., Ex. C at p. 95:8-12. |
| 2 | The experts make reference to an aftermarket accessory called "Fangs" that appear similar to what he is proposing. |
| 3 | *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 385 (Tex. 1995)("a motorcycle could be made safer by adding two additional wheels and a cab, but then it is no longer a motorcycle.") |
| 4 | Plaintiff's experts further discuss that audible warnings should be added to the board, and that is fully discussed in Section II.A(1). |

**End of Document**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.