Taly Goody, Esq.
Wyoming Bar No.: 8-6737
Greyson M. Goody, Esq.
GOODY LAW GROUP
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
        greyson@GoodyLawGroup.com

T. Michael Morgan, Esq*
Florida Bar No.: 062229
Rudwin Ayala, Esq*
Florida Bar No.: 84005
MORGAN & MORGAN, P.A
20 N. Orange Ave, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: mmorgan@forthepeople.com
        rayala@forthepeople.com
*Pro Hac Vice*
*Attorneys for*
*Plaintiffs*

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

|  |  |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH, <br><br> Plaintiffs, <br><br> v. <br><br> WALMART, INC. and JETSON ELECTRIC BIKES, LLC, <br><br> Defendants. | Case No.: 2:23-cv-00118-NDF <br><br> JURY TRIAL DEMANDED |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE PURPORTED EXPERT TESTIMONY OF GREGORY GORBETT, PH.D.

**COMES NOW,** the Plaintiffs, Stephanie Wadsworth, individually and as parent and legal

guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, (hereinafter

"Plaintiffs") by and through their counsel of record Rudwin Ayala, Esquire and Morgan &

1

Morgan, and pursuant to Fed. R. Civ. P. 26 and Fed. R. Evid. 702, submit this Brief in Support of

their Motion to Exclude the Purported Expert Testimony of Gregory Gorbett, Ph.D., showing this

Honorable Court as follows:

### I.    FACTS

#### A.    Introduction

Defendants have retained Gregory Gorbett, Ph.D. ("Gorbett), to offer opinions as to the

origin of the fire at the Wadsworth residence on February 1, 2022, as well as the fire models and

shed burn performed by him. While Gorbett's testimony should fail because it cannot satisfy rule

702, his opinions are also duplicative of other Defense experts, i.e. Briand Strandjord, P.E. and

Joseph Filas. The fire modeling performed by Gorbett is highly subjective given that he is the one

who selects and inputs the data he chooses into the modeling software, which manipulates the

outcome. Further, Gorbett did not complete the shed burn prior to extinguishing it, and performed

the burn without proper analysis of important factors such as ventilation and cause of ignition. Due

to this highly subjective analysis by Gorbett, and the duplicative nature of his opinions, there is a

high probability to allowing him to testify will mislead the jury and amount to nothing more than

a stacking of experts to discuss the same issue, i.e. origin.

#### B.  Background

Gorbett authored a report on September 9, 2024 related to his review and ultimate opinions

in the case. See Gorbett Report, attached as Exhibit "A". According to Gorbett, his tasks included

performing a shed burn, fire modeling, and ultimately excluding whichever origin (inside the home

or outside at the shed) he did not feel was likely. In other words, he would be opining as to the

origin of the fire, since only two hypothesis were purportedly tested relating to origin. Gorbett did

not present to any inspection, and did not review any actual evidence relating to this case. Gorbett

never even visited the scene of the fire. Deposition of Gorbett at page 15, attached hereto as Exhibit "B". Gorbett purchased an exemplar of the same shed previously owned by the Wadsworth family, and performed a burn. He further relied upon photographic evidence collected from other investigators in this case.

### C.    Gorbett's Opinions

Gorbett's final expert report issued on September 9, 2024 provided the following opinions:

1.   The analysis of the fire dynamics for this scenario is consistent with a fire originating on the structure's exterior at the storage "smoker's" shed.

2. The fire testing, empirical correlations, CFD simulations, and the application of fundamental fire dynamics verify that a single origin at the exterior storage "smoker's" shed better replicated the fire damage in the structure and better correlated to the witness statements and timeline. There was no evidence of electrical arcing on conductors located within the Residence.

Despite the conclusions reached, Gorbett's flawed methodology and duplicative opinions warrant exclusion from this case. As explained below, Gorbett's opinions are inadmissible for several reasons.

### A.  SUMMARY OF ARGUMENT

Each of Gorbett's opinions must be excluded because they fail to meet the admissibility standards of Rule 702 due to either a lack of qualifications, a failure to establish a reliable methodology, a failure to apply a methodology reliably, or a combination thereof.

First, Gorbett's opinions are not based on sufficient facts and data, as he admittedly omitted consideration of pertinent evidence.

Second, the methodology and technique employed for fire modeling is subjective and unreliable.

Third, his opinions as to origin are duplicative of other experts and must be excluded. As such, Gorbett's opinions must be excluded for lack of sufficient reliability.

## B.  ARGUMENT AND CITATION TO AUTHORITY

Fed R. Evid. 702 governs the admissibility of expert testimony, providing as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to facts of the case.

