Timothy M. Stubson, Wyo. Bar. No. 6-3144
Holly Tysse Wyo. Bar. No. 7-5553
Brandon E. Pryde Wyo. Bar. No. 8-6883
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-265-2279
tstubson@crowleyfleck.com
htysse@crowleyfleck.com
bpryde@crowleyfleck.com

and

Eugene M. LaFlamme *(admitted pro hac vice)*
Jared B. Giroux *(admitted pro hac vice)*
Jillian L. Lukens *(admitted pro hac vice)*
McCoy Leavitt Laskey LLC
N19 W24200 Riverwood Drive, #125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH | ) ) ) ) ) | Case No. 2:23-cv-00118-NDF |
| Plaintiff, | ) ) ) | **DEFENDANTS JETSON ELECTRIC BIKES, LLC AND WALMART INC.'S RESPONSE** |
| v. | ) ) ) | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY** |
| WALMART, INC. and JETSON ELECTRIC BIKES, LLC | ) ) ) | **OF GREGORY GORBETT, PH.D.** |
| Defendants. | ) ) | |

WALMART INC. ("Walmart") and JETSON ELECTRIC BIKES, LLC ("Jetson"),

(collectively "Defendants"), by and through their attorneys, Crowley Fleck PLLP and McCoy

Leavitt Laskey LLC, hereby submit their response in opposition to Plaintiffs' Motion to Exclude the Expert Testimony of Gregory Gorbett, Ph.D.

<strong>ARGUMENT</strong>

Plaintiffs do not question Gorbett's qualifications or whether his opinions are relevant. Rather, Plaintiffs contend that Gorbett's computational fluid dynamics modeling opinions are unreliable because they are based on incomplete data and are duplicative of other experts. This is not true. Gorbett's opinions meet Rule 702's reliability and admissibility standards as he conducted computer simulations to compare the two competing fire origin hypotheses consistent with NFPA 921. Moreover, Gorbett's opinions are not duplicative of any other proffered expert as he is the only expert that has assessed the competing fire origin theories from a computational fluid dynamics or fire dynamics computer modeling perspective.[1] [2]

## I. GORBETT'S OPINIONS MEET THE ADMISSIBILITY STANDARDS SET FORTH IN RULE 702 FOR EXPERT TESTIMONY.

Plaintiffs do not argue that Gorbett is unqualified, nor do they contend that his testimony will not assist the trier of fact. Therefore, the only issues for the Court to consider under Rule 702 are whether Gorbett's opinions are based on sufficient facts or data, and are the product of reliable principles and methods.

---

[1] Plaintiffs cite to Exhibit B throughout their memorandum, but the citations do not correlate to Exhibit B. (Doc 110). Exhibit B is a 16-page document that consists of Gorbett's curriculum vitae. (Id.) Moreover, Plaintiffs indicate at pg. 3 of the memorandum that Exhibit B is Gorbett's deposition, however, it is not. If these citations are supposed to be to Gorbett's deposition, that transcript was not attached nor are there any corresponding line designations for the cited testimony.

[2] Plaintiffs were required to meet and confer with Defendants regarding all non-dispositive motions. *U.S.D.C.L.R. 7.1(b)(1)*. "The moving party shall state in the motion the specific efforts to comply with this rule and the position of the opposing party. A motion may be summarily denied for failure to certify conferral …" *U.S.D.C.L.R. 7.1(b)(1)(A)*. Plaintiffs did not meet and confer on this motion and did not include the required meet and confer statement in the motion. As such, Plaintiffs' motion can be summarily denied due to this procedural defect before the Court even considers the motion's merits – which are similarly lacking.

Gorbett's role was to assess the two competing fire origin hypotheses and determine which, if either, fire dynamics computer modeling supports. Plaintiffs ignore the fact that Gorbett's methodology and work is rooted in the scientific method – the well-accepted standard for forensic fire and explosion origin and cause investigations. *See e.g. United States v. Santiago*, 202 F. App'x 399, 401 (11th Cir. 2006). Further, omitted from Plaintiffs' motion, is the fact that computer modeling is authorized under NFPA 921. In fact, in the chapter dedicated to identifying a fire's area of origin – Chapter 18 in both the 2021 and 2024 editions – NFPA 921 Section 18.6.2.2 states:

> **18.6.2.2. Fire Modeling**. Fundamentals of fire dynamics can be used to test hypotheses regarding fire origin. Such fundamentals are described in the available scientific literature and are incorporated into fire models ranging from simple algebraic equations to more complex computer fire models (*see 21.4.8*). The models use incident-specific data to predict the fire environment given a proposed hypothesis. **The results can be compared to physical and eyewitness evidence to test the origin hypothesis.** Models can address issues related to fire development, spread, and occupant exposure.

