Taly Goody, Esq.
Wyoming Bar No.: 8-6737
Greyson M. Goody, Esq.
GOODY LAW GROUP
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
         greyson@GoodyLawGroup.com

T. Michael Morgan, Esq*
Florida Bar No.: 062229
Rudwin Ayala, Esq*
Florida Bar No.: 84005
MORGAN & MORGAN, P.A
20 N. Orange Ave, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: mmorgan@forthepeople.com
         rayala@forthepeople.com
*Pro Hac Vice
*Attorneys for*
*Plaintiffs*

**UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC. and JETSON ELECTRIC BIKES, LLC,<br><br>Defendants. | Case No.: 2:23-cv-00118-NDF<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DEREK KING**

**COME NOW,** the Plaintiffs, Stephanie Wadsworth, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, (hereinafter "Plaintiffs") by and through their counsel of record Rudwin Ayala, Esquire and Morgan & Morgan, and submit their Response in Opposition to Defendants' Motion To Exclude the

1

Testimony of Derek King filed on December 2, 2024. In support of this Response, Plaintiffs state as follows:

Defendants' contend that Plaintiffs' proffered licensed professional electrical and mechanical engineering expert, Derek King, P.E., lacks the qualifications to opine that the near simultaneous failure of the cells within the hoverboard cause the fire. Further, Defendants allege that King's opinions are not based on sufficient facts, data, or methodology such that his opinions are deemed reliable. Despite these allegations, the evidence and case law support the conclusion that King has the requisite knowledge, skill, training and education to render electrical engineering opinions, and his opinions meet the reliability and admissibility standards set forth by Rule 702. Further, King's investigation was based upon reliable methodology, and his opinions are necessary for a jury to understand the technical and scientific nature of design and manufacturing defect as related to this case.

## I. KING'S OPINIONS COMPLY WITH RULE 702 REQUIREMENTS FOR EXPERT TESTIMONY.

Before a Court can allow admission of expert witness opinions in a case, it must first determine if an expert's opinion meets Rule 702's standard for reliability and/or admissibility.

A proper Daubert analysis consists of three elements. (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). For the reasons set forth below, King's opinions are both reliable and admissible.

> **A.    King's conclusions regarding the failure of two individual cells within the lithium-ion batter were reached following a reliable and verifiable methodology, compliant with Rule 702.**

To be admissible in federal court, expert opinions require not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts. Magoffe at *16. A "sufficient factual basis" under Fed.R.Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."Id.; Fed.R.Evid. 703. Any suggestion that an opposing expert must be able to "verify" the correctness of an expert's work before it can be admitted also misstates the standard for admission of expert evidence under Rule 702. Cook v. Rockwell Intern. Corp., 580 F.Supp.2d 1071, 1123 (D. Colo. 2006). Perceived flaws in expert's testimony, including that expert relied on an allegedly unreliable opinion by another expert, "are matters properly tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." Id.; citing United States v. 14.38 Acres of Land, 80 F.3d 1074, 1079 (5th Cir.1996).

Here, it is uncontroverted that King conducted an examination and analysis of the hoverboard and its components, CT images of the hoverboard and its components, photographs of the scene, and further relied upon the contents of the Sweetwater County Investigative Report, research/literature reviewed over his career relating to lithium-ion battery failures, including Detective Sheaman's investigation and conclusions relating to origin and cause, and his prior experience in investigating lithium-ion failures. (Exhibit 1: King Dep. Pg. 71; 167; 169, 171-72; 176-77). Defendants erroneously try to convince the Court that Mr. King's opinions are unreliable because of some purported failure to test. However, Defendants don't define what testing they believe he was required to complete. He quite clearly has communicated his methodology, which

3

primarily includes the inspection/examination of the physical hoverboard evidence and CT imaging. That methodology can be replicated – and in fact was by Defendants' own expert battery expert, Samuel Sudler. That alone is sufficient evidence to prove that the methodology was reliable under Fed. R. Evid. 702. Defendants' issue is with the outcome or result of his methodology, which goes to weight as opposed to admissibility. Mr. King used deductive reasoning to rule out the possibility of an external cause of the hoverboard damage, leaving open just one possibility, i.e. that there was an internal defect that caused the fire. Then reviewing the CT images, and corroborating his findings with the conclusions of Sheaman as to origin and cause, he was able to offer opinions based on acceptable and reliable methodology. See People v. Perkins, 533 P.3d 971, 978 (Colo.App. 2023)(finding that reliance on training, experience, deductive reasoning, and observations to reach their conclusions is acceptable under Rule 702). As stated by King, if the hoverboard explosion was due to an external heating origin, he would have expected all battery cells to have exploded, not just two isolated cells. (Exhibit 1: King Dep. Pg. 178-79). Mr. King reiterated in his deposition that UL listings are not guarantees of safety, as Defendants would want to convince this Court. If they were so, the Defendant Jetson's recall of its Rogue model hoverboard, UL 2272 and 2580 "certified", would not have been necessary due to the risk of fire with that product. (Exhibit 1: King Dep. Pg. 203-04).

