Taly Goody, Esq.
Wyoming Bar No.: 8-6737
Greyson M. Goody, Esq.
GOODY LAW GROUP
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Email: taly@GoodyLawGroup.com
      greyson@GoodyLawGroup.com

T. Michael Morgan, Esq*
Florida Bar No.: 062229
Rudwin Ayala, Esq*
Florida Bar No.: 84005
MORGAN & MORGAN, P.A
20 N. Orange Ave, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Email: mmorgan@forthepeople.com
      rayala@forthepeople.com
*Pro Hac Vice
Attorneys for
Plaintiffs

## UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

|  |  |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC. and JETSON ELECTRIC BIKES, LLC,<br><br>Defendants. | Case No.: 2:23-cv-00118-NDF<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' BRIEF/MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW**, the Plaintiffs, Stephanie Wadsworth, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, (hereinafter "Plaintiffs") by and through their counsel of record Rudwin Ayala, Esquire and Morgan & Morgan, and submit their Response in Opposition to Defendants' Motion for Summary of

1

Judgement filed on December 2, 2024, for consideration together with Plaintiffs' Statement of Disputed Material Facts. For the reasons set for the below, Defendants' Motion should be denied

## I.    <u>LEGAL STANDARD</u>

Pursuant to Rule 56, "a party may move for summary judgment…[and] the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56, Fed. R. Civ. P.  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Williams v. Tristar Prod., Inc.</u>, 418 F. Supp. 3d 1212, 1226 (M.D. Ga. 2019). Further, summary judgment must be denied if there is a genuine dispute about a material fact, or in other words, "if the evidence is such that a reasonable jury *could* return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When making a determination on a motion for summary judgment, the judge's function is to determine whether there is a genuine issue of material fact for trial. <u>Id</u>. at 249. A fact is "material" if it might affect the outcome of the case. <u>Magoffe v. JLG Indus., Inc.</u>, No. CIV060973MCA/ACT, 2008 WL 2967653, at *6 (D.N.M. May 7, 2008), aff'd, 375 F. App'x 848 (10th Cir. 2010).

Apart from such limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See <u>Hunt v. Cromartie</u>, 526 U.S. 541, 551–52 (1999)

## II.    ARGUMENT

The basis of Defendants' Motion for Summary Judgment is that Plaintiffs purportedly cannot prove that the hoverboard caused the underlying house fire at the Wadsworth residence, which resulted in injuries to the Plaintiffs. Additionally, Defendants argue that Plaintiffs cannot maintain a claim for punitive damages as they purportedly cannot prove, by a preponderance of the evidence, that the Defendants acted with intentional, willful and wanton misconduct.

To establish a prima facie case based on negligence or strict liability in a products liability case, plaintiff must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control. Messer v. Amway Corp., 210 F. Supp. 2d 1217, 1227 (D. Kan. 2002), aff'd, 106 F. App'x 678 (10th Cir. 2004).

The analysis as to the element of causation starts with the premise that proximate causation is generally a question of fact to be determined by the jury. Jacobs–Peterson v. United States, 219 F.Supp.3d 1091, 1095 (D.Utah, 2016); Godesky v. Provo City Corp., 690 P.2d 541, 544 (Utah 1984). "Only in rare cases may a trial judge rule as a matter of law on the issue of proximate cause." Steffensen v. Smith's Management Corp., 820 P.2d 482, 486 (Utah App. 1991), aff'd, 862 P.2d 1342 (Utah 1993). See also Trujillo v. Utah Dep't of Transp., 986 P.2d 752, 764 ("[T]he issue of proximate cause is a question of fact for the jury to determine in all but the clearest cases."). For a trial court to rule there is no proximate cause as a matter of law it must determine that: "(1) there is no evidence to establish a causal connection, thus leaving causation to jury speculation," or (2) "reasonable persons could not differ on the inferences to be derived from the evidence on proximate causation." Jacobs–Peterson, 219 F.Supp.3d at 1095; Bansasine v. Bodell, 927 P.2d 675 (Utah Ct. App. 1996) (quoting Steffensen, 820 P.2d at 487 ).

This Court is not tasked with weighing the evidence. In fact, the Court is tasked with determining whether a jury could return a verdict for the Plaintiff based upon the allegations raised. Plaintiffs must prove that the hoverboard caused the fire. Through expert, Derek King ("King"), the truly independent, unbiased investigators, namely Detective Jeffrey Sheaman ("Sheaman"), and the remaining evidence in the case further described herein, Plaintiffs have created a genuine issue of material fact as to the hoverboard being the cause of the fire. Additionally, sufficient evidence exists to created a genuine issue of material fact regarding Defendants' actions entitling Plaintiffs to proceed with their claims for punitive damages. For these reasons, and those more fully stated herein, Defendants' Motion for Summary Judgment must be denied.

1. **CAUSATION HAS BEEN ESTABLISHED IN THIS MATTER, WARRANTING DENIAL OF THE REQUESTED SUMMARY JUDGMENT RELATED TO ALL OF PLAINTIFFS' CLAIMS.**

   A. **King's conclusions are sufficiently reliable and thus admissible.**

A proper Daubert analysis consists of three elements. (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). For the reasons set forth below, King's opinions are both reliable and admissible. Defendants' citation to Truck Ins. Exch. v. MagneTek, Inc., 360 F.3d 1206 (10th Cir. 2004) is inapposite and misleading, as the case specific facts of that opinion do not exist here.

