Exhibit 3

Page 1

```
 1              UNITED STATES DISTRICT COURT
              IN AND FOR THE DISTRICT OF WYOMING
 2
 3         STEPHANIE WADSWORTH,          )
           individually and as Parent  )
 4         and legal guardian of ww, KW)
           GW and LW, minor children of)
 5         MATTHEW WADSWORTH,           )
 6
 7                   Plaintiffs,        )
                                        ) Case No.
 8         vs.                          ) 2:23-cv-00118-NDF
                                        )
 9         WALMART, INC., and JETSON    )
           ELECTRIC BIKES, LLC          )
10                                      )
                     Defendants,        )
11         _____)
12             DEPOSITION OF BILL ROBINSON
13         Wednesday, November 15, 2023, 1:00 P.M.
14              Via Zoom video conference
15
16
17                   BE IT REMEMBERED that the
     deposition of BILL ROBINSON was taken by the attorney for
18   the Plaintiffs, GRAYSON GOODY, ESQ., 58 Malaga Cove Plaza,
     Palos Verdes Estates, California 90274 before Christine J.
19   Roybal, Court Reporter for the State of Idaho, in the
     above-entitled matter.
20
21
22
23
24
25
```

1      Q.    Okay.  Did he arrive before or after you?

2      A.    After.

3      Q.    Do you know how long after you?

4      A.    I don't.

5         If he was there before me, I don't recall if he was or

6   not.

7      Q.    And he would have come in a private vehicle?

8      A.    He would have been in a personal vehicle.

9      Q.    Looking at what we see as the fire at about

10   10 minutes 30 seconds into this video, is that consistent of

11   what you would have seen when you arrived?

12      A.    I don't recall.

13      Q.    In your investigations do you realize --

14         (Court reporter clarification.)

15      Q      (By MR. LAFLAMME) In your fire investigation do

16   you utilize NFPA921?

17      A.    You'd have to refresh me what NFPA291 is.

18      Q.    NFPA29 is the guide for fire and explosion

19   investigations.

20      A.    We try to.

21      Q.    And are you familiar with that guide?

22      A.    Not without looking at it.

23      Q.    I believe you had -- I want to take a little step

24   back and just go over some of the background items again.

25   You had indicated that you started with City of Green River

Page 174

1       Q.   And with all of your education, your training,

2   your experience, do you agree that you're capable of

3   investigating fires and making a determination as to origin?

4       A.   Correct.

5       Q.   And where the evidence supports it you're

6   certainly capable based on background, training, and

7   experience, in making a determination as to causation?

8            MR. LAFLAMME:  Object to form.

9       A.   I try not to determine causation on behalf of the

10  Green River Fire Department just, it's not something I want

11  to practice, so.

12      Q       (By MR. AYALA) Fair enough.  So you leave that,

13  typically you leave that either to the Fire Marshal or you

14  leave that to detectives like Sheman?

15      A.   Yeah, I refer to the jurisdiction, I have no

16  authority for it.

17      Q.   Fair enough.  Based on all of the evidence

18  provided to you and that existed, did you employ your best

19  efforts at determining the origin of this fire?

20      A.   Absolutely.

21      Q.   Using all that education, background, training,

22  and experience you have and have accumulated over the years.

23      A.   Yes, I believe everyone deserves 100 percent

24  effort.

25      Q.   Okay.  You were asked questions about whether or

1    not you formed any other hypothesis, other than the fact

2    that the fire originated in the bedroom, do you remember

3    that question?

4        A.    I do.

5        Q.    Prior to forming a hypothesis, which by the way as

6    we all learn in science class way back when, a hypothesis is

7    an educated guess, isn't it?

8        A.    More or less.

9        Q.    And you use facts and evidence together, this

10   educated guess or opinion?

11       A.    Agreed.

12       Q.    So prior to putting together a hypothesis, you

13   have to collect some facts, you have to collect some

14   evidence, do you agree?

15       A.    I agree.

16       Q.    And so in your investigation of this fire, you

17   collected facts, didn't you?

18       A.    I did.

19       Q.    You collect evidence, didn't you?

20       A.    And based upon your collection of facts and

21   evidence was there any other educated opinion that you could

22   reasonably come to other than the fact that this fire

23   originated in that bedroom?

24            MR. LAFLAMME:  Object to form.

25       A.    No.