# EXHIBIT 19



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

STEPHANIE WADSWORTH
Individually and as Parent and Legal Guardian
of W.W., K.W., G.W., and L.W., minor
children and MATTHEW WADSWORTH,

Plaintiffs,

vs.

WALMART INC. and
JETSON ELECTRIC BIKES, LLC,

Defendants.

Case No. 2:23-CV-00118-KHR

**ORDER DENYING PLAINTIFFS' MOTION TO
AMEND EXPERT DISCLOSURES**

This matter is before the Court on Plaintiffs' *Motion to Amend Expert Disclosures* ("*Motion*"). ECF No. 76. Defendants oppose Plaintiffs' *Motion* and have filed a brief to that effect ("*Response*"). ECF No. 81. The Court, having considered the *Motion*, the Response, and otherwise being fully informed, concludes that Plaintiffs' *Motion* should be denied without prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, Stephanie Wadsworth (hereinafter "Mrs. Wadsworth"), individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth, filed this lawsuit asserting personal injury claims relating to a residential house fire at a home located in Green River, Wyoming on February 1, 2022. ECF No. 1. Plaintiffs,

Mrs. Wadsworth, W.W., K.W., G.W., and L.W., raise claims for negligence, strict liability, and breach of warranty against Defendants Walmart Inc., and Jetson Electric Bikes, LLC, and Plaintiff Mathew Wadsworth raises two claims for loss of consortium against both defendants. *Id.* Plaintiffs allege the fire was caused by a plasma model hoverboard manufactured by Jetson Electric Bikes, LLC and distributed by Walmart, Inc. *Id.* at 2. Plaintiffs seek, *inter alia*, an award of damages including, but not limited to, "nominal and compensatory damages, including past and future pain and suffering, past and future treatment costs, and other amounts as allowed by law in an amount to be determined." *Id.* at 66.

On November 1, 2023, the Court issued an *Order on Initial Pretrial Conference* ("*IPT Order*"). ECF No. 48. The *IPT Order* set Plaintiffs' deadline to designate experts for June 14, 2024 and Defendants' deadline to designate experts for July 31, 2024. *Id.* at 3. Relevantly, the *IPT Order* states: "In cases where treating medical or mental health providers, . . . may or will be called to testify in part or in full as an expert witness, **the party calling the medical or mental health providers shall designate them as expert witnesses**." *Id.* at 4 (emphasis in original).

On May 13, 2024, Plaintiffs filed a motion seeking to extend the deadline for Plaintiffs' expert disclosures from June 14, 2024 to July 14, 2024 and Defendants' expert disclosures from July 31, 2024 to September 13, 2024. ECF No. 69. In support of their motion, Plaintiffs asserted they "respectfully request an extension of these deadlines of 30 days each due to conflicts involving trial settings in other matters that prevent Plaintiffs' expert from having the time and ability to prepare, conference, and otherwise be available

2

to consult on this matter. Specifically, Plaintiffs' expert is facing conflicts due to trials relating to the Maui Fires, which were recently set to commence between now and June 2024." *Id*. at 2.[1] Plaintiffs' request for an extension of the deadline to designate experts was not explicitly or implicitly based upon any issues relating to their life care planning expert Ronald E. Snyder, M.D. and his inability to gather/obtain information necessary to complete his life care plan.

On May 13, 2024, the Court entered a Text Order extending Plaintiffs' expert designation deadline to July 15, 2024 and Defendants' expert designation deadline to September 13, 2024. ECF No. 70.

