# EXHIBIT 2



# Sweetwater County Sheriff

Incident #: S22-01535

Reporting Officer: JOHN HANSEN

Report Time: 02/01/2022 04:27:10

## Incident

Incident Nature  
Fire

Address  
1620 HWY 374  
GREEN RIVER, Wyoming 82935

Occurred From  
02/01/2022 04:27:02

Occurred To  
02/01/2022 04:30:43

Contact  
RYAN PASBORG

Disposition  
Closed Case

Approved By

Disposition Date  
02/01/2022

Cargo Theft Related

Responding Officer(s)  
JOHN HANSEN  
RICHARD KAUMO  
ASHLEY MCPHIE  
MATT BARTOLOTTA  
SCOTT MORRIS  
DEREK MORRELL  
CHRIS THOMAS  
JEFF SHEAMAN

Circumstances  
No Bias

Exhibit 0016  
11/16/2023  
Jeff Sheaman

## Offenses

### Fire

Completed?

Method Of Entry

Gambling Motivated?

Premises Entered?

Location Type

Cargo Theft Related?

Statute

Description

Category

Name

Relationship

## Agency Assist

| | | |
|---|---|---|
| Completed? | Method Of Entry | Gambling Motivated? |
| Premises Entered? | Location Type | Cargo Theft Related? |
| Statute | Description | Category |
| Name | Relationship | |

## Persons

### WADSWORTH, MATTHEW
### OTHER CONTACT PERSON

Address
1620 HWY 374
GREEN
RIVER Wyoming 82935

Phone
(307)871-5835

DOB
██/██/██

Race
N-White, Non-Hisp

Sex
M

Ethnicity
Non-Hispanic

Height
6'03"

Weight
250

### PASBORG, RYAN J
### OTHER CONTACT PERSON

Address
4036 RIO VERDE DR
GREEN
RIVER Wyoming 82935

Phone
(307)448-0268

DOB
██/██/██

Race
N-White, Non-Hisp

Sex
M

Ethnicity
Non-Hispanic

Height
5'09"

Weight
185

### WADSWORTH, STEPHANIE M
### OTHER CONTACT PERSON

Address
1620 HWY 374
GREEN
RIVER Wyoming 82935

Phone

DOB
██/██/██

Race
N-White, Non-Hisp

Sex
F

Ethnicity

Height
5'07"

Weight
180

### WADSWORTH, KAMILE M
### OTHER CONTACT PERSON

Address

Phone

DOB

1620 HWY 374
GREEN
RIVER Wyoming 82935

F

Non-Hispanic

0

### WADSWORTH, GUNER
### OTHER CONTACT PERSON

Address
1620 HWY 374
GREEN
RIVER Wyoming 82935

Phone

DOB

Race
N-White, Non-Hisp

Sex
M

Ethnicity
Non-Hispanic

Height

Weight
0

### WADSWORTH, LAYNE
### OTHER CONTACT PERSON

Address
1620 HWY 374
GREEN
RIVER Wyoming 82935

Phone

DOB

Race

Sex
M

Ethnicity
Non-Hispanic

Height

Weight
0

### WADSWORTH, WESTON
### OTHER CONTACT PERSON

Address
1620 HWY 374
GREEN
RIVER Wyoming 82935

Phone

DOB

Race

Sex
M

Ethnicity
Non-Hispanic

Height

Weight
0

## Narratives

### Original Narrative                           02/01/2022 22:19:57

ORIGIN:

On February 1, 2022 at approximately 0428 hours, Deputy Sheriff (DS) Hansen was dispatched to the area of 1620 Highway 374, Green River, Sweetwater County, WY in reference to a structure fire.

OFFICER'S ACTIONS/OBSERVATIONS:

DS Hansen arrived on scene at approximately 0439 hours and made contact with a male on the turnoff from Hwy 374 to the residence on fire later identified as Ryan Pasborg (DOB: ██/██/█████

Pasborg informed DS Hansen that he had gotten everyone, 1 adult female and 4 kids, out of the house and they were waiting in his truck parked next to HWY 374. Pasborg advised that the adult female was badly burned. DS Hansen advised EMS of the location of the patients and patient update. DS Hansen observed an EMT arrive and start to evaluate the patients in the truck. DS Hansen went to the house to make sure no other people were in the residence.

DS Hansen observed a house engulfed in flames. Heavy smoke prevented deputies from getting a decent visual of the interior of the residence. DS Hansen walked around the entire perimeter of the house and observed a power line that was connected to the house was down on the ground, still connected to the power pole but detached from the house. DS Hansen observed the electricity breaker to shut the power off was in the engulfed area. DS Hansen did not discover any signs of anyone being inside the house at that time.

Green River Fire Department arrived on scene.

DS McPhie gathered information of the patients and their statements. (See DS McPhie Supplement Report).

The mother, later identified as Stephanie Wadsworth (DOB: ██/██/█████ and son, Weston Wadsworth (DOB: ██/██/█████ were transported to the Memorial Hospital of Sweetwater County due to the severity of their injuries.

Deputies secured the perimeter for the Fire Department while they extinguished the fire. DS Hansen was relieved of his post while fire was in the process of being fully extinguished.

SCENE DESCRIPTION:

1620 Highway 374, Green River, Sweetwater County, WY

EVIDENCE:

Body worn audio and video footage uploaded to Evidence.com

DISPOSITION:

Forward to Sweetwater County Sheriff's Office Detective division for further investigation.


