Timothy M. Stubson, Wyo. Bar. No. 6-3144
Holly Tysse Wyo. Bar. No. 7-5553
Brandon E. Pryde Wyo. Bar. No. 8-6883
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-265-2279
tstubson@crowleyfleck.com
htysse@crowleyfleck.com
bpryde@crowleyfleck.com

and

Eugene M. LaFlamme *(admitted pro hac vice)*
Jared B. Giroux *(admitted pro hac vice)*
Jillian L. Lukens *(admitted pro hac vice)*
McCoy Leavitt Laskey LLC
N19 W24200 Riverwood Drive, #125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 2:23-cv-00118-NDF |
| v. | ) ) ) ) | **DEFENDANTS JETSON ELECTRIC BIKES, LLC AND WALMART INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| WALMART INC. and JETSON ELECTRIC BIKES, LLC, | ) ) ) | |
| Defendants. | ) | |

WALMART INC. ("Walmart") and JETSON ELECTRIC BIKES, LLC ("Jetson"), (collectively "Defendants"), by and through their attorneys, Crowley Fleck PLLP and McCoy Leavitt Laskey LLC, hereby submit their reply in support of their Motion for Summary Judgment.

## RESPONSE TO PLAINTIFFS' DISPUTED FACTS

### I. PLAINTIFFS CONTINUE TO VIOLATE THE LOCAL RULES WITH THEIR RESPONSE TO DEFENDANTS' STATEMENT OF FACTS.

Although Plaintiffs cite to additional facts in their brief, they do not include those statements in a statement of material facts as required by *U.S.D.C.L.R. 7.1(b)(2)(D)*. Moreover, Plaintiffs' responses to the alleged disputed facts do not contain any explanation as to why the fact is disputed other than vague citations to some deposition testimony or to Plaintiffs' summary judgment brief. Nonetheless, Defendants submit the below table to show the Court that there are no genuine disputes of material fact – even with Plaintiffs' vague responses.[1]

| Fact No. | Defendants' Response |
|---|---|
| Fact #4 | Plaintiffs cite Sheaman Dep. 306:12-308:9. This testimony is inadmissible speculation and is inadmissible expert opinion testimony as Sheaman has not done anything to analyze the window breaking issue. In addition to Defendants' previously cited testimony, at 215:1-5, Sheaman testified that G.W. and L.W. told him during his investigation that the window was already broken when they woke up. (LaFlamme Dec. ¶3, Ex. 1: Sheaman Dep. 215:1-5). |
| Fact #6 | Mrs. Wadsworth stated at the testimony cited by both parties that she had a cigarette sometime within a half hour of going to bed at 2:00 a.m. This fire started sometime around 4:00 a.m. – within a couple hours of Mrs. Wadsworth's last cigarette. Pasborg, the first witness on scene, testified that he saw the fire around 4:00 a.m. (LaFlamme Dec. ¶4, Ex. 2: Pasborg Dep. 23:14-26:9). |
| Fact #7 | Mrs. Wadsworth testified that although she doesn't specifically remember how many drinks she had the evening/morning before the fire, she did state that it was a typical alcohol consumption day for her, which was "somewhere around ten or so" drinks. (LaFlamme Dec. ¶5, Ex. 3: S. Wadsworth Dep. 62:24-64:7, 90:9-91:24). |
| Fact #14 | Plaintiffs generally cite the section of their response brief where they discuss Sheaman and Robinson's alleged expert testimony. First, Sheaman and Robinson have not been designated as experts in this case. Second, any fire origin and cause expert opinion testimony by Sheaman and/or Robinson should be barred pursuant to Defendants' Rule 702 *Daubert* motions against both witnesses. Further, Plaintiffs have not opposed the Rule 702 motion against Robinson and, therefore, it is conceded. |

---

[1] Plaintiffs' response brief with the properly attached exhibits was filed shortly after the December 16, 2024 filing deadline passed.

