# EXHIBIT 1

Page 1

1  UNITED STATES DISTRICT COURT
2  IN AND FOR THE DISTRICT OF WYOMING
3  ----------------------------------------
4  STEPHANIE WADSWORTH, Individually and
   as Parent and Legal Guardian of W.W.,
5  K.W., G.W., and L.W., minor children,
   and MATTHEW WADSWORTH,
6
                        Plaintiffs,
7
            -against-                    Case No.:
8                                        23-cv-00118-NDF
9  WALMART, INC. and JETSON ELECTRIC
   BIKES, LLC,
10
                        Defendants.
11
   ----------------------------------------
12
13              Thursday, November 16, 2023
14              9:46 a.m.
15
16         Deposition of JEFF SHEAMAN, taken by
17  Plaintiff, pursuant to Notice, held at The Hampton
18  Inn, 1055 Wild Horse Canyon Road, Green River,
19  Wyoming, before Denise Nowak, a Shorthand Reporter
20  and Notary Public within and for the State of Idaho,
21  appearing remotely.
22
23
24
25

1  describe the locations of the window, the bed, the
2  closet, the outlet, the door.
3           Was your description of the locations
4  of those items in the bedroom consistent with the
5  information provided to you by Mr. Wadsworth?
6       A.   Yes, it was.
7       Q.   So you concluded those interviews.
8  You showed Matt some of the photographs, those were
9  the photographs that you had taken?
10      A.   Yes.
11      Q.   And that assisted you in
12 understanding where those items that he described
13 were located in the house before the fire?
14      A.   Yes.
15      Q.   And then Matthew and the children
16 left the building.  That concluded your interview
17 of all of that, correct?
18      A.   Right.
19      Q.   Again, the audio and video recordings
20 from the interviews were download into the
21 electronic evidence by you, and the case was closed
22 pending further information, correct?
23      A.   Right.
24      Q.   Following March 4th, 2022, have you
25 receive or been provided with any additional

```
 1    information relating to this fire incident?
 2          A.    No.
 3          Q.    Aside from -- putting this aside for
 4    now, but aside from those hypotheticals that I
 5    asked you about, a shed and smoking and a space
 6    heater and arcing; and in all of those things,
 7    you've not been provided with any additional
 8    information relating to potential origin or cause
 9    of this fire.
10          A.    No, I have not.
11          Q.    And even with all of those
12    hypotheticals and the information provided in those
13    hypotheticals, none of that changes your ultimate
14    conclusions that you've reached and pronounced
15    today.
16          A.    No.
17                MR. LaFLAMME:  Object to the form.
18    BY MR. AYALA:
19          Q.    By the way, and we've referred to it
20    and you've described it a little bit earlier today,
21    did you find any arcing at all?
22          A.    No, I don't believe there was any,
23    not that I noticed.
24          Q.    Okay.  But even still, as you
25    described earlier, any evidence of arcing, whether
```

1     somebody needs a copy of a report or evidence or
2     that kind of stuff, so.
3          Q.   And the first time that we've
4     discussed -- that you discussed news today,
5     correct?
6          A.   Correct.
7          Q.   Does the Sweetwater Sheriff's
8     Department have any specific written policies or
9     procedures as to the process to conduct an origin
10    and cause investigation?
11         A.   Not necessarily, no.  It's -- it's
12    just based off -- it's just basically how to handle
13    investigations and, you know, when to call a
14    detective, when not to, you know, that kind of
15    thing.  So nothing specific though for origin and
16    cause investigation.
17         Q.   Okay.  And do you follow NFPA 921 for
18    your origin and cause investigations?
19         A.   Yes.
20         Q.   And that's what you would consider to
21    be the -- the guide that you would follow for your
22    process?
23         A.   Yes.
24         Q.   And is that what you try to follow
25    with respect to the law enforcement investigation?

1          A.    Yes.
2          Q.    And you understand your NFPA 921
3    describes the scientific method?
4          A.    Yes.
5          Q.    And the scientific method requires
6    you to assess all items, correct?
7          A.    Correct.
8          Q.    Okay.  And I know that you did your
9    report, which has been marked as Exhibit 16, and
10   this report was completed.  The last supplemental
11   was, I believe, March, March 4th of 2022, correct?
12         A.    Correct.
13         Q.    And any additional evidence that was
14   discovered on the private side, you're not aware of
15   that, right?
16         A.    Correct.
17         Q.    And you would agree that in order to
18   complete a full and thorough origin and cause
19   investigation under an NFPA 921, you would need to
20   consider all the evidence that's been uncovered,
21   correct?
22         A.    Yes.
23               MR. AYALA:  Object to the form.
24   BY MR. LaFLAMME:
25         Q.    Did you take any video during your

1        Q.   Okay.  During your investigation, you
2   were aware that the boys, when they woke up, the
3   window was already broken, correct, in the bedroom?
4        A.   I believe that's what they told me,
5   yes.
6        Q.   Okay.
7             MR. LaFLAMME:  We'll mark this as
8   Exhibit 18.
9             (Whereupon, Exhibit 18 was marked for
10   identification.)
11            MR. LaFLAMME:  And, Peter, I'll email
12   you Exhibit 18 right now.
13            MR. CURRAN:  Yes, sir.
14   BY MR. LaFLAMME:
15       Q.   Looking at Exhibit 18, Detective
16   Sergeant, does this appear to be the layout of the
17   Wadsworth residence?
18       A.   Yes, it does.
19       Q.   And looking at -- it's been labeled
20   as bedroom number 4, I believe.  Do you see that?
21       A.   Um-hum, yes.
22       Q.   Right by the directional signal?
23       A.   Yes.
24       Q.   Is that what you understand to be
25   Gunner and Layne's bedroom?

1    house, this is what we found; something that might
2    spark an interest to look back into that, I would
3    be all over that, I would be very much for that.
4            But again, I still hold that opinion
5    of -- based off what I found, the firefighters
6    found, in discussing with them what they determined
7    what was the origin of cause, and it matched mine,
8    which is what I had said earlier.
9    BY MR. LaFLAMME:
10        Q.    And your opinion is based on the
11   information you learned up through March 4th of
12   2022.
13        A.    Yes.
14        Q.    Okay.  And even before then, you were
15   told about the smoking shed by Mr. Wadsworth,
16   correct?
17        A.    Yes, yes.
18        Q.    And that just wasn't anything that
19   you've followed up on at that time.
20        A.    Correct.
21        Q.    The fact that there -- there were
22   statements by the children about the fire starting
23   outside in the body camera footage cam, if there
24   was arcing that was found at the shed, that would
25   certainly cause you to look at that area as a