Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

Eugene M. LaFlamme (Admitted pro hac vice)
Jared B. Giroux (Admitted pro hac vice)
Jillian L. Lukens (Admitted pro hac vice)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH, <br><br> Plaintiffs, <br><br> v. <br><br> WALMART INC. and JETSON ELECTRIC BIKES, LLC, <br><br> Defendants. | Case No. 2:23-cv-00118-NDF <br><br> DEFENDANTS JETSON ELECTRIC BIKES, LLC AND WALMART INC.'S MOTIONS IN LIMINE; **MEMORANDUM IN SUPPORT OF MOTIONS**; DECLARATION IN SUPPORT |

WALMART INC. ("Walmart") and JETSON ELECTRIC BIKES, LLC ("Jetson"), (collectively "Defendants"), by and through their attorneys, Crowley Fleck PLLP and McCoy Leavitt Laskey LLC, hereby files the instant memorandum in support of their Motions *in Limine* 1 through 5 consistent with the Court's Amended Scheduling Order (Doc. 78).

In accordance with this Court's Local Rule 7.1(b)(1)(a), the undersigned certifies that Defendants have, in good faith, conferred with legal counsel for Plaintiffs on these motions.

## INTRODUCTION

A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. *McCarty v. Liberty Mut. Ins. Co.,* 2017 WL 676459, at 2 (D. Wyo. Feb. 3, 2017). Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (quoting *Black's Law Dictionary* (10th ed. 2014)). The key function of a motion *in limine* is to exclude prejudicial evidence before the evidence is actually offered at trial." *Luce v. United States,* 469 U.S. 38, 40 n.2 (1984).

Under Fed. R. Evid. 402 "irrelevant evidence is not admissible." "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. Rule 401(a)-(b). Further, even relevant evidence may be precluded under Fed. R. Evid. 403 if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is unfairly prejudicial if it has "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Caraway,* 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Rule 402 adv. comm. notes).

## ARGUMENT

I. **MOTION IN LIMINE NO. 1: PRECLUDE ANY EVIDENCE RELATED TO THE ROGUE MODEL HOVERBOARD, THE ROGUE MODEL RECALL, OR ANY OTHER ALLEGED INCIDENTS INVOLVING THE ROGUE MODEL.**

   **A. Evidence Concerning the Rogue Model is not Relevant.**

Jetson imports and distributes its hoverboards (along with other e-mobility products) from overseas manufacturers and sells them to U.S. retailers, like Walmart. (LaFlamme Dec. ¶3, Ex. 1:

2

Husain Dep. 10:24-11:7; 139:22-141:13). This case involves a Jetson Plasma model hoverboard. The Jetson Rogue model hoverboard does not have any connection or relevance to this case. Nonetheless, it is anticipated that Plaintiffs will seek to offer evidence on the Rogue model at trial. Plaintiffs' opposition to this motion, and Defendants' summary judgment motion, supports this assumption. Evidence concerning the Rogue model, its recall or any other alleged incidents involving the Rogue model are irrelevant under Fed. R. Evid. 401 and 402.

As the Court is likely aware from prior briefing, the Rogue model was alleged to have caused an April 1, 2022 fire in Pennsylvania that resulted in a lawsuit which was filed in the United States District Court for the Eastern District of Pennsylvania entitled *Kaufman v. Jetson Electric Bikes, LLC and Target*. The Rogue model was then subsequently recalled on March 30, 2023. (Doc. 123-9). The Rogue model recall was initiated "out of an abundance of caution" between Jetson and the CPSC and there was no judicial finding of liability against Jetson. (LaFlamme Dec. ¶3, Ex. 1: Husain Dep. 108:11-20). Moreover, the Rogue model recall and *Kaufman* fire both occurred <u>after</u> the Wadsworth incident. Nonetheless, Plaintiffs questioned the Jetson and Walmart corporate representatives about the *Kaufman* case and the Rogue recall during their respective discovery depositions.

