Page 1

```
 1            UNITED STATES DISTRICT COURT
          IN AND FOR THE DISTRICT OF WYOMING
 2

 3   STEPHANIE WADSWORTH,       )
     individually and as        )
 4   Parent and Legal           )   CASE NO.
     Guardian of W.W., K.W.,    )   2:23-cv-00118-NDF
 5   G.W., and L.W., minor      )
     children, and MATTHEW      )
 6   WADSWORTH,                 )
                                )
 7         Plaintiffs,          )
                                )
 8   v.                         )
                                )
 9   WALMART, INC. and JETSON   )
     ELECTRIC BIKES, LLC,       )
10                              )
         Defendants.            )
11

12

13              ORAL DEPOSITION OF

14          DEREK A. KING, M.S., P.E.

15           MONDAY, AUGUST 19, 2024

16

17

18

19

20

21

22  REPORTED BY:

23  DEBRA A. DIBBLE, FAPR, RDR, CRR, CRC, Notary Public

24  California CSR 14345

25  JOB NO. 44990
```

Derek A. King, M.S., P.E.
08/19/2024

Page 70

1  possible -- a possible fire hazard.

2      Q.     Okay.

3      A.     But that's the extent of my recollection.

4      Q.     So it sounds like your knowledge of the
5  recall on the Rogue model is more general as opposed
6  to any in-depth analysis that you've done on that
7  issue.

8      A.     Correct.

9      Q.     Do you even know what type of battery
10 cells the Rogue model had compared to the Plasma?

11     A.     No.

12     Q.     You are aware from reviewing Mr. Husain's
13 deposition testimony from Jetson that the battery
14 cells were from a different manufacturer?

15     A.     That sounds familiar, him saying so.

16     Q.     So the battery manufacturer that we have
17 for the Plasma model is --

18            MR. LAFLAMME:  I'm just going to let
19       you type that.

20 BY MR. LAFLAMME:

21     Q.     -- Jiangxi Jiuding Power.

22            MR. LAFLAMME:  And that's probably
23       good enough.

24 BY MR. LAFLAMME:

25     Q.     I'm going to try to say this

Derek A. King, M.S., P.E.
08/19/2024

Page 71

1 phonetically.  Is -- actually, I'm not even going to
2 try to say it.
3           The battery manufacturer is listed on the
4 first page of Exhibit 74, correct?
5      A.    Yes.
6      Q.    And you don't know whether that's the
7 same battery manufacturer for the lithium-ion
8 battery cell that was involved in the Rogue model,
9 correct?
10     A.    Correct.
11     Q.    And you did not do anything to assess
12 that issue?
13     A.    Correct.
14     Q.    All right.  Going to page 8.
15     A.    Of which?
16     Q.    Oh, I'm sorry.  Of your PowerPoint, which
17 is Exhibit 72.  All right.
18           Looking at page 8 of Exhibit 72, this is
19 what appears to be just a comparison from the
20 exemplar compared to the subject unit, correct?
21     A.    Yes.
22     Q.    And then if we go to page 9 of your
23 PowerPoint, this is when you remove the exemplar
24 battery pack, correct?
25     A.    Yes.

Derek A. King, M.S., P.E.
08/19/2024

Page 191

 1  those individual cells, correct?
 2      A.    Yes.
 3      Q.    And they had a failure of the separator
 4  at substantially the same time to the extent that
 5  they both short-circuited at substantially the same
 6  time.
 7            That's your theory, correct?
 8      A.    That's what it -- that's what it appears
 9  to be.
10      Q.    Have you ever had another case where two
11  individual cells short-circuited at the same time?
12      A.    No.
13      Q.    That would be pretty unusual, wouldn't
14  it?
15            MR. AYALA:  Form.
16      A.    It's unusual, so far.
17  BY MR. LAFLAMME:
18      Q.    Meaning you have to have an individual
19  failure within cell 4, at substantially the same
20  time as you have an individual but completely
21  separate failure at cell 10, correct?
22      A.    Yes.
23      Q.    That's what you're saying in this case.
24            MR. AYALA:  Form.
25            He's said what he's saying.

Derek A. King, M.S., P.E.
08/19/2024

Page 192

1      A.      Yes.  Yes.  I believe it's a coincidence,
2 but that's what appears to have occurred.
3 BY MR. LAFLAMME:
4      Q.      Have you done any research to determine
5 the percentage chance of that coincidence?
6      A.      No.
7              MR. AYALA:  Form.
8 BY MR. LAFLAMME:
9      Q.      The individual cell itself, the
10 conditions that we see cells 4 and 10 in after the
11 fire, those conditions would have the same
12 appearance if it was an external fire attack as
13 well, correct?
14     A.      Yes.  For those individual cells, yes.
15     Q.      Meaning when lithium-ion battery cells
16 fail in a fire due to a fire attack, the appearance
17 is similar to what we see the two cells that have
18 failed in this case.
19     A.      Yes.
20     Q.      You were asked if it's possible to have a
21 short -- an internal short with the cell -- or,
22 sorry, with the hoverboard not plugged in.
23             Do you recall that?
24     A.      Yes.
25     Q.      You'd agree with me that it's very

Derek A. King, M.S., P.E.
08/19/2024

Page 205

```
 1  were an origin for fire.
 2            That's all.  I've lost my train of
 3  thought.
 4            MR. AYALA:  Okay.  That's it.  Thank
 5       you.
 6                   ------------
 7                    EXAMINATION
 8                   ------------
 9  BY MR. LAFLAMME:
10       Q.    With respect to the Jetson Rogue and the
11  recall that it underwent, you said you don't know
12  the circumstances of the Kaufman fire, correct?
13       A.    Correct.
14       Q.    And you don't know whether there was an
15  aftermarket charger that was used for the Kaufman
16  use of that -- or charging of the hoverboard,
17  correct?
18       A.    Correct.
19       Q.    And as far as you are aware, there's no
20  potential issue with an improper charger or
21  aftermarket charger being used by the Wadsworth
22  family in this case?
23            MR. AYALA:  Form.
24       A.    I'm not aware.
25                  *  *  *
```

Page 207

1                C E R T I F I C A T E

2

3         I, DEBRA A. DIBBLE, RDR, CRR, CRC, Notary

4 Public, do hereby certify:

5         That DEREK A. KING, M.S., P.E., the witness

6 whose deposition is hereinbefore set forth, was duly

7 sworn by me and that such deposition is a true

8 record of the testimony given by such witness;

9         That pursuant to FRCP Rule 30, signature of

10 the witness was requested by the witness or other

11 party before the conclusion of the deposition;

12         I further certify that I am not related to any

13 of the parties to this action by blood or marriage,

14 and that I am in no way interested in the outcome of

15 this matter.

16         IN WITNESS WHEREOF, I have hereunto set my

17 hand on this 23rd day of August, 2024.

18    *Debra Dibble*

19    _____
   Debra A. Dibble
20 Fellow of the Academy of Professional Reporters
   Registered Diplomate Reporter
21 Certified Realtime Reporter
   Notary Public 11/17/2027
22 CA 14345

23

24

25