Michael Schulz
09/10/2024

Page 1

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF WYOMING

```
STEPHANIE WADSWORTH,            )
Individually and as Parent      )
and Legal Guardian of W.W,      )
K.W., G.W., and L.W., minor     )
children, and MATTHEW           )
WADSWORTH                       )
                                )
          Plaintiffs,           )
                                )
     vs.                        )  No. 2:23-cv-00118-NDF
                                )
WALMART, INC., and JETSON       )
ELECTRIC BIKES, LLC,            )
                                )
          Defendants.           )
_____)
```

DEPOSITION OF MICHAEL J. SCHULZ

Tuesday, September 10, 2024

Roseville, California

REPORTED BY:  Joy E. Shure, CSR No. 3659

Michael Schulz
09/10/2024

Page 11

1  you're deferring to BEAR on.  At some point, you did an
2  analysis on fire spread, though; correct?
3      A.   Correct.
4      Q.   Okay.  So where do you pick up from where they
5  drop off?
6      A.   So they really pick up from where I drop off.
7  I identified the origin of the fire, and within that
8  origin I identified two potential sources of ignition --
9  well, three potential sources of ignition, and then they
10 picked up from there.
11     Q.   Okay.  What are the three potential sources of
12 ignition?
13     A.   The hoverboard and any -- at the time, any
14 associated charging components, the electrical outlet
15 for Bedroom No. 4 on the wall behind the refrigerator,
16 and then thirdly, initially, I included the refrigerator
17 as a potential source because of its location on the
18 other side of that bedroom wall.
19     Q.   Was the hoverboard charging at the time of the
20 accident -- of the fire?
21     A.   There's testimony that it had been charging at
22 the end of the day's use and prior to the fire, but I
23 concur -- and I did not see and I concur that in the
24 photographs of the joint inspection of the evidence,
25 there were no electrical plugs in that outlet.

Michael Schulz
09/10/2024

Page 12

```
 1      Q.   Okay.  So based on your investigation, you've
 2   concluded that the hoverboard was not charging at the
 3   time of the fire; correct?
 4           MR. AYALA:  Form.
 5           THE WITNESS:  I don't see any evidence that
 6   says that it was, but I can only speak to how I found
 7   the electrical outlet post incident, and not having any
 8   of the blade plates in there, that would seem to be
 9   indicative that the charger was not plugged in at the
10   time of the fire, yes.
11   BY MR. LaFLAMME:
12      Q.   Okay.  So there were no blade plugs in the
13   outlet directly behind the hoverboard; correct?
14      A.   Correct.
15      Q.   There was no wiring from any charging device
16   found by the hoverboard; correct?
17      A.   Correct.
18      Q.   And there was no indication on the female end
19   of the receptacle on the hoverboard that anything had
20   been plugged in at the time of the fire; correct?
21      A.   So that's something I didn't -- I looked at
22   briefly in the field, but I didn't do a detailed
23   analysis of that, but I'm not aware of any evidence of
24   that.
25      Q.   Okay.  So based on the physical evidence,
```

Michael Schulz
09/10/2024

Page 13

1   you're not aware of any evidence that would suggest this
2   hoverboard was plugged in at the time of the fire; true?
3        A.   True.  That's correct.
4        Q.   And this fire was first identified by Gunner
5   and Layne Wadsworth; correct?
6        A.   Correct.
7        Q.   And Gunner and Layne, we've referred to it as
8   Bedroom 4, that was their bedroom; correct?
9        A.   Correct.
10       Q.   All right.  And they were in a bunk bed that
11  abutted the wall and window for their bedroom?
12       A.   Correct.
13       Q.   And when they first woke up, that window had
14  already been breached or broken; correct?
15            MR. AYALA:  Form.
16            THE WITNESS:  I haven't read any testimony that
17  that's their testimony.  There is testimony that Gunner
18  in particular recalls that there were shards of glass in
19  the bed.
20  BY MR. LaFLAMME:
21       Q.   Okay.  And that's when he woke up; correct?
22       A.   Yes.
23       Q.   And you've seen the interview with -- that
24  Detective Sheaman did with the Wadsworth boys; correct?
25       A.   Correct.

Michael Schulz
09/10/2024

Page 212

1  REPORTER'S CERTIFICATE

2

3        I, Joy E. Shure, a Certified Shorthand Reporter,

4   holding a valid and current license issued by the State of

5   California, CSR No. 3659, do hereby certify:

6        That said proceedings were taken down by me in

7   shorthand at the time and place therein set forth and

8   thereafter transcribed into typewriting under my direction

9   and supervision.

10       I further certify that I am neither counsel for

11  nor related to any party to said action nor in anywise

12  interested in the outcome thereof.

13       Before completion of the deposition, review of

14  the transcript [X ]was [  ]was not requested.

15       The dismantling, unsealing, or unbinding of the

16  original transcript will render the Reporter's certificate

17  null and void.

18

19       IN WITNESS WHEREOF, I have hereunto subscribed my

20  name on this 25th day of September, 2024.

21

22

23  _____

24       Joy E. Shure, CSR No. 3659

25

**Lexitas Legal Philadelphia**
**215-504-4622**