IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**FILED**

*10:27 am, 1/29/25*

**Margaret Botkins
Clerk of Court**

| | |
|---|---|
| STEPHANIE WADSWORTH, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH, <br><br> Plaintiffs, <br><br> vs. <br><br> WALMART INC. and JETSON ELECTRIC BIKES, LLC, <br><br> Defendants. | Case No.  2:23-CV-118-KHR |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RULING ON DEFENDANTS' MOTIONS TO EXCLUDE THREE WITNESSES

Before the Court is Defendants Walmart Inc. and Jetson Electric Bike, LLC's Motion for Summary Judgment. [ECF No. 96]. The Motion is based in part on three pending Motions to Exclude, [ECF Nos. 100, 102, & 104], so the Court will rule on those motions in this Order. After carefully reviewing the parties' briefings, exhibits, and relevant law, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

## BACKGROUND

In December 2021, Plaintiff Matthew Wadsworth purchased a portable electric device commonly known as a "hoverboard" at a Walmart Inc. ("Walmart") retail store in

Rock Springs, Wyoming. [ECF No. 1, at 8, ¶¶ 31–32]. The hoverboard was manufactured by Jetson Electric Bike, LLC ("Jetson"). *See id.* at 1–2, ¶ 1. On February 1, 2022, emergency personal was dispatched in the early morning hours to Plaintiffs' residence in Green River, Wyoming in response to a house fire. *Id.* at 8, ¶ 33. Plaintiffs allege the fire was caused by the hoverboard's lithium-ion battery malfunctioning. *Id.* at 8, ¶ 34. Plaintiffs and their minor children sustained various injuries as a result of the alleged malfunction. *Id.* at 8–9, ¶¶ 35–38. On July 6, 2023, Plaintiffs filed a thirty-two count Complaint for negligence, strict liability, breach of warranty, and loss of consortium. *See* [ECF No. 1].

RELEVANT LAW

A district court's decision on summary judgment is reviewed de novo. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Rule 56 of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material if it is necessary to determine the outcome of the case. *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018). A dispute is genuine if evidence exists that it may lead a reasonable trier of fact to return a verdict for the non-moving party. *Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1218 (D. Colo. 2017). When determining whether a genuine dispute of material fact exists, a court will draw all favorable inferences of factual ambiguities in favor of the non-movant. *Morlock v. United Parcel Serv., Inc.*, No. 08-CV-44, 2008 WL 11411456, at *2 (D. Wyo. Oct. 9, 2008).

If a movant meets their burden in showing that no genuine dispute exists, the non-movant must submit sufficient evidence in specific factual form showing that a dispute does exist. *Id.* This requires more than a scintilla of evidence, which means providing more than mere assertions and conjecture. *Brennan v. Jackson Hole Snowmobile Tours, Inc.*, No. 08-CV-265, 2009 WL 10700292, at *2 (D. Wyo. Aug. 4, 2009). "[S]ummary judgment is appropriate when the non-movant is unable to present facts on which a reasonable jury could find in his or her favor." *Id.* In sum, summary judgment is an opportunity to determine the legal sufficiency of a claim to proceed to trial, not to balance or weigh factual disputes.

## RULING OF THE COURT

Defendants seek summary judgment on grounds that Plaintiff is not able to demonstrate causation, which is allegedly required for all claims. [ECF No. 99, at 12–17].[1] Defendants acknowledge that Plaintiffs have an expert designated to testify regarding causation but argue his testimony should be excluded. *Id.* at 14; *see* [ECF No. 104]. Additionally, Defendants seek to prevent opinion testimony about fire origin and cause from two lay witnesses. [ECF No. 99, at 17–20]; [ECF Nos. 100 & 102]. Defendants further argue that, irrespective of the causation arguments, they are still entitled to summary judgment on Plaintiffs' products liability claims because there is no expert to testify about design defect or warnings. [ECF No. 99, at 20–22]. Last, Defendants request dismissal of

---

[1] Pinpoint citations to [ECF] documents are in reference to the electronic court filing page number and not the document's local pagination.

the punitive damages claim because Plaintiffs cannot show the Defendants conduct was wanton or willful. *Id.* at 22–25.

The Court denies Defendants' Motion with respect to claims involving causation and products liability but grants Defendants' Motion with respect to punitive damages. Each issue will be addressed in turn. However, as an initial matter, the Court will rule on Plaintiff's Motion to Strike Defendants' Notice of Errata. [ECF No. 125].

## I.    Motion to Strike Notice of Errata

On December 20, 2024, Defendants filed a Notice of Errata eighteen days after the dispositive motions deadline. *See* [ECF No. 124]. Apparently, there was an inadvertent clerical error when Defendants filed their Motion for Summary Judgment on December 2, 2024. *Id.* at 2. In particular, sections from four attachments were inadvertently excluded. *Id.* Defendants then reattached all twenty-one exhibits with the relevant sections included. *See id.* Plaintiffs seek to strike the Notice because it is untimely. *See* [ECF No. 125].

