UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEPHANIE WADSWORTH, Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC. and JETSON ELECTRIC BIKES, LLC,<br><br>Defendants. | Case No.: 2:23-cv-00118-NDF<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS', JETSON ELECTRIC BIKES, LLC AND WALMART INC., MOTIONS IN LIMINE**

Plaintiffs, Stephanie Wadsworth, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and Matthew Wadsworth (collectively the "Wadsworths"), hereby respond in opposition to Defendants', Walmart, Inc. and Jetson Electric Bikes, LLC, Motions in Limine, and in support thereof state as follows:

**I. Motion in Limine 1**: **Evidence Related to the Rogue Model Hoverboard, The Rogue Model Recall, Or Any Other Alleged Incidents Involving the Rogue Model.**

In Motion in Limine Number One, Defendants seek to exclude evidence that the Rogue Model Hoverboard, a substantially similar product which is manufactured and distributed by the Defendants, was recalled, as well as evidence of incidents involving Rogue Model hoverboards. Defendants argue that because there are minor manufacturing differences between the Rogue and Plasma model hoverboards, evidence of a recall of the Rogue model hoverboard is irrelevant to the safety of the Plasma model hoverboard. In support of this position, Defendants cite to *Tr. Dept. of First Nat. Bank of Santa Fe, Colorado Branch v. Burton Corp.*, 2012 WL 3275900 (D. Colo. Aug. 9, 2012), an

1

unpublished, two-page opinion. In *Bank of Santa Fe*, the District Court applied the substantial similarity test as articulated in *A.H. ex rel. Hadjih v. Evenflo Co., Inc.,* 2011 WL 3684807 at *4 (D. Colo. Aug. 23, 2011). Both federal and state courts routinely permit introduction of substantially similar acts or occurrences in product liability actions to demonstrate the existence of a defect, to prove notice, or to refute testimony given by defense witnesses. *Moody v. Ford Motor Co.*, 506 F.Supp.2d 823, 834 (N.D.Okla.,2007); *C.A. Associates v. Dow Chemical Co.*, 918 F.2d 1485, 1489 (C.A.10 (Colo.) 1990). A high degree of similarity is only required when Plaintiff(s) allege that a highly dangerous condition existed. *Id.* The requirement of substantial similarity may be somewhat relaxed in the context of proof of the defendant's awareness of defects in products liability actions. *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (C.A.10 (Utah),2009). In a product liability action, the occurrence of similar accidents or failures involving the same product holds great relevance, since evidence of such failures tends to make the existence of a defect more probable than it would be without the evidence *Id.* The precise degree of similarity required to ensure the relevance of another accident depends on the theory of defect underlying the case. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir.1992) To be admissible on the theory of notice, the incidents must be similar enough to the event in question that they would have alerted the defendant to the problem or danger at issue. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (C.A.10 (N.M.), 2000). Incidents occurring after the incident at issue, but before the date of trial, may be used to prove a product is defective. *Id.* The substantial similarity rule does not require identical products; nor does it require comparison of the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect. *Id.*

The court in *Smith* stated that although the milling machines from other incidents sought to be admitted were of different sizes to the one involved in the case, and thus their blind spots (which

