# EXHIBIT A

Code of Federal Regulations
  Title 16. Commercial Practices
    Chapter II. Consumer Product Safety Commission (Refs & Annos)
      Subchapter A. General
        Part 1009. General Statements of Policy or Interpretation

16 C.F.R. § 1009.3

§ 1009.3 Policy on imported products, importers, and foreign manufacturers.

Currentness

(a) This policy states the Commission's views as to imported products subject to the Consumer Product Safety Act (15 U.S.C. 2051) and the other Acts the Commission administers: The Federal Hazardous Substances Act (15 U.S.C. 1261), the Flammable Fabrics Act (15 U.S.C. 1191), the Poison Prevention Packaging Act (15 U.S.C. 1471), and the Refrigerator Safety Act (15 U.S.C. 1211). Basically, the Policy states that in order to fully protect the American consumer from hazardous consumer products the Commission will seek to ensure that importers and foreign manufacturers, as well as domestic manufacturers, distributors, and retailers, carry out their obligations and responsibilities under the five Acts. The Commission will also seek to establish, to the maximum extent possible, uniform import procedures for products subject to the Acts the Commission administers.

(b) The Consumer Product Safety Act recognizes the critical position of importers in protecting American consumers from unreasonably hazardous products made abroad and accordingly, under that Act, importers are made subject to the same responsibilities as domestic manufacturers. This is explicitly stated in the definition of "manufacturer" as any person who manufacturers or imports a consumer product (Section 3(a)(4); 15 U.S.C. 2052(a)(4)).

(c) The Federal Hazardous Substances Act (15 U.S.C. 1261 et seq.), the Flammable Fabrics Act (15 U.S.C. 1191 et seq.), the Poison Prevention Packaging Act (15 U.S.C. 1471 et seq.), which were transferred to the jurisdiction of the Consumer Product Safety Commission under its enabling act, all assign responsibilities to importers comparable to those of manufacturers and distributors.

(d) Historically, foreign-made products entering the United States were "cleared" by those agencies with particular jurisdiction over them. Products so cleared were limited in number relative to total imports. The Consumer Product Safety Commission has jurisdiction over a far larger number of products entering the United States through over 300 ports of entry. In addition, the total number of imports has dramatically increased over the years and modern technology has brought air transport and containerized freight for rapid handling and distribution of consumer and other products. For the Commission to effectively "clear" such products through ports of entry could seriously impede and delay the transport of consumer products and impose additional costs to both the consumer and the importer.

(e) The Consumer Product Safety Act provides alternative means to both assure the consumer safe products and facilitate the free movement of consumer products in commerce. For example, it requires certification by manufacturers (foreign and domestic), importers and private labelers of products that are subject to a consumer product safety standard. Such certification must be based on a test of each product or upon a reasonable testing program. The other acts enforced by the Commission do not specifically require certificates; however, both the Flammable Fabrics Act and the Federal Hazardous Substances Act

encourage guarantees of compliance by protecting from criminal prosecution persons who have in good faith received such guarantees (15 U.S.C. 1197(a); 16 CFR 302.11; 15 U.S.C. 1264(b)).

(f) In the interest of giving the American consumer the full measure of protection from hazardous products anticipated by the Congress, it is the Commission's policy to assure that importers and foreign manufacturers carry out their responsibilities under all laws administered by this Commission. Specifically:

(1) Importers have responsibilities and obligations comparable to those of domestic manufacturers. Rules and regulations promulgated by the Commission will reflect these responsibilities and obligations.

(2) In promulgating its rules and regulations, the Commission encourages the participation and comments of the import community, including importers and foreign manufacturers.

(3) All imported products under the jurisdiction of the Consumer Product Safety Commission shall, to the maximum extent possible, be subject to uniform import procedures. The Commission recognizes the need to establish and implement procedures that minimize delay and expense involved in inspecting cargo at a port of entry. The Commission encourages cooperation between importers, foreign manufacturers and foreign governments, which increases the safety of the consumer and facilitates the free movement of goods between countries.

(4) When enforcement actions are appropriate, they will be directed toward the responsible officials of any import organization and will not be restricted to action solely against the product.

(5) Legal actions sought by the Commission will usually be primarily directed toward the owner or consignee of imported goods rather than against the customs broker even though his or her name may appear as the importer of record. However, the Commissioner believes it will not serve the public interest to impede the Commission's rights of investigation and enforcement by exempting a customs broker from the coverage of the law merely because of his or her title or usual form of business. It may be relevant that a customs broker, who does not have an ownership interest in the goods but who is acting as an agent for the actual owner or consignee, signs the entry documents as importer of record. What effect and possible need for inclusion this will have in a particular case can be judged by the Commission on a case-by-case basis.

(6) Commission procedures on imports shall be developed in the context of the overall responsibilities, authorities, priorities, resources, and compliance philosophy of this Commission. Any existing procedures which have been inherited from predecessor agencies will be reviewed and revised, if necessary, to be consistent with the authority and philosophy of this Commission.

(g) The Commission recognizes that the importer may not be the only person to be held responsible for protecting American Consumers from unreasonably hazardous products made abroad, but the importer is, at least, in a strategic position to guarantee the safety of imported products.

(h) Whenever, in the application of this policy, it appears that barriers to free trade may arise, the Commission may consider exceptions to this policy insofar as it can be done without compromising the Commission's responsibilities to assure safe products to the consumer.

(i) Whenever, in the application of this policy, it appears that administrative or procedural aspects of the Commission's regulations are unduly burdening the free flow of goods, the Commission may consider modifications which alleviate such burdens. However, the Commission cannot consider any modifications which do not assure the consumer the same protection from unsafe foreign goods as from unsafe domestic goods.

(Authority: Sec. 9, 15 U.S.C. 1198, 67 Stat. 114; Sec. 14, 15 U.S.C. 1273, 74 Stat. 379; 80 Stat. 1304, 1305; Sec. 17, 15 U.S.C. 2066, 86 Stat. 1223)

**Credits**
[40 FR 47486, Oct. 9, 1975; 41 FR 47915, Nov. 1, 1976]

Current through February 4, 2025, 90 FR 8909. Some sections may be more current. See credits for details.

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.