**FILED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

9:34 am, 2/11/25

**Margaret Botkins**
**Clerk of Court**

STEPHANIE WADSWORTH,
individually and as parent and legal
guardian of W.W., K.W., G.W., and L.W.,
minor children, and MATTHEW
WADSWORTH,

           Plaintiffs,

    vs.

WALMART INC. and JETSON
ELECTRIC BIKES, LLC,

          Defendants.

Case No.  2:23-CV-118-KHR

---

## ORDER ON DEFENDANTS' MOTION TO BIFURCATE AND MOTIONS IN LIMINE

---

Before the Court are Defendants Walmart, Inc. and Jetson Electric Bikes, LLC's Motion to Bifurcate and Motions in Limine [ECF No. 137 & 139]. After carefully reviewing the parties' briefings, exhibits, and relevant law, the Court finds as follows:

### BACKGROUND

In December 2021, Plaintiff Matthew Wadsworth purchased a portable electric device commonly known as a "hoverboard" at a Walmart Inc. ("Walmart") retail store in Rock Springs, Wyoming. [ECF No. 1, at 8, ¶¶ 31–32]. The hoverboard was manufactured by Jetson Electric Bikes, LLC ("Jetson"). *See id.* at 1–2, ¶ 1. On February 1, 2022, emergency personnel was dispatched in the early morning hours to Plaintiffs' residence in

Green River, Wyoming in response to a house fire. *Id.* at 8, ¶ 33. Plaintiffs allege the fire

was caused by the hoverboard's lithium-ion battery malfunctioning. *Id.* at 8, ¶ 34. Plaintiffs

and their minor children sustained various injuries as a result of the alleged malfunction.

*Id.* at 8–9, ¶¶ 35–38. On July 6, 2023, Plaintiffs filed a thirty-two count Complaint for

negligence, strict liability, breach of warranty, and loss of consortium. *See* [ECF No. 1].

## RELEVANT LAW

District courts have "broad discretion when ruling on a motion in limine." *Infiesta-Montano v. Cocca Dev. Ltd.*, No. 18-CV-4-R, 2019 WL 7630627, at *1 (D. Wyo. June 7, 2019). A motion in limine is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Edens v. The Netherlands Ins. Co.*, 834 F.3d 1116, 1130 (10th Cir. 2016) (alteration in original) (quoting *Black's Law Dictionary* (10th ed. 2014)). Although a motion in limine is not mentioned in the Federal Rules of Evidence, the practice stems from a district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to help the district court exercise its duty to prevent the jury from hearing inadmissible evidence. *Id.*; Fed. R. Evid. 103(d). Additionally, such evidentiary rulings can save time, cost, effort, and preparation for parties at trial. *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002), *aff'd*, 349 F.3d 1276 (10th Cir. 2003).

However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). A district should only exclude evidence on a motion in limine when the evidence is "inadmissible on all potential grounds." *McCarty v. Liberty Mut. Ins. Co.*, No.

15-CV-210-R, 2017 WL 676459, at *2 (D. Wyo. Feb. 3, 2017) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (quoting *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).

District court rulings on motions in limine are not binding, and "the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Thus, "[d]enial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *McCarty*, 2017 WL 676459, at *2 (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846).

## RULING OF THE COURT

As a preliminary matter, it appears both parties have requested oral arguments on these motions. The Court denies the parties' requests because the briefings are sufficient. U.S.D.C.L.R. 7.1(a) ("Motions will be decided on the submissions unless oral argument, at the Court's discretion, is ordered."). The Court also notes that Plaintiffs originally filed Motions in Limine. [ECF No. 141]. However, there were questions as to whether the cases cited therein were generated by artificial intelligence, prompting the Court to Order Plaintiffs' attorneys to show cause. *See* [ECF No. 156]. Plaintiffs then withdrew their Motions in Limine. [ECF No. 158].

3

Turning to the merits of the instant filings, the Court denies Defendants' Motion to Bifurcate. The Court grants in part and denies in part Defendants' various Motions in Limine. Each Motion will be addressed in turn.

