IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STEPHANIE WADSWORTH, individually and as parent and legal guardian of W.W., K.W., G.W., and L.W., minor children, and MATTHEW WADSWORTH,<br><br>    Plaintiffs,<br><br>v.<br><br>WALMART INC. and JETSON ELECTRIC BIKES, LLC,<br><br>    Defendants. | Case No. 2:23-CV-118-KHR<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF T. MICHAEL MORGAN
IN RESPONSE TO ORDER TO SHOW CAUSE**

Pursuant to this Court's Order to Show Cause entered on February 6, 2025 (Dkt. 156) and pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

**INTRODUCTION**

1. First, I want to assure the Court that I fully appreciate the seriousness of what has occurred. The risk that a Court could rely upon and incorporate invented cases into our body of common law is a nauseatingly frightening thought. Judge Learned Hand aptly stated more than 100 years ago that the common law "stands as a monument slowly raised, like a coral reef, from the minute accretions of past individuals, of whom each built upon the relics which his predecessors left, and in his turn left a foundation upon which his successors

1

might work."[1] I have the highest fidelity to this precept and are stunned that this motion was filed.

2. Second, upon receiving the Court's Order to Show Cause last Thursday, I took immediate action. After a phone call with Attorney Rudwin Ayala, he confirmed that the motion in limine had been crafted by artificial intelligence (A.I.). I then called Defense Counsel, Mr. Eugene LaFlamme, apologized and offered to pay any and all fees and expenses associated in any way with the reply to the motion in limine, which he accepted. Further, I called a meeting with our firm's technology team and risk management members to discuss and implement further policies to prevent another occurrence in the future. On Friday, February 7th, at my instruction, a message was sent out to all attorneys in our firm again cautioning about the hallucination potential when using artificial intelligence and reminding attorneys of their responsibility for verification. (Exhibit 1) Additionally, on Monday, February 10th, a click box was added that must now be clicked and acknowledged at the start of any session using our A.I. platform. (Exhibit 2) Further, safeguards and training are being discussed to protect against any errant uses of artificial intelligence.

3. I deeply apologize for usurping the Court's time with any time spent regarding work related to this motion. Artificial intelligence is a powerful tool when used properly and dangerous when used carelessly, and I understand and appreciate the need for the Court to deter careless use in the new age of artificial intelligence.

---

[1] Learned Hand, *Book Review*, 35 Harv. L. Rev. 479, 479 (1922) (reviewing Benjamin N. Cardozo's *The Nature of the Judicial Process*).

## CASE ROLES AND INVOLVEMENT IN DRAFTING AND
## RESEARCH OF THE SUBJECT MOTION

4. In the present case, my role is trial counsel, primarily consisting of overarching strategy discussion and presentation of evidence at trial. Attorney Ayala was lead counsel, with primary responsibility and oversight of the case work up prior to trial, which includes all research, drafting and filing of pleadings and motions. Taly Goody served as local counsel, sponsoring pro hac vice admissions and advising on local rules and practices.

5. My role as head of the Products Liability Practice Group at our firm makes me Attorney Ayala's direct supervisor; however, that role does not extend to supervising attorney in the sense that an attorney oversees all work product produced by Attorney Ayala.

6. Rudwin Ayala is an experienced litigator. He is an A.V. Preeminent rated attorney with 15 years of experience. Prior to being hired by our firm in 2023, he was partner at COHEN, BLOSTEIN & AYALA, PA. A copy of Rudwin Ayala's resume is attached as Exhibit 3.

7. Attorney Ayala has conducted extensive legal research and prepared memoranda of law on many complex cases, including preparing briefs on important legal issues. He has also provided counseling and analysis in healthcare care law topics, including complicated issues such as anti-kickback, Stark laws, HIPAA, fraud, ADA violations and whistleblower claims. He has drafted and responded to motions for summary judgment and tried cases to verdict.

