| | |
|---|---|
| Timothy M. Stubson, Wyo. Bar No. 6-3144 | Eugene M. LaFlamme (Admitted pro hac vice) |
| Brandon E. Pryde, Wyo. Bar No. 8-6883 | Jared B. Giroux (Admitted pro hac vice) |
| Holly L. Tysse, Wyo. Bar No. 7-5553 | Jillian L. Lukens (Admitted pro hac vice) |
| Crowley Fleck PLLP | McCoy Leavitt Laskey, LLC |
| 111 West 2nd Street, Suite 220 | N19 W24200 Riverwood Drive, Suite 125 |
| Casper, WY 82601 | Waukesha, WI 53188 |
| (P) 307-232-6901 | (P) 262-522-7000 |
| tstubson@crowleyfleck.com | elaflamme@MLLlaw.com |
| bpryde@crowleyfleck.com | jgiroux@MLLlaw.com |
| htysse@crowleyfleck.com | jlukens@MLLlaw.com |

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 2:23-cv-00118-KHR ) ) |
| v. | ) **DEFENDANTS JETSON** ) **ELECTRIC BIKES, LLC AND** |
| WALMART INC. and JETSON ELECTRIC BIKES, LLC, | ) **WALMART INC.'S TRIAL** ) **BRIEF FOR FEBRUARY 28,** ) **2025 HEARING** |
| Defendants. | ) ) ) |

WALMART INC. ("Walmart") and JETSON ELECTRIC BIKES, LLC ("Jetson"), (collectively "Defendants"), by and through their attorneys, Crowley Fleck PLLP and McCoy Leavitt Laskey LLC, submit this trial brief to address the "inference of defect" theory and to provide additional evidence to the Court regarding the "Rogue" hoverboard and *Kaufman* matter.

**I.    PLAINTIFFS ARE NOT ENTITLED TO PROCEED ON "INFERENCE OF DEFECT" PRODUCT LIABILITY THEORY.**

Defendants understand that the Court denied the motion for summary judgment regarding Plaintiffs' product liability design defect theories on two grounds. First, the Court ruled Plaintiffs' expert, Mr. King, had sufficient qualifications and reliable opinions regarding the alleged specific defect in the hoverboard at issue. Second, the Court found that even if it were to strike Mr. King,

1

it would still deny the Defendants' motion on this issue due to Wyoming's "inference of defect" rule. Defendants respectfully believe the case law does not permit Plaintiffs to proceed on this unpled, unasserted, and unfounded theory.

### A. Wyoming's adoption of Restatement (Second) of Torts Section 402A.

A claim for strict products liability in Wyoming requires a plaintiff to prove five elements:

(1) that the sellers were engaged in the business of selling the product that caused the harm;
(2) that the product was defective when sold;
(3) that the product was unreasonably dangerous to the user or consumer;
(4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and
(5) that the product caused physical harm to the plaintiff/consumer.

*Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 344 (Wyo. 1986).

These elements reflect Wyoming's adoption of Restatement (Second) of Torts § 402A (1965). *Id.* at 341-42. The *Ogle* court found the Restatement's approach to be the best: "[T]the restatement definition forms the best starting place from which the cause of action can evolve in Wyoming. The definition is **reasonably complete** and will allow the district courts and Wyoming lawyers to litigate these cases with **some measure of confidence**." *Id.* at 341 (emphasis added).

### B. Wyoming's adoption of the "inference of defect" rule.

In *Sims v. General Motors Corp.*, the Wyoming Supreme Court noted that a strict liability claim requires proof that the product was unreasonably dangerous when it left the seller's hands:

"The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

*Sims v. Gen. Motors Corp.*, 751 P.2d 357, 360 (Wyo. 1988) (quoting cmt. g to of Restatement (Second) Section 402A).

2

The *Sims* court analyzed how a plaintiff could satisfy the second element set forth in *Ogle* ("that the product was defective when sold"). *Id.* Ultimately, the *Sims* court adopted the "inference of defect rule," which is "an inference that a product was defective at the time it left the seller's hands if a prima facie case can be presented that there was no abnormal use of the product or that there were no reasonable secondary causes for the defect." *Id.* To support this "inference" concept, the court cited the Supreme Court of Illinois decision, *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill.2d 570, 2 Ill.Dec. 282, 285, 357 N.E.2d 449, 452 (1976):

> " 'A prima facie case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that *in the absence of abnormal use or reasonable secondary causes* the product failed "to perform in the manner reasonably to be expected in light of [its] nature and intended function." ' "

*Id.* (quoting *Tweedy*) *(*emphasis provided by *Sims*).

