# EXHIBIT B

Michael Schulz
09/10/2024

Page 1

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF WYOMING

```
STEPHANIE WADSWORTH,              )
Individually and as Parent        )
and Legal Guardian of W.W,        )
K.W., G.W., and L.W., minor       )
children, and MATTHEW             )
WADSWORTH                         )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          )  No. 2:23-cv-00118-NDF
                                  )
WALMART, INC., and JETSON         )
ELECTRIC BIKES, LLC,              )
                                  )
          Defendants.             )
_____)
```

DEPOSITION OF MICHAEL J. SCHULZ

Tuesday, September 10, 2024

Roseville, California

REPORTED BY:  Joy E. Shure, CSR No. 3659

Michael Schulz
09/10/2024

Page 15

```
 1     A.    -- more precisely.
 2     Q.    Was there any arcing found in the house?
 3     A.    Not that I'm aware of; however, I did not
 4   undertake to study that or not.
 5     Q.    Was there any arcing found anywhere on the
 6   site?
 7     A.    There are reports and there are photographs of
 8   what appear to be electrical anomalies on electrical
 9   wiring in the shed located in front of the house
10   outdoors.
11     Q.    Okay.
12     A.    But I wasn't present for that evidence
13   inspection and I've never had a close-up look at those
14   artifacts, and I would defer to the electrical engineers
15   that were present.
16     Q.    Do you know if the electrical engineers that
17   were present for the Wadsworth family have been named as
18   experts in this case?
19     A.    I'm not aware that they are, but I don't know
20   who all of the experts are in this case.
21     Q.    So based on your involvement in the case, you
22   just don't have an opinion one way or the other as to
23   whether the anomalies, as I think you termed it, on the
24   wiring at the shed outside was indeed arcing; correct?
25     A.    Correct.
```

Page 16

1    Q.   You agree that there are electrical anomalies
2    that were identified out at the shed?
3    A.   Correct.
4    Q.   Okay.  And those anomalies do have an
5    appearance of arc damage; correct?
6    A.   They do.  Those anomalies that were marked with
7    the colored wire ties would be things that I would want
8    an electrical engineer to look at under a microscope,
9    and if I was present, I would have looked under the
10   microscope, too, and formed more of an opinion.
11   Q.   Okay.  Have you seen the microscopic images of
12   the arc damage?
13   A.   I have not.
14   Q.   Were you aware any were taken?
15   A.   I saw a reference to marking things for the
16   microscope in something that I read, but I don't think
17   that I've ever seen the images.
18   Q.   Did any circuit breakers trip in the house?
19   A.   Not that I'm aware of, no.
20        When I was there on Day 1, which was in May of
21   2022, there were no circuit breakers that were
22   identifiable in the tripped position.
23        There was a single circuit breaker in the
24   subpanel that was off, and I think it was marked for a
25   washing machine.

Michael Schulz
09/10/2024

Page 136

1    Q.    Do you know, as you sit here today, how many
2    cells had expelled?
3    A.    I don't know.  I wasn't involved in that
4    examination.
5    Q.    Do you know the manner in which the cells
6    expelled?
7    A.    I don't.  I'm not offering opinions on that.
8    Q.    You have -- let me strike that.
9          With a fire that initiates from careless
10   disposal of smoking material, that generally can be a
11   smoldering type fire; correct?
12         MR. AYALA:  Form.
13         THE WITNESS:  It has a high likelihood to do
14   that, yes.
15   BY MR. LaFLAMME:
16   Q.    Okay.  And in saying "smouldering type fire,"
17   meaning that that is a fire that could initiate a
18   lengthy period of time after the actual careless
19   disposal of smoking materials occurs?
20   A.    And before and after the flaming combustion,
21   yes.
22   Q.    Meaning if Mrs. Wadsworth had smoked in the
23   smoking shed sometime between 1:30 and 2:00 a.m. and
24   this fire initiated sometime between 4:00 and 4:30 a.m.,
25   and assuming it was due to careless use of smoking

Page 137

1   material, that time lapse is not unusual with careless
2   use of smoking material-generated fires?
3           MR. AYALA:  Form.
4           THE WITNESS:  No, it can't be used to exclude
5   that possibility.
6   BY MR. LaFLAMME:
7       Q.  Meaning the time difference from which
8   Mrs. Wadsworth testified that she last smoked in the
9   smoking shed and the identification of this fire had it
10  started -- assuming it started in the smoking shed, that
11  time lapse would not exclude careless use of smoking
12  material?
13      A.  No.
14      Q.  Looking at Pages 56 to 59, this is a list of
15  all the evidence in this case; correct?
16      A.  Correct.
17      Q.  All right.  And aside from visual observations
18  either in person or of photographs, you have not
19  physically inspected any of the evidence in this case?
20      A.  Not as part of an evidence exam.
21          Obviously, I looked at the -- I looked at the
22  hoverboard the first time we were there.  I looked at
23  the outlet.  I looked at some of the branch wiring and
24  so forth, but I did not look at any of this evidence as
25  part of a subsequent organized laboratory inspection.

Michael Schulz
09/10/2024

Page 212

1  REPORTER'S CERTIFICATE

2

3        I, Joy E. Shure, a Certified Shorthand Reporter,

4   holding a valid and current license issued by the State of

5   California, CSR No. 3659, do hereby certify:

6        That said proceedings were taken down by me in

7   shorthand at the time and place therein set forth and

8   thereafter transcribed into typewriting under my direction

9   and supervision.

10       I further certify that I am neither counsel for

11  nor related to any party to said action nor in anywise

12  interested in the outcome thereof.

13       Before completion of the deposition, review of

14  the transcript [X ]was [  ]was not requested.

15       The dismantling, unsealing, or unbinding of the

16  original transcript will render the Reporter's certificate

17  null and void.

18

19       IN WITNESS WHEREOF, I have hereunto subscribed my

20  name on this 25th day of September, 2024.

21

22

23       _____

24           Joy E. Shure, CSR No. 3659

25