Fed. R. Evid. 702

Despite the relatively liberal language employed in Rule 702, The Supreme Court of the United States clarified—in no uncertain terms—that the text of Rule 702 requires judges to serve as gatekeepers in determining the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Daubert v. Merrel Dow Pharmaceutical, Inc.*, 509 U.S. 579, 592-93 (1993). The gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 595). As the Supreme Court explained in *Daubert* and *Kumho*, Rule 702 requires the district court to ensure that an expert's testimony is both relevant and reliable before it may be admitted, regardless of whether the testimony is scientific or based on technical or other specialized knowledge. *See Kumho Tire Co.*, 526 U.S. at 147; *Daubert*, 509 U.S. at 589.

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the

evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Trial courts routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702. The elements for consideration are whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260. "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). A trial court has broad latitude in evaluating each of these factors. *See Kumho Tire Co.*, 526 U.S. at 152 (appellate courts review a district court's decision to exclude an expert's testimony under an abuse of discretion standard); *see also*, *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1340 (the district court's decision to exclude an expert will not be disturbed on appeal unless it is "manifestly erroneous") (internal quotations omitted). "[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's notes to 2023 amendments. *Hickcox v. Hyster-Yale Grp., Inc.*, 715 F. Supp. 3d 1362, 1380 (D. Kan. 2024)

For the reasons below, Gorbett's expert opinions fail to meet the admissibility requirements dictated by Rule 702 as interpreted by *Daubert* and its progeny.

### A. Gorbett's opinions are not based on sufficient facts or data.

The reliability requirement is designed to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)(quoting Daubert, 509 U.S. at 597). Rule 702 also involves a quantitative analysis that utilizes necessarily complete data to ensure that conclusions reached are satisfactorily accurate and not merely the product of assumptions.

Gorbett's analysis and conclusions failed to take into account sufficient facts and data relating to multiple areas. First, Gorbett performed a shed burn of an exemplar similar to the one owned by the Wadsworth family, yet did not confirm that the materials inside of the shed were identical or as close to identical as possible; did not test possibility of a smoldering cigarette in causing ignition; did not test the effect a smoldering cigarette might have on ventilation within the shed. Exhibit B at pages 33, 34. Gorbett discusses that weather is a factor to consider when analyzing heat release rate, yet acknowledges he does not detail what effect or impact it had in this case. Exhibit B at page 37. Gorbett never performed any fire testing within a similar residence to the Wadsworth residence, to better analyze fire patterns and assist with modeling. Exhibit B at page 40. Gorbett never even visited the fire scene or looked at any physical evidence related to this action. Exhibit B at pages 10 and 11.

Furthermore, Gorbett discusses at length the possibility that a smoldering cigarette would have allowed for an ignition source, yet readily acknowledges that there is no evidence whatsoever of any cigarette having been left smoldering or being improperly discarded. Exhibit B at pages 35, 36 and 61. His opinions and commentary relating to a smoldering cigarette are baseless and pure speculation. This is affirmed through his testimony that the contents of the shed would have

influenced the timing of the shed transitioning from smoldering to flame. Exhibit B at page 70. He has no idea.

Gorbett discusses that the fire spread from the shed, breached the window of Bedroom 4, and quickly consumed the room. However, Gorbett has no explanation for how the boys bed sheets, which they used on their bunk bed that was placed up against the window wall, did not quickly ignite. Gorbett did not run calculations on heat release to determine how quickly the bedding material would have been consumed. Exhibit B at page 102 and 103. Gorbett never did any analysis as to the amount of smoke that would have entered the home once the window was breached either. Exhibit B at page 103.   That is all very important pieces of missing data, given his opinion that the fire and smoke would consumed the Bedroom and made it uninhabitable within seconds.

Gorbett concludes that the origin of the fire was at the outside shed by relying on mathematical equations. Yet, he's the one who chooses what figures from studies he inputs into the software for the particular calculations. Exhibit B at pages 93 and 94. This is the exact type of speculative testimony that must be excluded from a jury's consideration.

## B. Gorbett failed to employ a reliable methodology in reaching his opinions concerning the origin of the fire.

The court has discretion to determine how to perform its gatekeeping function under Daubert. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). "The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R.,* 215 F.3d 1083, 1087 (10th Cir. 2000) (citations omitted). To determine whether an expert's testimony is sufficiently reliable to satisfy the requirements of Rule 702, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or

methodology properly can be applied to the facts in issue." *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004). The court is duty-bound to exercise its gatekeeping function to weed out unreliable expert testimony. *Hickcox v. Hyster-Yale Grp., Inc.*, 715 F. Supp. 3d 1362, 1377 (D. Kan. 2024)

If admissibility could be established merely by the ipse dixit of an admittedly qualified expert, the reliability prong [of the *Daubert* analysis] would be, for all practical purposes, subsumed by the qualification prong. Thus, it remains a basic foundation for admissibility that proposed expert testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Frazier*, 387 F.3d at 1261 (quotation and citation omitted).

"Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Frazier*, 387 F.3d at 1261. Thus, the inquiry into reliability must focus on "principles and methodology" and not the expert witness's conclusions. *In re Com. Fin. Servs., Inc.,* 350 B.R. 559, 566 (Bankr. N.D. Okla. 2005)(quoting *Daubert*, 509 U.S. at 594-95). "In evaluating the reliability of an expert's method, however, a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005).

The Supreme Court in Daubert listed four non-exhaustive factors that a trial court may consider in making its reliability assessment: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards

controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1278 (W.D. Okla. 2018). The answer to most of these as it relates to Gorbett and his involvement in this case is in the negative.

### 1.  The Expert's technique or theory cannot be adequately tested.

Gorbett's technique was flawed and relied upon subjective actions. He did not review any available evidence at the scene. He reviewed no physical evidence. He discussed the case with Joseph Filas, Defendant's organ and cause expert, to learn his opinions and then review photographic material and other case materials. Exhibit B at pages 15 and 16. Additionally, he input the data into the fire modeling software. Exhibit B at page 93 and 94. It does not get more subjective than that.

With regard to the shed burn, Gorbett could not say how long the shed burned before extinguishing, because he put it out after 15 minutes. Exhibit B at page 41.  The test wasn't completed or even reliable. His theory and technique could not be adequately tested and relied upon.

### 2.  The technique has a potential rate of error of 15 to 20 percent.

As affirmed by Gorbett, fire modeling can have a margin of error of about 15% to 20%. Exhibit B at page 109. That is significant, further demonstrating the unreliability of this type of analysis.

### C.    Gorbett's opinions as to origin is duplicative, and must be excluded.

The Local Rules limit the number of experts a party may designate within a particular field of expertise. "[P]arties are limited to the designation of one expert witness to testify for each particular field of expertise, absent a showing that complex issues necessitate expert witnesses

with narrow, specialized areas of expertise within a larger general field." *Murray v. Am. Colloid Co.*, No. 20-CV-3-J, 2022 WL 1132145, at *5 (D. Wyo. Mar. 11, 2022); citing U.S.D.C.L.R. 26.1(e)(2). Additionally, Rule 403 of the Federal Rules of Evidence allows a court to exclude evidence, including expert witnesses, where there is a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.*; Fed. R. Evid. 403. The Tenth Circuit went on to hold the Local Rule is intended to "preclude overlapping or duplicative testimony by experts." *Id.* The Court may exclude otherwise relevant evidence when such evidence appears cumulative or otherwise prejudicial. *Id.* In determining whether expert testimony is overlapping and duplicative the court utilizes a three-factor test. *Swank v. Zimmer, Inc.*, No. 03-CV-60-B, 2004 WL 5499523, at *7 (D. Wyo. Jan. 7, 2004). These factors include consideration of each experts' qualifications and areas of expertise, their analysis, and the subject-matter of their proffered testimony. *Murray*, No. 20-CV-3-J, 2022 WL 1132145, at *5.

Here, Strandjord, Gorbett, and Filas all offer opinions on fire origin. Gorbett's opinions are clear, as delineated in his report. This Court should preclude the duplicative testimony of three experts, and avoid ambush at trial which will undoubtedly result in unfair prejudice and misleading the jury.

## V. CONCLUSION

Based on the foregoing evidence, arguments, and authority, Plaintiffs respectfully request that this Court issue an ORDER excluding Gorbett's opinions in their entirety for failure to meet the admissibility standards set forth by Rule 702 and as interpreted by Daubert and its progeny.

Date: December 2, 2024

Respectfully submitted,

*/s/ Rudwin Ayala*
Florida Bar No.: 84005
**MORGAN & MORGAN, P.A.**
1700 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, FL 33401
Telephone: (561) 764-2220
Facsimile: (561) 764-2270
Primary Email: rayala@forthepeople.com
Secondary Email: sleroy@forthepeople.com
*\* Pro Hac Vice Attorney for Plaintiffs*

*/s/ Taly Goody*
**TALY GOODY, ESQ.**
Wyoming Bar No.: 8-6737
**GREYSON M. GOOD, ESQ.**
**GOODY LAW GROUP**
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@goodlylawgroup.com
*Attorney for Plaintiffs*

*/s/ T. Michael Morgan*
**T. MICHAEL MORGAN, ESQ.**
Florida Bar No.: 062229
Kentucky Bar No.: 94856
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., Suite 1600
Telephone: (407) 420-1414
Primary Email:
mmorgan@forthepeople.com
Secondary Email:
akelseyflowers@forthepeople.com
*\* Pro Hac Vice Attorney for Plaintiffs*