(LaFlamme Dec. ¶¶6-7, Ex. 1-2: NFPA 921 §18.6.2.2.) (**emphasis added).**

As referenced in the above quoted section, Section 21.4.8 in both the 2021 and 2024 editions further states:

> **21.4.8 Fire Dynamics Analysis**. Fire dynamics analyses consist of mathematical equations derived from fundamental scientific principles or from empirical data. They range from simple algebraic equations to computer models incorporating many individual fire dynamics equations. Fire dynamics analysis can be used to predict fire phenomena and characteristics of the environment such as the following:
>
> (1) Time to flashover
> (2) Gas temperatures
> (3) Gas concentrations (oxygen, carbon monoxide, carbon dioxide, and others)
> (4) Smoke concentrations
> (5) Flow rates of smoke, gases, and unburned fuel
> (6) Temperatures of the walls, ceiling, and floor
> (7) Time of activation of smoke detectors, heat detectors, and sprinklers
> (8) Effects of opening or closing doors, breakage of windows, or other physical events.

(LaFlamme Dec. ¶¶6-7, Ex. 1-2: NFPA 921 § 21.4.8). Gorbett specifically compared his modeling results to the physical and eyewitness evidence consistent with NFPA 921 § 18.6.2.2. (LaFlamme Dec. ¶9, Ex. 4: *See Generally* Gorbett report). Within the two competing fire origin theories are significant fire development, fire spread and occupant exposure/tenability issues, which Gorbett's models assessed. (*Id.*). This is exactly how NFPA 921 says computer fire modeling should be used for fire investigations. (LaFlamme Dec. ¶¶6-7, Ex. 1-2: NFPA 921 §18.6.2.2). Moreover, in his report, Gorbett walks through the above eight fire phenomena and environmental characteristics listed in NFPA 921 § 21.4.8, as well as the methodology and calculations he used to assess these factors. (LaFlamme Dec. ¶9, Ex. 4: *See Generally* Gorbett report). Despite the above, Plaintiffs still contend that Gorbett failed to consider sufficient facts and data.

### A. Gorbett's opinions are based on sufficient facts and data.

Here, all of Plaintiffs alleged criticisms are areas for cross-examination and do not go toward the admissibility of Gorbett's opinions or his application of the facts and data to his widely accepted methodology. "Questions relating to the bases and sources of an expert's opinion affect the weight…rather than its admissibility…" *United States v. 14.38 Acres of Land,* 80 F.3 d 1074, 1077 (5th Cir. 1996). In fact, as noted in Defendants' Rule 702 motion against King (Doc. 105), the facts and data that Gorbett relies on are substantially more than what King utilized.

### 1. Test burn.

Plaintiffs first take issue with Gorbett's test burn on the exemplar smoking shed in that he apparently did not accurately assess the shed's contents. This is not true. Gorbett obtained an exemplar shed of the "same make and model" and reviewed Mr. and Mrs. Wadsworth's deposition testimony to determine the type of items that were in the shed. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 31:20-33:1). Gorbett also testified that the "contents and the makeup or materials of those

contents" were not very significant to his test burn. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 32:9-17; LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, p. 13-15).

The purpose of Gorbett's test burn was to assess the combustibility of the shed and the contents were just ancillary. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 35:2-14). As a result, Plaintiffs' criticisms of Gorbett's test burn are unfounded. He used the same make and model shed, and his focus was on the shed not the contents. Nonetheless, he still reviewed the testimony in the record and added similar contents to the shed for his test burn. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 31:20-34:5). Moreover, Plaintiffs do not offer any argument as to how the contents that Gorbett used were improper. Finally, Plaintiffs could have conducted their own test burn on the smoking shed, but they did not.