      **B.**    **King's opinion that the fire started at the hoverboard was based upon reliable inferences, deductive reasoning as well as existing evidence relevant for his consideration.**

Defendants' argument that Mr. King ignored "critical facts" such as electrical arcing found outside during a subsequent inspection following the fire, which should render his opinions unreliable, completely ignores the testimony and facts that electrical arcing is not in and of itself

4

evidence of the origin of a fire.[1] Plaintiffs went on to describe in much more detail these flaws with the electrical arcing "science" in their Daubert Motion as to Defendants' Expert Strandjord. Furthermore, it is completely appropriate for King to focus his investigation and analysis upon the inferences drawn from other investigators tasked with the responsibility of determining origin. Detective Sheaman, and Chief Robinson, both concluded that the origin was inside Bedroom 4, at the location of the hoverboard. To verify whether the hoverboard, at that exact location, could be the cause of the fire, King focused on the evidence that was relevant for that purpose. If the unbiased investigators concluded that the origin was the location of the hoverboard, King's reliance on that to examine and determine if that was a possibility is completely appropriate. Other, even contradicting evidence, does not render his methodology flawed. If anything it goes to the weight of his conclusions, which can be challenged through cross examination.

King was able to conclude that of the two possibilities, an external fire source and the hoverboard causing the fire, the evidence clearly demonstrated the most likely cause was an internal short circuit given the isolation of two cells having exploded, whereas an external fire source would have more likely than not caused more or all cells to explode.

Defendants may not like the conclusions reached by Mr. King, but that is not sufficient to warrant exclusion of his opinions on causation. For the reasons stated herein, as well as in Plaintiffs' Brief/Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Defendants' Motion must be denied.

---

[1] One of the foremost experts in the field of fire safety science, explosion safety, electrical failures, fires and explosions, Vytenis Babrauskas has conducted numerous studies and published voluminous peer-reviewed material on various fire topics, including arc mapping. Mr. Babrauskas published a peer-reviewed article titled "ARC MAPPING: NEW SCIENCE, OR NEW MYTH?", attached as Exhibit E to Plaintiffs' Daubert Motion as to Defendants' Expert Strandjord. In that article, Mr. Babrauskas gives an entire history of arc mapping and makes very explicit conclusions about the unreliability of arc mapping.

**C. King's education, background, training and experience as a licensed professional mechanical and electrical engineer qualify him to offer opinions relating to the failure of the cells within the hoverboard.**

A witness is qualified as an expert by knowledge, skill, experience, training, or education. Daubert v. Merrell Dow Pharmaceuticals, Inc., 508 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the inquiry into a witness's qualifications is "not stringent" and "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." Handley v. Werner Enterprises, Inc., 596 F. Supp. 3d 1347, 1351 (M.D. Ga. 2022); citing Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012); "[L]ack of specialization does not affect the admissibility of the opinion but only its weight." See Cook v. Rockwell Intern. Corp., 580 F.Supp.2d 1071, 1112 (D.Colo., 2006); citing Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (C.A.10 (Kan.), 1991). District courts are accorded broad discretion in determining the competency of expert witnesses. Quinton v. Farmland Indus., 928 F.2d 335, 336 (10th Cir.1991); Kloepfer v. Honda Motor Co., 898 F.2d 1452, 1458 (10th Cir.1990). In a products liability action, an expert witness is not strictly confined to his area of practice but may testify concerning related applications. Wheeler, 935 F.2d at 1100. The expert must, however, stay within the reasonable confines of his subject area and cannot render expert opinions on an entirely different field or discipline. Id.

Defendants contend in the Motion that King lacks the education or experience necessary to make him an expert relating to design and manufacturing defect. However, King is an electrical and mechanical engineer, having obtained his Masters degree in electrical engineering in 2020. (Exhibit 1: King Dep. Pg. 17). Additionally, King has over 14 years of experience as a mechanical engineer performing failure, fire, explosion, and accident investigations at B.E.A.R., and has been lead engineer since approximately 2020. (Exhibit 1: King Dep. Pg. 17). He has been involved in

6

investigating dozens of fire-related cases with other engineers at B.E.A.R., but has also lead investigations in 3 to 5 cases. (Exhibit 1: King Dep. Pg. 15).