Defendants first argument regarding the admissibility of King's opinions is that he is unqualified to render such opinions on causation. A witness is qualified as an expert by knowledge,

skill, experience, training, or education. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 508 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the inquiry into a witness's qualifications is "not stringent" and "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." <u>Handley v. Werner Enterprises, Inc.</u>, 596 F. Supp. 3d 1347, 1351 (M.D. Ga. 2022); citing <u>Clena Invs., Inc. v. XL Specialty Ins. Co.</u>, 280 F.R.D. 653, 661 (S.D. Fla. 2012); "[L]ack of specialization does not affect the admissibility of the opinion but only its weight." See <u>Cook v. Rockwell Intern. Corp.</u>, 580 F.Supp.2d 1071, 1112 (D.Colo., 2006); citing <u>Wheeler v. John Deere Co.</u>, 935 F.2d 1090, 1100 (C.A.10 (Kan.), 1991). District courts are accorded broad discretion in determining the competency of expert witnesses. <u>Quinton v. Farmland Indus.</u>, 928 F.2d 335, 336 (10th Cir.1991); <u>Kloepfer v. Honda Motor Co.</u>, 898 F.2d 1452, 1458 (10th Cir.1990). In a products liability action, an expert witness is not strictly confined to his area of practice but may testify concerning related applications. <u>Wheeler</u>, 935 F.2d at 1100. The expert must, however, stay within the reasonable confines of his subject area and cannot render expert opinions on an entirely different field or discipline. <u>Id</u>.

Defendants contend in the Motion that King lacks the education or experience necessary to make him an expert relating to design and manufacturing defect. However, King is an electrical and mechanical engineer, having obtained his Masters degree in electrical engineering in 2020. (Exhibit 1: King Dep. Pg. 17). Additionally, King has over 14 years of experience as a mechanical engineer performing failure, fire, explosion, and accident investigations at B.E.A.R., and has been lead engineer since approximately 2020. (Exhibit 1: King Dep. Pg. 17). He has been involved in investigating dozens of fire-related cases with other engineers at B.E.A.R., but has also lead investigations in 3 to 5 cases. (Exhibit 1: King Dep. Pg. 15).

King examined/inspected the subject hoverboard and its components, reviewing CT imaging of the product, made comparisons to an exemplar hoverboard, thereafter applying his education, training and experience to determine the most probably failure mode and analyze the probability of the hoverboard being the source of the underlying house fire, as opposed to having been attacked by fire from an outside source. As an electrical engineer, King has specialized knowledge of lithium-ion batteries and their components, and has experience investigating other fire incidents involving a hoverboard, electric bikes, e-cigarettes, and other devices. (Exhibit 1: King Dep. Pg. 187-88) King's specialized knowledge, skill, experience, training, and education as both a mechanical and electrical engineer establish that he has the qualifications to offer opinion testimony as to the battery pack, its individual cells, thermal runaway, and the possibility that the hoverboard caused the fire due to the explosion (internal short circuit) of two individual cells within the battery pack. The arguments raised by Defendants on pages 15 and 16 of their Motion go to the weight of his qualifications, which is subject to cross examination and not exclusion.[1] As such, Defendants' Motion on these grounds must fail.

---

[1] Defendants fail to cite to any authority that demands exclusion of King as an export because of him never working for a company that designs or manufactures lithium-ion batteries, or because he's never been actually involved in design or manufacture of lithium-ion batteries. Case law makes clear neither is necessary for purposes of being reliable and admissible. Wheeler v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991); See Dixon v. International Harvester Co., 754 F.2d 573, 580 (5th Cir.1985) (design engineer may provide expert testimony on safety of crawler tractor in product liability action against manufacturer despite lack of prior experience approving crawler tractor designs); Martin v. Fleissner GMBH, 741 F.2d 61, 64 (4th Cir.1984) (mechanical engineers were qualified to present expert testimony in product liability action against manufacturer of synthetic fiber crimper although they lacked previous background in either crimpers or the textile industry). Firsthand knowledge or experience of the type that Defendants claim Mr. King lacks is not required and, if anything, goes to the weight of his testimony, not its admissibility.; See Miller v. CNH Industrial America LLC, 645 F.Supp.3d 1184, 1195 (D.Kan., 2022); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1244 (10th Cir. 2000) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Corr v. Terex USA, LLC, No. 08-1285, 2011 WL 976718, at *4–5 (D. Kan. Mar. 17, 2011) (finding a Human Factors expert qualified despite lack of experience with and no physical inspection of the machine at issue).

6

Fed.R.Evid. 702 states that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To be admissible in federal court, expert opinions require not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts. Magoffe at *16. A "sufficient factual basis" under Fed.R.Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Id.; Fed.R.Evid. 703. Any suggestion that an opposing expert must be able to "verify" the correctness of an expert's work before it can be admitted also misstates the standard for admission of expert evidence under Rule 702. Cook v. Rockwell Intern. Corp., 580 F.Supp.2d 1071, 1123 (D. Colo. 2006). Perceived flaws in expert's testimony, including that expert relied on an allegedly unreliable opinion by another expert, "are matters properly tested in the crucible of adversarial proceedings; they are not the basis for truncating that process." Id.; citing United States v. 14.38 Acres of Land, 80 F.3d 1074, 1079 (5th Cir.1996).