Plaintiffs' *Initial Expert Witness Disclosures* ("*Initial Disclosures*") were timely filed on July 15, 2024. ECF No. 73. Plaintiffs designated three retained experts: Ronald E. Snyder, M.D. (life care planner), Michael J. Schulz, M.S. (forensic fire investigator), and Derek A. King, M.S., P.E. (mechanical and electrical engineer). *Id*. Plaintiffs also identified six non-retained medical experts: Scott Sulentich, M.D., Kris Sherwin, PA-C, Giovanni Lewis, M.D., Michael Nelson, PT, Mindy Tollefson, MSW, LCSW, and Joel Robertson, PA; unnamed treaters from seven different medical facilities/institutions; and the catchall designation of "[a]ny and all other health care providers or health professional who rendered care to Plaintiffs relating to the underlying incident." *Id*. at 5. Attached as Exhibits A, B & C to Plaintiffs' *Initial Disclosures* are the curriculum vitae and reports of Dr. Snyder, Mr. Schulz, and Mr. King. *Id*.

---

[1] It is presumed that the reference to "Plaintiffs' expert" and "conflicts due to trials relating to the Maui Fires" is to Michael J. Schulz, M.S., Plaintiffs' forensic fire investigator.

3

On September 3, 2024, approximately a month and half after serving their *Initial Disclosures,* Plaintiffs filed the present *Motion*. ECF No. 76. Ten days thereafter, Plaintiffs filed a memorandum in support of their Motion.[2] ECF No. 79. In the Motion, Plaintiffs request permission to amend their expert disclosures and designate two additional experts: (1) a yet unnamed plastic surgeon; and (2) forensic economist, Nik Volvov, Ph.D. ECF No. 76. Plaintiffs claim that, during the deposition of their life care planning expert Dr. Snyder, they learned that Mrs. Wadsworth's treating plastic surgeon, Dr. Christopher R. LaChappelle, refused to speak with Dr. Snyder regarding Mrs. Wadsworth's future plastic surgery needs. *Id.* at 3. They assert that Dr. Snyder made multiple attempts to contact Dr. LaChappelle only to learn that his employer, the University of Utah, does not allow its providers to speak with attorneys or life care planning experts regarding litigation related matters. *Id*. at 3. As a result, Plaintiffs claim they need to retain a non-treating plastic surgeon to speak about Mrs. Wadsworth's future plastic surgery needs. *Id.* Plaintiffs also raise, for the first time, the assertion that this non-treating plastic surgeon is necessary to discuss the future plastic surgery needs of W.W. *Id.* Finally, Plaintiffs contend that they mistakenly omitted their forensic economist from Plaintiffs' *Initial Disclosures* necessitating his late addition. ECF No. 76 at 3.

Defendants oppose Plaintiffs' Motion, arguing that Plaintiffs have not shown good cause to amend their expert disclosures and that allowing Plaintiffs to designate new

---

[2] Plaintiffs do not address why they failed to file the memorandum in support contemporaneously with their Motion. Neither the Federal Rules of Civil Procedure nor this Court's local rules permit delayed filing of a brief or memorandum in support of a motion.

4

experts would be unduly prejudicial to the defense. ECF No. 81 at 2.³ Defendants assert that Plaintiffs did not act diligently in providing necessary information to their experts in order for them to testify intelligently and also failed to timely file the subject Motion. *Id.* at 6–8.

The discovery cutoff in the above-captioned case expired on May 15, 2024 with the following pending dates and deadlines: (1) Dispositive Motions and *Daubert* Challenges – December 2, 2024; (2) Stipulations as to Facts – January 22, 2025; (3) Motions in Limine – January 22, 2025; (4) Independent Medical Examination – January 27, 2025; (5) exchange of Witness and Exhibit lists – January 31, 2025; (6) submission of the parties Joint Proposed Final Pretrial Order – February 4, 2025; (7) Final Pretrial Conference – February 11, 2025; (8) submission of the parties' Proposed Voir Dire Questions, Jury Instructions, Verdict Forms & Joint Statement – February 24, 2025; and (9) Jury Trial – March 3, 2025 – scheduled for twelve days. ECF No. 78.