**Supplemental Narrative**     02/01/2022 11:01:18   CARRIE WILLIAMS


CAD Call info/comments
==================================

04:28:07 02/01/22   - TEBEDO A
Chief Complaint: Structure Fire
Caller Statement: house is on fire on the north
side of the house/fully engulfed
04:28:43 02/01/22   - TEBEDO A
ProQA Code: 69D06
Unit Response: D-DELTA
 - The caller is on scene (2nd
party).
 - A multi-story structure is involved: 2
 - Flames are visible.
 -

The incident involves a single-family residential structure.
04:30:04 02/01/22   - TEBEDO A
Reconfigure ProQA Code: 69D06   Suffix: X   Suffix Text: Single injured
person
Unit Response: D-DELTA
 - Animals are trapped inside the structure.
 -
It is not known how many animals are trapped.
 - The location is: in front of
the house
 - Someone is injured.
 - One person is injured.
 - The exact
location of the fire is: in the house
 - Floor: kitchen area main level
04:38:13 02/01/22   - HOOK A - From: HANSEN J
   EMS NEEDS TO RESPOND TO ENTRANCE OF DIRT ROAD FEMALE IN WHI TK WITH
SEVERE
BURNS AND HAVING DIFFICULTY BREATHING

04:49:04 02/01/22   - LESSARD A
*DOWN WIRE ON THE EAST SIDE OF THE HOME
05:21:25 02/01/22   - HOOK A - From: MCPHIE A
   MOM AND 4 YR OLD WERE TAKEN TO HOSPITAL/OTHER KIDS WERE CHECKED BY EMS AND
HAD
NO BURNS THEY WERE TAKEN TO GRANDMAS HOUSE

05:33:26 02/01/22   - KAUMO R
Stephanie Wadswroth (mom), Ryan Pasborg (dad), layne, Weston and Guner Wadsworth
all were able to get out.  Stephanie was burned pretty on several parts of body
and possible inside throat, Weston was had minor burns.  both Weston (4 yr.)
and Stephanie transported to MHSC via EMS.
05:34:55 02/01/22   - KAUMO R
correction>> Ryan was a passer by that ran in and help get the child and Mom out
of the house.  Dad is Matthew Wadsworth who was at work at this time.
07:26:02 02/01/22   - BACH K
lavone wadsworth/1600 hwy 372/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:29:48 02/01/22   - BACH K
lavone wadsworth/1600 hwy 374/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:32:05 02/01/22   - BACH K
STACY MARTIN 1622 HWY 374/UNK NOW IF SHE IS ON OXYGEN BUT SHE IS REALLY SICK
07:38:43 02/01/22   - WILLIAMS C - From: MORRELL D
   EVERYONE AT 1622 IS FINE AND NO ONE IS ON OXYGEN, THEY DO HAVE POWER

08:01:56 02/01/22   - BACH K
GC2:HAVE COUNTY AC COME OUT WE FOUND 2 DECEASED DOGS
10:30:53 02/01/22   - THOMAS C
a rotti and a lab mix - will keep until I hear from a family memeber of owners
11:00:27 02/01/22   - MORRIS S
DS Morris collected multiple firearms and a small safe from the residence the
Fire Department didn't feel safe leaving in the residence. DS Morris spoke with
Matt Wadsworth and he advised the items could be taken to his sister (Amanda
Lamb's) residence at 3930 Johnson Way in Jamestown.  DS Morris took firearms and
safe and turned them over to Amanda Wadsworth at Matt's request.  None Further.


## Supplemental Narrative          02/01/2022 15:25:44   CARRIE WILLIAMS

```
CAD Call info/comments
==================================
04:28:07 02/01/22   - TEBEDO A
Chief Complaint: Structure Fire
Caller Statement: house is on fire on the north
side of the house/fully engulfed
04:28:43 02/01/22   - TEBEDO A
ProQA Code: 69D06
Unit Response: D-DELTA
 - The caller is on scene (2nd
party).
 - A multi-story structure is involved: 2
 - Flames are visible.
 -
The incident involves a single-family residential structure.
04:30:04 02/01/22   - TEBEDO A
Reconfigure ProQA Code: 69D06   Suffix: X   Suffix Text: Single injured
person
Unit Response: D-DELTA
 - Animals are trapped inside the structure.
 -
It is not known how many animals are trapped.
 - The location is: in front of
the house
 - Someone is injured.
 - One person is injured.
 - The exact
location of the fire is: in the house
 - Floor: kitchen area main level
04:38:13 02/01/22   - HOOK A - From: HANSEN J
  EMS NEEDS TO RESPOND TO ENTRANCE OF DIRT ROAD FEMALE IN WHI TK WITH
SEVERE
BURNS AND HAVING DIFFICULTY BREATHING

04:49:04 02/01/22   - LESSARD A
*DOWN WIRE ON THE EAST SIDE OF THE HOME
05:21:25 02/01/22   - HOOK A - From: MCPHIE A
  MOM AND 4 YR OLD WERE TAKEN TO HOSPITAL/OTHER KIDS WERE CHECKED BY EMS AND
HAD
NO BURNS THEY WERE TAKEN TO GRANDMAS HOUSE

05:33:26 02/01/22   - KAUMO R
Stephanie Wadswroth (mom), Ryan Pasborg (dad), layne, Weston and Guner Wadsworth
all were able to get out.  Stephanie was burned pretty on several parts of body
and possible inside throat, Weston was had minor burns.  both Weston (4 yr.)
and Stephanie transported to MHSC via EMS.
05:34:55 02/01/22   - KAUMO R
correction>> Ryan was a passer by that ran in and help get the child and Mom out
of the house.  Dad is Matthew Wadsworth who was at work at this time.
07:26:02 02/01/22   - BACH K
lavone wadsworth/1600 hwy 372/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:29:48 02/01/22   - BACH K
lavone wadsworth/1600 hwy 374/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:32:05 02/01/22   - BACH K
STACY MARTIN 1622 HWY 374/UNK NOW IF SHE IS ON OXYGEN BUT SHE IS REALLY SICK
07:38:43 02/01/22   - WILLIAMS C - From: MORRELL D
  EVERYONE AT 1622 IS FINE AND NO ONE IS ON OXYGEN, THEY DO HAVE POWER
```

```
08:01:56 02/01/22   - BACH K
GC2:HAVE COUNTY AC COME OUT WE FOUND 2 DECEASED DOGS
10:30:53 02/01/22   - THOMAS C
a rotti and a lab mix - will keep until I hear from a family memeber of owners
11:00:27 02/01/22   - MORRIS S
DS Morris collected multiple firearms and a small safe from the residence the
Fire Department didn't feel safe leaving in the residence. DS Morris spoke with
Matt Wadsworth and he advised the items could be taken to his sister (Amanda
Lamb's) residence at 3930 Johnson Way in Jamestown.  DS Morris took firearms and
safe and turned them over to Amanda Wadsworth at Matt's request.  None Further.

11:15:54 02/01/22   - PALMER L - From: ROBINSON W
FIRE DEPT WILL BE CLEAR. LEAVE THE CALL OPEN / I WILL BE BACK OUT HERE TO
DO
INVESTIGATION

11:36:22 02/01/22   - SHEAMAN J
Sgt. Hall and myself will respond to the scene later to assist GRFD with
determining origin and cause
12:05:25 02/01/22   - PALMER L
Call type f reopened by PALMER L at 12:05:25 02/01/22

12:25:20 02/01/22   - THOMAS C
1146 hours spoke to LaVonne Wadsworth, mother/mother-in -law of pet owners, she
advised that she wanted to thank me for holding onto the animals however they
owners have a long and bigger road ahead of them & asked me to take care of the
2 dogs
12:27:32 02/01/22   - THOMAS C
1146 hours spoke to LaVonne Wadsworth, mother/mother-in -law of pet owners, she
advised that she wanted to thank me for holding onto the animals however they
owners have a long and bigger road ahead of them & asked me to take care of the
2 dogs - I advised the only legal option I have is to take them to the landfill,
she understood this and made the executive decision for me to take care of the
animals
12:43:52 02/01/22   - WILLIAMS C
Call type l reopened by WILLIAMS C at 12:43:52 02/01/22
```