| | |
|---|---|
| Fact #25 | Plaintiffs cite certain sections in their response brief that don't exist. UL 2580, is only referenced once at pg. 8 of Pl. Resp. Br. and it is not within the context of Fact #25. Moreover, King specifically acknowledged that he did not know the UL standard that applied to the lithium-ion battery cells, did not know if the specific cells at issue were UL listed, and did not consult with UL 2580 at all in his analysis. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 50:23-51:20, 69:5-16). |
| Fact #26 | Plaintiffs cite certain sections in their response brief that don't exist. The cited activities are the only activities that King did with respect to the hoverboard. To be complete, however, King did review the Jetson and Walmart corporate representative depositions and the Sweetwater County Sheriff's Dept. report as well, but those actions did not involve any physical review of the hoverboard or an exemplar. |
| Fact #28 | Plaintiffs cite certain sections in their response brief – one of which (Sec. II.1.C.i.(a)) does not exist. Regardless, King's expert file did not include any of the Walmart or Jetson document productions and King acknowledged that he has not seen any documents that Jetson produced, nor has he seen any of the UL test reports or certification records. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 65:25-66:5). |
| Fact #31 | Plaintiffs generically cite a 5-page section of their response brief. King responded "correct" to the following question in his deposition: "You have not done anything to assess whether the fire could have started at the smoking shed, correct?" (LaFlamme Dec. ¶6, Ex. 4: King Dep. 189:25-190:3). |
| Fact #32 | Plaintiffs cite generically to Exhibit 1 of their response brief and to the same deposition testimony cited by Defendants. At the testimony Defendants cite, King states that he did not observe any arcing at the hoverboard, is aware that some arcing was found "somewhere related to the shed," and is not aware of any arcing that identified inside the house. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 90:23-92:3, 195:24-196:2). |
| Fact #33 | Plaintiffs cite their Rule 702 *Daubert* motion against Strandjord. In further support of this fact, Defendants also refer the Court to NFPA 921 Figure 6.1.5 (2021 ed.) which lists arc mapping as a component of the scientific method and NFPA 921 § 6.3.21.10.4.1 (2021 ed.) which further discusses the use of arc mapping within the context of origin investigations. (LaFlamme Dec. ¶7, Ex. 5: NFPA 921 2021 ed.). Finally, please see Def. Resp. Br. in Opp. to Pl. Motion to Exclude Testimony of Brian Strandjord, Doc. 116. |
| Fact #34 | Plaintiffs cite no authority, but argue that Defendants have "provided no reliable, corroborative evidence that the electrical service came in directly above the smoking shed." Plaintiffs seem to forget that their own origin expert, Michael Schulz, acknowledged that the electrical service "crosses over the area where the smoking shed was." (LaFlamme Dec. ¶8, Ex. 6: Schulz Dep. 27:15-28:8; *see also* Doc. 80-4, Gorbett Report, pg. 8, Figure 2). |
| Fact #35 | See response to Facts #6-7 above. |
| Fact #36 | Plaintiffs cite certain sections in their response brief – one of which (Sec. II.1.C.i.(a)) does not exist. King responded "yes" to the following questions in his deposition: "As an expert doing an investigation, you agree that it's important to have as much information as you can about the fire loss, correct?" and "And you want to have the opportunity to review all the information that's available during your investigation." (LaFlamme Dec. ¶6, Ex. 4: King Dep. 196:7-20). |
| Fact #38 | Plaintiffs generically cite two sections in their response brief – one of which (Sec. II.1.C.i.(a)) does not exist. The terms "unusual" and "a coincidence" are terms that King used when discussing his dual failure theory. King also answered "no" to the following question: "have you done any research to determine the percentage chance of that coincidence." (LaFlamme Dec. ¶6, Ex. 4: King Dep. 191:10-192:6). |