In *T.G. v. Remington Arms Co., Inc.*, 2014 WL 2589443 (N.D. Okla. June 10, 2014), the court was faced with a similar motion *in limine* in which plaintiffs wanted to offer evidence of defendant's prior recall on another a model rifle – the model 600. The model at issue in the *T.G.* case, however, was the model 700 rifle. As with the instant matter, the *T.G.* court noted that "plaintiffs are not attempting to show that the rifle that caused their injuries was recalled but, instead, they intend to offer evidence that a separate model of rifle was recalled." *Id.*, at *6 (holding that there were differences between the Model 600 and 700 rifles and plaintiffs made no attempt to show that the Model 600 recall involved the same alleged defect identified by

3

their expert). The *T.G.* court ultimately found the models were different and that the prior recall for the model 600 rifle was not relevant to the issues related to the model 700 rifle.

A similar motion *in limine* regarding the admissibility of evidence concerning a different model product was also addressed in *Tr. Dept. of First Nat. Bank of Santa Fe, Colorado Branch v. Burton Corp.*, 2012 WL 3275900 (D. Colo. Aug. 9, 2012). In *Tr. Dept. of First Nat. Bank of Santa Fe,* plaintiffs alleged that a 2009 Burton R.E.D. Hi-Fi II model snowboarding helmet was defective and sought to introduce evidence concerning the recall of another Burton helmet, the R.E.D. Trace 0.5 extra small youth helmet. The Trace 0.5 helmet was apparently recalled after it was determined that the lining was not thick enough to provide adequate impact absorption. *Id.* at *1. Plaintiffs claimed that the recall admissibility standard was met because their theory was that the liner of the subject helmet, like the Trace 0.5, was similarly insufficiently thick. *Id.* In ruling that the recall for the Trace 0.5 model was not admissible, the *Tr. Dept. of First Nat. Bank of Santa Fe* court noted that there were sufficient differences between the two models, that the recall was not relevant, and further that the admissibility of such evidence "is substantially outweighed by the dangers of confusion of the issues and misleading the jury." *Id.*, at *1-2.

Like the above two cases there are significant differences between the Rogue and Plasma model hoverboards. Specifically, the Rogue model does not share the same combination of component parts with any other Jetson model hoverboard – including the Plasma model. (LaFlamme Dec. ¶3, Ex. 1: Husain Dep. 110:24-111:8). In addition, the overall manufacturer for the Rogue model hoverboard was different from the manufacturer for the Plasma model. The Plasma hoverboard was manufactured by ADX in Yueyang, China. (Id. at 147:7-20). The recalled Rogue hoverboard was manufactured by two manufacturers: Jomo and E-Link. (Id. at 100:3-9). Further, the lithium-ion battery cell component parts – which are the specific components at issue in this case – are different between the two models as well. The cells have different capacities and,

perhaps most importantly, the manufacturer for the lithium-ion battery cell components is different between the Rogue and Plasma models. (Id. at 100:18-22, 123:9-17, 148:17-20).

Further, Plaintiffs' battery expert, King, does not know what type of battery cells the Rogue model had compared to the Plasma model. (LaFlamme Dec. ¶4, Ex. 2: King Dep. 70:4-71:13). King acknowledged, however, that Jetson's corporate witness testified that the battery cell manufacturer for the Rogue model was different than the battery cell manufacturer for the Plasma model. (Id.). King does not have any opinions on the similarity between the battery cells for the Rogue and Plasma models and has "not [done] anything to assess that issue." (Id.). Moreover, King acknowledged that he does not know the circumstances of the *Kaufman* incident or Rogue recall. (Id. at 205:10-13). As a result, it is unclear how the Rogue recall, or the Rogue model, has any relevance to this case given that they are manufactured by different companies and had different battery cells, as well as other component parts. Further, the Rogue recall and Pennsylvania fire both occurred *after* the Wadsworth incident.

Given the above, evidence about the Rogue model, its recall or any other alleged incidents involving the Rogue model are not relevant to this case and should be excluded.