The amended exhibits include: (1) the expert report of Michael J. Schulz; (2) the expert report of Brian N. Strandjord; (3) the expert report of Derek King; and (4) the deposition of Derek King. [ECF No. 124]. First, Plaintiffs themselves attach the entire deposition of Mr. King in their Response to Defendants' Motion to exclude his testimony. [ECF No. 120-1]. Thus, the Court considers this moot.

For the other exhibits, all are in the record and sufficiently identifiable by reference. [ECF No. 73-2] (Mr. Schulz's expert report); [ECF No. 73-3] (Mr. King's expert report); [ECF No. 80-10] (Mr. Strandjord's expert report). Defendants' attempt to clarify appears to be done out of the abundance of caution in case the Court could not discern which

4

exhibits they were referring to, but since the Court can sufficiently identify which documents were being referenced, the Court will consider them. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see also* U.S.D.C.L.R. 7.1(c)(3) (providing that parties should not file duplicative exhibits). Further, Defendants do not raise any new arguments. *See* [ECF No. 124]. Therefore, Plaintiff's Motion to Strike is denied as moot.[2]

## II.    Motion to Exclude Testimony of Expert Derek King

Next, Defendants seek to exclude the testimony of designated expert Derek King. [ECF No. 104]. Mr. King is expected to testify that the fire originated in the hoverboard's battery pack. [ECF No. 73, at 4]. Defendants argue there is no reliable methodology to determine whether a lithium-ion battery causes a fire. [ECF No. 105, at 5]. Defendants highlight that Mr. King opines two cells in the battery short-circuited simultaneously, which caused the fire. *Id.* This is apparently a very rare circumstance. *See id.* at 5–6. Further, Defendants argue Mr. King failed to examine critical evidence in forming his opinion. *Id.* at 8–11. Defendants also contend Mr. King is not qualified to opine on lithium-ion battery fire causes.[3] *Id.* at 11–12. Last, Defendants request Mr. King be barred from

---

[2] Ironically, Plaintiffs did the same thing. *See* [ECF Nos. 119 & 123]. Plaintiffs' first Response did not contain any exhibits. *See* [ECF No. 119]. Plaintiffs then filed an amended Response with ten exhibits one day after the responsive pleading deadline. *See* [ECF No. 123]. Being late by one day is obviously different than eighteen days, but neither party has been strictly complying with their timelines.

[3] Defendants cite three instances where Mr. King's testimony was excluded. [ECF No. 105, at 11–12]. Oddly, they attach the *briefs* of the parties for two of those cases in their exhibits—not the actual cases. *See* [ECF Nos. 105-5 & 105-6]. For the record, the Court will consider the actual cases, *Bettencourt v. SharkNinja Operating LLC*, No. 22-CV-09091-CRB, 2024 WL 3187148 (N.D. Cal. June 25, 2024) and *Ibarra v. Future Motion, Inc.*, No. 22-cv-14067, 2023 U.S. Dist. LEXIS 79285, at *1 (S.D. Fla. May 1, 2023), not the exhibits.

offering testimony regarding risk assessments and Failure Modes and Effects Analyses ("FMEA"). *Id.* at 12. Thus, Defendants contend his testimony must be excluded. *Id.* at 13.

Plaintiff responds that Mr. King based his opinions on reliable methodology. [ECF No. 120, at 3]. For his methodology, Plaintiff notes that Mr. King examined the hoverboard, CT scans, photos of the scene, and investigative reports when forming his opinions. *Id.* Mr. King also reviewed research and literature on lithium-ion battery failures and relied on his experience. *Id.* Plaintiffs point out that this methodology is the same one used by Defendants' own expert, Samuel Subler. *Id.* at 4. Next, Plaintiffs contend that Mr. King used the facts from unbiased investigators and the alleged failure to consider certain facts is more appropriately addressed on cross-examination. *Id.* at 5. Plaintiffs also contend that Mr. King is qualified to give an opinion on this matter because of his experience. *Id.* at 6–7. Last, Plaintiffs argue that Defendants' concerns for risk assessments and FMEAs go to the weight of evidence, not admissibility. *Id.* at 8.

District courts are afforded broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire and Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). Fed R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

In determining the admissibility of expert testimony, courts engage in a two-step process. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). First, courts assess whether the expert is qualified by skill, experience, training, or education to give an opinion under Rule 702. *Id.* Second, the court determines whether the expert's opinion is sufficiently reliable. *Id.*

### A. Whether Mr. King Is Qualified by Skill, Experience, Training, or Education to Give an Opinion

The expert witness must first be qualified by his skill, experience, training, or experience to offer their opinions. *See* Fed. R. Evid. 702. Courts interpret this requirement liberally. *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1126 (D. Utah 1999) (citing *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). The proponent of the expert carries the burden of demonstrating the expert has sufficient expertise to opine on such topics. *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1071 (D. Colo. 2022). "In a products liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991).