was one of the issues in the case) were not identical, they were substantially similar when viewed from the perspective of this allegation of defect and therefore admissible. *Smith*, 214 F.3d at 1249. Similarly, although in this case the Rogue and Plasma may be different models, from the perspective of the defect alleged related to the lithium-ion failure resulting in fire/explosion, the two are substantially similar and therefore relevant. Jetson's CEO, Sam Husain, testified that other hoverboard incidents have occurred involving this same manufacturer. In fact, Plaintiffs are aware of another Jetson hoverboard incident involving a family in Pennsylvania which resulted in a housefire and the death of two individuals within that residence, as described in Jetson's and the CPSC's voluntary recall of the Rogue hoverboard due to "the lithium-ion battery packs in the self-balancing scooters/hoverboards can overheat, posing a fire hazard." Doc. 123 and Doc. 119, Exhibits 5 and 9. Jetson's voluntary recall of its Rogue model as testified to by Mr. Hussain, and Mr. Hussain's testimony where he was unable to state the differences between the battery pack in the Rogue versus the subject Plasma hoverboard other than the Plasma having a higher capacity (Doc. 123 and Doc. 119, Exhibit 6: Hussain Dep. Pg. 103-104). Most importantly, Husain testified that the manufacturer of the battery pack for the Rogue Model, which was recalled, was the same manufacturer as the battery pack for the Plasma Model. See Sam Husain Deposition at pg. 102, lines 2 through 19, Exhibit "A". Sam Husain also testified that the differences between the battery pack of the Rogue and the Plasma is only that the Plasma has slightly higher capacity, which has a very minimal impact on the battery's potential risk of fire or explosion compared to the Rogue. Exhibit A at pg. 103, line 14 through pg. 104, line 18. The two batteries are "pretty similar". Exhibit A at pg. 104, lines 19 through 20.

Jetson's recall of over 53,000 Rogue hoverboards, whose battery pack are similar to the Plasma with the only difference being the capacity resulting in a very minimal difference as it relates to any increased risk of fire/explosion, is extremely relevant for a jury's consideration of the potential

existence of a defect in the Plasma in this case. The battery packs are produced by the same manufacturer. Without question, evidence about the Rogue recall is relevant, admissible evidence that a jury should be able to consider in conjunction with the remaining evidence in the case.

Additionally, evidence related to the *Kaufman* case, which was settled by Jetson and involved a lithium-ion battery explosion in a Rogue model resulting in deaths, should be admissible on the issue of product defect given the similarity between the two models. The Kaufman case was the straw that broke the camel's back prior to the issued recall.

While the Defendants argue that the Rogue recall occurred after the Wadsworth fire, this fact is a red-herring and does not prevent introduction of the evidence to prove a product is defective. *Smith v. Ingersoll-Rand Co*., 214 F.3d 1235, 1248 (C.A.10 (N.M.), 2000). As established within the recall itself, the affected products of the recall were manufactured between 2018 and 2019. The decision to recall the Rogue hoverboard was based on a sustained pattern of battery defects. This pattern should have placed the Defendants on notice of the similar defects that the Wadsworths have identified in the Plasma hoverboard, only Jetson chose not to confirm that their similar battery packs in the Plasma (and other models) did not suffer the same defect. Husain testified that nothing was done to investigate whether the Plasma battery packs had a similar risk/issue with its battery to that of the Rogue. (Doc. 123 and Doc. 119, Exhibit 6: Hussain Dep. Pg. 112-14). Furthermore, all other complaints of similar Jetson hoverboards reported by the CPSC related to lithium-ion battery failures should also be admissible to show notice, as well as product defect.

The unstable nature of these lithium-ion batteries are the reason why so many hoverboards have been recalled over the years. The number of complaints made to Jetson resulting in their recall, as well as the number of complaints made to the CPSC regarding all Jetson hoverboards speaks volumes as to the defect relating to their battery packs, as well as Jetson being on notice of these

defects. Jetson's attempt to shield from the jury what they knew about these lithium-ion batteries is to allow it to continue to hide the reality that it kept hidden for years before the recall. The recall, and the other Rogue incidents, including Kaufman, are substantially similar for purposes of relevance and admissibility.

For these reasons, evidence of the Rogue recall, and other similar incidents relating to the Rogue, are substantially more probative than prejudicial. As such, Defendants' First Motion in Limine should be denied.

### II. Motion in Limine 2: Evidence of Other Incidents Involving the Plasma Hoverboard.

In their Second Motion in Limine, Defendants misapply the substantial similarity test to argue that evidence of prior fires caused by the faulty lithium-ion batteries should be excluded. Defendants argue that the fires in the *Kaufman* and *Donwell* cases were caused by confounding variables which are not at issue in this case. Defendants argue that because the *Donwell* and *Kaufman* cases involve fires that were started while the hoverboards were charging, that a heightened level of specificity is not met. Additionally, the Defendants argue that the fire identified by Defendant Jetson's corporate representative in the *Donwell* case was caused by an RC car, not the hoverboard.