## I.    Defendants' Motion to Bifurcate

Defendants move to bifurcate the liability and damages phases of trial. [ECF No. 138, at 3]. First, Defendants argue that bifurcation will result in judicial economy because the Court, jury, and parties will save time and expense. *Id.* at 4–5. Second, Defendants claim that bifurcation of issues would avoid undue prejudice because Plaintiffs' injuries will inflame the jury's passions and have no bearing on liability. *Id.* at 5–7. Third, Defendants contend that bifurcation will not prejudice the parties. *Id.* at 7.[1]

Plaintiffs respond that bifurcation is not warranted and requests this case be tried as one. [ECF No. 148, at 1–2]. First, Plaintiffs argue that judicial economy favors consolidation. *Id.* at 2–5. Second, Plaintiffs claim they will be prejudiced because bifurcation would disregard the human experiences faced by Plaintiffs. *Id.* at 5. Third, Plaintiffs contend that bifurcation would rob the jury of context to determine whether Defendants actions were reasonable. *Id.* at 5–6. Therefore, Plaintiffs request Defendants' Motion be denied. *Id.* at 6.

District courts have considerable discretion in conducting trials. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993). Under the Federal Rules of Civil Procedure, courts may bifurcate trials for separate issues or claims "[f]or

---

[1] Defendants also requested a third phase for punitive damages, [ECF No. 138, at 7–8], but this request is rendered moot by this Court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. [ECF No. 143, at 20–23] (granting summary judgment in favor of Defendants on punitive damages).

convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). Accordingly, a decision to bifurcate trial will not be disturbed unless the district court abused its discretion. *Angelo*, 11 F.3d at 964.

"The moving party must demonstrate the need for a separate trial, as a single trial normally lessens the expense and inconvenience of litigation." *Aragon v. Allstate Ins. Co.*, 185 F. Supp. 3d 1281, 1285 (D.N.M. 2016). The advisory committee's notes for Rule 42 specifically state that "separation of issues for trial is not to be routinely ordered." Fed. R. Civ. P. 42 advisory committee's notes to 1966 amendments. Thus, "the presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses." *Patten v. Lederle Lab'ys*, 676 F. Supp. 233, 238 (D. Utah 1987). Bifurcation should not be ordered unless it is clearly necessary. *Christy v. Travelers Property and Casualty Ins. Co.*, No. 13-CV-0281, 2013 WL 12159449, at *1 (D.N.M Aug. 29, 2013). On one hand, "[b]ifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable." *Angelo*, 11 F.3d at 964. On the other hand, "bifurcation is an abuse of discretion if it is unfair or prejudicial to a party." *Id.*

This Court finds that Defendants have failed to show that separation is necessary under the circumstances. Bifurcation is appropriate where there is an extremely complex case and separation can aid efficiency. *Id.* ("Courts have often used bifurcation to deal with *massive* product liability litigation." (emphasis added)). After this Court's denial of punitive damages, the remaining claims consist of relatively standard issues that do not present any particular complexity or threat of prejudice, such that two separate phases of trial are necessary. *Cf. Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 656–57 (D. Colo.

1980) (allowing bifurcation in products liability where the plaintiffs resided in numerous states and both Colorado and California strict liability law applied).

Defendants fail to show the sort of prejudice required that would necessitate separate trials. *See Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1251 (D. Kan. 2010). The danger that a jury might be inflamed by evidence of injuries is no greater here than in any normal personal injury case. Any such issues can be remedied with objections and jury instructions, as is the norm in most cases of this type. Therefore, the Court denies Defendants' Motion to Bifurcate.

## II.    Defendants' Motions in Limine

Next, Defendants make arguments in support of five motions in limine. *See* [ECF No. 140]. First, Defendants seek to preclude any evidence related to the Rogue model hoverboard, the Rogue model recall, or any other alleged incidents involving the Rogue model. *Id.* at 2–6. Second, Defendants seek to exclude evidence of other incidents. *Id.* at 6–10. Third, Defendants seek to bar evidence of a U.S. Consumer Product Safety Commission ("CPSC") hoverboard safety alert. *Id.* at 10–12. Fourth, Defendants seek to bar any claims or evidence of potential future medical claims for some Plaintiffs. *Id.* at 12–14. Fifth, Defendants seek to bar Golden Rule or Reptile Theory approaches during trial. *Id.* at 14–16. Plaintiffs request all Motions be denied, with the exception of Motion in Limine No. 4 as to Matthew Wadsworth. *See* [ECF No. 149]. The Court will address each Motion.