8. Due to his extensive and high-level experience, I relied on Attorney Ayala to handle his cases professionally and with care. He was assigned this case as lead counsel given his expertise and experience. At no time working with him on this case, or any other case, had any 'red flag' occurred as to his work here with our firm or otherwise. As with all firms, we have a structured attorney review process in order to identify both talent and potential

issues. There was nothing raised regarding Attorney Ayala. He was meeting the expectations of a senior and experienced attorney.

9. Attorney Ayala was assigned as lead counsel for this case for nearly a year. He was personally responsible for all aspects of the case, including discovery, briefing and trial practice.

10. With regard to the motion, I was aware of the deadlines to file motions in limine but did not participate in drafting, research or filing of the motion.

11. I did give input on the motions in limine. Certain issues, such as referring to the shed as the "smoking shed," that needed to be addressed were discussed, and Attorney Ayala expressly understood and committed to preparing and filing the motion.

12. Neither I nor Taly Goody were provided the subject motion in limine prior to its filing.

13. This was not out of the ordinary as to raise any concerns, because of Attorney Ayala's role as lead counsel in the case.

14. Neither I nor Taly Goody had any knowledge or even notice that the subject motion contained any A.I.-generated content let alone hallucinated content. Had I been apprised that artificial intelligence was being used in the drafting and research of the motion, I would have required a full verification of the arguments and citations.

15. Since learning of this violation through the Court's Order to Show Cause, Attorney Ayala has indicated that he misunderstood our internal A.I. support and mistakenly thought it was fully capable of researching and drafting briefs

16. However, our A.I. tool was never intended to be relied on to research and draft any legal filing without verification of legal authorities. It was intended to be used to help a lawyer perform, not to replace the lawyer's performance.

## STEPS BEFORE AND FOLLOWING THE ORDER TO SHOW CAUSE RELATING TO ARTIFICIAL INTELLIGENCE

17. Given my position in our firm and in this case, I recognize and accept that it is incumbent upon me to offer any information the Court requires to consider this matter and I have attempted to do that with both this Declaration and that of Yath Ithayakumar, our firm's Chief Transformation Officer**. (**Exhibit 4**)** I would ask that the Court consider the steps our firm has taken before the Order and since the Order, and will be taking continuing into the future to prevent this from happening. I would also respectfully suggest that given the sophistication and experience of the attorney that local counsel Taly Goody and I admittedly relied upon here, it was not reasonably foreseeable that a motion would be researched, drafted and filed without any effort to ensure the accuracy of what was being submitted to this Court.

18. Finally, I would like to outline the steps my firm took within 24 hours of the Court's Order to Show Cause and the additional steps we are taking this week and going forward.

19. On Friday morning, February 7th, I immediately convened a team of our in-house ethics counsel, our outside ethics counsel and other experienced attorneys to urgently evaluate what additional steps needed to be taken beyond the initial training in November 2024 when the A.I. tool was first introduced to attorneys within our firm, including Attorney Ayala. On Friday afternoon, the team issued a written statement that was sent to every lawyer in the firm.

20. As stated above, I also personally reached out to Attorney LaFlamme and apologized for the time and effort spent by his firm to respond to the ill-filed motion. Additionally, I requested all bills and time in any way related to the motion be sent to our firm for reimbursement.

21. On Monday, February 10th, we added a click box to our A.I. platform that requires acknowledgement of the limitations of artificial intelligence and the obligations of the attorneys when using our artificial intelligence platform.

22. This deeply regrettable filing serves as a hard lesson for me and our firm as we enter a world in which artificial intelligence becomes more intertwined with everyday practice. While artificial intelligence is a powerful tool, it is a tool which must be used carefully. There are no shortcuts in law.

23. It is with deepest humility that I apologize to the Court and Opposing Counsel on behalf of myself and our firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 13, 2025               /s/ T. Michael Morgan
                                            T. Michael Morgan