The *Sims* court clarified that a plaintiff is not entitled to the inference merely because a product failed: "mere proof that the seat belt buckle malfunctioned was not sufficient to create an inference of a defect. It was plaintiffs' additional burden to present evidence that **there was no abnormal use and no reasonable secondary causes** for the malfunction." *Id.* (emphasis added).

### C. Wyoming courts' application of the "inference of defect" rule.

State and federal courts have addressed Wyoming's adoption of "inference of defect" rule. These courts have granted both summary judgment and directed verdicts where the plaintiff relied upon an "inference" theory and failed to meet its burden.

The plaintiff in *Sims* had been injured when a seat belt failed to release, and a vehicle caught on fire. *Sims*, 751 P.2d at 358. However, the plaintiff presented evidence that the malfunction may have been caused by a number of other items, like a foreign particle being introduced into the mouth of the buckle. *Id.* at 361. The lower court entered a directed verdict for the defendant, finding the plaintiff could not meet its burden for an inference theory. *Id.* at 360.

3

The Wyoming Supreme Court affirmed, finding even though courts are to give the plaintiff every favorable consideration in reviewing a directed verdict, the plaintiff failed to meet its burden of proof regarding its claimed manufacturing defect, as there were other potential secondary causes of the product's failure. *Id.* at 361.

The Wyoming Supreme Court next addressed the "inference of defect" rule in *Rohde v. Smiths Med.*, 165 P.3d 433 (Wyo. 2007). There, a plaintiff was injured when a Port-A-Cath implanted in his chest fractured. *Id.* at 434-436. However, the plaintiff could not present evidence of a specific defect in the Port-A-Cath implant. He instead relied upon an "inference of defect." *Id.* at 438. The defendant argued that the "compression between the clavicle and first rib, compounded by Mr. Rohde's weight gain after implantation, was a reasonable secondary cause of the fracture." *Id*. The plaintiff presented no evidence to contradict this potential secondary cause of the Port-A-Cath's fracture (failing). *Id.* at 439. Therefore, the *Rohde* plaintiff was not entitled to an inference of defect.

The Tenth Circuit has also examined Wyoming's "inference of defect" rule. *See Tolman v. Stryker Corp.*, 640 F. App'x 818, 819 (10th Cir. 2016) (unpublished). In *Tolman*, doctors implanted a "nail" to stabilize the bone in the plaintiff's femur after it broke during an ATV accident. *Id.* The nail later failed. *Id.* The plaintiff asserted negligence and strict liability claims against the manufacturer of the nail. *Id.* This Court granted summary judgment to the manufacturer, finding the plaintiff could not identify a specific defect and was not entitled to an inference of defect. *Id.* The Tenth Circuit stated that under Wyoming law, the plaintiff had to do more than "show that an injury occurred during use of the product" or even that "the product failed 'to perform in the manner reasonably to be expected in light of [its nature] and intended function.'" *Id.* (citing *Rohde*,

4

165 P.3d at 437). Rather, the plaintiff had to present "proof" that the failure "occurred 'in the absence of . . . reasonable secondary causes.'" *Id.*

Both this Court and the Tenth Circuit found the defendant had identified a reasonable secondary cause of the nail's failure: "bone nonunion," which is the failure of plaintiff's fracture to heal properly. *Id.* at 819-820. Because of this secondary cause of the nail's failure, and the plaintiff's failure to produce evidence demonstrating the secondary cause was not "reasonable," this Court granted summary judgment to the defendant as the plaintiff had failed to produce sufficient evidence to qualify for an inference. *Id.* The Tenth Circuit affirmed. *Id.* at 821.

### D. Other jurisdictions' approaches to "inference of defect" theories.

Other jurisdictions have adopted similar "inference" rules. The *Sims* court borrowed the analysis from the Illinois decision in *Tweedy v. Wright Ford Sales, Inc.*, 357 N.E.2d 449, 452 (Ill. 1976) (finding a plaintiff could present a prima facie case of defective product by proving absence of abnormal use or reasonable secondary cause). The Seventh Circuit also examined Illinois' "inference" rule in *Bielskis v. Louisville Ladder, Inc.*, ultimately finding that while plaintiff's expert identified a failure in a scaffolding component due to brittle fracture, the plaintiff was not entitled to inference because could not exclude abnormal use or secondary cause of failure. 663 F.3d 887, 887-98 (7th Cir. 2011).