### 2. Weather.

Plaintiffs also argue that Gorbett does not detail the effect or impact weather had on this case. Plaintiffs, however, do not specify what aspect of the weather they contend should have been considered more. Regardless, Gorbett testified that he "always considers the weather," but the "weather wouldn't have [ ] an overall effect on the heat release rate curve." (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 37:1-12). Moreover, in his analysis, Gorbett considered the wind and temperature that was present for his test burn as compared to the wind and temperature from the date of the fire. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 37:13-39:5). Therefore, Gorbett did consider the weather to the extent it was applicable to his analysis. Again, Plaintiffs do not offer any specific evidence or authority to suggest that Gorbett's weather considerations were improper.

### 3. Exemplar residence.

Amazingly, Plaintiffs go so far as to criticize Gorbett for not obtaining an exemplar residence and burning that residence. Of course, Plaintiffs cite no authority to suggest that fire modeling requires the expert to test burn an identical structure as that would not be practical. The

absurdity of this criticism is exemplified by the fact that computer modeling has been used to help investigate significantly larger accidents and fires as noted in *Turner v. Liberty Mut. Fire Ins. Co., No. 4:07-CV-00163, 2007 WL 2713062 \*4 (N.D. Ohio Sept. 14, 2007)* ("perhaps the best evidence of the software's acceptance is its use in three recent nationally recognized fires: the World Trade Center collapse, the Rhode Island nightclub fire, and the South Carolina sofa store fire.").

Moreover, Gorbett has numerous photos and diagrams of the structure, the Matterport 3D scan, the Matterport building information modeling (BIM) file, and dimensions provided by the investigators that were on site to ensure that his model was accurate. (LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, pg. 9-10, 18-19). As a result, it was not necessary for him to build an exemplar structure or attend the scene inspections to obtain the building dimensional information needed for his modeling as he was able to secure that information from other reliable sources.[3] Further, Plaintiffs do not identify any dimensional issues with Gorbett's modeling platform that were supposedly inaccurate. As a result, Plaintiffs' arguments are without merit.

### 4. Smoldering cigarette.

Plaintiffs next take issue with the fact that Gorbett discusses defense origin and cause expert Joe Filas' opinion that a smoldering cigarette scenario caused this fire. Gorbett is not offering any cause opinions in this case, but he is able to comment on the opinions offered by other experts.

Further, Plaintiffs contend that there is no evidence that a cigarette was improperly discarded. That is not true. Mrs. Wadsworth testified that she smoked in the smoking shed hours before the fire. (LaFlamme Dec. ¶10, Ex. 5: S. Wadsworth Dep. 87:6-90:8). Moreover, fire investigation studies have shown that a cigarette can smolder for "several hours" before it turns

---

[3] Section 4.4.3.3 in both the 2021 and 2024 NFPA 921 editions states that "the use of previously collected data from a properly documented scene can be used successfully in an analysis of the incident to reach valid conclusions through the appropriate use of the scientific method." (LaFlamme Dec. ¶¶6-7, Ex. 1-2: NFPA 921 § 4.4.3.3).

into flames. (LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, pg. 14). Also, even Plaintiffs' origin expert, Schulz, concedes that the careless disposal of smoking material (*i.e.,* cigarettes) can cause a smoldering fire that does not materialize into active flames for a number of hours. (LaFlamme Dec. ¶11, Ex. 6: Schulz Dep. 136:9-137:13). Moreover, Gorbett's computer models specifically show that this fire could not have originated in G.W. and L.W.'s bedroom, but it could have originated at the smoking shed. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 135:16-19; 194:1-14).

### 5. Bedsheets and smoke in G.W. and L.W.'s bedroom.

Plaintiffs offer a convoluted criticism about how G.W. and L.W.'s bed sheets heat release calculations were missed, which somehow makes Gorbett's fire model unreliable. Plaintiffs also offer similar convoluted criticisms about the smoke that would have entered the home after the window was breached. They say that both of these are "very important pieces of missing data" without giving any explanation as to how they are important or what effect they have on the model.

Regardless, Plaintiffs questioned Gorbett during his deposition on the bed sheets issue. Gorbett stated that the evidence is consistent with his fire modeling that G.W. and L.W.'s bed did ignite after the fire spread from the smoking shed to the structure through the bedroom window. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 161:13-165:13). On the smoke issue, Gorbett's modeling does assess smoke, toxic gases and heat from a tenability issue. (LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, pg. 23-25). Gorbett also provided an analysis of how long it would take the smoke alarms in the house to activate once the fire breached G.W. and L.W.'s window. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 104:24-106:4). Again, Plaintiffs' arguments are not accurate and are without merit.