Additionally, as an electrical engineer, King has specialized knowledge of lithium-ion batteries and their components, and has experience investigating other fire incidents involving a hoverboard, electric bikes, e-cigarettes, and other devices. (Exhibit 1: King Dep. Pg. 187-88). King's specialized knowledge, skill, experience, training, and education as both a mechanical and electrical engineer establish that he has the qualifications to offer opinion testimony as to the battery pack, its individual cells, thermal runaway, and the possibility that the hoverboard caused the fire due to the explosion (internal short circuit) of two individual cells within the battery pack. Applying the principles of deductive reasoning, Mr. King had two possible hypothesis. The first being the hoverboard was attacked by fire. The second being the hoverboard was the source of the fire. Upon review of the evidence, what was overwhelmingly obvious to King was that the existing evidence was much more consistent with the hoverboard being the source of the fire. The fact that only two cells had exploded eliminated the possibility that this was attached by an external fire source. His examination based upon the existing data, together with application of his background, training, experience, past review and knowledge of literature related to lithium-ion battery failures, and experience with other products' lithium-ion battery failures, render him plenty qualified to render these opinions under Fed. R. Evid. 702. As such, Defendants' Motion on these grounds must fail. King examined/inspected the subject hoverboard and its components, reviewing CT imaging of the product, made comparisons to an exemplar hoverboard, thereafter applying his education, training and experience to determine the most probably failure mode and analyze the probability of the hoverboard being the source of the underlying house fire, as opposed to having been attacked by fire from an outside source.

**II.    King should not be precluded from offering testimony regarding FMEAs for the subject hoverboard and its batteries, or the inadequate risk assessments.**

King examined/inspected the subject hoverboard and its components, an exemplar replica of the subject hoverboard, reviewed CT imaging of the product, thereafter applied his education, training and experience to determine the most probably failure mode. He analyzed the probability of the hoverboard being the source of the underlying house fire, as opposed to having been attacked by fire from an outside source. He drew inferences from the findings of the fire investigators, Sheaman and Robinson, as to the origin of the fire being the location of this hoverboard, inside Bedroom 4. That Defendants' hoverboard complies with any UL standard is irrelevant as it relates to King's opinions, and really only relate to the weight and credibility of each party's evidence. See Perez v. Sunbeam Products, Inc., No. 21-CV-01915-PAB-KAS, 2024 WL 2978281. Again, Defendant wrongly concludes that UL standards exclude a duty owed. (Exhibit 1: King Dep. Pg. 203-04). For the reasons stated herein, as well as in Plaintiffs' Brief/Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Defendants' Motion must be denied.

**CONCLUSION**

Based on the foregoing arguments, and authority, Plaintiffs respectfully request that this Court issue an Order Denying Defendants' Motion To Exclude the Testimony of Derek King filed on December 2, 2024 (Ref.: Doc#104 and 105).

Date: December 17, 2024                    Respectfully Submitted,

                                                                 /s/ Rudwin Ayala
                                                                 **RUDWIN AYALA, Esq.**\*
                                                                 Florida Bar No.: 84005
                                                                 **MORGAN & MORGAN, P.A**
                                                                 1700 Palm Beach Lakes Blvd, Suite 500
                                                                West Palm Beach, FL 33401
                                                                Telephone: (561) 764-2220
                                                                Emails: rayala@forthepeople.com

        sleroy@forthepeople.com
*Admitted Pro Hac Vice*

And,
 */s/ Taly Goody*
**TALY GOODY, ESQ**.
Wyoming Bar No.: 8-6737
**GREYSON M. GOODY, ESQ.**
**GOODY LAW GROUP**
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Emails: taly@GoodyLawGroup.com
       greyson@GoodyLawGroup.com
*Local Counsel*

 */s/ T. Michael Morgan*
**T. MICHAEL MORGAN, ESQ**.*
Florida Bar No.: 062229
Kentucky Bar No.: 94856
**MORGAN & MORGAN, P.A**
20 N. Orange Ave., Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Emails: mmorgan@forthepeople.com
       akelseyflowers@forthepeople.com
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 17, 2024, a true and correct copy of the foregoing was electronically served to all counsel of record.

Counsel for Defendants:

Eugene M. LaFlamme – elaflamme@MLLlaw.com
Jared B. Giroux – jguiroux@MLLlaw.com
Jillian L. Lukens – jlukens@MLLlaw.com

                                                  */s/ Rudwin Ayala*
                                                  **RUDWIN AYALA, Esq.**
                                                  Fla Bar No.: 84005
                                                  *Admitted Pro Hac Vice*