Here, it is uncontroverted that King conducted an examination and analysis of the hoverboard and its components, CT images of the hoverboard and its components, photographs of the scene, and further relied upon the contents of the Sweetwater County Investigative Report, research/literature reviewed over his career relating to lithium-ion battery failures, including Detective Sheaman's investigation and conclusions relating to origin and cause, and his prior

experience in investigating lithium-ion failures. (Exhibit 1: King Dep. Pg. 71; 167; 169, 171-72; 176-77). Defendants erroneously try to convince the Court that Mr. King's opinions are unreliable because of some purported failure to test. However, Defendants don't define what testing they believe he was required to complete. He quite clearly has communicated his methodology, which primarily includes the inspection/examination of the physical hoverboard evidence and CT imaging. That methodology can be replicated – and in fact was by Defendants' own expert battery expert, Samuel Sudler. That alone is sufficient evidence to prove that the methodology was reliable under Fed. R. Evid. 702. Defendants' issue is with the outcome or result of his methodology, which goes to weight as opposed to admissibility. Mr. King used deductive reasoning to rule out the possibility of an external cause of the hoverboard damage, leaving open just one possibility, i.e. that there was an internal defect that caused the fire. Then reviewing the CT images, and corroborating his findings with the conclusions of Sheaman as to origin and cause, he was able to offer opinions based on acceptable and reliable methodology. See People v. Perkins, 533 P.3d 971, 978 (Colo.App. 2023)(finding that reliance on training, experience, deductive reasoning, and observations to reach their conclusions is acceptable under Rule 702). As stated by King, if the hoverboard explosion was due to an external heating origin, he would have expected all battery cells to have exploded, not just two isolated cells. (Exhibit 1: King Dep. Pg. 178-79). Mr. King reiterated in his deposition that UL listings are not guarantees of safety, as Defendants would want to convince this Court. If they were so, the Defendant Jetson's recall of its Rogue model hoverboard, UL 2272 and 2580 "certified", would not have been necessary due to the risk of fire with that product.[2] (Exhibit 1: King Dep. Pg. 203-04).

---

[2] Plaintiffs discuss this further later in this memorandum.

Lastly, Defendants' argument that Mr. King ignored facts such as electrical arcing found outside during a subsequent inspection following the fire, which should render his opinions unreliable, completely ignores the testimony and facts that electrical arcing is not in and of itself evidence of the origin of a fire.[3]

Defendants may not like the conclusions reached by Mr. King, but that is not sufficient to warrant exclusion of his opinions on causation. Additionally, although King is Plaintiffs' only retained expert on the issue of causation, Plaintiffs also rely upon the findings of Detective Sheaman and Fire Chief Robinson on the issue of causation. For the reasons stated herein, in Plaintiffs' Response to Defendants' Daubert Motion regarding King, and in the remainder of this memorandum, Defendants' Motion must be denied.

**B. Plaintiffs can rely upon the testimony of Sheaman and Robinson as the basis for causation in this matter as their opinions are reliable and they were properly disclosed without prejudice to the Defendants.**

 i. **Sheaman and Robinson's conclusions are sufficiently reliable to create a genuine issue of material fact, precluding summary judgment**.

Defendants claim that Sheaman and Robinson's conclusions are not reliable is erroneous, and relies on faulty assumptions, including that NFPA 921 is the standard that determines reliability in this case. Courts have said a failure to strictly adhere to NFPA 921 does not render an investigation per se unreliable. <u>Pekarek v. Sunbeam Products, Inc</u>., 672 F.Supp.2d 1161, 1176 (2008); see <u>American Family Mutual Ins. Co. v. Hewlett–Packard Co.</u>, 2008 WL 2130217 (D.Minn., May 19, 2008). Federal courts have recognized that NFPA 921 is an accepted reference

---

[3] One of the foremost experts in the field of fire safety science, explosion safety, electrical failures, fires and explosions, Vytenis Babrauskas has conducted numerous studies and published voluminous peer-reviewed material on various fire topics, including arc mapping. Mr. Babrauskas published a peer-reviewed article titled "ARC MAPPING: NEW SCIENCE, OR NEW MYTH?", attached as Exhibit E to Plaintiffs' Daubert Motion as to Defendants' Expert Strandjord. In that article, Mr. Babrauskas gives an entire history of arc mapping and makes very explicit conclusions about the unreliability of arc mapping.

for fire investigators that provides **nonmandatory guidelines** and **recommendations** for the fire investigation field, and that expert testimony is admissible where NFPA 921 is used only as a guide. <u>People v. Perkins</u>, 533 P.3d 971 (Colo.App. 2023); <u>Farmland Mut. Ins. Cos. v. Chief Indus., Inc.</u>, 170 P.3d 832, 836 (Colo. App. 2007) (finding that NFPA 921 is "an accepted reference for fire investigators"); <u>Sipes v. Allstate Indem. Co.</u>, 949 F. Supp. 2d 1079, 1087 (D. Colo. 2013) (published order) (finding it was reasonable to rely on a fire origin and cause report, even though the fire investigator did not use NFPA 921 to prepare his report); see also <u>Pekarek v. Sunbeam Prods., Inc.</u>, 672 F. Supp. 2d 1161, 1176 (D. Kan. 2008) (noting that the fact a fire investigator does not cite or use NFPA 921 as his guide does not necessarily mean that his methodology is unreliable). There is no controlling case law in this jurisdiction that Plaintiffs are aware of, or that Defendants rely upon, that have decided that strict compliance with NFPA 921 is required. See also <u>Perkins</u>, 533 P.3d at 977. Following NFPA 921 is not the only reliable way to investigate a fire. <u>Id</u>. In fact, courts have declined to preclude expert witness testimony on the basis that the expert departed from NFPA 921 during the expert's fire origin investigation, which is further reinforced by the fact that NFPA 921 sections 1.3.1– 1.3.5 specifically provides that "its provisions are intended to be guidelines, given every fire incident is unique, and ... not all techniques will be applied in a particular investigation") <u>United States v. Idaho Cnty. Light & Power Coop. Ass'n</u>, No. 17-cv-00391, 2020 WL 603478, at *7–9 (D. Idaho Feb. 7, 2020) (unpublished order).