## RELEVANT LAW

### A.   Amending Scheduling Orders

Federal Rule of Civil Procedure 16(b)(4) states: "A schedule may be modified only for good cause with the judge's consent." The advisory committee notes to Rule 16 explain: "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order

---

³ Defendants also allege that Plaintiffs failed to substantively confer with them prior to the filing of Plaintiffs' Motion. ECF No. 81 at 2. The Court agrees that Plaintiffs' counsel did not make a good faith effort to confer with counsel for Defendants prior to filing the Motion in accordance with both the language and spirit of U.S.D.C.L.R. 7.1(b)(1)(A). Notwithstanding, the Court addresses herein the merits of Plaintiffs' Motion.

5

is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test." FED. R. CIV. P. 16, Advisory Committee Note (1983 Amendment). *See also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) ("In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts.") (citation and internal quotation marks omitted)); *Street v. Curry Bd. of Cnty. Comm'rs*, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019).

Other courts within the Tenth Circuit have held:

> [T]he "good cause" standard primarily considers the diligence of the party. . . . . The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. **Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief**.

*Pulsecard, Inc. v. Discovery Card Servs., Inc.*, 168 F.R.D. 295, 301 (D. Kan. 1996) (alterations in original) (internal quotation marks omitted) (emphasis added). "Good cause" also "obligates the moving party to provide an adequate explanation for any delay." *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) (quotation marks omitted). Furthermore, "'[m]ere failure on the part of counsel to proceed promptly with the normal process of discovery and trial preparation . . . should not be considered good cause.'" *Tesone*, 942 F.3d at 989 (quoting *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005)).

Courts are "afforded broad discretion in managing the pretrial schedule." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011). Despite this "broad discretion,"

6

the Tenth Circuit has concluded that "total inflexibility is undesirable." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). "While a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, . . . rigid adherence to the . . . scheduling order is not advisable." *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (quotation and citation omitted). Moreover, "a scheduling order which produces an exclusion of material evidence is a 'drastic sanction.'" *Summers*, 132 F.3d at 604.

### B. Disclosure of Experts

Rule 26(a)(2)(B) requires that a party disclose to other parties the identity of a person who may be used at trial to present evidence in the form of expert testimony, and that a report the expert prepares and signs accompany that disclosure. FED. R. CIV. P. 26(a)(2)(B). *See also* U.S.D.C.L.R. 26.1(e); *Smith v. Ford Motor Co.*, 626 F.2d 784, 795–96 (10th Cir. 1980).

The rules also include sanctions for insufficient disclosures. FED. R. CIV. P. 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).

The Advisory Committee Notes to Rule 37(c) state as follows:

> Limiting the automatic sanction to violations "without substantial justification," coupled with the exception for violations that are "harmless," is needed to avoid unduly harsh penalties in a variety of situations: e.g., the inadvertent omission from a Rule 26(a)(1)(A) disclosure **of the name of a**

7

**potential witness known to all parties**; the failure to list as a trial witness a person so listed by another party; or the lack of knowledge of a pro se litigant of the requirement to make disclosures.

FED. R. CIV. P. 37 Advisory Committee Notes (1993 Amendment) (emphasis added).

"The determination of whether a Rule 26(a) violation is [substantially] justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir.1999). The Tenth Circuit Court has identified four factors to consider when addressing whether a supplementation is substantially justified or harmless: (1) the prejudice or surprise; (2) the ability to cure the prejudice; (3) trial disruption; and (4) any bad faith or willfulness by the moving party. *Id*.

### RULING OF THE COURT

As an initial matter, the Court finds that Plaintiffs' *Initial Disclosures* do not comply with FED. R. CIV. P. 26(a)(2), U.S.D.C.L.R. 26.1(e) or the Court's *IPT Order*. Specifically, Plaintiffs' designation lacks: (1) the identity of all experts they may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705; (2) a comprehensive statement concerning each of the experts' opinions and the corresponding factual basis for such opinions; (3) for the retained experts, a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (4) for the retained experts, a statement of the compensation to be paid for the study and testimony in the case. FED. R. CIV. P. 26(a)(2). This is in direct contravention of the express language found in the Court's *IPT Order* and established precedent in this district that a party must provide the subject matter and a summary of the facts and opinions to which the expert will testify, even for non-retained experts. *See* Order on Initial Pretrial Conference, ECF No. 48 at 4; *see also, Wapiti Corp. v.*