## Supplemental Narrative     02/01/2022 16:18:38   JEFF SHEAMAN

ORIGIN:

On February 1, 2022 Detective Sheaman was made aware of a structure fire in Jamestown, Sweetwater County, WY that injured several people, including a 34 year old female and her 4 year old son.

OFFICER'S ACTIONS/OBSERVATIONS:

Det. Sheaman, who is a certified origin and cause investigator in the state of Wyoming, was summoned to the scene (1620 Hwy. 374) by fire personnel from the Green River Fire Department.  Det. Sheaman responded to the scene at approximately 13:00 hours on February 1, 2022 and met with Assistant Fire Chief's Bill Robinson and Larry Erdmann.  Chief Robinson informed Det. Sheaman that he had been inside the house already during fire fighting efforts and after the fire had been extinguished.  He had made a determination on where he believed the fire had started inside the residence but wanted Det. Sheaman and Chief Erdmann to evaluate the fire and form non bias opinions about the origin and cause of the fire.

EVIDENCE PROCESSING:

Det. Sheaman donned protective clothing and entered the house through the front door, which faced north, towards the interstate.  Before walking through the elevated front door, Det. Sheaman had to walk up a metal stairway that was parallel to the house.  Upon entering the home, Det. Sheaman noticed extensive

fire damage. It was believed the home was a total loss. The front door led into the kitchen area of the home. Past the kitchen (continuing south through the home) was a doorway into a living room area. To the left of the doorway leading into the living room was a hallway that led towards the back of the home. The hallway led to a bathroom and several bedrooms.

Det. Sheaman noticed that there was extensive fire damage at the beginning of the hallway near a doorway that led into a bedroom on the north side of the house. The door jams, walls and ceiling, including the rafters, were heavily burned and destroyed. Det. Sheaman continued walking down the hallway towards the back bedrooms and bathroom. Det. Sheaman noticed extensive smoke damage towards the back of the hallway near the entrance to the bedrooms and back bathroom. Det. Sheaman could see that the walls were covered in vertical wood paneling and smoke damage was noticed on the majority of the walls in the hallway, starting approximately two feet up from the floor. This showed that smoke from the fire commonly rose upwards until it met the ceiling, then continued sideways until it met the walls. The smoke then lowered towards the floor as the fire continued to burn, showing the distinct smoke damage pattern on the walls.

The back bedrooms were heavily damaged by smoke but items inside the rooms, including books, clothing and furniture, were easily recognizable. (This was not the case in the first bedroom near the start of the hallway near the kitchen).

Det. Sheaman focused his attention towards the first bedroom off of the hallway. Det. Sheaman noticed that vertical, wood studs that were between the bedroom and the hallway were heavily burned in a distinct "V" pattern, down towards the floor near the doorway leading into the bedroom. The top of the studs on the wall further back into the hallway were burned away near the roof. Each stud leading towards the doorway into the bedroom were burned further down towards the floor, showing there was more intense heat near the doorway. On the opposite wall in the hallway, Det. Sheaman noticed a similar pattern on the burned wood paneling. (This led investigators to believe the fire may have started somewhere near the doorway leading into the bedroom or somewhere inside the bedroom).

Inside the doorway into the bedroom, Det. Sheaman noticed extensive fire damage to studs and the rafters above. Det. Sheaman noticed that the back of the refrigerator in the kitchen was exposed from the bedroom after the siding or drywall behind the refrigerator was completely burned away. It was determined there was a narrow closet in the bedroom near a large window in the bedroom. Det. Sheaman observed a destroyed, metal light switch box that contained wires that ran to a damaged light fixture, dangling in what used to be the closet. (The back wall of the closet was the wall next to the front door where investigators gained entry into the house).