| | |
|---|---|
| Fact #42 | Plaintiffs generically cite a section in their response brief. In addition to Defendants' previously cited testimony, Defendants also refer the Court to Sheaman Dep. 254:10-13, which was cited in Defendants' Rule 702 *Daubert* motion against Sheaman. (LaFlamme Dec. ¶3, Ex. 1: Sheaman Dep. 254:10-13). Here, Sheaman agreed that his "opinion is based on the information [he] learned up through March 4th of 2022." |
| Fact #44 | Plaintiffs generically cite a section in their response brief. At the testimony cited by Defendants, Sheaman responded "no" to the following question: "following March 4th, 2022, have you receive[d] or been provided with any additional information relating to this fire incident." |
| Fact #45 | This statement is a direct quote from Sheaman's deposition. Plaintiffs referenced sections in their response brief and to other portions of Sheaman's deposition do not create a disputed fact. |
| Fact #46 | This statement is a direct quote from Sheaman's deposition. Plaintiffs referenced sections in their response brief and to other portions of Sheaman's deposition do not create a disputed fact. |
| Fact #56 | Plaintiffs referenced sections in their response brief and to other portions of Sheaman's deposition do not create a disputed fact. In addition to Defendants' previously cited testimony, Defendants also refer the Court to Robinson Dep. 181:22-182:4 which was cited in support of Fact #55. (LaFlamme Dec. ¶9, Ex. 7: Robinson Dep. 181:22-182:4). |

## ARGUMENT

### I. PLAINTIFFS CANNOT PROVE CAUSATION.

Plaintiffs do not dispute that causation is a common element for all their claims.[2] Rather, Plaintiffs argue that they have "*created* a genuine issue of material fact" as to whether the hoverboard caused the fire through their alleged "expert" testimony. (Doc. 119, pg. 4). As stated in Defendants' Rule 702 *Daubert* motions, however, Plaintiffs do not have any experts that can offer an admissible causation opinion as they do not meet the Rule 702 admissibility standards. Moreover, Plaintiffs have not designated Sheaman and Robinson as experts in this case, nor are their proposed fire origin and cause opinions reliable.

#### A. King's opinions are not admissible.

Defendants refer the Court to the arguments and authorities filed in support of Defendants' Motion to Exclude the Testimony of Derek King and their Reply Brief.

#### B. Sheaman and Robinson's opinions cannot save Plaintiffs' claims as they are not admissible.

---

[2] Plaintiffs do not offer any argument that their breach of warranty claims should survive. As a result, those claims should be dismissed as the issue is unopposed.

4

As an initial matter, Plaintiffs did not oppose Defendants' Motion to Exclude Testimony of Bill Robinson (Doc. 102 and 103), therefore, that motion is conceded and this Court should enter an order barring any fire origin and cause opinion testimony from Robinson. *U.S.D.C.L.R. 7.1(b)(1)(B)*. Plaintiffs also failed to file a substantive response to Defendants' Motion to Exclude Testimony of Jeff Sheaman and instead, simply referred the Court to their summary judgment response. As described below, Sheaman's (and Robinson's) fire origin and cause opinion testimony remains unreliable and, therefore, inadmissible.

Plaintiffs attempt to circumvent the reliability requirement under Rule 702 by arguing that Sheaman and Robinson do not need to strictly adhere to NFPA 921. While that may be true if neither utilized NFPA 921, both Sheaman and Robinson agreed that they follow NFPA 921. (LaFlamme Dec. ¶¶3&9, Ex: 1: Sheaman Dep. 202:17-203:4; Ex: 7: Robinson Dep. 106:15-20). "Courts frequently exclude expert testimony for failure to comply with NFPA 921 in circumstances where the expert explicitly relies on NFPA 921 in reaching his or her conclusion." *See Schlesinger v. United States*, 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012). An expert's failure to follow its own adopted methodology renders his opinions unreliable. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (noting that under *Daubert*, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.").

Moreover, the bigger issue is not whether they strictly complied with NFPA 921 – which they did not – but, that Sheaman and Robinson's opinions can only be classified as preliminary opinions at best. Both of their investigations were exceedingly limited, and their opinions only based on information available to them when they completed their investigations.