### B. Evidence of the Rogue Model, Even if Relevant, Should be Excluded Under Fed. R. Evid. Rule 403.

Moreover, to the extent evidence about the Rogue model could possibly have any relevance to the instant case – which it does not – its probative value is substantially outweighed by each one of Fed. R. Evid. Rule 403 considerations: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

This case involves the Jetson Plasma model hoverboard and the case should be tried on the issue of whether the Plasma model hoverboard caused the fire. Plaintiffs should not be permitted to raise numerous unrelated issues within this case to distract away from the liability hurdles they have in the instant case. Plaintiffs, however, likely want to introduce evidence concerning the

5

Rogue model to taint the jury's perception of Jetson and its products by implying that because it distributed a different model hoverboard which was recalled, the Plasma model hoverboard must be defective, too.

Any probative value of the Rogue model, its recall or the *Kaufman* case is substantially outweighed by the fact that it will create unfair prejudice against Defendants, will confuse the issues, mislead the jury, cause undue delay and waste time during trial. As such, any Rogue related evidence should be barred at trial.

## II.     MOTION IN LIMINE NO. 2: EVIDENCE OF OTHER INCIDENTS IS NOT RELEVANT OR ADMISSIBLE AND SHOULD BE BARRED.

In addition to the *Kaufman* case noted above that allegedly involved the Rogue model hoverboard, Plaintiffs will likely attempt to offer evidence on the *USAA General Indemnity Co. a/s/o Donwell v. Jetson Electric Bikes LLC, et. al.* case that was filed in the District Court of Oklahoma County in the State of Oklahoma and allegedly involved a Plasma model hoverboard. Sam Husain, Jetson's corporate representative, also testified about a second fire incident where Jetson was put on notice related to the Plasma model, but it was determined that that incident was caused by an RC car powered battery and did not involve a Jetson product. (LaFlamme Dec. ¶3, Ex. 1: Husain Dep. 116:23-118:4). It is possible that Plaintiffs may attempt to reference the fire claim where it was determined that an RC car caused the fire as well.

Plaintiffs, however, cannot show the required substantial similarity between the above-mentioned incidents and the allegations here. As such, the above-mentioned incidents are not relevant and should be excluded under Fed. R. Evid. 401 and 402. Even if any of them are in some way relevant, the probative value is substantially outweighed by each one of the Fed. R. Evid. 403 considerations.

### A. Evidence of the Other Incidents are Irrelevant and Inadmissible as Plaintiffs Cannot Meet the "Substantially Similar" Requirement.

Evidence of other incidents is irrelevant and inadmissible unless Plaintiffs can show that the circumstances of those incidents are "substantially similar" to the incident in this case. *See Black v. M & W Gear Co.,* 269 F.3d 1220, 1227 (10th Cir. 2001) (holding other incidents or accidents must be shown to be "substantially similar" to the accident that is the subject of the litigation before the court"); *Wheeler v. John Deere Co.,* 862 F.2d 1404, 1407 (10th Cir. 1988). Substantial similarity requires that the incidents be closely related in their character. "Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury". *Wheeler,* 862 F.2d at 1407. Before evidence of other incidents is presented to the jury, Plaintiffs must show that conditions substantially similar to the subject incident caused the other incidents, otherwise such evidence is properly excluded in product liability cases. *Ahrens v. Ford Motor Co.,* 340 F.3d 1142, 1146 (10th Cir. 2003). Accordingly, Plaintiffs bear the burden of establishing the substantial similarity for each of the "other incidents" to the issues in this case.

Addressing each alleged other incident individually, the differences between the *Kaufman* case and this matter are substantial. Most importantly, and as discussed above, the *Kaufman* matter involved the Rogue model hoverboard, which is a completely different model from the Plasma model. The Rogue and Plasma models were also manufactured by different manufacturers and utilized different lithium-ion battery cells. Further, the *Kaufman* plaintiffs asserted that the Rogue model hoverboard allegedly caught fire <u>*while charging*</u>. (LaFlamme Dec. ¶5, Ex. 3: *Kaufman* Compl. ¶¶29-30). Here, as even Plaintiffs' area of origin expert conceded, there is no evidence that the hoverboard was plugged in and charging at the time of the fire. (LaFlamme Dec. ¶6, Ex. 4: Schulz Dep. 11:19-13:3; Doc. 80-7, Pg. 31). As such, there is no similarity between the two matters other than they both generally involved fire claims.