Here, Mr. King is an electrical engineer. [ECF No. 120-1, at 18]. He has also worked on cases that involved lithium-ion batteries causing fires. *Id.* at 188–89. Even though he has never personally designed or manufactured a lithium-ion battery product, *id.* at 21, he may still opine on related applications in the field of electrical engineering. *See Wheeler*, 935 F.2d at 1100; *see also Lancaster v. Samsung Elecs. Am., Inc.*, No. 2:20-CV-00794-

GMN-EJY, 2022 WL 18998608, at *4 (D. Nev. Dec. 5, 2022) (finding an expert was qualified despite his lack of work with lithium-ion batteries because he was otherwise qualified to testify about battery failures in general). Given courts' liberal interpretation of this requirement, the Court finds Plaintiffs met their burden to demonstrate Mr. King is qualified as an expert in this field.[4]

### B. Whether Mr. King's Opinion Is Sufficiently Reliable

Once an expert is qualified, "the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable." *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1071 (D. Colo. 2022). In order to be reliable, the testimony must be based on specialized knowledge, "which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (quotations omitted). The overarching consideration is to ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Thus, a court assesses "(1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology

---

[4] It is unclear whether Mr. King's qualifications are truly disputed by Defendants. The briefing appears to attack his training and experience. *See* [ECF No. 105, at 11]. However, this section comes under the overarching heading titled "King's Fire Cause Opinions Are Unreliable." *Id.* at 4. Much of Defendants' arguments appear to base his lack of qualifications on his reliability in forming the opinions. *See id.* at 11–12. These arguments are likely more appropriately addressed for the second prong instead of the first. *See Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1266 (D. Kan. 2003), *aff'd*, 145 F. App'x 238 (10th Cir. 2005) ("An expert's qualifications are relevant to the reliability inquiry."). Nevertheless, the Court addresses whether he is qualified under the first prong if it is disputed.

used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community." *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).

### 1. Causation Opinion

Here, Mr. King does not identify particular methodologies, but he examined the CT scans of the hoverboard. *See* [ECF No. 73-3, at 9–12]. He also compared the scans with an exemplar. *See id.* at 9. This is similar to Defendants' expert, Mr. Sudler, although he identifies specific methodologies and dives into much more detail than Mr. King. *Compare* [ECF No. 80-7] *with* [ECF No. 73-3]. This weighs in favor of admissibility under factor (1). In addition, analyzing CT scans has been upheld as a reliable method in assessing alleged lithium-ion battery failures. *See Glassman v. Home Depot USA, Inc.*, No. 2:16-CV-07475-ODW-E, 2018 WL 3569344, at *4–5 (C.D. Cal. July 20, 2018); *Macaluso v. Apple Inc.*, No. CV 21-1361, 2023 WL 4685965, at *10–11 (E.D. Pa. July 21, 2023). This supports factors (2) and (4). Thus, the factors weigh in favor of admission.

While a court exercises its gatekeeping function in ensuring expert testimony is reliable, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). At worst, Mr. King's report appears to be shaky. Defendants highlight how rare it is to have a simultaneous short circuit in two different cells and cite a scholarly article in support. [ECF No. 105, at 5–6]; [ECF No. 105-2]. However, the Court cannot say his methodology—reviewing CT scans of the battery and disassembling an exemplar—is

unreliable. *See Glassman*, 2018 WL 3569344, at *5 (noting the lithium-ion battery expert's flaws in forming his opinion but ultimately allowing the testimony because those flaws can be explored on cross-examination and "the methods underlying [his] conclusions are not so unreliable as to render them 'junk science'"). Therefore, Mr. King's opinions on causation are admissible and Defendants' concerns can be addressed during cross-examination.

### 2. Risk Assessment and FMEAs

Next, Defendants request the Court exclude testimony regarding alleged inadequate risk assessments or FMEAs. [ECF No. 105, at 12]. As described by Mr. King, FMEA is essentially a risk assessment method that involves three steps once a hazard has been identified. [ECF No. 73-3, at 12]. First, the producer should design the hazardous condition out. *Id.* Second, if step one is unfeasible, then the producer should guard against the hazardous condition. *Id.* Third, if both steps one and two are unfeasible, then the producer should try to warn users of the hazardous condition. *Id.* at 12–13.

Apparently based on this method, Mr. King concludes that Jetson likely failed to perform "a competent risk assessment for the subject hover board." *Id.* at 15. However, he does not describe how any of the three steps apply to the hoverboard. *See id.* at 12–15. After describing FMEA, he states:

> It is good engineering practice to perform such an analysis not just for machinery, but for any device that is intended to have an operator/user and can pose hazards for the operator/user.

> Jetson should have conducted a[] FMEA or other Risk Assessment to eliminate unnecessary risks as part of their design process.

*Id.* at 15. This is the entirety of his analysis.

As noted, mere subjective belief or speculation is insufficient to form a reliable opinion. *Goebel*, 346 F.3d at 991. Mr. King simply fails to show a sufficient connection between the facts and his conclusion. He even acknowledges as much in his deposition:

> Q. Do you have any information as to what FMEA or other risk assessment process may have been adopted by the manufacturer for this hoverboard?
>
> A. I don't have that information.