As stated previously, in a product liability action, the occurrence of similar accidents or failures involving the same product holds great relevance, since evidence of such failures tends to make the existence of a defect more probable than it would be without the evidence *Id.* The precise degree of similarity required to ensure the relevance of another accident depends on the theory of defect underlying the case. *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir.1992) To be admissible on the theory of notice, the incidents must be similar enough to the event in question that they would have alerted the defendant to the problem or danger at issue. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (C.A.10 (N.M.), 2000). The substantial similarity rule

5

does not require identical products; nor does it require comparison of products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect. *Id.*

Mr. Husain testified of two other legal complaints prior to the underlying incident relating to the Plasma Hoverboard, which concerned overheating or fire hazards. Exhibit A, pg. 116, line 23 through pg. 117, line 18. One of those incidents was the *Donwell* case. This is the type of evidence that a jury should be able to consider when determining the extent to which Jetson and Walmart were on notice of the lithium-ion battery defect prior to the underlying incident. Regardless of the distinction Defendant tries to draw between the cases, they all involve the lithium-ion battery causing a fire. Whether plugged or unplugged is not the issue. The defect of the batteries remain the same.

Defendant tries to redefine Plaintiffs' product defect claim by stating that none of the other incidents involve two lithium-ion battery cells failing nearly simultaneously due to an internal short circuit without charging, but the nature of the defect in all Jetson hoverboard incidents is the same, to wit: the defective cells within the battery failed. Whether plugged in to a charger or not, the batteries failed. In fact, approximately 9 other similar incidents were reported to the Consumer Product Safety Commission relating to overheating/fire/explosion of these lithium-ion batteries installed on Jetson hoverboards. Dozens of other reports were compiled from the CPSC involving Jetson electric bikes and scooters, however, Plaintiffs acknowledge those may not be considered "similar". The hoverboards, however, are.

Despite the Defendants' arguments, evidence of prior hoverboard fires is highly relevant to establishing that the Defendants were on notice of the fire risk posed by their faulty lithium-ion batteries. Regardless of what the specific mechanism of ignition may have been at any given time, this history of repeated indoor fires should have placed the Defendants on notice that the lithium-ion batteries in the Wadsworths' hoverboard posed an unreasonable risk of fire injury. A jury is entitled

to consider that the Defendants would have been on notice of the lithium-ion defect in the Wadsworths' hoverboard had they conducted a reasonable investigation of their product, given all the other incidents and well-documented complaints/reports. Because the prior fires should have put the Defendants on notice of the presence of a defect in the Wadsworth hoverboard, the prior fires are relevant and should be admissible under Fed. R. Evid. 403. The prior fires are instrumental to establishing the material facts of notice and liability. As such, Defendants' Second Motion in Limine should be denied.

### III. Motion in Limine 3: Evidence of the Consumer Product Safety Commission's Prior Safety Alerts.

In their Third Motion in Limine, the Defendants argue that prior Consumer Product Safety Commission ("CPSC") Safety Alert, warning about the risk of battery ignition and fire, are inadmissible hearsay. CPSC Hoverboard Safety Alert, Exhibit "B". This argument fails for a variety of reasons. First, the CPSC report is not hearsay—let alone inadmissible hearsay. As the Defendants correctly note, Federal Rule of Civil Procedure 801 defines hearsay as (1) an out of court statement that is (2) made to "prove the truth of the matter asserted." Here, the Wadsworths do not intend to introduce the CPSC report to conclusively establish the two deaths and thirteen injuries caused by defective hoverboard batteries in 2016-2017 (Defs.' Mot. in Limine, p. 11), but rather that the Defendants were placed on specific notice of the unreasonable risk of injury that their products posed to the Wadsworths, and that the Defendants failed to act to mitigate that risk. When introduced for this purpose, the CPSC reports are not hearsay, and the Defendants' Third Motion in Limine should be denied.