### A. Motion in Limine 1: Rogue Recall

Defendants move to exclude any evidence of other alleged prior incidents related to the Rogue model hoverboard or the Rogue model recall. [ECF No. 140, at 2–6]. The Rogue model is one of Jetson's hoverboards. In April 2022, the Rogue model allegedly caught on fire resulting in the deaths of two girls (hereinafter "*Kaufman* incident"). That suit settled. *See Kaufman v. Jetson Elec. Bikes, LLC*, No. 22-CV-3765, 2024 WL 659490, at *1 (E.D. Pa. Feb. 16, 2024). On March 30, 2023, Jetson and the CPSC initiated a recall on the Rogue model. [ECF No. 123-9]. It is undisputed that the Plasma model, not the Rogue, was the hoverboard involved with the instant case. *See* [ECF No. 1].

Defendants argue this evidence is irrelevant and unfairly prejudicial. [ECF No. 140, at 2–6]. Defendants' corporate representative, Sam Husain, testified at his deposition that there are significant differences between the Plasma and Rogue, namely: (1) a different combination of component parts; (2) different manufacturers; and (3) different lithium-ion battery components. *Id.* at 4–5. Defendants contend that this testimony is uncontroverted by Plaintiffs' expert, Derek King. *Id.* at 5. Defendants also note that the *Kaufman* incident and subsequent recall occurred after the events in this case. *Id.*

Plaintiffs respond that the events are similar enough to warrant admission. [ECF No. 149, at 3]. Plaintiffs highlight that Mr. Husain could not state the specific differences between the lithium-ion battery packs in the Rogue and Plasma and said the packs came from the manufacturer. *Id.* Thus, Plaintiffs contend this evidence is relevant to show existence of defect and notice. *Id.* at 3–5.

"In product liability actions, the occurrence of similar accidents or failures involving the same product has great impact on a jury, as it tends to make the existence of the defect more probable than it would be without the evidence." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992). A party seeking to introduce evidence of other acts must demonstrate substantial similarity between the incidents. *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988). "The degree of similarity required varies depending on how the evidence is used." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1147 (10th Cir. 2009) (citing *Wheeler*, 862 F.2d at 1407). "When the evidence is offered to demonstrate that a highly dangerous condition existed, a high degree of substantial similarity is required." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009). However, when the evidence is offered to show notice or awareness of defect, that standard is relaxed. *Id.* The proponent of evidence bears the burden of proving substantial similarity. *Morgan v. Baker Hughes Inc.*, 728 F. App'x 850, 856 (10th Cir. 2018) (citing *Wheeler*, 862 F.2d at 1407).

Typically, courts reject other acts evidence to show *prior notice* when the other acts occurred after the events. *See Julander v. Ford Motor Co.*, 488 F.2d 839, 846 (10th Cir. 1973) (reversing the district court's admission of at least complaints that occurred after the accident); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1248 (10th Cir. 2000) ("In this case, four of the six incidents … were incorrectly admitted to show notice, as they occurred after the incident at issue here."); *Heinrich v. Master Craft Eng'g, Inc.*, No. 13-CV-01899-PAB-GPG, 2016 WL 11785674, at *2 (D. Colo. July 12, 2016) ("[I]ncidents subsequent to plaintiff's injury cannot be admitted to establish notice."). However, subsequent incidents

8

are not always precluded in order to prove the *existence of a defect*. *Smith*, 214 F.3d at 1248 (admitting evidence of other acts for existence of defect and evidence of mental state for punitive damages).

Here, the *Kaufman* incident and Rogue recall occurred after the instant case. Because subsequent other acts are generally inadmissible to show notice, the Court will not allow the Rogue recall and *Kaufman* incident to be used for that purpose and turn to whether Plaintiffs can demonstrate a high degree of similarity for the existence of defect theory.

Plaintiffs argue that their theory of the existence of defect is similar between the incidents because both involve the alleged failure of lithium-ion battery packs. [ECF No. 149, at 3]. For support, Plaintiffs note that Defendants' corporate representative testified the lithium-ion battery packs were from the same manufacturer. [ECF No. 149-1, at 3]. He also testified that the battery pack in the Plasma had a slightly higher capacity than the Rogue. *Id.* at 5. Conversely, Defendants note that, even though it was the same manufacturer, the Rogue has a different model of battery pack than the one in the Plasma.[2] [ECF No. 140, at 4].

"Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar." *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir. 1987). However, the products need not be identical. *Smith*, 214 F.3d at 1248. Thus, "[a]ny differences in the accidents not affecting a finding of substantial similarity go

---

[2] Similar to how the Rogue and Plasma are different models of Jetson hoverboards, Defendants claim the battery packs are different models from the same manufacturer.

to the weight of the evidence." *Wheeler*, 862 F.2d at 1408 (citing *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986)). Accordingly, the Court finds Plaintiffs have demonstrated sufficient similarity between the events, and Defendants' purported differences can be explored on cross-examination.

Defendants' argument centers around the Rogue and Plasma being different models. Courts have excluded evidence of other models' recalls, finding they lack substantial similarity. *E.g., Tr. Dep't of First Nat'l Bank of Santa Fe, Colo. Branch v. Burton Corp.*, No. 11-CV-01629-REB-CBS, 2012 WL 3275900, at *1 (D. Colo. Aug. 9, 2012). However, the key distinguishing factor between the *Burton Corp.* case and this one is that the testimony of Burton Corp.'s corporate representative demonstrated in "sufficient detail the significant differences between the construction and design of the two helmets, as well as the standards applicable to each." *Id.* The court was convinced that the plaintiff's argument for substantial similarity was "akin to suggesting that a Mercedes Benz and a Ford F150 truck are similar because they both have tires." *Id.* at *1 n.1.

Conversely, Mr. Husain states the difference between the battery packs are that: (1) the Plasma's battery pack has a slightly higher capacity than the Rogue's, [ECF No. 149-1, at 5]; and (2) even though the lithium-ion battery manufacturer was the same, the battery *cell* manufacturer is different, [ECF No. 140-2, at 11].[3] Mr. Husain does not make it clear

---

[3] Batteries have different components, including a cell. A cell appears to be the single unit as part of the whole battery pack. For example, a single AA battery is one cell, and battery packs contain multiple cells. *E.g., Definition of a Battery Cell*, RV Magnetics, https://www.rvmagnetics.com/dictionary/battery-cell. Even though the battery packs were manufactured by the same manufacturer, Defendants contend the induvial cells within those packs were manufactured by different manufacturers. Without more information from Defendants, the Court views this argument as akin to saying the products were different because one used, for example, Duracell versus Energizer. The difference is immaterial at this time.

that these differences are significant. Further, other courts have allowed other acts involving different models. *See Four Corners Helicopters, Inc.*, 979 F.2d at 1439–40 (holding evidence of other acts were admissible for existence of defect and notice, even though some prior incidents involved a different model of engine with a less secure fixation method, in a case dealing with screws becoming loose in a helicopter).

Most importantly, the events are substantially similar in that both involve a house fire where the alleged point of origin was a Jetson hoverboard and the causes being lithium-ion battery failures. [ECF No. 123-9, at 5]. Because Mr. Husain does not describe the differences with particularity, the Court cannot say these differences are significant. While Plaintiff carries the burden of showing substantial similarity, they need not show the models are identical. Therefore, the Court finds that the *Kaufman* incident and Rogue recall are admissible provided Plaintiffs can lay sufficient foundation. *See Burnett Enterprises, Inc. v. Alltech, Inc.*, No. 13-CV-273-SWS, 2015 WL 11108738, at *5 (D. Wyo. Jan. 14, 2015).

Further, the probative value of the existence of a defect is not substantially outweighed by risk of unfair prejudice to warrant exclusion under Rule 403. *See Wheeler*, 862 F.2d at 1408–09. However, the Court will exclude mention of the deaths involved in the *Kaufman* incident. The evidence is being admitted for the limited purpose of showing existence of a defect, and the deaths are marginally relevant and outweighed by unfair prejudice. To avoid any improper inferences from the *Kaufman* incident, the Court will instruct the jury on the proper limited purpose for which this evidence is being received. Therefore, Defendants' Motion in Limine No. 1 is granted in part and denied in part.