Pennsylvania adopted an "inference of defect" approach as well, terming it the "malfunction theory of strict liability." *Rogers v. Johnson & Johnson Prods., Inc.*, 565 A.2d 751, 754 (Penn. 1989). The *Rogers* court explained the "malfunction" theory "encompasses nothing more than circumstantial evidence of a product malfunction." *Id.* (citation omitted). "It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence

of reasonable, secondary causes." *Id.* (citation omitted). The *Rogers* court found that "so long as the plaintiffs presented a case-in-chief free of secondary causes which justified the inference of a defect in the product, the jury was free to accept their scenario." *Id.* at 755. However, a plaintiff presenting a malfunction theory "cannot depend upon **conjecture** or **guesswork**." *Barnish*, *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009) (emphasis added); *Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 496 (Pa. Super. Ct. 1997).

Other states have adopted the "inference" or "malfunction" theory. *See e.g., Metro. Prop. & Cas. Ins. Co. v. Deere & Co.*, 25 A.3d 571, 580 (Conn. 2011) (explaining malfunction theory "does not relieve a plaintiff of the burden to prove all elements of a product liability claim" and that "proof of an accident alone is insufficient to establish a manufacturer's liability"). Connecticut has found this theory available only when direct evidence is unavailable, *e.g.,* a product is lost in an explosion or a fire destroys most or all of the product's components. *Id.* at 579. Connecticut has also held that a claim based on a "malfunction" theory must be separately pled from a specific defect theory. *White v. Mazda Motor of Am., Inc.*, 99 A.3d 1079, 1095, n. 9 (Conn. 2014). New Jersey has also required a separate pleading to notify the defendant of a malfunction theory. *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.*, 326 A.2d 673, 680-81 (N.J. 1974) (finding plaintiff had only pled and went through discovery, pretrial and trial on a specific defect theory and could not fault court for failing to consider inference theory).[1]

Notably, at least two states have held that a plaintiff cannot proceed on both a specific defect and inference theory. *Ellis v. Beemiller, Inc.*, 910 F. Supp. 2d 768, 775 (W.D. Pa. 2012)

---

1 Connecticut has held that a plaintiff cannot rely upon a "malfunction theory" to prove a *design* defect. *White*, 99 A.3d at n. 9. Defendants' motion for summary judgment sought dismissal of Plaintiffs' *design defect* theory because King offered no opinions on design defect and failed to identify an alternative design. ECF No. 99, at pp. 20-21; ECF No. 130, at pp. 6-7. This Court's discussion of the "inference" recognized under Wyoming law did not delineate between a design or manufacturing defect theory. ECF No. 143, at p. 19.

(holding Pennsylvania's malfunction theory unavailable where plaintiff had specific defect theory, was in possession of allegedly defective product, and subjected product to testing); *Pitts v. Genie Indus., Inc.*, 921 N.W.2d 597, 614 (Neb. 2019) ("[T]he malfunction theory is not available when specific defects are alleged."); *O'Brien v. Cessna Aircraft Co.*, 903 N.W.2d 432 (Neb. 2017) (same).

### E. Analysis of "inference of defect" in this case.

Plaintiffs should not be permitted to proceed on an "inference of defect theory" in this case for two primary reasons: (1) they have only ever identified a "specific" defect theory, and (2) there is evidence of other reasonable secondary causes for the product failure. Under Wyoming law, an inference would be inappropriate and invite a jury to speculate in reaching its verdict.

#### 1. Plaintiffs have not pleaded nor asserted an inference of defect theory.

Here, the Plaintiffs only pled a specific defect theory. They claimed damages for injuries "sustained when a defective and unreasonably dangerous hoverboard [ ] exploded and caught fire while in Plaintiffs' home." ECF No. 1, at ¶ 1. They further alleged that "the Subject Hoverboard's lithium ion battery malfunctioned experiencing thermal runaway which caused the Subject Hoverboard to suddenly ignite causing a fire that burned down Plaintiffs' house while Plaintiffs were inside." *Id.* at ¶ 34. In keeping with their *Complaint* allegations, Plaintiffs designated Derek King as an expert, who offers the following opinion:

> Detailed examination of the subject board shows that two out of ten cells exploded while the other eight cells show heat damage. Exploding cells are consistent with an internal short, thermal runaway, and vaporization and ignition of the liquid electrolyte.

ECF No. 73-3.