### 6. Model inputs.

Plaintiffs' final criticism is that Gorbett's model relies on insufficient data because he chooses what figures he inputs into the modeling software. Again, this is an area of cross-examination. Moreover, Plaintiffs could have modeled this fire to assess Gorbett's inputs, but they

did not. There is nothing improper about Gorbett's process as he collected the data necessary to follow the modeling methodology that is sanctioned by NFPA 921 and has been allowed as expert testimony in other courts as noted below. As such, Plaintiffs arguments again fail on this issue.

All of the supposed facts and data that Plaintiffs cite were considered to the extent necessary by Gorbett's modeling process. Gorbett performed 50 different fire modeling simulations with a range of input data to evaluate the influence any of these variables had on the outcome of the simulation. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 107:1-11). Further Plaintiffs fail to explain how each of the items discussed in the above sections should have been considered more or less, or how they make Gorbett's opinions unreliable. While Plaintiffs can cross Gorbett on these supposed issues, they do not affect the admissibility of his opinions under Rule 702.

### B. Gorbett's principles and methodology are reliable and consistent with NFPA 921 and the scientific Method.

As noted above, NFPA 921 specifically allows the use of computer modeling to test various origin hypotheses. NFPA 921 even recognizes that computer modeling has been used in litigation matters. (LaFlamme Dec. ¶¶6-7, Ex. 1-2: NFPA 921 § 21.4.8.3.3)

The modeling that Gorbett utilized was computational fluid dynamics. (LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, pg. 16-25). The software that he used is called Fire Dynamics Simulator ("FDS"), version 6.9, and its accompanying visualization software, Smokeview. (LaFlamme Dec. ¶¶8-9, Ex. 4: Gorbett Report, pg. 16; Ex. 3: Gorbett Dep. 92:4-12, 184:8-185:18). Both of these are produced by the National Institute of Standards and Technology ("NIST"). (LaFlamme Dec. ¶¶8-9, Ex. 4: Gorbett Report, pg. 16; Ex. 3: Gorbett Dep. 92:4-12, 184:8-185:18).

FDS and Smokeview are the result "of an international collaborative effort led by the NIST and Fire Safety Research Institute, UL Research Institutes." (Gorbett Dec. ¶6, Ex1: FDS Validation Guide, pg. i). It is a generally accepted computer model and is the most widely used model in the

fire science industry. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 184:14-185:13). The program has been verified and validated. (Gorbett Dec. ¶6, Ex.1: FDS Validation Guide *generally* LaFlamme Dec. ¶9, Ex. 4: Gorbett Report, pg. 17-18). The FDS program has also been explicitly admitted into evidence in other fire litigation cases. *See e.g. Turner,* 2007 WL 2713062 (N.D. Ohio Sept. 14, 2007); *Ledbetter v. Blair Corp.*, No. 3:09-CV-843-WKW, 2012 WL 2464000, at *13-14 (M.D. Ala. June 27, 2012).

Moreover, Plaintiffs' fire origin expert, Michael Schulz, even acknowledged that fire modeling can be used to evaluate fire investigation opinions, "some of which may be the origin." (LaFlamme Dec. ¶11, Ex. 6: Schulz Dep. 92:7-12). That is exactly what Gorbett did in this case – he evaluated the competing origin hypotheses.

Plaintiffs correctly cite that the non-exclusive factors the Court may consider in assessing whether an expert's methodology is reliable is whether:

1. The expert's technique or theory can and has been tested;
2. The theory has been subject to peer review or publication;
3. The technique has a known or potential rate of error and whether there are standards for controlling the technique's operation; and
4. The theory has been generally accepted in the relevant scientific community.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593-594 (1993). Plaintiffs seem to argue that Gorbett's methodology is not reliable because it supposedly cannot be adequately tested and it has an alleged potential error rate of 15%-20%. Plaintiffs do not contest – and therefore concede – that Gorbett's modeling has been properly subject to peer review and/or publication, and that computer fire modeling has been generally accepted in the scientific community.