Neither Sheaman nor Robinson have testified that they purportedly solely followed NFPA 921 as the methodology for their fire investigation. In fact, Sheaman specifically testified that he approaches his origin and cause investigations by looking specifically to the evidence. (Exhibit 2: Sheaman Dep. Pg. 311-12). First he collects evidence from the outside of the home, then moves to the inside of the home, and then speaks with first responding officers, family, and witnesses.

(Exhibit 2: Sheaman Dep. Pg. 312). Even Defendants' counsel acknowledges that NFPA 921 is just a guide, not a requirement. (Exhibit 3: Robinson Dep. Pg. 106). Robinson discussed in his deposition collecting the facts, evidence, forming a hypothesis, and rendering the opinion that the fire originated in Bedroom 4, where the hoverboard existed. He deferred to Sheaman as to cause opinions. (Exhibit 3: Robinson Dep. Pg. 174-75).

So while it is true that "an expert who purports to follow NFPA 921 must apply its contents reliably", where NFPA 921 serves only as an investigator's guide, the expert's testimony may still be admitted subject to other challenges to the expert's qualifications and reliability. People v. Perkins, 533 P.3d 971, 978 (Colo.App. 2023). An expert's decision not to follow the methodology set forth in NFPA 921, goes to the weight of the evidence, not its admissibility. Id.

As the Court found in Perkins, here the record shows that the fire investigators used NFPA 921 as a reference or guide, therefore the principles underlying their testimony were reliable, rendering their testimony admissible. Perkins, 533 P.3d at 980. Critical to the analysis in this case, the Perkins Court did not strike a fire investigator's opinions when he did not rely upon NFPA 921, and stated the following:

> [W]e are not persuaded that the investigative methods employed here were unreliable simply because they did not copy the NFPA 921 methods, were not peer reviewed, and were not subjected to testing. The record shows that the fire investigators relied on their training, experience, deductive reasoning, and observations to reach their conclusions. And we do not perceive an abuse of discretion in the admission of expert testimony "that employs an expert's physical investigation, professional experience, and technical knowledge to establish causation." Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1238 (10th Cir. 2005) (finding that a fire investigator's proffered testimony that a water heater was the source of the explosion was based on sufficiently reliable methodology, as required to be admissible, given the expert's experience and knowledge as a fire investigator and that he observed the physical evidence at the scene of the accident); see Mickelsen v. Aramark Sports & Ent. Servs., 536 F. Supp. 3d 1238, 1243 (D. Utah 2021) (published order) (denying motion to exclude expert testimony and finding physical testing of hypotheses unnecessary where fire investigator's opinion was

based on " 'fundamental principles of science' and 'analytical techniques' "—an approach expressly permitted by NFPA 921 (quoting NFPA § 19.6.4)).

Perkins, 533 P.3d at 980

Sheaman's (and Robinson's) conclusions were based upon deductive reasoning, drawing from his personal observations walking around and through the inside of the home, analysis of the scene of the fire (including fire patterns and marks), reviewing significant physical evidence of the fire, speaking with the Wadsworth family, speaking with other first responders, and relying upon his background, training, experience, and methodologies from numerous other fires he has been called upon to investigate in his career, including references like NFPA 921. See Id.; (see also Exhibit 2: Sheaman Dep. Pg. 311-12). Process of elimination through deductive reasoning in analyzing fire evidence such as damage left in the Wadsworth home's bedroom 4, and analyzing patterns within the home, is a reliable scientific methodology accepted by the vast majority of courts – as well as explicitly accepted by NFPA 921. See Farmland Mut. Ins. Cos. v. Chief Indus., Inc., 170 P.3d 832, 836 (Colo. App. 2007). Sheaman's conclusions were based on his reasonable inferences drawn from his physical investigation, professional experience, deductive reasoning, and technical knowledge, rendering his opinions relevant, reliable, and admissible. See Perkins, 533 P.3d at 981; see also Occidental Fire & Cas. of N.C. v. Intermatic Inc., No. 09-CV-2207, 2013 WL 4458769, at *2 (D. Nev. Aug. 15, 2013) (unpublished order) (finding testimony of fire investigation expert was reliable where the expert's investigation consisted only of witness statements and a physical examination of the fire site because NFPA 921 identifies witness reports and the examination of physical evidence as sufficient means to determine a fire's origin). Because NFPA 921 contains only nonmandatory provisions, not requirements, any deviation by Sheaman goes to the weight of his testimony, not admissibility. Id. Simply because Sheaman's conclusions are contrary to other evidence, does not render his opinions inadmissible, but reflects conflict in

evidence the jury is tasked with resolving. See Perkins, 533 P.3d at 981; see also Oram v. People, 255 P.3d 1032, 1038 (Colo. 2011).