8

*Thorcon Shotcrete & Shoring, LLC*, 2023 WL 4893544, at *3 (D. Wyo. Apr. 11, 2023); *McBride v. Kmart Corp.*, 2015 WL 13545913, at *1 (D. Wyo. Jan. 14, 2015). As explained below, the Court makes this finding because it is germane to the argument that the need for more time to designate two new experts was neither foreseeable nor the fault of Plaintiffs. *Tesone*, 942 F.3d at 988 (quoting 3 JAMES WM. MOORE, *Moore's Federal Practice* – Civil § 16.14[1][b] (3d ed. 2019)).

### A. **Plaintiffs Have Not Shown Good Cause**

The Court finds that Plaintiffs have not made the good cause showing required by Rule 16(b)(4) to amend their expert designation and add two new experts after the deadline established by the Court's May 13, 2024 Text Order.

#### i. Forensic Economist Nik Volvov, Ph.D.

The sole reason stated by Plaintiffs for seeking leave to add forensic economist Nik Volvov, Ph.D ("Dr. Volvov"). as an expert after their deadline for disclosing experts expired is that they "accidentally omitted" him from their *Initial Disclosures*. ECF 76 at 3. Accordingly, the need for more time to designate Dr. Volvov is a result of Plaintiffs' own fault and carelessness. However, under Rule 16's "good cause" standard, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Pulsecard*, 168 F.R.D. 295, 301 (D. Kan. 1996).

Furthermore, even if the Court were to apply the less stringent Rule 37 "substantially justified" or "harmless" standard to Plaintiffs' omission of Dr. Volvov, the exception to the automatic sanction precluding testimony from an unidentified witness does not apply here because Dr. Volvov was NOT a witness known by all the parties. FED. R. CIV. P. 37 Advisory Committee Notes (1993 Amendment). Additionally, since Dr. Volvov was unknown to

9

Defendants, allowing him to be designated as an expert at this time would result in both surprise and prejudice. The deadline for Defendants to designate experts has expired. Therefore, absent obtaining leave from the Court, Defendants have no ability to designate a counter or rebuttal expert to Dr. Volvov.

Next, although trial is not set to begin until March 3, 2025, allowing Plaintiffs to add Dr. Volvov as an expert at this late date could substantially affect other pre-trial deadlines including the dispositive motions and *Daubert* challenges deadline as well as the motions in limine deadline. Finally, Plaintiffs have not asserted, and the Court does not find, that excluding testimony from Dr. Volvov would result in the exclusion of material evidence or that the exclusion of such testimony would be dispositive of Plaintiffs' case and produce a fundamental unfairness at trial. *See Summers*, 132 F.3d at 604; *Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980).

ii. Non-Treating Plastic Surgeon

Plaintiffs seek leave to add a non-treating plastic surgeon as an expert because, during the deposition of their life care planning expert Dr. Snyder, they learned that Mrs. Wadsworth's treating primary plastic surgeon, Dr. LaChappelle, refused to speak with Dr. Snyder regarding Mrs. Wadsworth's future plastic surgery needs. ECF No. 79 at 3.

Since filing the *Complaint* on July 6, 2023, Plaintiffs have asserted that they are entitled to recover damages for future treatment costs. ECF No. 1 at 66. Accordingly, Plaintiffs and their counsel knew, or should have known, that their treating healthcare providers would need to provide information concerning what future treatment would reasonably be necessary. In addition, Plaintiffs counsel knew, or should have known, that in order for a life care planning expert to determine the cost of future plastic surgery treatment, he/she would need to know

what future plastic surgery Mrs. Wadsworth needs and that such information would need to come from her treating plastic surgeon, Dr. LaChappelle.