While observing electrical wiring and components in the bedroom and closet, Det. Sheaman found nothing suspicious. However, Det. Sheaman did notice an outlet that showed that something had been inserted into the lower plug. There was melted plastic covering the lower plug holes and wire were coming out of the melted plastic. (This showed that something may have been plugged into the outlet, maybe a charger).

Det. Sheaman focused his attention near the floor close to the entryway into the bedroom. (This was just below where the back of the refrigerator was exposed). Det. Sheaman noticed a heavily burned item lying on the floor but it was difficult to determine what it was initially. Det. Sheaman could see what was believed to be a tire or a wheel and batteries. In observing the item closer, Det. Sheaman determined the item was a Hoverboard riding toy, commonly used by children. As an origin and cause investigator, Det. Sheaman is aware that certain Hoverboards, with Lithium-ion batteries, are known to get hot and possibly catch fire or explode if plugged in for a long period of time and left unattended.

Det. Sheaman spoke to Chief Robinson and Chief Erdmann, who both agreed that the fire started in the bedroom, near where the Hoverboard was found. Investigators discussed whether there was a door hung in the doorway leading into the bedroom. Chief Erdmann mentioned if there was a door hung in the doorway, it would more than likely swing inwards (into the bedroom), to the left. Det. Sheaman later measured the doorway and it was believed there would have been a standard 28" or 32" door hung in the doorway, if there was a door present. Either size, the door would have opened up towards the wall, opposite of the kitchen, closely to where the Hoverboard was resting. If there was a door hung and it was opened or partially opened, the Hoverboard could have caught fire and severe heat from the fire could have been isolated momentarily in the void between the door and the wall. (The damage to that area showed this to be a credible hypothesis).

Det. Sheaman later sifted burned materials around the Hoverboard and found a striker plate to a doorway, along with door locking/opening hardware. Also, Det. Sheaman later researched the residence on

Realtor.com, after finding out it had recently been for sale. In researching the home on Realtor.com, Det. Sheaman found photographs of the inside of the residence, including one picture that was taken from the kitchen area, down the hallway towards the back bedroom. In the picture, which was later saved as evidence, the doorway leading into the bedroom where the Hoverboard was found, was visible. Det. Sheaman could see the wood paneling in the hallway and inside the bedroom and there was a door striker plate on the right side of the door jam, showing that there was probably a left swinging door hung in the doorway, as figured by investigators.

While inside the residence, Chief Robinson informed Det. Sheaman that it was believed the female victim, identified as Stephanie Wadsworth (DOB: ■/■/■■■■) was found in the hallway near the back bedrooms, when a passerby ran into the home to rescue her. Chief Robinson also explained that during mop up and overhaul procedures, two deceased dogs were located in one of the back bedrooms, inside two kennels. There was confusion as to why Stephanie was inside the residence but it was believed she may have exited the home but then ran back in to try and save the dogs. There was an exterior door on the east side of the residence that led directly into one of the back bedrooms and it was believed Stephanie may have entered the home through that door. Det. Sheaman and Chief Robinson discussed where inside the home the injured child was found. It was unknown where the child was located in the home, also by the passerby. The child was later identified as Weston Wadsworth (DOB: ■/■/■■■■

Further investigation showed that the passerby who allegedly found and pulled Stephanie and Weston out of the home was Ryan Pasborg (DOB: ■/■/■■■■ It was determined that Ryan lived just up the road on Rio Verde Drive.

After speaking with Chief Robinson and Chief Erdmann, Det. Sheaman exited the residence and retrieved his patrol camera. Det. Sheaman obtained numerous photographs of the outside of the residence before focusing his attention and taking photographs of the inside. Det. Sheaman obtained photographs of the entire residence before focusing his attention on the bedroom where it was believed the fire started. Det. Sheaman spoke with Detective Sergeant Hall over the phone and requested her assistance to take measurements and additional photographs of the bedroom, using a tape measurer. Sgt. Hall later responded to the residence to assist.

Det. Sheaman obtained photographs of the burned studs and door paneling near the entryway into the bedroom, to document the "V" pattern. Additional photographs of the pattern were taken using a tape measurer when Sgt. Hall arrived.

Det. Sheaman obtained photographs of the Hoverboard before turning it upside down. Det. Sheaman noticed that the carpet under the Hoverboard was burned but it was still easy to tell the thickness of the carpet (approximately 1"). Det. Sheaman obtained photographs of the carpet using a tape measurer. In reviewing other photographs of the residence on Realtor.com, and also the saved evidence photograph of the doorway, Det. Sheaman could tell that there was heavy, thick carpeting down the hallway and into the bedrooms. Det. Sheaman also used a scale to take several photographs of the Hoverboard, before removing it from the residence and placing it outside.

Once outside, Det. Sheaman took several other photographs of the Hoverboard, using the daylight to aid in seeing it better.

After evidence processing, Det. Sheaman placed the metal front door over the main doorway, partially securing the structure. Det. Sheaman left the scene.

Also on February 1, 2022, Det. Sheaman called Ryan Pasborg to set up an interview with him in regards to his alleged life saving efforts during the fire. (Det. Sheaman wanted to obtain further information from Ryan, including how he entered the home, where he found Stephanie and Weston, and fire behavior at the time, which could aid in the origin and cause investigation).

Ryan stated he was off of work during the day following the fire and was available for an interview immediately. Det. Sheaman asked Ryan to respond to the Sheriff's Office, which he did.

Det. Sheaman met with Ryan in the lobby of the Sheriff's Office and he was escorted to an interview room, which is equipped with audio and video recording equipment. In addition, Det. Sheaman activated his pocket recorder to additionally record the interview.

RECORDED INTERVIEW WITH RYAN PASBORG:

Det. Sheaman obtained personal information from Ryan, including his contact information and address.