Plaintiffs try to classify these opinions as deductive reasoning. Even if that classification is correct, Sheaman and Robinson's deductive reasoning still needs to be: (1) based on sufficient facts

5

or data; (2) the product of reliable principles and methods, and (3) reflect a reliable application of the principles and methods to the facts of the case to be admissible under Rule 702. Sheaman's investigation only included a short site visit on the date of the fire and interviews of Ryan Pasborg on February 1, 2022, Mr. Wadsworth on February 2, 2022, and K.W., G.W. and L.W. on March 4, 2022. (LaFlamme Dec. ¶10; Ex: 8: Sheaman Report). Robinson's investigation was even more limited and included an approximate two-hour site inspection on the date of the fire. (LaFlamme Dec. ¶9; Ex: 7: Robinson Dep. 61:18-20, 126:2-14, 130:14-16). Neither Sheaman nor Robinson participated in the numerous site and evidence inspections, and they have not been privy to any discovery in this case. (LaFlamme Dec. ¶¶3&9; Ex:1: Sheaman Dep. 164:24-165:2; Ex: 7: Robinson Dep. 144:14-24). As a result, their opinions are not based on sufficient facts or data and, therefore, there cannot be any reliable application of whatever principle or method they followed (*i.e.,* deductive reasoning) to the facts of this case.

As such, both Sheaman and Robinson's fire origin and cause opinions should be barred. This, however, does not mean that they cannot be witnesses at trial. They can still offer fact witness testimony about what they saw and did with respect to their investigation; however, they cannot take that final leap into offering fire origin and cause expert testimony as their opinions are not based on sufficient facts or data given the limited nature of their respective investigations.

**II. REGARDLESS OF THE ABOVE CAUSATION ARGUMENTS, PLAINTIFFS' ALLEGED DESIGN DEFECT AND FAILURE TO WARN CLAIMS FAIL.**

**A. King does not offer any design defect opinions.**

King's opinion is that two separate and independently manufactured lithium-ion battery cells had separators that failed which allowed the anode and cathode to communicate and cause an internal short circuit – which supposedly led to the fire. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 190:20-191:16). King does not offer an opinion that the process of utilizing a separator to prevent

6

the anode and cathode from communicating is a design defect. In fact, King does not raise any design defect criticisms. Nonetheless, Plaintiffs baldly assert that King discusses a design defect when he discusses "the inherent problem with lithium-ion batteries and their failures." (Doc. 119 and 123, pg. 18). The testimony cited by Plaintiffs in support of this position, however, does not say anything of the sort. King does not say that all products that use lithium-ion batteries are inherently defective anywhere as Plaintiffs contend. That simply is not his opinion in this case.

Moreover, Plaintiffs cite Kansas law for some reason through its opposition on this issue. In Wyoming, WCPJI (Civil) 11.05 states that a design is defective "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller and the omission of the alternative design renders the product not reasonably safe." *See also Loredo v. Solvay Am., Inc.*, 212 P.3d 614, 630 (Wyo. 2009). A product is not defective simply because an injury occurred while the product was in use. *Rohde v. Smiths Medical*, 165 P.3d 433, 437 (Wyo. 2007). "[A] plaintiff must show a defect in the product[.]" *Id.* Here, Plaintiffs don't offer *any* alternative design that should have been incorporated into the hoverboard.

Also, in *Campbell ex rel. Campbell v. Studer, Inc.*, 970 P.2d 389 (Wyo. 1998), the Wyoming Supreme Court affirmed the dismissal of a design defect claim even after plaintiff's expert offered some alternative designs because plaintiff's expert: (1) did not have experience in designing the product at issue; (2) did not have experience in designing the alleged alternative design for the product; and (3) did not test the feasibility for the changes the expert recommended.