With respect to the *Donwell* matter in Oklahoma, Plaintiffs have not offered any evidence to show that this claim is substantially similar. Further, like the *Kaufman* case, the *Donwell*

plaintiff alleged that the Plasma model hoverboard "*was being charged* at the time of the fire" and the fire occurred "while the hoverboard *was charging*." (LaFlamme Dec. ¶7, Ex. 5: *Donwell* Compl. ¶¶ 16-17). Again, and as noted above, that is not the circumstance in this case as there is no evidence that the hoverboard was plugged in and charging at the time of the fire. (LaFlamme Dec. ¶6, Ex. 4: Schulz Dep. 11:19-13:3; Doc. 80-7, Pg. 31). The fact that there is no evidence that the hoverboard was charging in the Wadsworth fire is a significant difference that negates any potential similarity to the *Donwell* claim.

As to the other fire incident where Jetson was put on notice related to the Plasma model, it was determined that this incident was caused by an RC car powered battery and did not involve a Jetson product. (LaFlamme Dec.¶3, Ex. 1: Husain Dep. 116:23-118:4). As such, there cannot be any similarity between that claim – which was never pursued against Jetson – and the Wadsworth incident.

Plaintiffs have not identified any other fire incidents where it was shown or even alleged to have been caused by the same alleged failure as asserted in this case – meaning two lithium-ion battery cells that failed nearly simultaneously due to an internal short circuit without charging. Further, Plaintiffs' battery expert, King, has not offered any opinions that the alleged failures in the other incidents are similar to the failure that he contends occurred in this case. King also testified that the chance of two cells failing at the same time was "*unusual*" and "*a coincidence*". (LaFlamme Dec. ¶4, Ex. 2: King Dep. 191:10-192:6). In addition, King does not even know what type of battery cells the Rogue model had compared to the Plasma model. (Doc. No. 73-3). Moreover, King specifically acknowledged that he doesn't know the circumstances of the *Kaufman* fire. (LaFlamme Dec. ¶4, Ex. 2: King Dep. 205:10-13).

As such, Plaintiffs cannot meet the substantial similarity requirement for any other alleged incidents or other claims and such evidence should be barred as irrelevant.

### B. Evidence of the Other Alleged Incidents, Even if Relevant, Should be Excluded Under Fed. R. Evid. 403.

Fed. R. Evid. 403 requires the exclusion of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Even if the Court were to deem other incidents relevant – which they are not – any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue consumption of time. As stated in *Uitts v. General Motors Corp.*:

> Proof of prior accidents or occurrences are not easily admitted into evidence, since they can often result in unfair prejudice, consumption of time and distraction of the jury to collateral matters . . . Defendant, in order to minimize the prejudicial effect of [the evidence of other [incidents]], would have had to go through each one individually with the jury. The result would have been a mini-trial on each of the thirty-five reports offered by plaintiffs. This would lengthen the trial considerably and the minds of the jurors would be diverted from the claim of the plaintiffs to the claims contained in these reports.

*Uitts v. General Motors Corp.*, 411 F.Supp. 1380, 1383 (E.D. Pa. 1974); *see also Sims v. General Motors Corp.*, 751 P.2d 357, 363-64 (Wyo. 1988) (quoting *Uitts* and following its rationale)[1]. Evidence of the other alleged incidents could cause the jury to improperly focus on the specifics of other incidents, which would inappropriately distract them from the issues of this case. *See, e.g., Wolf v. Proctor & Gamble Co.,* 555 F.Supp. 613, 622 (D.N.J. 1982) (excluding evidence in part because of danger jury might focus on other incidents and lose sight of the issues actually being litigated).

---

[1] For example, evidence may be unfairly prejudicial because it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, triggers other mainsprings of human action, or may cause a jury to base its decision on something other than the established propositions of the case. *See United States v. Saintil,* 753 F.2d 984, 989 (11th Cir. 1985); *United States v. Bowers,* 660 F.2d 527 (5th Cir. 1981); *United States v. Osum,* 943 F.2d 1394, 1404 (5th Cir. 1991); *United States v. Kang,* 934 F.2d 621, 628 (5th Cir. 1991).