[ECF No. 105-2, at 27]. Thus, Mr. King's conclusion for risk assessment and FMEA is speculative and unreliable. This appears to be a common theme for Mr. King. *Bettencourt v. SharkNinja Operating LLC*, No. 22-CV-09091-CRB, 2024 WL 3187148, at *7 (N.D. Cal. June 25, 2024) ("Mr. King offers no evidence in support of [his opinion that Defendant failed to address a known hazard in its FMEA analysis], that, in generating its []FMEA, [Defendant] failed to consider the hazard … [His opinions] are therefore both based on 'unsupported speculation' and not admissible."). Therefore, the Court will exclude testimony from Mr. King relating to risk assessment and FMEA.

## III.   Motion to Exclude Testimony of Non-Experts Jeff Sheaman and Bill Robinson

Next, Defendants seek to exclude opinion testimony of Jeff Sheaman and Bill Robinson. [ECF No. 100]; [ECF No. 102]. Mr. Sheaman is the detective for the Sweetwater County Sheriff's Office and investigates fire origins and causes as part of his duties. [ECF No. 123-2]. Mr. Robinson is an assistant fire chief for the City of Green River. [ECF No. 103, at 2]. Both conducted investigations and concluded the fire originated from the hoverboard inside the house. [ECF No. 103-3, at 3].

Defendants argue both should be precluded from giving opinion testimony because they did not conduct the investigation in accordance with the methodology outlined in National Fire Protection Association ("NFPA") 921. [ECF No. 101, at 9–12]; [ECF No. 103, at 6–8]. According to that methodology, "all collected and available data should be analyzed using principles of the scientific method." [ECF No. 101-13, at 6]; [ECF No. 103-4, at 6]. Defendants argue that Mr. Sheaman and Mr. Robinson failed to consider Defendants' alternative theory that the fire started from outside the house. [ECF No. 101, at 11–12]; [ECF No. 103, at 7–8]. Additionally, Defendants highlight that neither have been designated as experts. [ECF No. 101, at 12]; [ECF No. 103, at 8]. Thus, Defendants request they be barred from offering opinion testimony for the fire's origin and cause. [ECF No. 101, at 12]; [ECF No. 103, at 8]. However, Defendants concede that both may still testify as fact witnesses for their observations made during the investigation. [ECF No. 101, at 12]; [ECF No. 103, at 8].

Plaintiffs respond that NFPA 921 does not need to be strictly followed in order to be admissible. [ECF No. 123, at 10–13].[5] Further, Plaintiffs contend that they are lay witnesses and need not be disclosed as experts. *Id.* at 13–14. Alternatively, if they were required to

---

[5] Plaintiffs rely on their briefing from their Response to Defendants' Motion for Summary Judgment to respond to Defendants' Motion to Exclude Opinion Testimony from Jeff Sheaman. [ECF No. 122]. Defendants argue the Local Rules prohibit allowing this form of response. [ECF No. 126]. Since the Court has consolidated its Order for the relevant Motions to Exclude, the Court will consider the arguments made in their Response to Defendants' Motion for Summary Judgment. Oddly, Plaintiffs did not expressly rely on the briefings for Mr. Robinson's testimony, and it would have been best practice to do so. Nevertheless, it is clear from the Response that Plaintiffs oppose the Motion to Exclude Mr. Robinson's opinion testimony, so the Court will consider those briefings.

Additionally, the Local Rules do not necessarily prevent a party from relying on other pleadings. However, the Local Rules expressly provide that non-dispositive motions shall not exceed ten pages. U.S.D.C.L.R. 7.1(b)(1)(C). The Court notes that Defendants' Motion to Exclude Testimony from Derek King exceeds the page limit by four pages and Defendants' Motion to Exclude Testimony from Jeff Sheaman exceeds it by three. The Court will still consider those Motions even though Defendants did not seek leave, but Defendants should assess their own noncompliance before urging such a strict reading of the Local Rules.

be disclosed as experts, Plaintiffs argue that Defendants suffered no prejudice as a result of their failure to disclose because Defendants have had their investigative reports for some time and both were deposed at length. *Id.* at 14–16.

Under Fed. R. Evid. 701, lay witnesses may provide opinion testimony when it is "(1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or specialized knowledge within the scope of Rule 702." *Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 649 (10th Cir. 2014). Under the third requirement, a lay witness cannot testify beyond matters within common experience. *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979). Once the testimony exceeds opinions formed upon basic observation, such testimony is subject to the confines of Rule 702. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).