Secondly, even if the CPSC reports were hearsay, introduced for the truth of the matter asserted, Rule 803 provides a specific exception to the prohibition on hearsay. According to Rule 803, hearsay is admissible if it takes the form of a public record. Under 803, a public record is admissible

if it contains "factual findings from a legally authorized investigation." *See* F.R.C.P. 803(8)(A)(iii). The CPSC is an independent Federal agency, created under the Consumer Product Safety Act. *See* 15 U.S.C. §§ 2051 et seq. The CPSC is charged with conducting investigations of potentially dangerous products, and issuing safety alerts and recalls when appropriate. Because the CPSC safety reports fit squarely within the public record exception to the rule against hearsay, the Defendants' Third Motion in Limine should be denied.

Third, Defendants exhaustively introduced into evidence through virtually every witness, both lay and expert, the purported significance of UL 2272 compliance and how it relates to product safety. The Defendants attempt to now exclude the very governmental safety alert that pushed for UL 2272 adoption for hoverboards is hypocritical and disingenuous. Furthermore, Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Safety Alert put forth by the CPSC, a governmental agency, is exactly the type of information which a Court can take judicial notice of, given its reliability.

Finally, because the CPSC safety notices are instrumental in establishing the Defendants' notice of the alleged battery defects and their failure to take reasonable action to mitigate the risk of injury, they are significantly more probative than prejudicial and should not be excluded under Rule 403.

### IV. <u>Motion in Limine 4</u>: Evidence Related to Plaintiffs' Matthew Wadsworth, K.W., G.W. and L.W. Potential Future Medical Claims.

Next, the Defendants argue that the Wadsworths should be precluded from introducing evidence of Matthew, K.W., G.W., and L.W.'s future medical damages. While the identified

Wadsworths did not suffer physical injuries as a result of the fire, all but Matthew received therapy from Mindy Tollefson for the traumatic events of the house fire. According to the Defendants, Ms. Tollefson is insufficiently knowledgeable about the facts of the Wadsworths' individual cases, and therefore cannot form a reliable opinion.

Here, the Defendants acknowledge that the challenged Wadsworths have sought medical treatment from Ms. Tollefson. Instead, the Defendants argue that because Ms. Tollefson was not aware of minor details in the Wadsworths' medical files, that she is unable to form a medical opinion as to the likelihood that the Wadsworths will require future medical care. That is a nonsensical conclusion based on no supporting facts or case law. In fact, Ms. Tollefson is fully capable of discussing her treatment of each of the Wadsworth children, as well as her findings based upon those therapy sessions. As for future mental health care needs, Plaintiffs are not expected to elicit from Ms. Tollefson the frequency of any future need for mental health care/counseling. However, Plaintiffs are not prohibited from eliciting from Ms. Tollefson the results of her treatment of each child, any diagnoses, and the impact of such diagnoses on each child and how she would expect it would affect them based upon her background, training and experiencing treating children who have suffered similar traumatic events. Interestingly, at no point in time did Defendants file a *Daubert* motion to preclude such testimony. This attempt to preclude Ms. Tollefson's testimony is improper and merely an overdue *Daubert* challenge that must be rejected.

Ms. Tollefson is able to discuss her treatment of the children, diagnoses for each, and prognosis. Plaintiffs do, however, acknowledge that Ms. Tollefson will not be testifying as to Matthew Wadsworth. For these reasons, Defendants' Motion in Limine No. 4 should be denied as to the Wadsworth children.

### V. <u>Motion in Limine 5</u>: Arguments Regarding the "Golden Rule" or "Reptile Theory."

Finally, Defendants' Fifth Motion in Limine seeks to restrict how the Wadsworths' counsel practices law, including how to present various phases of the trial in this matter, and control what phrases and/or arguments can and cannot be used by the Wadsworths' counsel during trial. Defendants' arguments are based upon mischaracterizing a trial advocacy book titled *Reptile: The 2009 Manual of the Plaintiff's Revolution*. Defendants' Motion largely seeks to Preclude Plaintiffs from using an undefined, ambiguous array of unspecified trial techniques labeled by Defendant as "Reptile Tactics."