Further, Defendants have not brought any other potential Rogue evidence to the Court's attention other than the *Kaufman* incident and the recall. Should there be more evidence, the Court will address any other Rogue incidents on a case-by-case basis.

### B.  Motion in Limine 2: Other Incidents

Defendants also seek to exclude evidence pertaining to another incident involving a fire in Oklahoma, leading to the state court case of "*USAA General Indemnity Co. a/s/o Donwell v. Jetson Electric Bikes LLC, et. al.*" [ECF No. 140, at 6] (hereinafter "*Donwell* incident"). This case appears to only concern property damage. *See* [ECF No. 130-10]. Unlike the *Kaufman* incident, the *Donwell* incident occurred over a year before the instant matter and involved the Plasma model (same model as this case). *See id.* In addition, there is another incident, but according to Defendants, it was "caused by an RC car powered battery and did not involve a Jetson product." [ECF No. 140, at 6].

This type of evidence also implicates the "substantial similarity" test, as outlined above. First, as it relates to the *Donwell* incident, Defendants argue that the incidents are different because the *Donwell* incident involved a lithium-ion battery charging at the time. [ECF No. 140, at 6]. In this case, there has been "testimony that [the hoverboard] had been charging at the end of the day's use and prior to the fire," but according to Plaintiffs' fire origin expert, "there were no electrical plugs in that outlet." [ECF No. 140-5, at 2]. Thus, it appears Plaintiffs have mixed testimony on whether the outlet was plugged in, but their own expert believes it was not charging at the time. *Id.*

Nevertheless, the *Donwell* incident involved a lithium-ion battery failure with the same model hoverboard as the one implicated here. Accordingly, the Court finds the events

are substantially similar. As noted above, the degree of similarity required to show notice of defect is "relaxed." *Wheeler*, 862 F.2d at 1407–08. Because the *Donwell* incident occurred before the instant action, Plaintiffs do not need to meet the higher degree of similarity as required to show the existence of defect. *See id.* Further, Plaintiffs meet their burden to show existence of a defect because the difference in charging versus not charging goes to the weight of the evidence. *Id.* at 1408. However, the one uncontroverted incident that involved an RC car battery is inadmissible because it does not involve a lithium-ion battery failure, rendering it not relevant.

In addition, the probative value of the *Donwell* incident is not substantially outweighed by the risks listed in Rule 403. Defendants argue that it is unfairly prejudicial and could cause jury confusion and a needless waste of time by potentially litigating the merits of the other incidents. [ECF No. 140, at 9]. First, the Court finds that the *Donwell* incident is not unfairly prejudicial. *See Wheeler*, 862 F.2d at 1408–09. The Court further finds that it will not waste time or confuse jurors.

At this juncture, the Court will allow admission of the *Donwell* incident. Plaintiffs may examine witnesses about the similarities, and Defendants can highlight the differences between the other incidents. Without the context of trial, it may be difficult to see whether this would waste time or confuse the jurors. Nevertheless, brief examination and proper limiting instructions will help resolve Defendants' concerns. *Cf. C.A. Assocs. v. Dow Chem. Co.*, 918 F.2d 1485, 1490 (10th Cir. 1990) (affirming the district court's ruling that limited evidence of "well over the 21 separate structures" in a products liability action

13

because "the potential for delay and confusion could multiply with each additional building offered into evidence").

Therefore, Defendants' Motion in Limine No. 2 is granted in part and denied in part. It is granted with respect to the other incident involving an RC car battery. It is denied with respect to the *Donwell* incident.

### C. Motion in Limine 3: CPSC Safety Alert

Next, Defendants request exclusion of a CPSC Safety Alert from 2017. [ECF No. 140, at 10]. The CPSC issued a "Hoverboard Safety Report" after a March 2017 house fire where a ten-year-old girl and two-year-old girl died. [ECF No. 140-7, at 1]. Therein, CPSC recommended for users to be cautious about charging hoverboards. *Id.*

Defendants argue the CPSC Safety Alert is inadmissible hearsay, not relevant, and unfairly prejudicial. [ECF No. 140, at 11–12]. Plaintiffs argue that it is not hearsay because it is not offered for its truth, but rather to show notice. [ECF No. 149, at 7]. Plaintiffs alternatively argue it would fall under the public records exception for hearsay. *Id.* at 7–8. Last, Plaintiffs argue it is relevant for notice. *Id.* at 8.