In response to Defendants' Motion for Summary Judgment, Plaintiffs again explained that Mr. King had *specific* defect opinions. *See* ECF No. 123. The first time a potential "inference"

theory was raised was in the Court's *Order*. ECF No. 143. "New liability theories after summary judgment are discouraged." *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 791 (10th Cir. 2013). Where the parties have already completed discovery, expert designations, and raised their dispositive and *Daubert* motions, it would be prejudicial to allow Plaintiffs to proceed on a new theory at trial.

In short, Plaintiffs should not be permitted to proceed on an unpled theory of liability, which is inconsistent with their theory all the way through the pretrial stage. An "inference" theory is not warranted here, as Plaintiffs and their experts have had the opportunity to examine the allegedly defective product, conducted testing, and claimed specific defects. *See Ellis*, *supra*, 910 F. Supp. 2d at 775.

2. <u>Plaintiffs cannot rule out other reasonable secondary causes for the defect.</u>

Not only would it be inappropriate to allow Plaintiffs to proceed on an "inference" theory given the procedural history, Plaintiffs are not entitled to an inference per Wyoming law. As a reminder, a plaintiff can only proceed on an "inference" theory if they cannot exclude other reasonable secondary causes for the *product's failure*. *Rohde*, 165 P.3d at 439. Here, both of Plaintiffs' experts acknowledge reasonable secondary causes for both the product failure, i.e., specific lithium-ion battery cells, and the fire itself. King testified that two separate lithium-ion battery cells failed within the hoverboard. However, he conceded that this "failure" of the cells looks the same as if the cells were attacked by an external fire. (Ex. A, *Dep. King*, at 190:7-10; 192:9-19). King cannot exclude a secondary cause of the product's failure.

King also testified that he relied upon Plaintiffs' other expert, Schulz, and his opinions as to where the fire at issue may have started. *Id.* at 31:2-7. Schulz admitted that there were "electrical anomalies" in the shed on the outside of the home. (Ex. B, *Dep. Schulz*, 15:5-10; 16:1-10). Schulz

also acknowledged that he was not aware of any evidence of electrical arcing inside the house. (*Id.* at 15:2-6). He also conceded at his deposition on September 10, 2024, that a smoldering cigarette could have caused the fire. (*Id.* at 136:9-137:5). He further acknowledged that there is a high likelihood of a smoldering type fire from the careless disposal of smoking material (*i.e.* a cigarette), (*Id*. at 136:9-14), and that a fire could result from a smoldering cigarette event after a lengthy period of time between the actual careless disposal of the cigarette – similar to the approximate 2-3 hours that occurred between the time Mrs. Wadsworth had her last cigarette and the identification of the fire in this case. (*Id*. at 136:16-21).

Defendants have presented expert opinions, based upon analysis, testing, and modeling, that demonstrate the fire originated in the plastic shed outside the home and was likely caused by the ignition of combustible materials such as a cigarette smoldering in the shed. ECF 80-1 (Filas report); ECF 80-4 (Gorbett report). Gorbett's role was to assess the two competing fire origin hypotheses presented in this case and determine which, if either, fire dynamics computer modeling supports. He concluded that "the fire testing, empirical correlations, CFD simulations, and the application of fundamental fire dynamics verify that a single origin at the exterior storage 'smoker's' shed better replicated the fire damage in the structure and better correlated to the witness statements and timeline." ECF 80-4, p. 43. While Plaintiffs obviously do not agree with this opinion, they cannot rule out this alternative cause for the fire and failure of two separate cells within the hoverboard.

Plaintiffs should be held to their proof in demonstrating a product defect, as set forth in the elements the *Ogle* court established for a Wyoming product liability claim. Allowing any sort of "inference" theory in light of the pleadings, expert opinions and testimony, and existing reasonable alternative causes, would alter (lessen) Plaintiffs' burden. For these reasons, Defendants

respectfully ask that the Court disallow any instruction or argument presented to the jury on an "inference" theory.

## II. THE "ROGUE" MODEL, *KAUFMAN* MATTER AND THE RECENTLY DISCLOSED OTHER ALLEGED INCIDENTS ARE NOT SUBSTANTIALLY SIMILAR AND SUCH EVIDENCE IS UNDULY PREJUDICIAL AND CONFUSING FOR THE JURY.