With respect to Plaintiffs' first argument – that the technique or theory cannot be tested – that is just not accurate. Plaintiffs could have modeled this fire to assess the competing hypotheses, but they did not. In *Turner*, the court noted that the FDS software satisfies the expert testimony reliability requirements because "the software has been tested" and it "has been adequately subject

to peer review and publication." *Turner,* 2007 WL 2713062 *3. In fact, NIST published a 1,200+ page guide which describes the lengthy and detailed validation process that NIST went through to validate the FDS software. (Gorbett Dec. ¶6, Ex.1 FDS Validation Guide *generally*).

As to an alleged potential error rate, that was also addressed in *Turner.* The *Turner* court stated that any potential error rate is an issue for cross-examination and does not negate the admissibility of the expert testimony. *Turner,* 2007 WL 2713062 *3. Moreover, Gorbett testified that any potential error rate is abrogated by the range of simulations he ran. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 109:1-10). In total, Gorbett ran about 50 different simulations. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 106:18-108:4, 135:7-15; 164:6-11). Gorbett explained that he runs so many simulations to account for the differences and variables that need to be considered in a fire. (LaFlamme Dec. ¶8, Ex. 3: Gorbett Dep. 107:1-11).[4]

In short, the principles and methodology Gorbett used in his modeling are reliable and consistent with NFPA 921, the scientific method and the fire science industry.

## II.    GORBETT'S OPINIONS ARE NOT DUPLICATIVE OF ANY OTHER DEFENSE EXPERT.

Plaintiffs' final argument is that Gorbett's opinions are duplicative of defense experts Brian Strandjord and Joe Filas' opinions. This is not true. Gorbett is a computational fluid dynamics modeling expert, Strandjord is an electrical engineer and Filas is an origin and cause investigator. Gorbett conducted computer model simulations to assess the competing origin hypotheses based on fire development, fire spread and occupant exposure/tenability issues. Neither Filas nor Strandjord undertook such an analysis. Therefore, there is no duplication in the defendants' proffered expert testimony.

---

[4] This statement was made when Gorbett was questioned about the smoke in G.W. and L.W.'s bedroom – an issue of contention that is described above. The statement, however, applies equally to all aspects of Gorbett's modeling.

While Gorbett and Strandjord's opinions are building blocks for Filas' opinion – none of the three opinions are in any way duplicative. Plaintiffs could have, but did not, identify any experts to discuss fire modeling and fire dynamics engineering. Defendants should not be punished because Plaintiffs did not work-up their case. Plaintiffs also do not raise this duplicative argument in either Rule 702 motion against Filas or Strandjord.

Further, to the extent there is any duplication – which there is not – U.S.D.C.L.R. 26.1(e)(1) specifically acknowledges that complex cases may require multiple expert witnesses with "specialized areas of expertise within a larger general field." In *U.S. v. Hamilton*, No. 10-CV-231-J, 2014 WL 12814334 (D. Wyo. Mar. 10, 2014), this district court had to decide expert challenges in a Clean Water Act case. The two experts at issue had testimony in "similar areas of expertise, [but] not identical" and focused on similar topics, but with some "significant areas of difference." *U.S. v. Hamilton, 2014 WL 12814334 at *6.* In the *Hamilton* case, Judge Rankin ruled that in such a situation, the trial judge should determine if there is duplicative testimony during trial. *Id.*

Like a Clean Water Act case, fire cases are similarly complex. The fact that NFPA 921 is an approximate 500-page guide with numerous topics exemplifies the complex nature of fire investigations. Therefore, to the extent Gorbett, Strandjord and Filas may address some similar topics, they are done so with significant areas of difference. As a result, this Court should reject Plaintiffs' duplicative argument.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Exclude the Purported Expert Testimony of Gregory Gorbett, Ph.D. should be DENIED. If this Court is inclined to grant Plaintiffs' motion, Defendants request that the Court conduct a *Daubert* evidentiary hearing and hear testimony directly from Gorbett on his methodology, opinions, and bases for his opinions.

11

**McCOY LEAVITT LASKEY LLC**
Attorneys for Defendants, Walmart Inc. and Jetson
Electric Bikes, LLC

Dated: December 16, 2024          By:_____

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens *(pro hac vice)*
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

and

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com