To conclude that Sheaman stated that in order to complete a full and thorough origin and cause investigation under NFPA 921, they would need to consider all evidence that's been uncovered completely ignores the explicit testimony from Sheaman that he completed his investigation based upon his review of the physical evidence at the scene, analysis of fire patterns, photos, witness interviews, and that NFPA 921 is just a guide. (Exhibit 2: Sheaman Dep. Pg. 30-33; 51-53; 55-59; 77; 112-18; 280-85; 286-92; 294-96; 299-300; 311-12; 314-16;). Furthermore, to argue now that Sheaman is unqualified to render origin and cause opinions because he is not an electrical engineer misses the point clearly enunciated by the Perkins court. Sheaman is qualified (Exhibit 2: Sheaman Dep. Pg. 8-24), his testimony is reliable, and that it disagrees with Defendants' theory in the case does not render it unreliable or inadmissible under Fed. R. Evid. 702. For these reasons, and those stated in Plaintiffs Response to Defendants' Daubert Motions related to Sheaman and Robinson, Defendants' Motion for Summary Judgment must be denied.

      ii. **Sheaman and Robinson are lay witnesses properly disclosed in Plaintiffs' initial disclosures, they were both deposed on all relevant issues, and even if considered experts, Defendants have suffered no prejudice or surprise that would warrant exclusion of their testimony**.

The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial. Cook v. Rockwell Intern. Corp., 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006).

Defendants claim that Plaintiffs failed to designate Sheaman or Robinson as retained or non-retained experts, and as such they should be precluded from offering any opinion testimony

relevant to their involvement in the scene origin and cause investigation. First, as the first responders to the subject fire, their testimony and conclusions were completely based upon their actual investigation and collection of evidence. That is remarkably different from any of the "experts" in this case. Rule 26(a)(2), and this Court's Order on Initial Pretrial, and the Amended Scheduling Order, discusses the designation of experts. In fact, the Amended Scheduling Order in this case discusses retained experts, and then also states that if treating medical or mental health providers will be called to testify in part or in full as an expert, they too must be designated as an expert witness. However, no other requirement exists to identify a first responder as such. Sheaman and Robinson cannot be precluded from testifying as to their investigations and conclusions.

Second, both Sheaman and Robinson were disclosed by the parties in their initial Rule 26 disclosures.

Third, even without identification of Sheaman or Robinson as experts, Defendants have suffered no prejudice or surprise from the substance of their testimony and opinions. Defendants received the investigative reports created by Robinson and Sheaman over a year ago in discovery, and have known about both and their involvement in the investigation of this fire since the initial disclosures. For that reason, both were deposed in this case on November 15, 2023 and November 16, 2023, respectively, and questioned by Defendants' counsel extensively on all of the relevant issues. In fact, Detective Sheaman was questioned for nearly 8 hours! And Chief Robinson was deposed for 4 hours and 29 minutes. Additionally, Defendants have experts that attempt to rebut Sheaman's and Robinson's conclusions.

Rule 37(c)(1) of the Fed.R.Evid. provides that when a party fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof], unless such failure is harmless, they will not be permitted to use as evidence at a trial, at a hearing,

or on a motion any witness or information not so disclosed. "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999); citing Mid–America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir.1996). A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir.1998). Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. The case of Walker v. Spina, No. CV 17-0991 JB\SCY, 2019 WL 145626, at *19–20 (D.N.M. Jan. 9, 2019) is very instructive on these issues, ruling that a treating physician that was not disclosed as an expert witness could testify and offer his opinions relating to causation, diagnosis and prognosis after analyzing the four factors stated herein. When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted. Walker v. Spina, No. CV 17-0991 JB\SCY, 2019 WL 145626, at *10 (D.N.M. Jan. 9, 2019);See also, e.g., Coffey v. United States, 2012 WL 2175747, at *12-13; Kerns v. Bd. of Comm'rs of Bernalillo Cty., No. CIV 07-0771 JB/ACT, 2010 WL 1632732, at *7 (D.N.M. March 31, 2010)(Browning, J.); Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2010 WL 611141, at *3 (D.N.M. Jan. 31, 2010)(Browning, J.); Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., No. CIV-06-1165 JB/DJS, 2007 WL 4707080, at *4 (D.N.M. Aug. 14, 2007)(Browning, J.).

The <u>Walker</u> Court found that the Plaintiff did not comply with the disclosure requirements of Fed.R.Evid. 26, the non-disclosure was not substantially justified, however, failure to disclose the treatment providers was harmless. <u>Id.</u> at *26-27 (holding that the medical records, Answer to Interrogatories, and First and Second Initial Disclosures notify the Defendants about the treatment providers, and disclose information about the treating physicians' diagnoses and statements about the causes for Walker's injuries; the Defendants deposed the treatment providers for approximately two-and-a-half hours each on the relevant issues of causation, Defendants have expert witnesses aligned to rebut the treatment providers' testimony; the failure to disclose will not disrupt the trial seven weeks away; and there was no evidence Walker acted willfully or in bad faith.) "The Court, moreover, is concerned that excluding the treatment provider's testimony may cause Walker to suffer more than the Defendants here, who may suffer no prejudice. If Walker loses all her experts, Walker loses much of her case. The Defendants' minimal to nonexistent surprise or prejudice does not outweigh this threat to Walker's case." <u>Id</u>.