In Plaintiffs' *Initial Disclosures*, life care planning expert Ronald E. Snyder, M.D. was designated "to testify as to [Mrs. Wadsworth's] injuries and **her future care needs** as a result of the incident that serves as the basis for this lawsuit. Dr. Snyder relies upon his education, training, background and experience, as well as his review of relevant medical records, case materials, **conversations with treating providers**, and his assessment/examination of Stephanie Wadsworth as the basis for his opinions."[4] ECF No. 73 at 2 (bracketed material supplied) (bold emphasis added). Attached as Exhibit A to Plaintiffs' *Initial Disclosures* is the curriculum vitae of Dr. Snyder and his expert report dated June 4, 2024. ECF No. 73-1. However, nowhere in the report of Dr. Snyder does he mention any conversations with treating providers as a basis for his life care opinions. *Id*. Instead, Dr. Snyder's report states "[t]he opinions in this case are the opinions of this examiner. Evaluation has been conducted based on the representation of the examinee during the medical examination and review of medical records from multiple caregivers, with the assumption that the information is true and correct." *Id*. at 67. Of note, nowhere in the report does Dr. Snyder state that he was unable to communicate with Dr. LaChappelle about Mrs. Wadsworth's future plastic surgery needs, nor does he state that his report is incomplete because of missing or incomplete information. *Id*.

Dr. Snyder's deposition was taken on August 14, 2024, one month after Plaintiffs' *Initial Disclosures* were filed. ECF No. 81-2. Plaintiffs assert "[d]uring the deposition of Dr.

---

[4] Plaintiffs did not designate Dr. Snyder to testify as to W.W.'s future care needs resulting from the fire. ECF No. 73. Dr. Snyder admitted in his deposition that he was not retained to offer any life care opinions concerning W.W. ECF No. 81-2 at 7:11-24 & 171:14-24. Further, Plaintiffs have not made a good cause showing why they should be allowed to amend Dr. Snyder's report to add expert opinion regarding W.W.'s future care needs. Accordingly, the Court denies Plaintiffs Motion to amend the opinions of Dr. Snyder to include W.W.'s future care needs.

11

Snyder, he testified that he attempted to communicate with Mrs. Wadsworth's main plastic surgeon at the University of Utah, Dr. LaChapelle, to discuss her future plastic surgery needs. Dr. LaChapelle did not respond to Dr. Snyder." ECF No. 76 at 3. However, Dr. Snyder admitted in his deposition that he did not send a letter to Dr. LaChappelle until June 6, 2024, two days after he had completed his report. ECF No. 81-2 at 37:7–21. Further, Dr. Snyder testified that he discussed with Plaintiffs' counsel his need for information from Mrs. Wadsworth's plastic surgeon. *Id.* at 39:5–11. Whether Dr. Snyder spoke with Plaintiffs' counsel about the need for information from Mrs. Wadsworth's plastic surgeon before or after the expert designation deadline is unknown. Nevertheless, Plaintiffs filed Dr. Snyder's report on July 15, 2024, wherein he makes no mention of any missing or incomplete information from Mrs. Wadsworth's plastic surgeon. *See* ECF 73-1.

The Court finds that Plaintiffs' counsel could have, with reasonable diligence, obtained the information from Dr. LaChapelle regarding Ms. Wadsworth's future plastic surgeon needs prior to filing Plaintiffs' *Initial Disclosures*.[5] Plaintiffs presented no facts showing that they acted diligently. Instead, after securing one extension of time to designate experts, Plaintiffs now ask for leave to designate a non-treating plastic surgeon simply because Dr. Snyder was unable to communicate with Dr. LaChappelle. Plaintiffs provide no explanation as to why they could not have come to this realization prior to the July 15, 2024 designation deadline. The Court therefore concludes that they have not shown good cause. *See Tesone*, 942 F.3d at 989 (quoting *Dag Enters*, 226 F.R.D. at 105 ("[F]ailure on the part of counsel to proceed promptly

---

[5] Plaintiffs' counsel could have scheduled and coordinated a conference call with Dr. LaChappelle, obtained an affidavit from Dr. LaChappelle or issued a subpoena or notice to take his deposition, to cite a few examples.