Det. Sheaman asked Ryan to explain everything about witnessing and responding to the fire and his life saving efforts.  Ryan explained that he wakes up very early for work and usually leaves his house at around 04:00 hours.  He stated on the morning of the fire, he procrastinated getting out of bed and he did not leave his house to go to work until approximately 04:15 hours.  He stated as he traveled down Hwy. 374 towards Green River, he smelled smoke.  Ryan stated he thought about and questioned why someone would be burning trash that early in the morning.  He stated as he drove past the residence at approximately 04:20, he saw smoke and flames coming from the residence.

Ryan stated he did not see any emergency lights so believed the fire may not yet be reported or emergency responders were not yet on scene.  So he stated he pulled into the driveway and up to the house.  Ryan explained that he stopped on the northwest side of the house in his work truck.  Upon exiting his truck, Ryan stated he saw flames coming out of the window near the front door of the residence.  (This was the bedroom window where the Hoverboard was located).

Ryan stated he witnessed a young girl and two young boys walk out of a door on the north side of the house, leading into the garage.  Ryan stated the three children said their brother was still inside so he entered the home through the garage door and up several steps into the kitchen.  (Det. Sheaman had noticed a door leading from the kitchen into the garage during his origin and cause investigation).  Ryan stated he could not see anything inside the residence because of the heavy smoke.  He stated he did not know what room he was in or where the fire was.  He stated he low crawled into the house and heard smoke detectors going off.  Ryan stated he only crawled into the residence approximately 2-3' when he bumped into a small child, who he stated was on his hands and knees.  Ryan stated he grabbed the child around the waist, picked him up and carried him outside through the garage door.

Ryan explained when he brought the child outside, he put him and the three other children in his truck to keep them warm.  He then stated the children mentioned that their mother was still inside the residence.

Ryan stated he again entered the home through the garage door and he again low crawled into the residence through the door leading from the kitchen to the garage.  He stated he bumped into a woman, who was lying on her back.  He stated she was lying on the floor approximately 2-3' further from where he believed he found the child.  (By his description, Det. Sheaman believed that both Weston and Stephanie would have been in the kitchen area of the residence).  Ryan stated Stephanie was "gurgling" when he found her.  Ryan explained he positioned himself near Stephanie's head and he grabbed her under her arms to try and lift her to drag her out of the residence.  Ryan stated when he lifted Stephanie, he felt what he believed her skin "smear" off of her arms.

Ryan described having to stay low and drag Stephanie out of the house.  He explained that once outside, he laid her on the ground between the house and where his work truck was parked.  He stated he believed he heard her take her last breath and he decided to perform CPR.  Ryan, who is a volunteer Firefighter in Superior, stated he performed two sets of chest compressions and gave Stephanie two breaths between compressions.  He stated Stephanie took a "gasp of air" and she sat up and stood up.  Ryan stated he escorted her to his truck where she sat on the back seat on the driver's side.  Ryan explained she was sitting on her knees on the bench seat and was turned inward, facing the young girl and two boys.  He stated the other boy was in the front passenger side seat.

Ryan stated he got into the truck and drove to the end of the driveway to meet EMS and fire personnel.  Ryan stated he remembered yelling to the young female to call 9-1-1.  He stated he directed her to do so because he saw she was holding a cellular phone.

Ryan informed Det. Sheaman that while Stephanie was seated in his truck, he could see that she was struggling to talk or breathe and she appeared badly burned.  He stated he saw burns on her arms and her chest and head.

Ryan stated ambulance and fire personnel arrived on scene, as well as a deputy with the Sheriff's Office.  He stated he was interviewed briefly about the fire and eventually he drove the older girl and two boys to their grandmother's house nearby before he drove to Rock Springs.  He stated Stephanie and Weston were transported to the hospital by ambulance.

Ryan stated he called his boss and told him because of the fire, he would not be going to work.  He stated he drove his work truck to the C Store in Rock Springs where he dropped it off and picked up his personally owned truck and drove home.  Once at home, Ryan stated he talked to his fiancé' about the fire and then changed his clothes.

Ryan then explained that he drove back to Rock Springs in his personal vehicle and went to Walmart to

purchase clothing for the three children who he had dropped off earlier in the day at their grandmother's house. He stated he had obtained the grandmother's phone number and while at Walmart, he called her several times to determine what size of shoes the children wore. Ryan showed Det. Sheaman his cellular phone and a text message from the grandmother (Lavonne) at 07:39 hours. Lavonne told Ryan via text message the shoe sizes of the children and she explained she did not answer his phone call because she was on the phone. Ryan stated he purchased approximately $140.00 worth of clothing for the three children, Kamile Wadsworth (DOB: ██/██/████) Guner Wadsworth (DOB: ██/██/████) and Layne Wadsworth (DOB: ██/██/████) Ryan stated he bought the clothing using his money and also money provided by his sister-in-law, who he identified as Myranda Martinez.

Ryan stated after purchasing the clothing from Walmart, he drove back to Jamestown and dropped the clothing off with Lavonne and the children.

Prior to the conclusion of the interview, Det. Sheaman spoke to Ryan about what was believed to have caused the fire and the origin. Det. Sheaman obtained more information from Ryan, including where he worked. He stated he currently works at SOS Well Service.

Ryan was escorted out of the interview room and to the lobby of the Sheriff's Office. Det. Sheaman issued him a business card and he left the building.

OFFICER'S ACTIONS/OBSERVATIONS:

Following the interview with Ryan, Det. Sheaman called and spoke with Chief Robinson from GRFD. Det. Sheaman informed him about the statements Ryan made and how he was able to access the house to pull Stephanie and Weston out.