King, however, doesn't offer an alternative design at all. Further, like the expert in *Campbell*, King also has not been involved in the design of any lithium-ion battery products. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 20:15-21). King also has not reviewed any of the design documents or UL test records for the Plasma model hoverboard or the battery cells utilized in the Plasma model. (Id. at

7

124:2-18). Finally, King could not identify any aspect of the subject hoverboard that deviated from the UL 2272 standards – the UL standard applicable to hoverboards. (Id.).

Simply, King does not offer any design criticisms and Plaintiffs' attempt to manufacture such an opinion fails.

### B. Plaintiffs have not offered any evidence to support their failure to warn claim.

Plaintiffs do not cite any Wyoming failure to warn law in their response to this section. Moreover, Plaintiffs do not specify what warning they contend should have been included with the hoverboard other than a vague statement that "lithium-ion batter[ies] may catch fire or explode." (Doc. 119 and 123, pg. 21). As this Court is likely aware, it is not just hoverboards that use lithium-ion batteries – numerous products use these components.

Unlike traditional strict liability claims, a claim for failure to provide adequate warnings incorporates some negligence components in determining whether a warning is necessary and/or whether the warnings provided were adequate. *See Rohde*, 165 P.3d at 441. The *Rohde* court dismissed the plaintiff's failure to warn claim as the plaintiff could not prove what warnings were inadequate. *Id.* Similarly, here, Plaintiffs simply contend that Defendants should have had a warning that "lithium-ion batter[ies] may catch fire or explode" without any further back up. Moreover, Plaintiffs must also show that a warning would have changed its behavior and prevented the injury. *See Abraham v. Great W. Energy, LLC*, 101 P.3d 446, 456 (Wyo. 2004). Plaintiffs have made no such showing in this case.

Plaintiffs cite significantly to *Richter v. Limax Int'l, Inc.*, 45 F.3d 1464 (10th Cir. 1995) in their brief. This case assesses Kansas product liability law. Regardless, this case holds that warnings are only required for dangers which are reasonably foreseeable in light of the intended use of the product. *Id*. at 1470. In *Richter*, the issue was whether a mini trampoline used for exercise should have contained a warning that overuse of the product could cause stress fractures. Here, Plaintiffs

contend that the hoverboard should have come with a blanket warning that the hoverboard's lithium-ion batteries could catch fire or explode. The *Richter* warnings deal with a specific and discrete issue, not the general failure of a product. They are not analogous.

Further, Plaintiffs curiously cite Jetson's Rogue model recall in support of its argument that Plaintiffs' proposed warning was foreseeable. While it is true that the Rogue model was recalled, that recall occurred on March 30, 2023 – more than one year after the Wadsworth fire. (Doc. 123-9, pg. 4). Also, the Pennsylvania fire referenced in the recall notice occurred on April 1, 2022 – also after the Wadsworth fire. (Id. at 5). Consequently, since all activity related to the Pennsylvania fire and the Rogue recall occurred after the Wadsworth fire, it is unclear why Plaintiffs believe these factors create "a genuine issue of material fact for a jury to conclude that Defendants owed a duty to warn of the risk of lithium-ion battery exploding and causing a fire" as alleged. (Doc. 119 and 123, pg. 20). Further, the recall was initiated "out of an abundance of caution" between Jetson and the CPSC and there was no judicial finding of liability against Jetson. (LaFlamme Dec. ¶11: Ex: 9: Husain Dep. 108:11-20).

In addition, the recalled Rogue model does not share the same combination of component parts with any other Jetson model hoverboard – including the Plasma model. (Id. at 110:24-111:8). To be sure, the lithium-ion battery cells – which are the specific components at issue in this case – are different between the two models. The cells have different capacities and the manufacturer for the lithium-ion battery cells is different between the Rogue and Plasma models. (Id. at 100:18-22, 123:9-17, 148:17-20). Further, King does not know what type of battery cells the Rogue model had compared to the Plasma model. (LaFlamme Dec. ¶6: Ex:4: King Dep. 70:4-71:13). As a result, it is unclear how the Rogue recall, or the Rogue model, has any relevance to this case at all given that they had different battery cells and the Rogue recall and Pennsylvania fire both occurred *after* the Wadsworth incident.