Further, the risk of jury confusion is particularly acute when technical issues are involved, such as in this case. Factors bearing on whether battery cells simultaneously failed, ignited and resulted in a fire are highly complex and individual in nature. The complexity would necessarily confront the jury with a multitude of collateral issues creating a high probability of confusion that renders other incident evidence inadmissible. *See, e.g., Olin-Mathieson Cam Corp., v. Allis-Chalmbers Mft., Co.,* 438 F.2d 833, 837 (6th Cir. 1971) (noting confusion created by examination of technical evidence comparing two incidents).

Perhaps most importantly, evidence of other incidents runs the real risk of inflaming the jury's sympathies and emotions. The mere mention of other incidents could taint the deliberative process and seriously undermine the integrity and fairness of the trial. *See, e.g., Four Corners Helicopters, Inc. v. Turbomeca, S.A.,* 979 F.2d 1434, 1440 (10th Cir. 1992) ("Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury.").

Given the above, even if this Court finds some modicum of relevancy between the Wadsworth fire and the alleged other incidents Plaintiffs have referenced during discovery, evidence of these alleged other incidents should nonetheless be barred pursuant to Fed. R. Evid. 403.

### III.  **MOTION IN LIMINE NO. 3: EVIDENCE OF CPSC'S HOVERBOARD SAFETY ALERT SHOULD BE BARRED.**

Plaintiffs have questioned the Jetson and Walmart corporate representatives on a CPSC Hoverboard Safety Alert that was issued in November 2017. (LaFlamme Dec. ¶8, Ex: 6: Husain Dep. Ex. 54). This safety alert was issued shortly after UL 2272, the first UL standard applicable to hoverboards, was published in 2016. The safety alert also references a March 2017 fire where "a 2-year-old girl and a 10-year-old girl died in a house fire ignited by a hoverboard." (Id.). The fire that is referenced here did not involve a Jetson product and did not involve the subject Plasma

model hoverboard at issue in this case. The safety alert also states that "CPSC has reports of 13 burn injuries, three smoke inhalation injuries and more than $4 million in property damage related to hoverboards." (Id.). The safety alert then includes various recommendations for consumers, one of which is that "hoverboards should be compliant with the UL 2272 safety standard." (Id.). It then continues to caution, however, that "even UL 2272 compliance cannot guarantee that a hoverboard will not overheat or catch fire," without any further context. (Id.).

### A. The CPSC Hoverboard Safety Alert is Inadmissible Hearsay and has not Been Authenticated.

Hearsay is not admissible unless otherwise provided by a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court. Fed. R. Evid. 802. "Hearsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.

The safety alert includes numerous statements from the CPSC that Plaintiffs may attempt to offer for the truth of the matter asserted. During the Jetson corporate representative deposition, Plaintiffs questioned Jetson regarding each of the statements contained in the safety alert and referenced above. Plaintiffs similarly questioned the Walmart corporate representative on the same statements. There is no witness from the CPSC that will testify at trial. Therefore, it is likely that Plaintiffs will attempt to use the safety alert as evidence to support the conclusions that:

- There was a March 2017 hoverboard fire which killed two girls;
- The CPSC has reports of 13 burn injury incidents related to hoverboards;
- The CPSC has reports of three smoke inhalation injuries related to hoverboards;
- The CPSC has reports of more than $4 million in property damage related to hoverboards; and
- UL 2272 compliance does not guarantee that a hoverboard will not overheat or catch fire.

Each of these statements, as well as the other statements contained in the safety alert constitute inadmissible hearsay and should be barred.

Fed. R. Evid. 901 also requires that each item of evidence be authenticated. Here, Plaintiffs have not identified any witness from the CPSC in discovery that could authenticate the subject safety alert. As a result, the safety alert should also be barred because it cannot be authenticated.