Regardless of whether their opinions are reliable,[6] the fire cause and origin opinions by Mr. Sheaman and Mr. Robinson require specialized knowledge. *United States v. Idaho Cnty. Light & Power Coop. Ass'n, Inc.*, No. 3:17-CV-00391-CWD, 2020 WL 877809, at *6 (D. Idaho Feb. 21, 2020) ("[T]he determination of the origin and cause of a fire is frequently considered beyond the understanding of the average lay person, and expert testimony on this issue is regularly admitted at trial." (quotations admitted)); *St. Cyr v. Flying J Inc.*, No. 3:06-CV-13-J-33TEM, 2008 WL 2608127, at *7 (M.D. Fla. June 29,

---

[6] Despite Defendants' arguments, the Tenth Circuit does not require strict adherence to NFPA 921. *United States v. Hernandez*, 104 F.4th 755, 761 (10th Cir. 2024) ("These guidelines [outlined in NFPA 921] provide flexible recommendations, not strict requirements.").

2008) ("The cause and origin of fires as well as other scientific and technical matters that will arise in this case are neither matters of common sense nor common knowledge."). Because such opinions require specialized or technical knowledge, Plaintiffs needed to designate both as non-retained experts.[7] *See* Fed. R. Civ. P. 26(a)(2)(C).

In addressing the failure to designate experts, courts typically turn to the factors outlined in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985 (10th Cir. 1999) to assess whether the party has been prejudiced. It is doubtful that Defendants' have suffered any significant prejudice because of Plaintiffs' failure, as they have possessed Mr. Sheaman's and Mr. Robinson's investigative reports for quite some time and have deposed both at length.

However, the Court will nevertheless exclude their opinions because they are duplicative. Per the Court's Initial Pretrial Order, "[t]he parties are each limited to one testifying expert witness for each field of expertise, absent a showing that complex issues necessitate expert witnesses with narrow, specialized areas of expertise within a larger general field." [ECF No. 48, at 4]; *see* U.S.D.C.L.R. 26.1(e)(2). When determining whether expert opinion is duplicative, courts consider "(1) each expert's qualifications and areas of expertise; (2) the analysis offered by each expert; and (3) the particular subject matter of

---

[7] Plaintiffs appear to misinterpret the Court's Initial Pretrial Order. [ECF No. 123, at 14] (arguing the Initial Pretrial Order and Amended Scheduling Order does not require first responders, like Mr. Sheaman and Mr. Robinson, to be designated as experts). While the Court reminded the parties that non-retained treating physicians giving opinion testimony still must be disclosed as experts, *see* [ECF No. 48, at 4]; [ECF No. 78, at 2], nothing in either Order altered a party's obligations under Fed. R. Civ. P. 26(a)(2)(C) for other non-retained experts. In fact, the Amended Scheduling Order cited *Vincent v. Nelson*, 51 F.4th 1200, 1213-22 (10th Cir. 2022) as a reference for how parties should disclose both retained and *non-retained* experts.

each expert's testimony." *Swank v. Zimmer, Inc.*, No. CIV. 03-CV-60-B, 2004 WL 5499523, at *7 (D. Wyo. Jan. 7, 2004).

Allowing either Mr. Sheaman or Mr. Robinson to testify to "fire cause" and "fire origin" would be duplicative opinion testimony of designated experts, Mr. King (fire cause) and Michael J. Schulz (fire origin). It is difficult to assess the first factor because the failure to designate Mr. Sheaman and Mr. Robinson as non-retained experts leaves the Court uncertain about their qualifications, making it hard to compare them to Mr. Schulz's qualifications.[8] It appears Plaintiffs' counsel attempted to highlight Mr. Sheaman's qualifications during his deposition. *See* [ECF No. 123-2, 8–9] (Mr. Sheaman explaining is certified in fire origin and cause); [ECF No. 123-3]. Mr. Sheaman's qualifications seem to be similar to Mr. Schulz's. *See* [ECF No. 123-2, 8–9]. However, Plaintiffs did not provide the relevant excerpts from Mr. Robinson's deposition explaining his qualifications, which makes it doubtful he would be qualified as an expert to begin with.

In any event, Mr. Sheaman, Mr. Robinson, and Mr. Schulz all conclude that the fire started inside of the house. [ECF No. 72-2, at 149]; [ECF No. 101-7, at 9]; [ECF No. 103-3, at 3]. Mr. Schulz's analysis contains more scientific and technical analysis, whereas Mr. Sheaman's and Mr. Robinson's investigative reports are more fact-intensive. Nevertheless, the factors weigh in favor of treating the opinions of Mr. Sheaman and Mr. Robinson as

---

[8] The Court notes that the qualifications and analysis of Mr. King are different than Mr. Sheaman's and Robinson's. However, Mr. Sheaman and Robinson do not have a reliable foundation to give opinion testimony on the hoverboard's failure. *Weisgram v. Marley Co.*, 169 F.3d 514, 518–19 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000) (finding reversible error in admitting the testimony of a city fire captain who investigated a residential fire when he testified that the defendant's heater malfunctioned and how the heater would have ignited other objects); *Vigilant Ins. v. Sunbeam Corp.*, 231 F.R.D. 582, 593 (D. Ariz. 2005) (prohibiting testimony from a fire captain that a coffeemaker started the fire).

duplicative of Mr. Schulz's opinion testimony. Therefore, Mr. Sheaman and Mr. Robinson are not permitted to opine as to the cause or origin of the fire, but they may testify about their observations during the investigations.