The Motion in Limine is wholly deficient as it cites to no specific item of evidence that Defendants seek to preclude; cites to no specific item of evidence that Defendants contend is more unfairly prejudicial than probative which they fear Plaintiffs may improperly attempt to introduce at trial; and fails to identify any specific argument that Defendants claim is improper other than generic references to Golden Rule and conscience of the community arguments. In sum, Defendant's Motion asks the Court to rule in a vacuum and exclude evidence without any showing whatsoever that any such objectionable evidence exists or will be offered by Plaintiff at trial. Defendant's argument is merely concerned about the trial strategy the Wadsworths may employ and how they might execute a strategy. The trial strategy employed by the Wadsworths' counsel is not a proper subject of a motion in limine, as it is not subject to disclosure. In fact, the complained of "reptile tactics" and "golden rule" are not prohibited when used to establish liability. *See Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 836 (N.D. Okla. 2007) (citing *Infiesta-Montano v. Cocca Dev. Ltd.*, 18-CV-4-R, 2019 WL 7630627, at *6 (D. Wyo. June 7, 2019)). Because Defendants have not identified any specific statements that may constitute an impermissible "reptile tactic" and because such tactics are permissible in establishing liability, Defendants' Fifth Motion in Limine should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should Deny Defendants Motions in Limine.

Date: January 30, 2025　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　*/s/ Rudwin Ayala*
　　　　　　　　　　　　　　　　**RUDWIN AYALA, Esq**.*
　　　　　　　　　　　　　　　　Florida Bar No.: 84005
　　　　　　　　　　　　　　　　**MORGAN & MORGAN, P.A**
　　　　　　　　　　　　　　　　1700 Palm Beach Lakes Blvd, Suite 500 West Palm Beach, FL 33401
　　　　　　　　　　　　　　　　Telephone: (561) 764-2220
　　　　　　　　　　　　　　　　Emails: rayala@forthepeople.com
　　　　　　　　　　　　　　　　sleroy@forthepeople.com
　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*

　　　　　　　　　　　　　　　　And,

　　　　　　　　　　　　　　　　*/s/ Taly Goody*
　　　　　　　　　　　　　　　　**TALY GOODY, ESQ**.
　　　　　　　　　　　　　　　　Wyoming Bar No.: 8-6737
　　　　　　　　　　　　　　　　**GREYSON M. GOODY, ESQ.**
　　　　　　　　　　　　　　　　**GOODY LAW GROUP**
　　　　　　　　　　　　　　　　58 Malaga Cove Plaza
　　　　　　　　　　　　　　　　Palos Verdes Estates, CA 90274
　　　　　　　　　　　　　　　　Telephone: (310) 893-1983
　　　　　　　　　　　　　　　　Emails: taly@GoodyLawGroup.com
　　　　　　　　　　　　　　　　greyson@GoodyLawGroup.com
　　　　　　　　　　　　　　　　*Local Counsel*

　　　　　　　　　　　　　　　　*/s/ T. Michael Morgan*
　　　　　　　　　　　　　　　　**T. MICHAEL MORGAN, ESQ**.*
　　　　　　　　　　　　　　　　Florida Bar No.: 062229
　　　　　　　　　　　　　　　　Kentucky Bar No.: 94856
　　　　　　　　　　　　　　　　**MORGAN & MORGAN, P.A**
　　　　　　　　　　　　　　　　20 N. Orange Ave., Suite 1600
　　　　　　　　　　　　　　　　Orlando, FL 32801
　　　　　　　　　　　　　　　　Telephone: (407) 420-1414
　　　　　　　　　　　　　　　　Emails: mmorgan@forthepeople.com
　　　　　　　　　　　　　　　　akelseyflowers@forthepeople.com
　　　　　　　　　　　　　　　　*Admitted Pro Hac Vice*