Statements offered to show notice are not hearsay because they are not offered for their truth. *Marsee v. U.S. Tobacco Co.*, 866 F.2d 319, 325 (10th Cir. 1989) (affirming the district court's admission of scientific articles to show the plaintiff had notice of the dangers of using a product). Thus, the Court finds that admission of the CSPC Safety Alert would not constitute hearsay when admitted for that purpose.

However, the Court finds it is marginally relevant and risks unfair prejudice. The CSPC Safety Alert is incredibly vague. *See* [ECF No. 140-7]. It does not specify which

brand or manufacturer made the hoverboard that resulted in the deaths of two young girls. While it appears to implicate batteries generally, there is no mention of lithium-ion batteries. The *Kaufman* and *Donwell* incidents can be used to show notice, and they are sufficiently similar to the instant case. However, the CSPC Safety Alert lacks a sufficient nexus, and the deaths of two young girls in an incident where Defendants (based on the record) played no part is unfairly prejudicial. Therefore, the Court will exclude the evidence under Rule 403, and Defendants' Motion in Limine No. 3 is granted.

### D. Motion in Limine 4: Potential Future Medical Claims

Next, Defendants move to preclude Plaintiffs from attempting to solicit testimony about future medical expenses for Matthew Wadsworth and three of the minor children, K.W, G.W., and L.W. [ECF No. 140, at 12–14]. Defendants anticipate Plaintiffs may try to use non-retained expert, Mindy Tollefson, to elicit testimony about future medical claims. *Id.* at 13. Plaintiffs do not expect "to elicit from Ms. Tollefson the frequency of any future need for mental health care/counseling." [ECF No. 149, at 9]. Plaintiffs acknowledge that Ms. Tollefson will not be testifying as to Matthew Wadsworth. *Id.* However, Plaintiffs contend Ms. Tollefson is allowed to testify to the results and diagnoses of the children and how she would expect those results and diagnoses to affect them based on her background, training, and experience. *Id.*

While Ms. Tollefson can testify to the results and diagnoses, she will not be permitted to testify about future medical need for Matthew Wadsworth, K.W., G.W., and L.W. She will also not be permitted to make any opinion based on her background, training, and experience, including how she would expect the results and diagnoses to affect them

in the future. Under Fed. R. Civ. P. 26(a)(2)(C), a party seeking to elicit testimony from a non-retained expert must provide: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." A "summary" is defined as "an abridgment of a fuller accounting of material." *Vincent v. Nelson*, 51 F.4th 1200, 1216 (10th Cir. 2022) (alteration and quotations omitted).

Here, Plaintiffs failed to disclose the subject matter or a summary of facts or opinions for Ms. Tollefson. *See* [ECF No. 73, at 5]. Plaintiffs simply list her as a non-retained expert with no other information. *See id.* Thus, Plaintiffs failed to comply with their discovery obligations, and the Court will determine if that error was substantially justified or harmless.

A party who fails to disclose discoverable information may be barred from using the information or witness unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). "Courts have broad discretion when determining whether a Rule 26(a) violation is justified or harmless." *Wapiti Corp. v. Thorcon Shotcrete & Shoring, LLC*, No. 22-CV-175-F, 2023 WL 4893560, at *2 (D. Wyo. May 18, 2023). In considering whether a failure is substantially justified or harmless, courts look to four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The party who fails to

comply bears the burden of demonstrating these four factors weigh in its favor. *See Cline*

*v. Sunoco, Inc. (R&M)*, 479 F. Supp. 3d 1148, 1167 (E.D. Okla. Aug. 17, 2020).

Plaintiffs fail to demonstrate how their error was substantially justified or harmless.

The Court finds Defendants would be surprised by such testimony for two reasons. First,

Defendants contend that, when the parties met and conferred on these issues, "Plaintiffs'

counsel was somewhat non-committal" on whether Ms. Toffelson would testify to future

medical expenses. [ECF No. 140, at 12]. Second, Ms. Toffelson testified at her deposition

that she would be speculating as to what future care the children may need and she did not

know how this event would impact them moving forward. [ECF No. 140-8, at 18–19].