Plaintiffs' theory in this case is that two individual lithium-ion battery cells (cell numbers 4 and 10) had an internal short circuit at substantially the same time and failed. (ECF 73-3, pg. 8-12, 15). As a result, the specific defect plaintiffs allege relates to these two individual battery cells. Plaintiffs do not allege any other defect with the subject Plasma model hoverboard.

To have a short circuit, the anode (negative side) and cathode (positive side) within the individual cell need to communicate with each other. (Ex. A, *Dep. King*, at 75:18-22). Each lithium-ion battery cell, however, is manufactured with a polymer-based separator that prevents the anode and cathode from communicating. (*Id. at* 87:25-88:14). Therefore, to have a short circuit, the separator within the individual cell must fail. (*Id. at* 88:11-89:5). Plaintiffs' expert, Derek King, does not contend that a short circuit is in anyway related to the battery pack – he only references the two individual cells.

In the Court's decision related to Defendants' motion *in limine* number 1 (ECF 163), there is significant discussion about battery packs. While the Court is correct that the battery pack is the manner in which the cells are connected to each other, it is two individual cells that Plaintiffs' expert, King, contends are defective. The battery pack as a whole for the Plasma model consists of ten individual lithium-ion battery cells and the battery management system. King, however, only takes issue with cells 4 and 10, which he contends encountered an internal short circuit at approximately the same time and caused the fire. King does not have any criticisms of the other

eight battery cells within the battery pack, the battery management system within the battery pack or the battery pack as a whole.

The Court's decision with respect to the Rogue model seems to indicate that the only similarity required to be admissible is that the *Kaufman* case involved "a house fire where the alleged point of origin was a Jetson hoverboard and the causes being lithium-ion battery failures." (ECF No. 163, pg. 11). The Court also seems to suggest that it is immaterial as to whether the lithium-ion battery cells were manufactured by the same company in conducting its substantial similarity analysis. Defendants respectfully disagree with this broad interpretation of the substantial similarity test. Before evidence of other accidents is admissible for any purpose the party seeking its admission must show that the circumstances surrounding the other incidents were substantially similar to the accident that is the subject of the litigation. *Black v. M & W Gear Co.*, 269 F.3d 1220, 1227 (10th Cir. 2001). In essence, Plaintiffs bear the burden to prove substantial similarity.

The Rogue model was the only model addressed in Defendants' motion *in limine* as it was the only non-Plasma model Plaintiffs raised during discovery. Recently, however, Plaintiffs have also identified trial exhibits related to four additional cases in which Jetson was a defendant: *Demark*, *Hottenstein*, *Mendoza*, *and Reichley*. These cases are listed as Plaintiffs' proposed trial exhibits 243-246 (along with sub exhibits) and attached hereto as Exhibit C, D, E and F. Significantly, none of these cases involve a Plasma model hoverboard. The *Demark* and *Hottenstein* claims allegedly involved the Glyro model hoverboards, which pre-dates the UL 2272 design standard. (*See* Husain Dec.). The other two matters, *Mendoza* and *Reichley*, allegedly involved Strike model hoverboards.

11

Plaintiffs have also identified eight alleged CPSC consumer complaints related to additional non-Plasma model Jetson hoverboards. These CPSC documents are listed as Plaintiffs' proposed trial exhibits 198A-G and attached hereto as Exhibit G. The models include the Glyro (which is a pre-UL 2272 model), Strike, Hali and Spin models. These consumer complaints are hearsay, and even if not offered for the truth of the matter asserted, are not relevant to the Plasma model. Nonetheless, even if the Court finds some modicum of relevance, they are unduly prejudicial, confuse the issues and mislead the jury. As a result, they should be barred under Fed. R. Evid. 403. Further, these reports contain very limited information, are unsubstantiated complaints and the history and use of each hoverboard is unknown. As a result, it is impossible for Plaintiffs to meet their burden to show substantial similarity for the CPSC consumer complaints.

Plaintiffs have further identified unsubstantiated consumer complaints from Facebook and from Amazon as proposed trial exhibits 200, 200A, 200B and 203 and attached hereto as Exhibits H and I. First, none of these relate to the Plasma model. Second, all of these documents are unsubstantiated hearsay statements which also are not relevant. To the extent there is any relevance, these documents are inadmissible under Fed. R. Evid. 403.