***Defendants have not, and cannot, present this Court with any argument that they have been prejudiced in any way due to a purported failure to label Sheaman or Robinson as experts.*** They have suffered no prejudice whatsoever. The entirety of both Sheaman's and Robinson's testimonies are based upon their on-scene investigation during and immediately following the house fire. Defendants have had their investigative reports, statements of witnesses, and all other evidence they collected and relied upon since the very early stages of litigation. Both witnesses have been deposed, extensively, thereby eliminating any purported need to cure some alleged prejudice. Defendants have the entirety of what their testimony will be at trial, thereby rendering any purported "summary of the testimony expected" moot. There would be no disruption to the trial in this case in allowing Sheaman and Robinson to testify as to their origin and cause

investigation and conclusions, with trial not set to commence until March 2025. Furthermore, Defendants have not identified any bad faith or willfulness in not labeling Sheaman or Robinson as experts.

Defendants would like this Court to exclude these witnesses as a technicality due to what can only be perceived as unfavorable testimony to them, despite the fact that they've had a complete opportunity to question them, challenge their conclusions, and retain their own experts to rebut those conclusions. Any causation opinions of Sheaman and Robinson should not be excluded due to a purported failure to designate them as experts for the foregoing reasons. Exclusion of their causation opinions cause Plaintiffs to suffer more than the Defendants, who have suffered no prejudice at all, resulting in the danger sought to be avoided by the Walker Court. The Defendants' minimal to nonexistent surprise or prejudice does not outweigh the threat to Plaintiffs' case.

## C. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STRICT LIABILITY DESIGN DEFECT CLAIM.

### i. Plaintiffs have sufficiently created a genuine issue of material fact related to their strict liability claim.

To present a prima facie strict liability case, must produce proof of three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left the defendant's control. Jenkins v. Amchem Products, Inc., 886 P.2d 869, 886 (Kan. 1994) The three types of defects in a strict liability case are design defects, manufacturing defects, and warning defects. Defendants only argue that they are entitled to summary judgment on Plaintiffs' design defect and warning defect claims.

### i. Plaintiffs design defect opinions are set forth by Derek King.

Defendant claims it is entitled to summary judgment on the design defect claim because neither Schulz nor King have issued any opinions that the hoverboard was defectively designed. Though Plaintiffs concede that Schulz has not offered any opinions on design defect, claiming that King has not is again, misleading.

Defendants would want this Court to believe that Plaintiffs must identify every specific detail of a design failure in order to sufficiently state such a claim. Unfortunately for Defendants, that is not what the case law provides. It is sufficient to identify the *aspect* of the product that is allegedly defective to sufficiently state a defective design claim, even where the specific details of the defect has not been identified. See Messer v. Amway Corp., 210 F. Supp. 2d 1217, 1233 (D. Kan. 2002), aff'd, 106 Fed. Appx. 678 (10th Cir. 2004)(unpublished)(holding that although the plaintiff had not identified the specific chemicals which caused her injury, she had identified the aspect of the product that is allegedly defective—its level of corrosiveness.); see also Burton v. R.J. Reynolds Tobacco Co., 181 F.Supp.2d 1256, 1262 (D.Kan.2002) (allegation that cigarettes deliver harmful quantities of nicotine and carbon monoxide sufficient). King has sufficiently stated the aspect of the product defect that is deficient, to wit: failure of multiple battery cells resulting in thermal runaway and the resulting house fire, to the exclusion of the only other possibility, i.e. that the hoverboard was attached by an external fire source. (Exhibit 1: King Dep. Pg. 71; 167; 169, 171-72; 176-79)( Exhibit 4: King Expert Report). King's opinion on this is not just a manufacturing defect, it is further a design defect which he expounded upon when discussing the inherent problem with lithium-ion batteries and their failures. (Id.) That Defendants' hoverboard complies with any UL standard is irrelevant as it relates to King's opinions, and really only relate to the weight and credibility of each party's evidence. See Perez v. Sunbeam Products, Inc., No.

21-CV-01915-PAB-KAS, 2024 WL 2978281. Again, Defendant wrongly concludes that UL standards exclude a duty owed. (Exhibit 1: King Dep. Pg. 203-04)

Plaintiffs further rely upon their arguments set forth herein, and Plaintiffs' Response to Defendants' Daubert Motion as to King. Defendant has failed to establish the absence of a genuine issue of material fact on this issue, and as such, summary judgment must be denied.

      ii.   **Plaintiffs can maintain their failure to warn claim as sufficient evidence has been presented to create a genuine issue of material fact**.

"Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty. (citation omitted).... 'Public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market.'" East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 866 (1986) (quoting Escola v. Coca Cola Bottling Co., 150 P.2d 436, 441 (1944) (Traynor, J. concurring)). A manufacturer has a duty to warn of all potential dangers which it knew, or in the exercise of reasonable care should have known, to exist. Miller v. CNH Indus. Am. LLC, 645 F. Supp. 3d 1184, 1199 (D. Kan. 2022). A manufacturer cannot avoid responsibility for its failure to warn that the intended use of its product could cause injuries when those injuries are reasonably foreseeable. Richter v. Limax Int'l, Inc., 45 F.3d 1464, 1470 (10th Cir. 1995). They have a duty to warn of dangers of harmful effects arising from the foreseeable use and misuse of a product that are known or are readily foreseeable in the state of art. Id. at 1471. Plaintiff's evidence must sufficiently demonstrate that the harm incurred should have been reasonably foreseeable to the manufacturer of the product. Id. Every case must turn on its own evidentiary facts. Id.