12

with the normal process of discovery and trial preparation . . . should not be considered good cause.")).

Absent a finding of good cause under Rule 16(b)(4), the Tenth Circuit does not require this Court to apply the four factors set forth in *Woodworker's Supply*. *See Waite v. Eduro Healthcare, LLC*, 2024 WL 3678028, at *3 (D. N.M. July 31, 2024); *Little v. Budd Company*, 2018 WL 836292, at *4 (D. Kan. Feb. 13, 2018). Notwithstanding, when analyzing each of the four factors, the Court finds that allowing Plaintiffs to designate a non-treating plastic surgeon after the July 15, 2024 designation deadline is not substantially justified or harmless.

The Court concludes that the first factor weighs against granting Plaintiffs' Motion. Plaintiffs not only failed to substantively confer with Defendants, they also filed their Motion less than two weeks before Defendants' own expert designations were due and their supplemental brief on the day that Defendants' expert designations were due. With the deadline to file dispositive motions looming, granting Plaintiffs leave to add two brand-new experts is almost certain to prejudice Defendants.

Plaintiffs suggest that any prejudice to Defendants could be cured by granting them the opportunity to "retain and designate a new medical expert" or by allowing their expert to "amend his report and deposition testimony." ECF No. 79 at 7. While this is certainly true to an extent, the present deadlines in this case, along with the March 3 trial setting mean that Defendants will have less than a month to reorganize their expert designation list, amend expert reports and conduct depositions of any new experts, all while trying to draft any dispositive or *Daubert* motions. If the Court were to grant the Motion, there is a very high likelihood that it would require other deadlines to be pushed back, including the

13

trial date. Therefore, the Court finds that the second and third factors weigh against granting Plaintiffs' Motion.

As to the fourth factor, while the Court does not believe that Plaintiffs acted in bad faith or with ill intent, it is difficult not to acknowledge a glaring lack of diligence in correcting the errors raised by the Motion. Plaintiffs filed their Motion nearly two months after the original deadline to disclose their expert witnesses. EFC No. 79 at 2. Moreover, Dr. LaChapelle, a witness who is apparently crucial to obtaining any information about Mrs. Wadsworth's future plastic surgery needs, is nowhere to be found in Plaintiffs' initial expert designation. If this were a lengthier, more complex case, with numerous medical experts, the accidental omission of a treating medical expert, or even an expert forensic economist, might be understandable. However, Plaintiffs entire expert designation list consists of nine people. ECF No. 73. Failing to notice that two important witnesses were missing until two months later is a bit bewildering under the circumstances.

Finally, Plaintiffs have not asserted, and the Court does not find, that precluding Plaintiffs from designating a non-treating plastic surgeon to testify about Mrs. Wadsworth's future plastic surgery needs would result in the exclusion of material evidence or that the exclusion of such testimony would be dispositive of Plaintiffs' case and produce a fundamental unfairness at trial. *See Summers*, 132 F.3d at 604; *Smith*, 626 F.2d at 794. Regardless, absent a finding of good cause, the Court denies Plaintiffs' Motion.

## CONCLUSION

Plaintiffs inadvertent failure to list Dr. Volvov in their expert witness disclosures does not constitute good cause nor does it qualify as an exception to the automatic sanction

14

precluding testimony from an unidentified witness under Rule 37. Further, the Court does not find that the reasons articulated by Plaintiffs provide good cause for allowing them to designate a non-treating plastic surgeon after the July 15, 2024 designation deadline. Additionally, given the analysis of the four factors discussed above, as well as the lack of diligence on the part of the Plaintiffs, the Court concludes that Plaintiffs' proposed amendment to their expert designation is neither substantially justified nor harmless.

THEREFORE, IT IS ORDERED Plaintiffs' *Motion to Amend Expert Witness Disclosures* (ECF No. 76) is DENIED without prejudice.

Dated this 18 day of November 2024.

Scott P. Klosterman
United States Magistrate Judge

15