On February 2, 2022 Det. Sheaman called the University of Utah Burn Center to check on Stephanie and Weston's condition. Det. Sheaman talked to Colby Carper, who is the Nurse Manager in the burn unit. Colby explained that Stephanie's condition is "critical" and Weston is "stable." Because of HIPAA laws, Colby was unable to provide many details as to their conditions.

Also on February 2, Det. Sheaman called Matt Wadsworth to interview him briefly over the phone and to try and determine more information about Stephanie and Weston's condition. Det. Sheaman called Matt from his work cellular phone, which was placed on speaker mode so the interview could be audio recorded.

RECORDED PHONE INTERVIEW WITH MATT WADSWORTH:

Det. Sheaman identified himself to Matt, who was still at the University of Utah Burn Center with his wife and child. Det. Sheaman informed Matt about the fire investigation and that he had questions about the fire to aid with determining origin and cause.

Matt explained that he works at Church and Dwight in Sweetwater County and during the time of the fire, he was at work. He stated he works shiftwork and had gone to work at 19:30 hours on January 31, 2022 and was supposed to get off work at 07:30 hours on February 1, 2022. He briefly explained getting a phone call from his daughter after the fire. He stated she had called his work and employees at his work told him about the fire so he left work early to drive home.

Det. Sheaman asked Matt if he knew where everyone was sleeping in the house when the fire started and if those sleeping arrangements were common. Matt stated his wife has been sleeping in the living room on thick mats. He further explained that she had back surgery in April, 2021 and suffers from back pain. He stated it is common for her to sleep in the living room. (Det. Sheaman verified that the living room that Stephanie was sleeping in was the portion of the house with the rock fireplace). Matt stated Guner and Layne both sleep in the bedroom, closest to the kitchen. (This was where it was believed the fire started). He stated they sleep on a bunk bed, which was pushed up against the north wall, beneath the window. Matt further explained that Kamile's room is the first room on the right past the bathroom as one would walk down the hallway from the kitchen. He stated Weston's room is the second room on the right, past Kamile's.

Without saying anything about the Hoverboard or the belief that it may have started the fire, Det. Sheaman asked Matt if there were any electrical issues at the home. He stated when they first moved into the home, the entire electrical panel and breakers had to be replaced because the breakers would constantly pop. He stated there have been no electrical issues in the house since the box was replaced, which was approximately 3 1/2 years ago. Det. Sheaman asked Matt who replaced the electrical box and main breaker. He stated his uncle replaced it and he explained his uncle is a certified electrician and worked as

an electrician for years.

Matt explained that his two older boys, Guner and Layne, told him that they were asleep when the fire started. They both woke up feeling extreme heat in the bedroom. Matt stated they told him they saw flames and smoke and ran out of the room to wake up Stephanie. Matt stated he was told by his children that Stephanie woke up and ran to the back of the house to wake up Weston and Kamile. He stated once Kamile was awake, she and Guner and Layne ran outside. Stephanie then woke up Weston and it was believed that as they were trying to run out of the house, they were overtaken by the smoke.

Det. Sheaman again questioned Matt about electrical issues in the home and if he had concerns about anything being plugged in that may have caused the fire. Almost immediately, Matt stated he purchased a Hoverboard for the family over Christmas of 2021. He stated the Hoverboard is used constantly by his children and they plug it in several times a day after riding it until it runs out of power. Matt stated when he purchased the Hoverboard, he knew about safety concerns and that they were known to cause fires. He stated when he presented the Hoverboard to his kids, he explained to all of them that they were to not leave the device plugged in for long periods. He stated his children were aware of the safety concerns. However, he stated they have plugged the Hoverboard in for long periods of time in the past.

Det. Sheaman asked Matt about the Hoverboard being in Guner and Layne's bedroom. He explained the boys constantly play with the Hoverboard in their room. He stated it is common for them to shut the door of the bedroom and turn off the lights. He stated the Hoverboard has lights on it and they like riding it in their bedroom with the lights off to see the lights on the Hoverboard better. When asked where they usually plug the Hoverboard in, he stated there was an outlet next to the closet that they usually use to charge the Hoverboard. (He described the location of the outlet and Det. Sheaman determined this was exactly where the Hoverboard had been found during the origin and cause investigation).

In regards to the bedroom where the fire was believed to have started, Det. Sheaman verified that there was a left swinging door hung in the doorway of the bedroom. He stated when his sons sleep, they always shut the door because they like the darkness. He stated he was sure that the door to the bedroom would have been shut when the fire started.

In regards to the Hoverboard, Matt stated he still has a receipt for the device in his wallet from when he purchased it at Walmart. He stated he paid $128.00 for the device and he provided an item number (081199103159). Matt later informed Det. Sheaman that he purchased the Hoverboard on December 12, 2021.

Prior to the conclusion of the phone interview, Det. Sheaman asked Matt about Stephanie and Weston's condition. He stated Stephanie is listed as critical and she's being provided medication for pain. He stated is is intubated so she cannot speak but she has opened her eyes. Matt stated she suffered extreme burns to her hands, feet and back, which will require surgery. He also stated he was told by doctors that her lungs have been badly damaged.

Matt stated Weston suffered severe burns on his right hand and on his right knee and shin. He also stated the bottom of his left foot is badly burned.

Det. Sheaman informed Matt that he wanted to interview the children at a later time but would not set up interviews yet because the children were being brought to Utah to see Stephanie and Weston. Matt stated he understood about the needed interviews.

Det. Sheaman provided Matt with his contact information and asked him to call with any questions or concerns. The interview was then terminated.

OFFICER'S ACTIONS/OBSERVATIONS:

On February 3, 2022 Det. Sheaman responded to Walmart in Rock Springs to research the Hoverboards sold there. Det. Sheaman determined there were at lease five different brands and models of Hoverboards. Det. Sheaman also noticed that some of the shelves were empty where Hoverboards had been but the price tag and UPC code were still attached to the shelves where the items had been. Det. Sheaman closely observed one of the price tags that showed the item as a "Plasma IRS HOVBRD." The price of the item was $148.00. Det. Sheaman observed a four digit number on the tag (3159), which matched the last four numbers of the item number provided by Matt.