Moreover, the admissibility of other incident evidence is subject to the "substantially similar" test. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1147–48 (10th Cir. 2009). Further, the Wyoming Supreme Court in *Sims v. General Motors Corp.*, 751 P.2d 357, 363 (Wyo. 1988), quoted with affirmation that "proof of prior accidents or occurrences [is] not easily admitted into evidence, since [it] can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters."

Here, Plaintiffs have not shown there is substantial similarity between the Rogue model and Plasma model battery cells as they cannot – they have different capacities and, most importantly, are from different component part manufacturers. Accordingly, this Court should ignore Plaintiffs' attempts to distract it from the actual claims in this case with inadmissible and irrelevant allegations regarding a completely different hoverboard model.

### III.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES.

The Wyoming Supreme Court has stated that "punitive damages 'are to be awarded only for conduct involving some element of outrage, similar to that usually found in crime.... We have approved punitive damages in circumstances involving outrageous conduct, such as intentional torts, torts involving malice and torts involving willful and wanton misconduct.'" *Cramer v. Powder River Coal, LLC*, 204 P.3d 974, 979 (Wyo. 2009) (*citing Weaver v. Mitchell,* 715 P.2d 1361, 1369–70 (Wyo. 1986)).

Plaintiffs' primary argument in support of its punitive damage claim is that Jetson allegedly did not do anything "to investigate whether the Plasma battery packs had a similar risk/issue to that of the Rogue." (Doc. 119 and 123, pg. 24). As noted above, Plaintiffs' causation expert, King, contends that two individual battery cells ruptured simultaneously due to an internal short circuit. (LaFlamme Dec. ¶6, Ex. 4: King Dep. 190:15-191:16). To have an internal short circuit as King describes, the separator within the two individual cells must fail. (Id. at 88:11-90:17). In King's own

words, such a simultaneous failure is "unusual." (Id. at 191:10-16). King does not offer any opinion that the battery pack failed or was defective – he focuses on the alleged internal short circuits within two individual cells in the battery pack. Given that the alleged failure is "unusual," even if King's opinion is accurate – which it is not – it hardly justifies a consideration of punitive damages.

Moreover, as also discussed above, the Rogue recall and Pennsylvania fire referenced by Plaintiffs occurred *after* the Wadsworth fire. As a result, Plaintiffs' efforts to tie them to the instant matter are improper as they are not relevant, nor even admissible. Plaintiffs also attempt to vaguely reference two other alleged incidents with the Plasma model hoverboard to support their punitive damage claim. As Jetson's corporate representative testified, one of those claims did not involve the Plasma model hoverboard at all as it was determined that an RC car battery was the cause of the fire. (LaFlamme Dec. ¶11, Ex. 9: Husain Dep. 116:23-118:4).

As for the other Plasma model claim that was settled, Plaintiffs have not offered any evidence to show the other claim is substantially similar. Further, the Plasma model hoverboard in the claim that was settled "was being charged at the time of the fire" and the fire occurred "while the hoverboard was charging." (LaFlamme Dec. ¶12, Ex. 10: Donwell Compl. ¶¶ 16-17). Here, as even Plaintiffs' area of origin expert conceded, there is no evidence that the hoverboard was plugged in and charging at the time of the fire. (LaFlamme Dec. ¶8, Ex. 6: Schulz Dep. 11:19-13:3; Doc. 80-7, pg. 31). That is a significant difference negating any potential similarity there may have been between the two incidents.

Given the above, Plaintiffs' punitive damage claim should be dismissed.

## CONCLUSION

This Court should GRANT Defendants' Motion for Summary Judgment and dismiss all claims against Defendants as a matter of law for the reasons described above.

**McCOY LEAVITT LASKEY LLC**

Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: December 23, 2024    By: _____

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens (*pro hac vice*)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

and

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck, PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com