### B. The CPSC Hoverboard Safety Alert is not Relevant and Should Further be Barred Pursuant to Fed. R. Evid. 403.

The safety alert is not relevant as it does not have any tendency to make a fact more or less probably true that it would be without the evidence nor is the safety alert of consequence to determine this action. Fed. R. Evid. 401. As such, it is inadmissible under Fed. R. Evid. 402. Moreover, to the extent it may have some relevance – which it does not – it should be barred pursuant to the Fed. R. Evid. 403 considerations.

### IV. MOTION IN LIMINE NO. 4: ANY CLAIMS OR EVIDENCE RELATED TO PLAINTIFFS' MATTHEW WADSWORTH, K.W., G.W. AND L.W. POTENTIAL FUTURE MEDICAL CLAIMS SHOULD BE BARRED.

It is unclear as to whether Plaintiffs Matthew Wadsworth, K.W., G.W. and L.W. are making any future medical claims and Plaintiffs' counsel was somewhat non-committal on the issue during the meet and confer conference. Nonetheless, to the extent Plaintiffs attempt to make such claims or offer such evidence, it should be barred.

These four Plaintiffs were either not physically injured in the fire or very minimally physically injured in the fire. Wyoming law prescribes a "reasonable degree of medical probability" standard for expert testimony on future medical expenses. *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1060 (10th Cir. 2013); *see Rudy v. Bossard*, 997 P.2d 480, 485 (Wyo. 2000) (holding that the court must determine whether the doctor conveyed that it was more likely than not that the patient would require future medical treatment). No retained experts have issued any opinions or testimony to support any future medical claims for these four Plaintiffs. There is no evidence to quantify the amount of treatment they may need or how much it will cost.

Defendants anticipate Plaintiffs may attempt to introduce evidence related to Matthew Wadsworth, K.W., G.W. and L.W.'s potential future medical claims through Mindy Tollefson, who is a clinical social worker and therapist, identified by Plaintiffs as a non-retained medical expert. Any testimony by Ms. Tollefson on the future medical claims of these four Plaintiffs would be entirely speculative and must be rejected.

Ms. Tollefson never counseled Matthew for any trauma he may have experienced. (LaFlamme Dec. ¶9, Ex. 7: Tollefson Dep. 75:4-6). Therefore, she cannot offer any testimony as to his need for future medical care.

While she typically discusses a child's past medical history that might impact her care for a child with the parents, Ms. Tollefson did not do that for K.W. or any of the other Wadsworth children because she did not do a full assessment of them. (Id. at 53:9-54:3, 78:3-8). Ms. Tollefson was unaware that K.W. had experienced depression or self-harm prior to the February 1, 2022 fire. (Id. at 18:5-8, 78:9-23). She did not know whether K.W. received counseling prior to the fire. (Id. at 18:13-16). She did not review any of K.W.'s prior medical records and has not spoken with her prior treating physicians or counselors. (Id. at 18:17-24). Ms. Tollefson admitted she cannot evaluate what K.W.'s mental and emotional state was prior to the fire because she did not treat her before the fire. (Id. at 33:16-22). When Ms. Tollefson treated K.W. on August 23, 2024, she opined that it was unclear whether her current symptoms were related to the fire. (Id. at 23:13-24:22). She does not know how much additional treatment K.W. might need. (Id. at 73:4-8). Ms. Tollefson cannot offer any reliable testimony about whether the fire caused K.W.'s alleged need for future medical treatment because she did not conduct a full evaluation of K.W. and was unaware of her prior emotional and mental difficulties.

Ms. Tollefson treated G.W. only four times after the fire, with the last day of treatment being April 19, 2022. (Id. at 42:25-43:3). She did not remember why she stopped treating G.W. but his mental and emotional state got better during the course of his treatment. (Id. at. 43:4-6,

13

43:17-21). She has no reason to believe that G.W. has not continued to make progress. (Id. at 43:22-44:1). Ms. Tollefson did not know what G.W.'s prognosis was with respect to his mental and emotional state. (Id. at 44:2-11).