## IV.    Motion for Summary Judgment

In light of these rulings, the Court turns to Defendants' Motion for Summary Judgment. Because the Court finds that Mr. King satisfies Rule 702 to provide expert opinion for fire cause, the Court finds there is a genuine dispute to material facts for causation.[9] Thus, Defendants' Motion is denied with respect to causation. The Court will now address the remaining arguments.

### A.  Product Defect and Strict Liability

Defendants move for summary judgment on Plaintiffs' strict liability claims because Plaintiffs have not retained an expert to testify to any design defect or failure to warn defect. [ECF No. 99, at 20–22]. Defendants note that the only two liability experts are Mr. King and Mr. Schulz. *Id.* at 20. However, because Mr. Schulz's testimony is limited to fire origin, Mr. King is the only expert who can testify to design defects. *Id.* Defendants argue that Mr. King's opinions only related to a manufacturing defect, not a design defect. *Id.* at 20–21. Thus, Plaintiffs have no one to testify to design defect. *Id.* at 21. Additionally, because neither expert discusses warnings, Plaintiffs do not have enough evidence to demonstrate a failure to warn defect. *Id.* at 21–22.

---

[9] Even if the Court excluded Mr. King's opinion for causation, the Court would likely still deny the Motion because Mr. Schulz's expert report may allow a juror to make the reasonable inference that the fire started with the hoverboard.

In response, Plaintiffs note that there are multiple types of defects in a products liability case, which are design defects, manufacturing defects, or inadequate warnings for hazardous products. [ECF No. 123, at 17]. Plaintiffs argue that Mr. King does offer opinions on design defect which creates a genuine dispute of material facts for that issue. *Id.* at 18–19. For the failure to warn defect, Plaintiffs contend that manufacturers have a duty to warn of known or readily foreseeable harms resulting from intended use or foreseeable misuse of a product. *Id.* at 19. Plaintiffs note that Jetson allegedly knew of a prior event where its hoverboard started a house fire, and even though it was a different model, Jetson's corporate representative could not state the difference between that model and the one involved in the instant action.[10] *Id.* at 20. Thus, Plaintiffs request the Court deny summary judgment. *Id.* at 22, 24.

Because this Court sits in diversity, it will apply procedural federal law and substantive state law. *See Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018). Under Wyoming law, there are five elements for strict products liability claims:

(1) that the sellers were engaged in the business of selling the product that caused the harm;

(2) that the product was defective when sold;

(3) that the product was unreasonably dangerous to the user or consumer;

(4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and

---

[10] To add to the laundry list of issues with the parties' filings, Plaintiffs failed to attach the relevant excerpts from Jetson's corporate representative, Sam Husain, even after their second filing. *See* [ECF No. 123-6]. Unlike the attachments in Defendants' Notice of Errata, Mr. Husain's deposition is not in the record. Thus, the Court is unable to consider it, except to the extent it overlaps with parts cited by Defendants.

(5) that the product caused physical harm to the plaintiff/consumer.

*Rohde v. Smiths Med.*, 2007 WY 134, ¶ 18, 165 P.3d 433, 437 (Wyo. 2007) (quoting *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 344 (Wyo. 1986)). Under the second element, it appears the Wyoming Supreme Court recognizes two theories of demonstrating the product was defective: "1) a defect in the product itself; and 2) failure to warn about an inherent risk of a non-defective product." *Id.* ¶ 31, 165 P.3d at 440. Wyoming law appears to treat a design defect and manufacturing defect as two subcategories of the first theory. *See id.* ¶ 31, 165 P.3d at 441 ("Although liability arising from faulty manufacture or design and liability arising out of failure to warn of danger are covered under the same rule, the two categories are conceptually different." (quoting Allan E. Korpela, *Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort*, 53 A.L.R.3d 239, 243, § 2[a] (1973)).

When a manufacturing or design defect is alleged, a product is "defective" if it "is 'not reasonably safe,' or is 'unreasonably dangerous' to the user or consumer." *Campbell ex rel. Campbell v. Studer, Inc.*, 970 P.2d 389, 392 (Wyo. 1998) (quoting *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 64 (Wyo. 1989)). The fact that an injury occurred, by itself, is insufficient to establish a product was defective. *Campbell ex rel. Campbell v. Studer, Inc.*, 970 P.2d 389, 394 (Wyo. 1998). A plaintiff can show a product is defective by presenting evidence of a defect or by inference. *Rohde*, 2007 WY 134, ¶ 18, 165 P.3d at 437 (citing *Sims v. General Motors Corp.*, 751 P.2d 357, 360–61 (Wyo. 1988)). Wyoming allows an inference of defect "if a prima facie case can be presented that there was no

abnormal use of the product or that there were no reasonable secondary causes for the defect." *Id.* ¶ 19, 165 P.3d at 438.