Additionally, because of Plaintiff's nondisclosure, Defendants have been deprived of a

meaningful way to rebut such testimony. With trial less than a month away, Defendants

cannot feasibly obtain a rebuttal expert.

As to factors three and four, the Court does not find that it would disrupt the trial or

Plaintiffs exercised bad faith. As the Court noted in its Order Granting in Part and Denying

Part Defendants' Motion for Summary Judgment:

> Plaintiffs appear to misinterpret the Court's Initial Pretrial Order. [ECF No.
> 123, at 14] …. While the Court reminded the parties that non-retained
> treating physicians giving opinion testimony still must be disclosed as
> experts, *see* [ECF No. 48, at 4]; [ECF No. 78, at 2], nothing in either Order
> altered a party's obligations under Fed. R. Civ. P. 26(a)(2)(C) for … non-
> retained experts. In fact, the Amended Scheduling Order cited *Vincent v.
> Nelson*, 51 F.4th 1200, 1213-22 (10th Cir. 2022) as a reference for how
> parties should disclose both retained and non-retained experts.

[ECF No. 143, at 14 n.7]. Nevertheless, the Court finds that the first two factors weigh

heavily in favor of excluding Ms. Toffelson's opinion testimony in regards to future

medical care. Therefore, the Court concludes it would be prejudicial to Defendants for Ms. Toffelson to opine on potential future medical care. Therefore, Defendants' Motion in Limine No. 4 is granted.

### E.  Motion in Limine 5: Golden Rule or Reptile Theory Arguments

Last, Defendants seek to exclude any golden rule or reptile strategy arguments. [ECF No. 140, at 14–16]. Plaintiffs argue that Defendants' Motion is too vague and it is permissible to use golden rule or reptile strategy arguments for liability. [ECF No. 149, at 10].

This Court will follow its previous ruling when addressing "Reptilian" arguments:

Both the golden-rule argument and reptile strategy are tactics used by a plaintiff's counsel to persuade the jury enter a verdict in the plaintiff's favor. The golden-rule argument is "[a] jury argument in which the lawyer asks the jurors to reach a verdict by imagining themselves or someone they care about in the place of the injured plaintiff[.]" *Golden-rule argument*, Black's Law Dictionary (11th ed. 2019). When using a reptile strategy, the plaintiff's counsel appeals to the reptilian or more primitive aspect of jurors' brains by activating the jurors' survival instincts in the hope the jurors will make decisions based on instinct or fear rather than logic and reasoning. John Wilinski & Christina Marinaks, *The Reptile Brain Strategy: Why Lawyers Use it and How to Counter It*, Litigation Insights (Mar. 3, 2016), https://www.litigationinsights.com/reptile-brain-strategy-lawyers-how-to-counter/. These tactics involve focusing on the danger to the community that the defendants pose and empowering the jury to improve the community's safety. *Id.*

Although Tenth Circuit precedent clearly holds that a party may not use the golden-rule argument in the context of damages, such arguments are not improper with respect to the issue of liability. *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 836 (N.D. Okla. 2007) (citing *Shultz v. Rice*, 809 F.2d 643, 651–52 (10th Cir. 1986)). And while golden-rule arguments are not expressly prohibited in regard to liability, courts generally do not permit an attorney to "explicitly request a jury to place themselves in the plaintiff's position and do unto him as they would have him do unto them." *Id.* (quoting *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983)). Golden-rule arguments

are improper because they "encourage[ ] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (quoting *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984)).

In light of the concerns regarding a lack of juror neutrality, Plaintiff is prohibited from offering any golden-rule arguments regarding damages or offering any golden-rule testimony or argument as a means for undue emotional appeal to the jury. *Shotts v. GEICO Gen. Ins. Co.*, No. CIV-16-1266-SLP, 2018 WL 4832625, at *2 (W.D. Okla. July 12, 2018) (prohibiting parties from raising golden-rule arguments in an effort present undue emotional appeal to the jury). Specifically, Plaintiff may not: ask the jury to award damages as if the jurors themselves had been harmed; ask the jury to consider punishment as a factor in addressing liability; ask that the jury send a message; or ask the jury to consider injuries to non-parties, such as the jury or the jury's family. *Moody*, 506 F. Supp. 2d at 835–38.