The simple fact that there was an allegation of a house fire that involved a lithium-ion battery powered hoverboard should not be enough to meet the substantial similarity test. If that were the case, then potentially every alleged hoverboard fire or even every alleged fire related to a lithium-ion battery powered product would potentially be admissible. Such other lithium-ion battery powered products could include e-bikes, scooters, cell phones, laptops, etc. The list of products that use lithium-ion batteries is lengthy. In fact, Plaintiffs have already indicated that they intend to expand the product categories as they have proposed a trial exhibit on e-bikes and e-scooters. (*See e.g.* Pl. Proposed Ex. 251A attached as Exhibit J). To allow this would create

numerous mini trials within this trial that would distract and mislead the jury and confuse the issues from what this trial is actually about – what happened the morning of February 1, 2022 at the Wadsworth house that caused the fire. While Defendants continue to assert that the alleged other incidents are not relevant under Fed. R. Evid. 401 and do not meet the substantial similarity requirement, they all should also be barred from evidence under Fed. R. Evid. 403.

With respect to the Rogue recall and *Kaufman* case, as the Court noted, these occurred after the Wadsworth fire and "are generally inadmissible to show notice." (ECF 163, pg. 9). As a result, this evidence can only be used to prove causation. Other incident evidence, however, requires a "high degree of similarity" when offered to prove causation. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000) ("Hence we require a high degree of similarity when plaintiffs offer other accident evidence to prove causation in their case…").

Here, Plaintiffs cannot prove that there is a "high degree of similarity" between the Rogue and Plasma models, as they utilized different capacity battery cells and the cells were manufactured by different manufacturers as discussed in Defendants' motion *in limine*. (ECF 140, pg. 2-5). Nor can a high degree of similarity be shown between the *Kaufman* case and the instant matter as it was alleged that the *Kaufman* hoverboard was charging and there is no evidence that the subject Plasma hoverboard was charging in this case. (*Id.*). Nonetheless, the Court will have an opportunity to hear Plaintiffs' supposed evidence in an attempt to meet this standard on February 28, 2025. The standard Plaintiffs are required to meet for the Rogue and *Kaufman* matter at the February 28, 2025 hearing, however, is the heightened standard of a "high degree of similarity."

With respect to the four additional cases Plaintiffs include in their exhibit list, the *Demark* and *Hottenstein* claims allegedly involved the Glyro model, which pre-dated the UL 2272 standard. (*See* Husain Dec.). As such, Plaintiffs cannot prove a substantial similarity in those instances as

they were not even designed and/or manufactured to the same standard. In fact, there was no design standard for hoverboards before UL 2272 was issued. (*Id.*) Moreover, Plaintiffs' proposed exhibit 243B contains expert reports from the *Demark* case. The reports show that the Glyro hoverboard utilized a Samsung battery pack and Samsung battery cells. The Plasma model did not utilize a Samsung manufactured battery pack or battery cells. (*Id.*)

As for the *Mendoza* and *Reichley* matters, Plaintiffs cannot show that the Strike model at issue in those cases had the same battery cell capacity and/or manufacturer as the subject Plasma model either. Again, it is the individual lithium-ion battery cells that Plaintiffs contend are defective. Nonetheless, to the extent Plaintiffs intend to offer such evidence about these other alleged incidents, they should be required to make a showing of substantial similarity either at the Court hearing on February 28, 2025, or at some other time outside the presence of the jury before such evidence is put before the jury.

Similarly with respect to the eight alleged CPSC consumer complaints that Plaintiffs have included as proposed trial exhibits 198A-G, Plaintiffs should be required to make a showing of substantial similarity either at the Court hearing on February 28, 2025, or at some other time outside the presence of the jury before such evidence is put before the jury. The same requirement should apply to the Facebook complaints and Amazon customer reviews. Again, none of the CPSC or other consumer complaints involve a Plasma model hoverboard, have any relevance to this matter and also should be admissible under Fed. R. Evid. 403.

The only other incident that allegedly involved in a Plasma hoverboard was the *Donwell* case which was the subject of Defendants motion *in limine* number 2 (ECF 140, pg. 5-10). The Court denied this motion with respect to the *Donwell* case.

## CONCLUSION

Based on the foregoing reasons and authorities, Defendants respectfully submit that Plaintiffs should not be entitled to a product defect inference and the above referenced "other incidents" that did not involve a Plasma model hoverboard should be excluded from evidence.

**McCOY LEAVITT LASKEY LLC**

Attorneys for Defendants, Jetson Electric Bikes, LLC and Walmart Inc.

Dated: February 14, 2025          By: _/s/_

Eugene M. LaFlamme (*pro hac vice*)
Jared B. Giroux (*pro hac vice*)
Jillian L. Lukens (*pro hac vice*)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com