In the Richter case, the Court concluded that the jury could have inferred from all the evidence that there was a real risk of similar injuries occurring to others, thus requiring warning

of such risk to the Plaintiff. Richter, 45 F.3d at 1471. In this case, there is ample evidence from which a jury could conclude others could face similar injuries as the Plaintiffs due to the defects in the subject hoverboards lithium-ion battery. In fact, other hoverboard incidents have occurred involving this same manufacturer as testified to by Mr. Hussain. In fact, Plaintiffs are aware of another Jetson hoverboard incident involving a family in Pennsylvania which resulted in a housefire and the death of two individuals within that residence. Furthermore, Jetson's voluntary recall of its Rogue model as testified to by Mr. Hussain (See Exhibit 5: Jetson Voluntary Recall Notice), and Mr. Hussain's testimony where he was unable to state the differences between the battery pack in the Rogue versus the subject Plasma hoverboard other than the Plasma having a higher capacity  (Exhibit 6: Hussain Dep. Pg. 103-104), is sufficient evidence to create a genuine issue of material fact for a jury to reasonably conclude that Defendants owed a duty to warn of the risk of the lithium-ion battery exploding and causing a fire. No warning was given Plaintiffs of the risk of battery explosion or fire unrelated to an overcharging situation. (Exhibit 7: photos of warning labels on Plasma hoverboard; Exhibit 8: Jetson Product Manual).

Even if a product does not have a design defect, failure to warn of a foreseeable danger arising from the product's normal use makes the product defective. Richter v. Limax Int'l, Inc., 45 F.3d 1464, 1469-70 (10th Cir. 1995)(holding that even where the design of a product is not defective, within the state of the known art, that does not detract from the manufacturer's duty to warn the consumer of foreseeable dangers that can arise from normal use.)

The vast majority of jurisdictions hold that where a warning is inadequate, the plaintiff is entitled to a rebuttable presumption that an adequate warning would have been heeded if one had been given. Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 855 (10th Cir. 2003). The notion that warnings are presumed to be heeded by those who read them may apply to both actual, existing

warnings and hypothetical warnings that could have been given. See <u>Magoffe v. JLG Indus., Inc.</u>, No. CIV060973MCA/ACT, 2008 WL 2967653, at *33 (D.N.M. May 7, 2008), aff'd, 375 F. App'x 848 (10th Cir. 2010); citing <u>Technical Chem. Co. v. Jacobs</u>, 480 S. W.2d 602, 606 (Tex.1972). The defendant can rebut the presumption through testimony that a different warning would not have made a difference. <u>Thom</u>, 353 F.3d at 855. The standard for determining whether a warning is adequate is whether it is 'reasonable under the circumstances.' " <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 975 (10th Cir. 2001) (quoting <u>Wooderson v. Ortho Pharm. Corp.</u>, 681 P.2d 1038, 1052 (1984). A warning is adequate when it is "comprehensible to the average user and convey[s] a fair indication of the nature and extent of the danger." See <u>Wheeler v. John Deere Co.</u>, 862 F.2d 1404, 1413 (10th Cir. 1988). Adequacy is generally a question of fact for the jury. <u>Miller v. CNH Indus. Am. LLC</u>, 645 F. Supp. 3d 1184, 1200 (D. Kan. 2022); see also <u>Wooderson</u>, 681 P.2d at 1057.

Defendants in this case have presented no evidence that a warning would not have made a difference, and thus have not rebutted the presumption that an adequate warning would have been heeded by Plaintiffs. As a result, a genuine issue of material fact exists precluding summary judgment on this issue.

Furthermore, Defendants did not warn Plaintiffs or any consumer of its hoverboards that the lithium-ion battery may catch on fire or explode in situations other than overcharging. Whether the absence of a warning is adequate is within the type of consideration that lies within the ability and province of a jury to consider. The jury must have the opportunity to consider the need for such a warning, for which a presumption that such a warning would be heeded would attach. Defendants have failed to rebut the presumption of causation created by the absence of the warning suggested through Mr. Hussain's testimony and the presence of the Rogue hoverboard voluntary

recall notice. Hussain testified that nothing was done to investigate whether the Plasma battery packs had a similar risk/issue to that of the Rogue. (Exhibit 6: Hussain Dep. Pg. 112-14). Hussain testified it had prior complaints relating to the Plasma hoverboard overheating concerns or fire hazard concerns. (Exhibit 6: Hussain Dep. Pg. 116-18) Additionally, Defendants have failed to cite to one case requiring a human factors expert to opine on the inadequacy of a warning (that was not provided by the designer and manufacturer). In fact, as has been stated by courts in this jurisdiction, a plaintiff is not required to present expert testimony about the feasibility, adequacy and effectiveness of a proposed warning. Burton v. R.J. Reynolds Tobacco Co., 208 F.Supp.2d 1187, 1196 (D.Kan.,2002)(holding that the Plaintiff's own testimony was sufficient, without expert witness testimony, to prove Plaintiff's failure to warn claim.)