Det. Sheaman spoke to an employee at Walmart and asked him about the four digit number on the tag. He stated that was the item number or UPC code. The employee, who was not identified, used an

electronic device to scan the UPC code on the tag and he showed the result of the scan to Det. Sheaman. The item that appeared on his device showed the item as Plasma IRS Hoverboard, valued at $50.00 currently.  (The employee stated the item was currently on sale).  The employee explained that there were four of those Hoverboards in the back of the store.  He attempted to locate one to bring it out to show Det. Sheaman but later explained they were on a very high shelf and he was unable to retrieve one without a forklift.

In reviewing the item on the employees electronic device closer, Det. Sheaman could see a UPC number, which matched the number that Matt provided exactly.  When asked about the price difference ($128.00 versus $148.00), the employee explained that the item was on sale around Christmas and he believed it was on sale for $128.00.

Det. Sheaman obtained photographs of the price tag, UPC number and the Walmart employees device that he used to scan the tag.  Det. Sheaman later forwarded the pictures to Matt via Instagram and he verified that was the exact make and model of Hoverboard he purchased around Christmas.  Det. Sheaman also researched the model of Hoverboard on line and obtained a screen shot of the item, white in color.  Det. Sheaman sent that photograph to Matt, asking if it looked similar to the Hoverboard he purchased.  He stated it was similar and he sent Det. Sheaman a picture of one of his children unwrapping the Hoverboard during Christmas, 2021.  (This photograph was saved as evidence by Det. Sheaman).

EVIDENCE:

Audio and video recordings, along with photographs were all entered into electronic evidence by Det. Sheaman

DISPOSITION:

Supplemental report to follow with updated information regarding Stephanie and Weston's medical conditions and when other interviews are conducted with the other children in the home.


## Supplemental Narrative             02/01/2022 18:00:43   KIM BACH

CAD Call info/comments
=================================

04:28:07 02/01/22   - TEBEDO A
Chief Complaint: Structure Fire
Caller Statement: house is on fire on the north
side of the house/fully engulfed
04:28:43 02/01/22   - TEBEDO A
ProQA Code: 69D06
Unit Response: D-DELTA
 - The caller is on scene (2nd
party).
 - A multi-story structure is involved: 2
 - Flames are visible.
 -
The incident involves a single-family residential structure.
04:30:04 02/01/22   - TEBEDO A
Reconfigure ProQA Code: 69D06   Suffix: X   Suffix Text: Single injured
person
Unit Response: D-DELTA
 - Animals are trapped inside the structure.
 -
It is not known how many animals are trapped.
 - The location is: in front of
the house
 - Someone is injured.
 - One person is injured.

```
 - The exact
location of the fire is: in the house
 - Floor: kitchen area main level
04:38:13 02/01/22   - HOOK A - From: HANSEN J
  EMS NEEDS TO RESPOND TO ENTRANCE OF DIRT ROAD FEMALE IN WHI TK WITH
SEVERE
BURNS AND HAVING DIFFICULTY BREATHING

04:49:04 02/01/22   - LESSARD A
*DOWN WIRE ON THE EAST SIDE OF THE HOME
05:21:25 02/01/22   - HOOK A - From: MCPHIE A
  MOM AND 4 YR OLD WERE TAKEN TO HOSPITAL/OTHER KIDS WERE CHECKED BY EMS AND
HAD
NO BURNS THEY WERE TAKEN TO GRANDMAS HOUSE

05:33:26 02/01/22   - KAUMO R
Stephanie Wadswroth (mom), Ryan Pasborg (dad), layne, Weston and Guner Wadsworth
all were able to get out.  Stephanie was burned pretty on several parts of body
and possible inside throat, Weston was had minor burns.  both Weston (4 yr.)
and Stephanie transported to MHSC via EMS.
05:34:55 02/01/22   - KAUMO R
correction>> Ryan was a passer by that ran in and help get the child and Mom out
of the house.  Dad is Matthew Wadsworth who was at work at this time.
07:26:02 02/01/22   - BACH K
lavone wadsworth/1600 hwy 372/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:29:48 02/01/22   - BACH K
lavone wadsworth/1600 hwy 374/power just went out-wants to know if its due to
the fire or something else. The other house next to her she knows the lady is on
oxygen and is worried about her
07:32:05 02/01/22   - BACH K
STACY MARTIN 1622 HWY 374/UNK NOW IF SHE IS ON OXYGEN BUT SHE IS REALLY SICK
07:38:43 02/01/22   - WILLIAMS C - From: MORRELL D
  EVERYONE AT 1622 IS FINE AND NO ONE IS ON OXYGEN, THEY DO HAVE POWER

08:01:56 02/01/22   - BACH K
GC2:HAVE COUNTY AC COME OUT WE FOUND 2 DECEASED DOGS
10:30:53 02/01/22   - THOMAS C
a rotti and a lab mix - will keep until I hear from a family memeber of owners
11:00:27 02/01/22   - MORRIS S
DS Morris collected multiple firearms and a small safe from the residence the
Fire Department didn't feel safe leaving in the residence. DS Morris spoke with
Matt Wadsworth and he advised the items could be taken to his sister (Amanda
Lamb's) residence at 3930 Johnson Way in Jamestown.  DS Morris took firearms and
safe and turned them over to Amanda Wadsworth at Matt's request.  None Further.

11:15:54 02/01/22   - PALMER L - From: ROBINSON W
FIRE DEPT WILL BE CLEAR. LEAVE THE CALL OPEN / I WILL BE BACK OUT HERE TO
DO
INVESTIGATION

11:36:22 02/01/22   - SHEAMAN J
Sgt. Hall and myself will respond to the scene later to assist GRFD with
determining origin and cause
12:05:25 02/01/22   - PALMER L
Call type f reopened by PALMER L at 12:05:25 02/01/22

12:25:20 02/01/22   - THOMAS C
1146 hours spoke to LaVonne Wadsworth, mother/mother-in -law of pet owners, she
advised that she wanted to thank me for holding onto the animals however they
owners have a long and bigger road ahead of them & asked me to take care of the
2 dogs
12:27:32 02/01/22   - THOMAS C
```