Ms. Tollefson treated L.W. for four sessions after the fire, and then there was a break in treatment, but she could not remember why. (Id. at 37:6-12). She last treated L.W. on February 7, 2023, nearly two years ago. (Id. at 39:23-40:2). Ms. Tollefson did not know whether L.W. would be able to return to baseline. (Id. at 41:18-21). She did not know whether either G.W. or L.W. will require future therapy sessions and acknowledged that it was speculative to say they may have traumatic flashbacks because she does not know how the accident will impact them moving forward. (Id. at 73:9-14, 80:1-81:2). Ms. Tollefson cannot offer any reliable testimony as to L.W. and G.W.'s need for future medical care and any effort by Plaintiffs to elicit such testimony should be barred.

Given the lack of expert support, any future medical claims for Plaintiffs Matthew Wadsworth, K.W., G.W. or L.W. should be barred.[2]

### V.   MOTION IN LIMINE NO. 5: PLAINTIFFS SHOULD BE BARRED FROM USING THE GOLDEN RULE OR REPTILE THEORY APPROACHES DURING TRIAL.

A "golden rule" argument is "[a] jury argument in which a lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff or crime victim." *JPMKL, Inc. v. Western Express, Inc.,* 2020 WL 9813194, at *2 (D. Wyo. Dec. 21, 2020). Such arguments have generally been found "improper because they 'encourage[ ] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence'." *Broderick v. State Farm Fire and Casualty Co.,* 2024 WL 4525183, at 2

---

[2] Plaintiffs also have not disclosed or itemized W.W.'s future medical claims. Defendants concede that there is some evidence in the record that could support minimal (i.e. annual) follow up or monitoring of his burn injuries until he stops growing. Defendants, however reserve the right to challenge W.W.'s future medical claims to the extent they deviate from what the evidence may support.

(D. Wyo. Aug. 23, 2024) (quoting *Moody v. Ford Motor Co.,* 506 F. Supp. 2d 823, 836 (N.D. Okla. 2007) (internal citations omitted)).

Similar to the "golden rule" is the "reptile theory", popularized by jury consultants David Ball and Don Keenan, which argues that "appealing to the juror's 'reptile brain' would lead to courtroom victories." Louis J. Sirico, Jr., *The Trial Lawyer and the Reptilian Brain: A Critique*, 65 Clev. St. L. Rev. 411, 412 (2017). The purpose of the strategy is to trigger a primitive survival response in the minds of the jurors causing them to protect themselves and loved ones by rendering a verdict against the defendants, not based upon the evidence and law of the case but based upon their own desire for personal safety. The "reptile strategy" is a clever attempt to make the golden rule argument by extending the golden rule premise of putting jurors in the shoes of the victim and converting them into a guardian of community safety, including the safety of themselves and their family. Such arguments have no place in trials.

This type of argument is improper because it creates a purely emotional appeal to the passions of the jury, encouraging them to abandon their impartiality. *See Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984) ("We note that a golden rule appeal 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" (citation omitted)). Additionally, the reptile strategy is directly contrary to the Wyoming Civil Pattern Jury Instructions 1.03 which provides that the juror's responsibility is to "use the law along with the evidence . . . to determine the actual *facts* of *this case*." WCPJI 1.03 (2024) (emphasis added). Instruction 1.03 also provides that a juror should not be governed by speculation "or use sympathy, passion, or *public feeling* in determining the truth of any fact". *Id.* (emphasis added). Wyoming Civil Pattern Jury Instruction 1.04 further provides that "[y]ou are not partisans. You are judges - triers of the facts. *Your sole interest is to ascertain the truth from the evidence in the case.*" WCPJI 1.04 (2024) (emphasis added). The Court is likely to similarly instruct the jury. *See also* 106.01

O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions* (5th Ed. 2000) (provided as instruction in Judge Rankin's Stock Civil Jury Instructions and stating "remember at all time you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in this case."). Such evidence or argument is contrary to such instructions on the law and would confuse and mislead a jury causing unfair prejudice to the Defendants.

For these reasons, Defendants respectfully asks that this Court preclude Plaintiffs from presenting any golden rule and/or reptile strategy arguments in this matter.

## CONCLUSION

For the foregoing reasons, the Court should grant the above Motions *in Limine*.

**McCOY LEAVITT LASKEY LLC**

Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: January 22, 2025      By: _/s/_

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens *(pro hac vice)*
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com