Here, Defendants appear to concede that Mr. King has offered opinions on a manufacturing defect. [ECF No. 99, at 21] ("[Mr. King's opinion] is a manufacturing defect opinion."). A manufacturing defect is sufficient to show that a product is defective. *See Rohde*, 2007 WY 134, ¶ 31, 165 P.3d at 440–41. Because Mr. King's opinion for causation is admissible, there is a genuine dispute as to whether the hoverboard was defective.

Further, because Wyoming allows an inference of defect when there is a prima facie showing of no abnormal use or secondary cause, summary judgment would still be denied even if the Court excluded Mr. King's testimony. It does not appear that Defendants argue Plaintiffs abnormally used the product or there was a secondary cause creating the defect. Thus, Defendants did not meet their burden to demonstrate there are no material facts in genuine dispute as to whether Plaintiffs abnormally used or created a secondary cause leading to the defect.

Additionally, there is a genuine dispute of material facts as to whether Defendants were required to warn Plaintiffs. "Wyoming law indicates that even in cases where a product has been flawlessly manufactured, if there is, nevertheless, the likelihood that the product could cause harm unless properly used, a duty to warn arises." *Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶ 19, 212 P.3d 614, 632 (Wyo. 2009) (citing *Rohde*, 2007 WY 134, ¶ 31, 165 P.3d at 437). Determining "whether the product 'is in a defective condition unreasonably dangerous by virtue of the absence of adequate warning or instruction'" is ultimately a question of fact. *Id.* (quoting *Rohde*, 2007 WY 134, ¶ 32, 165 P.3d at 441).

Here, Defendants contend that Plaintiffs need an expert for their failure to warn claim. [ECF No. 99, at 21–22]. However, Wyoming has never required an expert to opine that there were inadequate warnings,[11] so the Court declines to require claimants to provide expert opinion for failure to warn claims. This is consistent with Wyoming law which allows claimants to risk relying on non-expert testimony. *E.g., Wyo. Med. Ctr., Inc. v. Murray*, 2001 WY 63, ¶¶ 16–17, 27 P.3d 266, 270 (Wyo. 2001) (allowing the plaintiff to not rely on expert opinion for causation and fees in the context of medical malpractice); *Gill v. Lockhart*, 2022 WY 87, ¶ 52, 512 P.3d 971, 986 (Wyo. 2022) (declining to adopt a bright-line rule for requiring expert opinion in the context of reasonable construction costs). While determining whether a product is dangerously defective seems to be a complex matter requiring expert testimony, *see Campbell*, 970 P.2d at 394, the adequacy of a warning is something within common knowledge which a jury can find without an expert. Because Mr. King will testify to the manufacturing defect, a reasonable juror may conclude the adequacy of the warnings was insufficient. Therefore, summary judgment is denied with respect to Plaintiffs' strict liability claims.

### B. Punitive Damages

Last, Defendant moves for summary judgment on Plaintiffs' claims for punitive damages. [ECF No. 99, at 22–25]. Defendants argue that Plaintiffs cannot demonstrate any

---

[11] Wyoming law on failure to warn claims in products liability is scant. It appears only *Rohde*, 2007 WY 134, ¶¶ 32–34 165 P.3d at 441–42 and *Loredo*, 2009 WY 93, ¶ 20, 212 P.3d at 632 speak on failure to warn claims. *Rohde* granted summary judgment in favor of the defendant because the plaintiff did not address how the warnings were inadequate. 2007 WY 134, ¶ 33, 165 P.3d 433, 441–42. The court did not address what type of evidence, expert opinion or otherwise, would have been sufficient. *See id.*

Also, Defendants argue for the first time in their Reply that the warnings were adequate. [ECF No. 130, at 8]. The Court will not address this argument because Plaintiffs were deprived of the opportunity to respond to it or present contrary evidence. U.S.D.C.L.R. 7.1(b)(2)(C).

willful or wanton conduct by either Jetson or Walmart. *Id.* Plaintiffs respond that Defendants were indifferent and reckless. [ECF No. 123, at 24]. For support, Plaintiffs note a prior wrongful death lawsuit involving a Jetson hoverboard, the Rogue model, and claim Defendants did nothing to resolve the issues with that model. *Id.* Additionally, Plaintiffs contend that the same model of the hoverboard as the one in this case, the Plasma model, had two prior complaints of overheating or fire hazard concerns. *Id.* Defendants respond that at least one of the battery packs in the hoverboards from prior complaints is different than the one in the instant case and is therefore irrelevant. [ECF No. 130, at 11]. Also, Defendants highlight that the events leading to the wrongful death action occurred after the relevant events in this case. *See id.*

Punitive damages are disfavored in Wyoming. *See Campen v. Stone*, 635 P.2d 1121, 1123 (Wyo. 1981); *Loredo*, 2009 WY 93, ¶ 20, 212 P.3d at 633; *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1055 (10th Cir. 2016). The purpose of allowing such damages is "not to compensate a plaintiff, but to punish a defendant and deter others." *Weaver v. Mitchell*, 715 P.2d 1361, 1369 (Wyo. 1986). Accordingly, punitive damages are only appropriate when the conduct involves "some element of outrage, similar to that usually found in crime." *Id.* (citing Restatement (Second) of Torts § 908, cmt. b (1979)). Such conduct typically appears in "intentional torts, torts involving malice and torts involving willful and wanton misconduct." *Id.* at 1370. Conversely, "[p]unitive damages are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence." *Mayflower Rest. Co. v. Griego*, 741 P.2d 1106, 1115 (Wyo. 1987) (citing *Danculovich*, 593 P.2d 187).