This ruling, however, does not constitute a blanket prohibition with respect to liability. It may be permissible for Plaintiff to engage in a reptile strategy by asking the jury to consider what a reasonable person in the community would do or would have done in addressing Defendants' alleged negligence. *Novotny v. Weatherford Int'l, LLC*, No. 1:16-CV-260, 2018 WL 4051596, at *4 (D. N.D. Mar. 14, 2018) (denying motion in limine to exclude reptile trial strategies). The applicable standard of care, and whether Defendants' conduct conformed to that standard are directly at issue in this case, and community standards may be relevant to consider these issues.

To avoid any concern that the jury will base its decision on emotional appeal or arguments from counsel, rather than the evidence presented to it, the Court will instruct the jury to only consider the proof admitted and the law the Court gives to the jury. The Court will not permit the parties' counsel to incite the jury to render a verdict based on any other consideration, including the jurors' passions and prejudices. *K.C. ex rel. Calaway v. Schucker*, No. 02-2715-STA-cgc, 2013 WL 4505797, at *5 (W.D. Tenn. Aug. 22, 2013)). Notwithstanding the impermissible golden-rule arguments addressed above, Defendants cannot prevent Plaintiff from asking the jury to consider community safety standards and whether Defendants' conduct conformed to those standards. *Bostick v. State Farm Mut. Auto. Ins. Co.*, No. 8:16-CV-1400-T-33AAS, 2017 WL 3123636, at *2 (M.D. Fla. July 21, 2017)) (concluding that counsel asking the jury to consider community safety standards "is fundamental to the underpinnings of tort law.").

19

*Infiesta-Montano v. Cocca Dev. Ltd.*, No. 18-CV-4-R, 2019 WL 7630627, at *6–7 (D. Wyo. June 7, 2019).

Defendants' Motion in Limine regarding "Reptilian" and "Golden Rule" arguments is granted in part and denied in part. Plaintiffs may not make any golden-rule arguments regarding damages or as a means of undue emotional appeal to the jury. However, there will be no blanket ruling excluding all "reptile arguments." The jury will be instructed to base any decision on the evidenced presented and the law given by the Court, and not on the statements or arguments of counsel. *K.C. ex rel. Calaway v. Schucker*, No. 02-2715-STA-CGC, 2013 WL 4505797, at *5 (W.D. Tenn. Aug. 22, 2013). "[T]he Court will not tolerate any attempt by either party to incite the jury to render a verdict based on any other consideration, including the passions and prejudice of the jurors." *Id*. Either party may object to any "Reptilian" arguments made by counsel to garner improper emotional appeal or to inflame the jury.

## CONCLUSION

In sum, the court grants in part and denies in part Defendants' Motions in Limine No. 1 because Plaintiffs have demonstrated the *Kaufman* incident and recall incidents are substantially similar to show the existence of defect, but evidence of the deaths are not admissible. The Court grants in part and denies in part Defendants' Motion in Limine No. 2 because the *Donwell* incident is substantially similar for notice, but the incident involving an RC car battery is not substantially similar. The Court grants Defendants' Motions in Limine No. 3 because the CPSC report is vague, marginally relevant, and unfairly prejudicial. The Court also grants Defendants' Motions in Limine No. 4 because Plaintiffs

failed to demonstrate their failure to disclose was substantially justified or harmless. The Court grants in part and denies in part Defendants' Motion in Limine No. 5 because it cannot issue a blanket ruling on all "reptile" theory arguments.

NOW, THEREFORE IT IS ORDERED Defendants Walmart, Inc. and Jetson Electric Bikes, LLC's Motion to Bifurcate is DENIED.

IT IS FURTHER ORDERED Defendants' Motion in Limine No. 1 is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED Defendants' Motion in Limine No. 2 is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED Defendants' Motion in Limine No. 3 is GRANTED.

IT IS FURTHER ORDERED Defendants' Motion in Limine No. 4 is GRANTED.

IT IS FURTHER ORDERED Defendants' Motion in Limine No. 5 is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs shall inform their witnesses of the scope of their testimonies prior to taking the stand.

Dated this 11th day of February.


Kelly H. Rankin
United States District Judge