Defendants' reliance on Smith v. Sears Roebuck and Co., 232 Fed.Appx. 780, FN 1, 2007 WL 1252487 is misleading, as the opinion is specific to the facts of that case, as made clear in Martin v. Interstate Battery System of Am., Inc., which explicitly distinguishes the Smith opinion. As such, this Court must reject Defendants' request for summary judgment relating to the failure to warn claim, as genuine issues of material fact exist.

      iii.    **Defendants erroneously conclude that a UL listing establishes the standard of care related to a product's warnings.**

Defendants erroneously state that UL sets forth the standard for labels and warnings on hoverboards to comply with UL 2272. It is no surprise that the only evidence Defendants cite for this proposition is their own corporate representative. As has been stated by courts in this jurisdiction, there is a difference between whether standards are conclusive evidence of a duty being met versus whether existence of industry standards are admissible. "[I]ndustry standards are not conclusive as to ordinary care in design," they "are admissible evidence." Perez v. Sunbeam Products, Inc., No. 21-CV-01915-PAB-KAS, 2024 WL 2978281, at *8 (D. Colo. June 13, 2024);

22

see also <u>Yampa Valley Elec. Ass'n, Inc. v. Telecky</u>, 862 P.2d 252, 257 (Colo. 1993) (en banc) ("Evidence of a defendant's compliance with applicable industry standards in a tort case is both relevant and admissible for purposes of determining whether the defendant either breached, or satisfied, the duty of care it owed to an injured plaintiff. Even though evidence of compliance with industry standards is admissible, such evidence is not conclusive on the issue of due care." (citations omitted)).

The best piece of evidence that exists relates to Defendant Jetson's recall of a similar hoverboard product due to a risk of fire, specifically related to their lithium-ion battery. (See Exhibit 5: Jetson Voluntary Recall Notice) The hoverboard was UL listed related to all of its components, including the batteries and warnings. Still, the potentially deadly defect related to those batteries resulted in about 53,000 units being recalled.  (See Exhibit 9: CPSC Recall) Defendants' argument that because the subject hoverboard in this action is UL listed it is therefore not subject to a defective warnings claim is not supported by any case law, statute, or any other authority. Defendants essentially urge this Court to take their word for it and trust that the warnings on the subject hoverboard are adequate to warn Plaintiffs, the reasonable consumer, of the dangers related to their hoverboard's lithium-ion battery. That is inconceivable. Sufficient evidence has been developed from which a jury can conclude that the warnings were inadequate, and thus deficient. Jetson's corporate representative, Mr. Hussain, confirmed that neither the packaging, nor the product itself, warns the consumer about the possibility that the battery can explode or catch fire. (Exhibit 6: Hussain Dep. Pg. 43-52)

On a failure to warn claim, Plaintiffs must prove that injury resulted from a condition of the product. Evidence that the injury resulted from the condition of the subject hoverboard for which warning was wanting has been presented through the testimony of Derek King, Sheaman,

and Schultz. For these reasons, the Court must reject any notion that UL listing exonerates Defendants of a duty to warn.

### D. PLAINTIFFS ARE ENTITLED TO PRESENT THEIR CLAIM FOR PUNITIVE DAMAGES AT TRIAL.

#### i. Summary Judgment not appropriate on Plaintiffs' claims for punitive damages.

Punitive damages may be awarded for conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith. Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 995 (10th Cir. 1999). It is sufficient if a defendant evinced that degree of indifference to the rights of others which may justly be characterized as reckless. D.M. by and through Morgan v. Wesley Medical Center, LLC, 487 F.Supp.3d 1071, 1078 (D.Kan., 2020). Courts typically reserves the question of wantonness for the jury. Id. Also, the recoverability of punitive damages is best resolved at trial with the benefit of a complete record. Anders v. Walmart Inc., 2021 WL 6135568, at *2 (W.D.Okla., 2021).

Hussain testified that nothing was done to investigate whether the Plasma battery packs had a similar risk/issue to that of the Rogue. (Exhibit 6: Hussain Dep. Pg. 112-14). Hussain testified it had prior complaints relating to the Plasma hoverboard overheating concerns or fire hazard concerns. (Exhibit 6: Hussain Dep. Pg. 116-18). This evidence is sufficient for a jury to consider as recklessness warranting a potential award of punitive damages, especially in light of the recall related to a similar hoverboard, the death case related to a similar Jetson hoverboard in Pennsylvania, and the severity of the injuries in this case. For these reasons, Defendants Motion for Summary Judgment on the issue of punitive damages should be denied at this time.

### III. CONCLUSION

Based on the foregoing arguments, and authority, Plaintiffs respectfully request that this Court issue an Order Denying Defendants' Motion for Summary of Judgement filed on December 2, 2024 (Ref.: Doc#96 and 99).

Date: December 17, 2024                    Respectfully Submitted,

/s/ Rudwin Ayala
**RUDWIN AYALA, Esq.**\*
Florida Bar No.: 84005
**MORGAN & MORGAN, P.A**
1700 Palm Beach Lakes Blvd, Suite 500
West Palm Beach, FL 33401
Telephone: (561) 764-2220
Emails: rayala@forthepeople.com
         sleroy@forthepeople.com
*Admitted Pro Hac Vice*

And,
/s/ Taly Goody
**TALY GOODY, ESQ.**
Wyoming Bar No.: 8-6737
**GREYSON M. GOODY, ESQ.**
**GOODY LAW GROUP**
58 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Telephone: (310) 893-1983
Emails: taly@GoodyLawGroup.com
         greyson@GoodyLawGroup.com
*Local Counsel*

/s/ T. Michael Morgan
**T. MICHAEL MORGAN, ESQ.**\*
Florida Bar No.: 062229
Kentucky Bar No.: 94856
**MORGAN & MORGAN, P.A**
20 N. Orange Ave., Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Emails: mmorgan@forthepeople.com
         akelseyflowers@forthepeople.com
*Admitted Pro Hac Vice*

25