1146 hours spoke to LaVonne Wadsworth, mother/mother-in-law of pet owners, she
advised that she wanted to thank me for holding onto the animals however they
owners have a long and bigger road ahead of them & asked me to take care of the
2 dogs - I advised the only legal option I have is to take them to the landfill,
she understood this and made the executive decision for me to take care of the
animals
12:43:52 02/01/22   - WILLIAMS C
Call type I reopened by WILLIAMS C at 12:43:52 02/01/22

17:53:09 02/01/22   - BACH K
Call type I reopened by BACH K at 17:53:09 02/01/22


## Supplemental Narrative          03/04/2022 16:08:51   JEFF SHEAMAN

ORIGIN:

On March 4, 2022 Detective Sheaman called and spoke with Matt Wadsworth regarding follow up interviews
with his children about the fire.

OFFICER'S ACTIONS/OBSERVATIONS:

It was decided that Matt would bring his four children, Kamile, Gunner, Layne and Weston to the Sheriff's
Office at approximately 14:00 hours so Det. Sheaman could interview them.

Matt arrived at the Sheriff's Office at approximately 14:30 hours on March 4 and he and his children were
escorted to a soft interview room, equipped with audio and video recording equipment.  Det. Sheaman
activated the recording equipment in the room and additionally recorded the interviews using a pocket
recorder.

RECORDED INTERVIEWS WITH THE WADSWORTH FAMILY:

Det. Sheaman identified each child and spoke to Matt about Weston and his injuries.  (Kamile joined the
interview later on as she had been picked up at the Rock Springs Family Recreational Center by her
grandmother and brought to the Sheriff's Office for the interview).

Both Gunner and Layne explained that the morning of the fire, they woke up smelling smoke and feeling
heat on their bodies.  They saw flames and heard the smoke detectors going off.  Gunner stated he was on
the top of the bunk bed, which was pushed up against the wall next to the large window.  He stated he
jumped off the bed and he and Layne ran out of the room and woke up their mother, who was asleep in the
living room.

Det. Sheaman asked Gunner to describe the fire and he said it was "terrifying."  He and Layne stated they
saw the fire near their closet and next to their bed.  Layne described the fire as a "glow."

Gunner stated he believed the fire had started around 04:00 hours.  When asked how he knew that, he
stated he had woke up at approximately 03:30 hours to go to the bathroom.  When asked how he knew the
time when he went to the bathroom, Gunner explained that he got out of bed and checked the time on his
tablet, which was plugged in in the living room.  He further explained he sometimes takes the tablet with
him when he goes to the bathroom.  He stated when he touched the tablet, he noticed the time was
approximately 03:30 hours.

Gunner informed Det. Sheaman that when he and Layne had gone to sleep the night before the fire, they
had shut the bedroom door.  However, he stated when he returned to the room after going to the
bathroom and checking the time, he forgot to shut the door.

Both boys explained they woke up their mother with help from Kamile, who had already gotten up and was
in the living room.  The boys stated their mother told them to leave the home as she went down the
hallway to wake up Weston and get him out of the house.  The boys stated they couldn't get out of the
house through the main door as they saw fire around the door.  They explained the exited the house

through the door leading into the garage.

When asked when they last used the Hoverboard and if they had plugged it in recently, Gunner stated they played with the device the night before the fire and it had been plugged in but he believes it was unplugged later on by someone because both Matt and Stephanie constantly told them to unplug it.

When Kamile was brought into the interview room, she described the incident, saying she was awoken by screams from her brothers. She also stated she heard the smoke alarm going off. Kamile stated she got up and walked down the hallway towards the kitchen and saw a glow from the boys' bedroom. When asked to describe the glow, she stated it looked like a fire. She stated as she walked past the boys' bedroom, she looked into the bedroom and saw flames near the wall where the bunk bed was sitting, near the window.

Kamile stated she woke up her mother and then took Gunner and Layne outside as their mother went to get Weston. Kamile remembered that as they were trying to leave the house, Gunner sat down on a chair at the kitchen table. Gunner later explained he was confused and was planning on eating breakfast.

Kamile further explained that as she was leaving, her mother directed her to take her phone, which had been plugged into an outlet in the living room.

Kamile also remembered that before they left the house, she saw her mother open the front door of the house and say "Fuck" (Kamile described this as the F word). She stated there was fire around the door on the outside of the house, so her mother shut it.

Kamile stated she ushered her brothers outside through the garage and remembered seeing Ryan Pasborg arrive in his truck and run inside the home, pulling Stephanie and Weston out alive.

Det. Sheaman eventually asked Matt about the layout of the items in the room, including the location of the bed. Matt assisted Det. Sheaman with drawing a rough, not to scale sketch of the room, labeling where the refrigerator was on the opposite wall, where the door and window were and the locations of closets, a nightstand and a toy box. (A copy of the drawing was later scanned and entered into this report as an attachment).

Following the interviews, Det. Sheaman showed several photographs to Matt to better understand where items had been inside the house before the fire.

Matt and the children then left the building.

EVIDENCE:

Audio and video recordings from the interviews were downloaded into electronic evidence by Det. Sheaman.

DISPOSITION:

Case closed pending further information.