Wanton and willful misconduct "tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo. 1979). The key difference between ordinary negligence and willful and wanton misconduct is intent. *Id.* at 193. In explaining intent in this context, the Wyoming Supreme Court has said:

> The intent in willful and wanton misconduct is not an intent to cause the injury, but it is an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

*Id.*

Here, punitive damages are unwarranted. Plaintiffs rest their argument on reckless indifference and failed to attach the relevant deposition testimony used to support their argument. [ECF No. 123, at 24]; *see* [ECF No. 123-6].[12] Nevertheless, even if the testimony supports what Plaintiffs claim, the Court does not find there would be sufficient evidence demonstrating that the conduct amounts to such outrageous conduct to justify punitive damages. At worst, Defendants failed to investigate whether two complaints of overheating or a fire hazard for the Plasma model. [ECF No. 123, at 24]. Also, the prior lawsuit involving the Rogue model stemmed from events that occurred two months after this case,

---

[12] Part of Plaintiffs' cited exhibits from Mr. Husain's deposition appear in Defendants' Reply. *See* [ECF No. 130-10, at 7–9]. Mr. Husain did state that Jetson Plasma, the same model as the hoverboard in this dispute, had two prior instances involving overheating or a fire hazard. *Id.* at 8. However, one involved a different battery pack, and the other one settled. *Id.* In the case that settled, the plaintiff alleged that the hoverboard's lithium-ion battery failed and caused a house fire when the hoverboard was left plugged in. [ECF No. 130-11, at 7, ¶¶ 16–17]. While not specifically alleged here, *see* [ECF No. 1], it has been insinuated as a cause throughout the lawsuit. *E.g.,* [ECF No. 123, at 24]. Certainly, the settled case was never decided on the merits, so it is unclear whether the battery pack actually malfunctioned. Nevertheless, this one prior complaint—and the alleged failure to remediate—is still insufficient to demonstrate outrageous behavior to justify punitive damages.

[ECF No. 123-9, at 5], which implies Defendants did not know the hazard when Plaintiffs purchased the Plasma model.

Plaintiffs do not address Defendants' intent whatsoever, and it cannot be inferred from the pleadings that Defendants "acted with a state of mind that approaches intent to do harm." *Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 17, 204 P.3d 974, 979 (Wyo. 2009) (quoting *Bryant v. Hornbuckle*, 728 P.2d 1132, 1136 (Wyo. 1986)). In viewing the evidence in a light most favorable to Plaintiffs, there is insufficient evidence to demonstrate Defendants willfully or wantonly disregarded consequences that, in a high degree of probability, would have occurred. Therefore, the Court grants summary judgment in favor of Defendants with respect to the punitive damages claim.

## CONCLUSION

In sum, the Court will allow Mr. King to testify to causation but not risk assessment or FMEA. Mr. Sheaman and Mr. Robinson will be permitted to testify to their factual investigations but cannot opine on fire cause and origin. Because Mr. King is permitted to testify about causation, there is a genuine dispute to material facts as to causation and Plaintiffs' products liability claims. However, Plaintiffs fail to demonstrate any willful or wanton intent on behalf of Defendants to allow the jury to award punitive damages in this matter. Therefore, the Court grants in part and denies in part Defendants' Motion for Summary Judgment.

NOW, THEREFORE IT IS ORDERED Defendants Walmart, Inc. and Jetson Electric Bikes, LLC's Motion for Summary Judgment [ECF No. 96] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED Plaintiffs' Motion to Strike Defendants' Notice of Errata Filed on December 20, 2024 [ECF No. 125] is DENIED as moot.

IT IS FURTHER ORDERED Defendants Walmart, Inc. and Jetson Electric Bikes, LLC's Motion to Exclude Testimony from Derek King [ECF No. 104] is GRANTED IN PART and DENIED IN PART. He may testify as to causation, but any testimony related to risk assessment and FMEA is excluded.

IT IS FURTHER ORDERED Defendants Walmart, Inc. and Jetson Electric Bikes, LLC's Motion to Exclude Testimony from Jeff Sheaman [ECF No. 100] and Bill Robinson [ECF No. 102] is GRANTED. They may still testify to their factual observations.

IT IS FURTHER ORDERED that Plaintiffs shall inform their witnesses of the scope of their testimonies prior to taking the stand.

Dated this 29th day of January.

Kelly H. Rankin
United States District Judge