

**FILED**

4:09 pm, 2/24/25
**U.S. Magistrate Judge**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

STEPHANIE WADSWORTH,
individually and as parent and legal
guardian of W.W., K.W., G.W., and L.W.,
minor children, and MATHEW
WADSWORTH,

Plaintiffs,

vs.

Case No. 2:23-CV-00118-KHR

WALMART INC. and JETSON
ELECTRIC BIKES, LLC,

Defendants.

---

### ORDER ON PLAINTIFFS' AND DEFENDANTS' MOTIONS TO EXCLUDE WITNESSES

---

This Matter comes before the Court on Plaintiffs' Motions to Exclude the Testimony of Brian Strandjord, Joseph Filas, and Gregory Gorbett, and Defendants' Motion to Exclude the Testimony of Ronald Snyder. ECF Nos. 94, 97, 106 & 108. The Court, having considered the motions, the responses, the replies and otherwise being fully informed, concludes that Plaintiffs' Motions to Exclude the Testimony of Brian Strandjord, Joseph Filas, and Gregory Gorbett should be **DENIED**, and Defendants' Motion to Exclude the Testimony of Ronald Snyder should be **GRANTED IN PART** and **DENIED IN PART**.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In December of 2021, Plaintiff Matthew Wadsworth purchased a portable electric device commonly known as a "hoverboard" at a Walmart Inc. retail store in Rock Springs, Wyoming. ECF No. 1 at 8, ¶¶ 31–32. The hoverboard was manufactured by Jetson Electric Bikes, LLC. *Id*. at 1–2, ¶ 1. On February 1, 2022, emergency personnel were dispatched in the early morning hours to Plaintiffs' residence in Green River, Wyoming in response to a house fire. *Id*. at 8, ¶ 33. Plaintiffs allege the fire was caused by the hoverboard's lithium-ion battery malfunctioning. *Id*. at 8, ¶ 34. Plaintiffs also allege, *inter alia*, that Stephanie Wadsworth (hereinafter "Mrs. Wadsworth") and minor children, W.W. and K.W., suffered significant burn injuries as a result of the February 1, 2022 fire. *Id*. at 8–9, ¶¶ 35-37. On July 6, 2023, Plaintiffs filed a thirty-two count Complaint asserting negligence, strict liability, breach of warranty, and loss of consortium claims. ECF No. 1. Plaintiffs seek an award of damages including, but not limited to, "nominal and compensatory damages, including past and future pain and suffering, past and future treatment costs, and other amounts as allowed by law in an amount to be determined." *Id*. at 66.

On July 15, 2024, Plaintiffs filed their expert witness disclosures wherein they designated three retained experts including Ronald E. Snyder, M.D. ("Dr. Snyder"). ECF No. 73. Dr. Snyder is a physiatrist who prepared a life care plan for Plaintiff Stephanie Wadsworth "and is expected to testify as to her injuries and her future care needs as a result of the incident that serves as the basis for this lawsuit." *Id*. at 2.

On September 13, 2024, Defendants filed their expert witness disclosures wherein they designated six retained experts including Joseph R. Filas, CFI, CFEI, CFI(V) ("Mr.

Filas"), Gregory E. Gorbett, Ph.D., IAAI-CFI, CFEI, CFPS ("Dr. Gorbett"), and Brian Strandjord, PE, CFI, CFEI ("Mr. Strandjord"). ECF No. 80. Mr. Filas has been designated to "offer expert testimony in the area of origin and cause investigation." *Id*. at 2. Dr. Gorbett has been designated to "offer expert testimony in the area of fire modeling and fire dynamics engineering and investigations." *Id*. at 3. Mr. Strandjord has been designated to "offer expert testimony in the area of mechanical and electrical engineering and failure investigations." *Id*. at 4.

On December 2, 2024, Plaintiffs filed motions to exclude the testimony of Defendants' experts Mr. Filas, Dr. Gorbett and Mr. Strandjord. ECF Nos. 94, 95, 97, 98 108 & 110. That same day, Defendants filed a motion to exclude the testimony of Plaintiffs' expert Dr. Snyder. ECF No. 106 & 107. Defendants also filed on December 2, 2024, a motion for summary judgment alleging that Plaintiffs were unable to demonstrate the element of causation to satisfy each of their claims. ECF No. 99 at 12–17. Defendants also argued that they were entitled to summary judgment on Plaintiffs' products liability claims because there is no expert to testify about design defect or warnings and requested that Plaintiffs' punitive damages claim be dismissed because Plaintiffs cannot show the Defendants conduct was wanton or willful. *Id.* at 20–25. The District Court granted Defendants' summary judgment motion as to the punitive damages but denied their motion as to the existing claims involving causation and products liability. ECF No. 143 at 4.

On December 16, 2024, Plaintiffs filed their response to Defendants' motion to exclude the testimony of Dr. Snyder. ECF No. 121. That same day, Defendants filed their responses to Plaintiffs' motions to exclude the testimony of Mr. Filas, Dr. Gorbett and Mr.

Standjord. ECF Nos. 115–17.  On December 23, 2024, Plaintiffs filed their replies to Defendants' responses in opposition to the motion to exclude the testimony of Mr. Filas, Dr. Gorbett and Mr. Standjord. ECF Nos. 131–33. That same day, Defendants filed their reply to Plaintiffs' response in opposition to the motion to exclude the testimony of Dr. Snyder. ECF No. 128.

**RELEVANT LAW**

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997).  In utilizing this discretion, the Court will first look to the Court's Local Rules and the Federal Rules of Civil Procedure. Local Rule 26.1(e)(4) requires expert designations to comply with Federal Rule of Civil Procedure 26(a)(2). U.S.D.C.L.R. 26.1(e)(4). Rule 26(a)(2) provides two separate categories of expert witnesses: retained witnesses and non-retained witnesses. FED. R. CIV. P. 26(a)(2)(B). Retained expert witnesses are those witnesses "retained or specially employed to provide expert testimony." *Id.* If a witness is a retained expert, a party's disclosure of expert testimony must include the following:

> [A] complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

In addition to the requirements of Rule 26, the proponent of the expert testimony

4

bears the burden of proving the foundational requirements of Federal Rule of Evidence 702

by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579,

592 (1993); *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020). Rule 702 sets

the following parameters for expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if
> the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue; (b)
> the testimony is based on sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d) the expert's opinion
> reflects a reliable application of the principles and methods to the facts of the
> case.

FED. R. EVID. 702.

Each expert's opinions are subject to the same standards of reliability that govern

the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (holding *Daubert* applies even

when an expert's opinion relies on skill or experience-based observation). Rule 702 and

*Daubert* require courts act as gatekeepers by ensuring all expert testimony, whether

scientific, technical, or any other specialized knowledge, is both reliable and relevant. *Id.*

at 152–53.[1] To make the requisite findings, the Court must first determine whether the

expert is qualified by knowledge, skill, experience, training, or education to render an

opinion. *See id.* Second, the Court must determine whether the expert's opinions are

---

[1] *See, e.g.*, *Goebel v. Denver & Rio Grande W. R.R.*, 346 F.3d 987, 991 (10th Cir. 2003) ("Fulfilling the gatekeeper duty requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is both scientifically valid and applicable to a particular set of facts.").

sufficiently reliable. *Id.*; Fed. R. Evid. 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275, F.3d 965, 969 (10th Cir. 2001). A court is to find an expert opinion reliable under Rule 702 if the opinion is based on "good grounds" and provides an underlying factual basis for the opinion. *Murray v. American Colloid Company*, No. 20-CV-3-ABJ, 2022 WL 1132145, at 2 (D. Wyo. March 11, 2022). Finally, the Court must determine whether the proposed expert testimony will assist the trier of fact. Fed. R. Evid. 702.[2]

## RULING OF THE COURT

### I. Plaintiffs' Motions to Exclude

#### a. Brian Strandjord, PE

Plaintiffs seek to exclude the testimony of designated expert Brian Strandjord. ECF No. 95. Mr. Strandjord is expected to testify that the fire originated in the "smoking shed," rather than inside the house. ECF No. 80-10 at 25. Plaintiffs argue Mr. Strandjord lacks "true expertise" in the field of electrical arcing and that his methodology is flawed and based on "unreliable scientific principles, i.e., electrical arcing." ECF No. 95 at 3. Defendants respond that Mr. Strandjord's educational background qualifies him to testify on arc mapping, including classes he's taken through the International Association of Arson Investigators, National Association of Fire Investigators, and online. ECF No. 116 at 3-4. Defendants also point to Mr. Strandjord's decade of experience as a "mechanical and electrical engineer performing failure, fire, explosion, and accident investigations, including performing arc surveys and arc mapping." *Id.* at 4.

---

[2] *See Cruz v. City & Cty. of Denver*, No. 21-cv-03388-KLM, 2023 U.S. Dist. LEXIS 106421, at *6–7 (D. Colo. June 20, 2023) ("Ultimately, the determination of whether expert testimony should be admitted is within the sound discretion of the trial court." (citation omitted)).

i.    **Mr. Strandjord has satisfied the requirements of Rule 26(a)(2)(B).**

To begin, the Court finds that Mr. Strandjord gives a satisfactory statement of all the opinions he will express, the bases/reasons for those opinions, the facts and data considered, and the exhibits that will be used to summarize or support his opinions. *See* Expert Report of Brian Strandjord, ECF No. 80-10 (hereinafter Strandjord's Report); FED. R. CIV. P. 26(a)(2)(B). Mr. Strandjord has also satisfactorily set forth his qualifications. ECF No. 80-10. His curriculum vitae includes a list of all the cases he has testified as an expert at trial or been deposed for in the last four years. ECF No. 80-10 at 28–29. Finally, Mr. Strandjord notes that he charges "$350 per hour for consulting time and $525 per hour for testimony time." *Id.* at 26. In reviewing Mr. Strandjord's expert report and attachments, the Court finds he has satisfied the requirements of Rule 26(a)(2)(B).

ii.    **Mr. Strandjord meets the requirements of Rule 702.**

Under Rule 702, "it is not paramount that witnesses satisfy all these qualifications to testify as an expert[;]" rather, it is the witness's overall qualifications that must provide expertise relevant to the opinions offered. *Black Card, LLC v. Visa U.S.A., Inc.*, No. 15-CV-027-S, 2020 U.S. Dist. LEXIS 263596, at *11 (D. Wyo. Sep. 15, 2020) (citations omitted). In this sense, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011) (citing *United States v. Velasquez*, 64 F.3d 844, 849, 33 V.I. 265 (3rd Cir. 1995)).

In reviewing Mr. Strandjord's background, the Court finds that he is qualified by his years of training, education, and experience. Specifically, Mr. Strandjord has a degree in mechanical engineering from the University of Colorado. ECF No. 80-11 at 1. Mr. Strandjord

has nearly 25 years of experience in mechanical and electrical engineering, which includes investigating "failures in a wide range of mechanical and electrical systems, such as consumer products, lithium battery powered equipment, gas and electric appliances, building systems, commercial and industrial machinery, and electrical switchgear." *Id.* at 1–2. Further, Mr. Strandjord has attended numerous trainings related to fire investigations, including trainings that specifically relate to arc mapping. *Id.* at 2–3. Based on his overall knowledge, skill, training, education, and experience, the Court finds that Mr. Strandjord meets the initial hurdle of expert qualification in the field of electrical arcing. *See* FED. R. EVID. 702.

Once an expert is determined to be qualified, "the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable." *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1071 (D. Colo. 2022). To be reliable, the testimony must be based on specialized knowledge, "which implies a grounding in the methods and procedures of science based on actual knowledge, not mere subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (quotations omitted). The overarching consideration is to ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Thus, a court assesses "(1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community." *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "Generally, the district court should

focus on an expert's methodology rather than the conclusions it generates." *Goebel*, 346 F.3d at 992 (citing *Daubert*, 509 U.S. at 595). "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id*. (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Plaintiffs' assert that that Mr. Strandjord utilized a pseudo-scientific technique when he conducted an arc mapping analysis of the scene. ECF No. 94 at 2. "Arc mapping is a technique in which the investigator uses the identification of locations of electrical arcing to help determine the area of origin." Int'l Ass'n of Fire Chiefs, Fire Investigator: Principles and Practice to NFPA 921 and 1033 263 (4th ed. 2016). As Defendants correctly point out, courts have utilized the National Fire Protection Association ("NFPA") as a barometer for determining the reliability of methods used by fire investigation experts. ECF No. 116 at 5–6 (citing *Philmar Dairy, LLC, v. Armstrong Farms*, No. 18-CV-0530 SMV/KRS, 2019 WL 3070588, at *9 (D.N.M. July 12, 2019); *Ball Corporation v. Air Tech of Michigan, Inc.*, No. 4:16-CV-42-TLS, 2022 U.S. Dist. LEXIS 98548, at 13–14 (N.D. Ind. June 2, 2022)).

The arc mapping methodology utilized by Mr. Strandjord is recognized by the NFPA, as well as many courts, as a tool commonly used in fire investigations. ECF No. 80-10 at 23; *see, e.g.*, *United States v. Hernandez*, 104 F.4th 755, 763 (10th Cir. 2024); *Russell v. Whirlpool Corp*, 702 F.3d 450, 455 (8th Cir. 2012); *Occidental Fire & Cas. Of North Carolina v. Intermatic Inc.*, No. 2:09-CV-2207 JCM VCF, 2013 WL 4458769 at *2 (D. Nev. Aug 15, 2013). This supports factors (2), (3), and (4) of the four prong-test of reliability for expert opinions set forth in *Truck Ins. Exch.*, 360 F.3d at 1210. Further, Mr. Strandjord's report details the methods he used and includes pictures and diagrams to illustrate his process. *See*

Strandjord's Report. This supports factor (1), in that it would appear to make testing or challenging Mr. Strandjord's opinions relatively simple.

Plaintiffs take issue with what they perceive as shortcomings in Mr. Strandjord's investigation, however, these concerns are a matter of credibility and weight to be brought out on cross-examination and resolved by the jury. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Further, Mr. Strandjord's opinions directly relate to central issues in the case—the origin of the fire and fire pattern. "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1083 (D. Colo. 2006) (citation omitted). In this case, the Court finds no such countervailing factors, and as such, the Court finds that Mr. Strandjord's testimony will assist the fact finder. The Court therefore concludes that Mr. Strandjord's opinions satisfy Rule 702 and are admissible.

### b. Joseph Filas, CFI

Next, Plaintiffs seek to exclude the testimony of designated expert, Joseph Filas. ECF No. 98. Mr. Filas is expected to testify that the fire was caused by "the ignition of combustible materials from heat generated by the smoldering coal of an improperly discarded cigarette." ECF No. 80-1 at 6. Plaintiffs assert that Mr. Filas is unqualified to render these opinions because he lacks expertise in the field, used flawed methodology, and improperly relied on flawed data—i.e., Mr. Strandjord's arc mapping analysis and Dr. Gorbett's fire dynamic analysis. ECF No. 98 at 3. Defendants respond that Mr. Filas has extensive experience as a fire

investigator, and dispute Plaintiffs' claims that Mr. Filas's opinions were flawed because of their reliance on either the arc mapping or fire dynamic analyses. ECF No. 117 at 4–5.

### i. Mr. Filas has met the requirements of Rule 26(a)(2)(B).

The Court finds that Mr. Filas gives a satisfactory statement of all the opinions he will express, the bases/reasons for those opinions, the facts and data considered, and the exhibits that will be used to summarize or support his opinions. *See* Expert Report of Joseph Filas, ECF No. 80-1 (hereinafter Filas's Report); FED. R. CIV. P. 26(a)(2)(B). Mr. Filas has also satisfactorily set forth his qualifications. ECF No. 80-1 at 93–96. His curriculum vitae includes a list of all the publications he has authored in the past ten years, and all the cases he has testified as an expert at trial or been deposed for in the last four years. *Id.* at 94–96. Finally, Mr. Filas submitted an attachment to his curriculum vitae stating that, as a Senior Fire Consultant, he is paid between $295–350 per hour. ECF No. 80-3 at 3. In reviewing Mr. Filas's expert report and attachments, the Court finds he has satisfied the requirements of Rule 26(a)(2)(B).

### ii. Mr. Filas meets the requirements of Rule 702.

Like Mr. Strandjord, the Court finds that Mr. Filas possesses the requisite overall "knowledge, skill, experience, training, or education" to render an opinion in this matter and is therefore qualified as an expert. *See* FED.. R. EVID. 702. Mr. Filas has a degree in Fire and Safety Technology with an emphasis in Fire, Arson, and Explosion Investigation from Eastern Kentucky University. ECF No 80-1 at 93. He has worked in the field of fire investigation since 2000 and attended many trainings related to fire investigations in that time. ECF 80-2 at 3–4.

Plaintiffs assert that Mr. Filas lacks experience specifically relating to fires caused by personal mobility devices. ECF No. 3. Curiously, given their objection to Mr. Strandjord and

Mr. Gorbett, and their complaints about Mr. Filas's reliance on their findings, they also take issue with the fact that Mr. Filas's curriculum vitae lists no specific experience with arc mapping for fire dynamics analysis. *Id.* However, Mr. Filas has taken continuing education trainings that included courses on both arc mapping and fire dynamics analysis. ECF No. 80-2 at 3–4. Moreover, as discussed throughout this Order, arc mapping and fire modeling analysis are recognized methodologies in fire investigations. *See e.g.*, *Hernandez*, 104 F.4th at 763; *Mastowski v. American National Property and Casualty Company*, No. CV-15-01893-PHX-NVW, 2017 WL 3675381 *1 (D. Ariz. Aug. 25, 2017). Thus, Mr. Filas's reliance on Mr. Strandjord and Mr. Gorbett's reports does not render his opinion unreliable. Rather, it establishes that Mr. Filas's report satisfies factors (2), (3), and (4) of the four prong-test of reliability for expert opinions. *See Truck Ins. Exch.*, 360 F.3d at 1210.

Next, Plaintiffs' assert that Mr. Filas did "little to explain what specifically he disagree[d] with" from the analysis of their own experts. ECF No. 80-1 at 7. The Court disagrees. Mr. Filas devotes significant portions of his report analyzing Detective Sheaman's and Mr. Schulz's investigations and reports and explaining why he believes their opinions are erroneous. ECF No. 80-1 at 38–46. *See id*. Further, Mr. Filas's report details the evidence he reviewed and includes pictures and diagrams to support his conclusions. *See* Filas's Report. Therefore, the Court finds that Mr. Filas's report satisfies factor (1).

Finally, as with Mr. Strandjord, Mr. Filas's opinions directly relate to central issues in the case, i.e., the origin of the fire. While Plaintiffs may disagree with Mr. Filas's opinions, that is a matter best explored through cross examination. The Court finds that Mr. Filas's opinions satisfy Rule 702 and are admissible.

### c. Gregory Gorbett, Ph.D.

Plaintiffs seek to exclude the testimony of Defendants' designated expert, Dr. Gorbett. ECF No. 110. Dr. Gorbett is expected to testify that the fire likely originated in the exterior of the home, at the "storage 'smoker's' shed." ECF No. 80-4 at 43. Plaintiffs argue that Dr. Gorbett's opinions are based on insufficient facts and data, that the methodology for fire modeling is unreliable, and that Dr. Gorbett's opinions are improperly duplicative of other experts designated by Defendants. ECF No. 110 at 3–4. Defendants' respond that Dr. Gorbett's opinions meet Rule 702's reliability and admissibility standards, and that, as he is the only expert assessing "the competing fire origin theories from a computational fluid dynamics or fire dynamics computer modeling perspective," his opinion is not duplicative. ECF No. 115 at 2.

### i. Dr. Gorbett has not yet satisfied the requirements of Rule 26(a)(2)(B).

The Court finds that Dr. Gorbett gives a satisfactory statement of all the opinions he will express, the bases/reasons for those opinions, the facts and data considered, and the exhibits that will be used to summarize or support his opinions. *See* Expert Report of Gregory Gorbett, ECF No. 80-4 (hereinafter Gorbett's Report); FED. R. CIV. P. 26(a)(2)(B). Dr. Gorbett's curriculum vitae describes his education and training, as well as his work experience and a list of all the publications he has authored in the past ten years. ECF No. 80-4 at 50–53. Finally, Dr. Gorbett states that the fee for his expert services is $250 per hour. ECF No. 80-6 at 1.

Dr. Gorbett's curriculum vitae falls short, however, because it does not include a list of all the cases in which he has testified. Rather, he states that he has been "deemed qualified to give expert deposition and trial testimony in many fire and explosion related fields[.]" ECF

No. 80-4 at 11. This is not satisfactory under Rule 26(a)(2)(B)(v). If an expert witness designation fails to meet the requirements of Rule 26(a)(2)(B), Rule 37(c) provides that the witness may not be used by that party to supply evidence "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The Tenth Circuit has established four factors that must be considered when determining whether a violation of the disclosure rules, in this case rules regarding expert designations, is substantially justified or harmless. *See Woodworker's Supply Incorporate v. Principal Mutual Life Insurance Company*, 170 F.3d 985, 993 (10th Cir.1999). Although a court need not make explicit findings as to substantial justification or harmlessness, the four factors that should guide the court are: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (applying these factors to find harmless the introduction at trial of a new damages theory not previously disclosed).

Given Plaintiffs' lack of objection to this shortcoming in Dr. Gorbett's curriculum vitae (Plaintiffs do not object to Dr. Gorbett's qualification as an expert at all), as well as the relative ease with which this can likely be remedied, the Court concludes that striking Dr. Gorbett's opinion on this basis alone would be excessive. Nothing in the record suggests that this omission was willful, or that it would prejudice or surprise Plaintiffs as to the basis for Dr. Gorbett's opinions. Therefore, Defendants are advised to supplement Mr. Gorbett's designation as quickly as practicable. So long as this is accomplished, the Court would conclude that Mr. Gorbett's expert report and attachments satisfy the requirements of Rule 26(a)(2)(B).

### ii. Dr. Gorbett meets the requirements of Rule 702.

While Plaintiffs do not challenge Dr. Gorbett's qualifications, the Court would still find that Dr. Gorbett possesses the requisite overall "knowledge, skill, experience, training, or education" to render an opinion in this matter and is therefore qualified as an expert. *See* FED. R. CIV. P. 702. He has degrees in Forensic Science, Fire Science, and Executive Fire Service Leadership from Tri-State University in Angola, IN, the University of Maryland in Adelphi, MD, and Grand Canyon University in Phoenix, AZ, respectively, and both a bachelor's degree and Ph.D. in Fire Protection Engineering from Worcester Polytechnic Institute in Worcester, MA. ECF No 80-4 at 47. He has worked in the field of fire investigation since 2001 and authored numerous publications relating to his research and experience. *Id*. at 50–53. Based on his overall education, knowledge, skill, training, and experience, the Court finds that Dr. Gorbett is a qualified expert. *See* FED. R. EVID. 702.

Plaintiffs assert that that Dr. Gorbett's opinions are based on insufficient facts and that his use of fire modeling methodology is subjective and unreliable. ECF No. 110 at 3–4. They also argue that Dr. Gorbett's opinions as to the origin of the fire are improperly duplicative of other experts. *Id*. at 4. "Fire modeling" is a form of mathematical modeling used to calculate a fire's duration and trajectory. *Mastowski*, 2017 WL 3675381 at *1. Like arc mapping, fire modeling or fire dynamics analysis is a recognized scientific methodology in fire investigations and is promoted by the NFPA. *See e.g.*, *Hernandez*, 104 F.4th at 763. Additionally, Dr. Gorbett's report is incredibly detailed, and, despite the shortcomings alleged by Plaintiffs, appears to be thoroughly supported and researched. *See* Gorbett's Report. Plaintiffs' complaints regarding Dr. Gorbett's methodology appear to be better suited to

challenge through cross-examination. The Court finds that all four factors weigh in favor of finding that Dr. Gorbett's opinion is reliable. *See Truck Ins. Exch.*, 360 F.3d at 1210.

As to the Plaintiffs' assertion that Dr. Gorbett's opinion regarding the fire's origin is cumulative of other experts and therefore should be excluded, the Court disagrees. As set forth in the Court's *Order on Initial Pretrial Conference*, "[t]he parties are each limited to one testifying expert witness for each field of expertise, absent a showing that complex issues necessitate expert witnesses with narrow, specialized areas of expertise within a larger general field." ECF No. 48 at 3–4; *see* U.S.D.C.L.R. 26.1(e)(2). When determining whether expert opinion is duplicative, courts consider the following factors: "(1) each expert's qualifications and areas of expertise; (2) the analysis offered by each expert; and (3) the particular subject matter of each expert's testimony." *Swank v. Zimmer, Inc.*, No. CIV. 03-CV-60-B, 2004 WL 5499523, at *7 (D. Wyo. 2004).

Defendants have designated Dr. Gorbett as a fire modeling and fire dynamics engineering expert. ECF No. 80 at 3. With respect to the first factor, the Court finds Dr. Gorbett's qualifications in the areas of fire modeling and fire dynamics are unique and sufficiently different from those of Mr. Standjord and Mr. Filas. In assessing the second factor, the Court finds Dr. Gorbett's analysis and conclusions provide the basis for Mr. Filas's opinions but are not duplicative of those opinions. Dr. Gorbett and Mr. Filas each have a specific focus in their assessment of the facts. While Dr. Gorbett addressed similar topics to the other experts mentioned herein, he did so in a way that was sufficiently different from the strategies employed by Mr. Strandjord and Mr. Filas. In short, the lens in which each expert is assessing the facts relating to the February 1, 2022 fire varies according to the expert's particular qualifications. Given the differences in Mr. Strandjord's, Mr. Filas's and Dr.

Gorbett's expertise, analysis, and designated opinions, it does not appear to the Court that Dr. Gorbett's opinions are duplicative of Mr. Strandjord's and Mr. Filas's opinions and therefore are not excluded at this time. However, the Court's ruling is without prejudice and does not preclude Plaintiffs from renewing their motion based on testimony presented at trial. The Court will be in the best position to assess whether the experts' testimony is duplicative when it is fully appraised of the content of the testimony and context in which the testimony is offered.

## II. Defendants' Motion to Exclude

### a. Ronald Snyder, M.D.

Defendants seek to exclude the testimony of Plaintiffs' designated expert, Ronald Snyder, M.D ("Dr. Snyder"). ECF No. 106. Dr. Snyder is a physiatrist who "has prepared a Life Care Plan for Stephanie Wadsworth and is expected to testify as to her injuries and her future care needs as a result of the incident that serves as the basis for this lawsuit." ECF No. 73 at 2. Although Defendants do not challenge Dr. Snyder's qualifications as an expert in the field of life care planning, they do challenge his qualifications to offer opinions regarding the future life care plan costs and specifically his qualifications to quantify the total costs. ECF No. 107. The primary focus of Defendants' motion to exclude the testimony of Dr. Snyder is their challenge to the reliability of his opinions. Defendants assert that Dr. Snyder's opinions are speculative and unreliable because they are unsupported by and/or contrary to Mrs. Wadsworth's medical records, contrary to Mrs. Wadsworth's deposition testimony, unsupported by testimony from Mrs. Wadsworth's treating physicians as well as unsupported by testimony from a designated economist. *Id*. at 12.

Plaintiffs' response to Defendants' motion to exclude testimony from Dr. Snyder raises a number of concerns for the Court: First, Plaintiffs' response includes statements which are

nonsensical and most likely cut and pasted from other briefing filed by Plaintiffs. For example, Plaintiffs assert: (1) Dr. Snyder's "opinions are necessary for a jury to understand the technical and scientific nature of design and manufacturing defect as related to this case[;]" and (2) "[f]or the reasons set forth below, King's opinions are both reliable and admissible." ECF No. 121 at 2. Because Dr. Snyder is a physiatrist and life care planner, he is obviously not qualified, nor has he been designated in this case, to offer any opinions about design and manufacturing defects. Further, the opinions of Dr. Snyder, not those of Mr. King, are the subject of the instant motion.

Second, Plaintiffs' response includes an incomplete case citation as well as an erroneous case citation. Plaintiffs' citation to "Magoffe at *6" is clearly incomplete and based upon the Court's research and review, the *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1079 (5th Cir. 1996) case is not cited in the immediately preceding citation of *Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1123 (D. Colo. 2006).[3] Further, Plaintiffs' response asserts "all of his [Dr. Snyder's] methods were verifiable as provided in his report and through the recommendations of Mrs. Wadsworth's providers, and as voiced by Mrs. Wadsworth according to her limitations." *Id.* (citing Deposition of Ron Snyder, Exhibit 1; Report of Ron Snyder, Exhibit 2). Yet, Plaintiffs' response fails to cite to any portion of Dr. Snyder's report showing the methodology he used to support his opinions; fails to identify any recommendations from Mrs. Wadsworth's treating physicians regarding future care needs or any restrictions relating to Mrs. Wadsworth's physical activities; fails to identify any medical records which contain recommended follow-up care or activity restrictions; and fails to cite to

---

[3] Such an error could ostensibly be chalked up to an oversight by the drafting attorney; however, given Plaintiffs' recent AI blunder (*See* ECF Nos. 156, 161, 167–69) the Court is highly attuned to such mistakes.

any testimony from Dr. Snyder or Mrs. Wadsworth. *Id.* at 1–3. "It is not this Court's duty to scour the record for evidence in support of a party's position or piece together a party's arguments from various portions of their briefing." *Kluth v. Spurlock*, Civil Action No. 21-cv-03417-NYW-SBP, 2024 U.S. Dist. LEXIS 77885, at *4 (D. Colo. Apr. 29, 2024) (citing *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 803 (10th Cir. 2016)); *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1085 (8th Cir.1999) ("[A] district court is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") Where, as here, Plaintiffs' response does not cite or refer to with particularity any portions of Dr. Snyder's deposition or his report, attachment of the entire deposition of Dr. Snyder (Exhibit 1) and the entire report of Dr. Snyder (Exhibit 2), fails to comply with U.S.D.C.L.R. 7.1(c)(2).[4]

Ultimately, the "drive-by" response submitted by Plaintiffs does not satisfy the Court that all the costs for the items and services included in Dr. Snyder's life care plan for Mrs. Wadsworth are based on "good grounds." *Murray*, 2022 WL 1132145, at *2. For the reasons set forth below, the Court finds that some, but not all, of Dr. Snyder's opinions regarding Mrs. Wadsworth's future care needs and the cost associated therewith should be excluded.

---

[4] "Appropriate Exhibits. A party should attach only those exhibits or portions thereof specifically cited in the briefing and upon which the party relies. Any exhibits or portions thereof attached which are not cited or referred to with particularity may not be considered." U.S.D.C.L.R. 7.1(c)(2).

### i. Dr. Snyder has not met the requirements of Rule 26(a)(2)(B).

The Court finds that Plaintiffs' designation of Dr. Snyder does not fully comply with the requirements of Rule 26(a)(2)(B). For example, neither Plaintiffs' expert witness disclosures, nor Dr. Snyder's curriculum vitae include a list of all publications authored by him in the previous 10 years; a list of all other cases in which, during the previous 4 years he has testified as an expert at trial or by deposition; and a statement of the compensation to be paid for his testimony in the case. See, ECF Nos. 73 at 2-3 and 73-1 at 2-10. Given Defendants' lack of objection to these shortcomings, as well as the relative ease with which this can likely be remedied, the Court concludes that striking Dr. Snyder's opinions on these bases alone would be excessive. Nothing in the record suggests that this omission was willful, or that it would prejudice or surprise Defendants. Therefore, Plaintiffs are advised to supplement Dr. Snyder's designation as quickly as practicable. So long as this is accomplished, the Court would conclude that the designation of Dr. Synder as an expert satisfies the requirements of Rule 26(a)(2)(B).

### ii. Dr. Snyder's qualifications.

As part of its gatekeeping function, this Court must not allow an expert witness to testify to matters beyond the scope of his/her expertise. *Ralston*, 275, F.3d at 969. "The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas." *Travelers Prop. Cas. Co. of Am. V. Nat'l Union Ins. Co. of Pittsburgh, PA*, 557 F. Supp. 2d 1040, 1048-49 (W.D. Mo. 2008). This applies to physicians offering expert testimony on medical issues. A medical expert's testimony must be confined to matters within his/her specialties. *Ralston*, 275 F.3d at 970 ("[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issues.").

Dr. Snyder's life care plan for Mrs. Wadsworth includes a variety of different professional services which extend beyond his specialty of physiatry.  For example: (1) burn surgery; (2) plastic surgery; (3) ENT; (4) ophthalmology; (5) internal medicine; (6) psychiatry; (7) psychology; and (8) neuropsychology. ECF No. 107-2 at 5. Although his specialty of physiatry qualifies Dr. Snyder to testify as to certain future care needs of Mrs. Wadsworth, it does not qualify him to offer opinions on future care needs from specialists such as a plastic surgeon or pulmonologist.  Dr. Snyder admitted this in his deposition:

> I'm not a plastic surgeon. And in order for me to put particular procedures in [Mrs. Wadsworth's Life Care Plan], it would be inappropriate for me to add those procedures. And you'll see in my life care plan, I have a list of procedures that I presume the patient is going to be needing, but I could not put in because that's outside of my wheelhouse. . . . I could not put in the specific types of plastic surgical procedures, the types of pulmonary procedures and so forth.

ECF No. 107-3 at 3:10–17 & 4:8–11.

When asked what experts he needed to speak with in order to complete Mrs. Wadsworth's Life Care Plan, Dr. Snyder testified "[t]he plastic surgery discussion in the future; perhaps ophthalmology for the corneal abrasions, and ear, nose and throat for the tracheal burns." *Id*. at 38:6–11. Plaintiffs' response fails to address Dr. Snyder's qualifications other than to say that "[h]e applied his background, training, and experience treating other burn victims like Mrs. Wadsworth" followed by the conclusory statement that "as a physiatrist [Dr. Snyder] was able to make determinations as to her future care needs." ECF No. 121 at 3. Of note, Plaintiffs assert in their response that all of Dr. Snyder's "methods were verifiable as provided in his report and through recommendations of Mrs. Wadsworth's providers." *Id*. Contrary to Plaintiffs' assertion, Dr. Snyder testified in this deposition that he had not spoken

with any of Mrs. Wadsworth's treating physicians and therefore had not obtained any recommendations concerning Mrs. Wadsworth's future care needs. ECF No. 107-3 at 3:5–7.

Based upon its review of Dr. Snyder's deposition testimony and his Curriculum Vitae, the Court finds that Dr. Snyder is not qualified as an expert in the medical fields of burn surgery, plastic surgery, ENT, ophthalmology, internal medicine, psychiatry, psychology and neuropsychology. Accordingly, the Court finds that Dr. Snyder is precluded from offering at trial an opinion concerning the following services included in Mrs. Wadsworth's Life Care Plan:

1. Physician and Professional Care

    a.  Burn Surgery (Next 5 Years) - $22,426.20;

    b.  Burn Surgery (After 5 Years) - $29,154.06:

    c.  Plastic Surgeon - $35,573.12;

    d.  Hair Transplantation - $8,382.48;

    e.  ENT - $9,718.28;

    f.  Ophthalmology - $11,093.28;

    g.  Internal Medicine - $10,543.28;

    h.  Psychiatry - $12,147.00;

    i.  Psychology - $36,169.20;

2. Comprehensive Neurocognitive Multimodal Therapy Program

    a.  Neuropsychology Testing - $2,761.28;

    b.  Neuropsychology Follow-Up Visit - $5,266.56;

    c.  Neuropsychology Cognitive Rehabilitation - $5,516.40;

    d.  Speech and Language Cognitive Evaluation - $402.98;

      e.   Speech and Language Cognitive Therapy - $5,516.40;

      f.   Occupational Therapy Cognitive Evaluation - $255.72;

      g.   Occupational Therapy Cognitive Therapy - $5,516.40;

      h.   Brain Injury Education - $1,910.40;

      i.   Group Therapy - $4,011.84;

  3.  Hospitalizations & Procedures

      a.   Removal/Excision of Benign Foot Lesions;

      b.   Scar Excision and Reconstructive Surgery;

      c.   Follicular Unit Hair Transplant Surgery;

      d.   Semi-Permanent Tattoo of her Right Eyelid - $34,090.32.

ECF No. 107-2 at 5–6.

Additionally, Mrs. Wadsworth's Life Care Plan lists the average cost per lifetime for each of the items and services included therein. *Id*. at 5–8. The "Lifetime Total" for all items and services included in Mrs. Wadsworth's Life Care Plan equals $3,698,895.16. *Id*. at 8. Dr. Snyder admitted in his deposition that he "could not testify to the veracity of the numbers" in Mrs. Wadsworth's Life Care Plan because "[a] young high school girl does it for me. I don't know how to do the equations and so forth." ECF No. 107-3 at 6:14–15 & 6:21–23. Dr. Snyder went on to testify that he relies on an economist to provide the final care plan figures that would be claimed as damages in the case. ECF No. 107-3 at 8:17–21. The Court finds that Dr. Snyder lacks the qualifications to testify regarding the calculation of the $3,698,895.16 "Lifetime Total" given his admission that he is unable to determine/calculate such costs and his statement that he normally relies on the assistance of an economist "because they do lots of other manipulations with those numbers for an ultimate amount of money that should be

involved." *Id*. at 8:12–15.  Thus, the Court finds that Dr. Snyder is precluded from offering at

trial an opinion that the total costs of Mrs. Wadsworth's future care equals $3,698,895.16.

Dr. Snyder's Life Care Plan for Mrs. Wadsworth includes a list of five (5) different

medications: (1) Neurontin; (2) Baclofen; (3) Duloxetine; (4) Lansoprazole; and (5) Zolpidem

Tartrate. ECF No. 107-2 at 7. Dr. Snyder's Curriculum Vitae and expert report state that he is

a board-certified physiatrist and pain management specialist. ECF No. 73-1 at 2 & 57. As such,

the Court finds that Dr. Snyder is qualified to address the above-listed medications that Mrs.

Wadsworth may need to address pain complaints, GERD and/or insomnia.

### iii. Reliability of Dr. Snyder's opinions.

Expert testimony about future medical care and the costs of that care, including life

care plans, must meet the admissibility requirements of Rule 702 and *Daubert*. Other courts

who have determined the reliability of expert life care plan testimony have considered: (1)

whether the expert's methodology is peer-reviewed; (2) whether the expert's opinions fall

within or are incident to their area of medical specialty; (3) whether the expert communicated

with the treating physicians; (4) whether the expert drafted the life care plan himself or relied

on others; (5) whether the plan includes treatment not prescribed or indicated by the medical

records; and (6) whether the expert explained the basis of treatments not recommended by

treating physicians. *See, e.g.*, *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL

3872180, at *4–5 (S.D. Ill. Sept. 5, 2017); *Trinidad v. Moore*, No. 2:15-323-WHA, 2016 WL

5341777, at *5–8 (M.D. Ala. Sept. 23, 2016).

The Court finds it appropriate to analyze these life care plan specific factors in addition

to the traditional *Daubert* factors of: (1) whether the opinion at issue is susceptible to testing

and has been subjected to such testing; (2) whether the opinion has been subjected to peer

review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert*, 509 U.S. at 593–94. In analyzing each of these factors, Plaintiffs, as the proponents of Dr. Snyder's opinions, have the burden of establishing its admissibility. *Ralston*, 275 F.3d at 970 (10th Cir. 2001).

The Court is mindful that under *Daubert* and its progeny, a disagreement with the expert's conclusion is not grounds for exclusion. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Goebel*, 346 F.3d at 994 (quoting *Daubert*, 509 U.S. at 596). However, the Court is also mindful that "an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'". *Goebel*, 346 F.3d at 992 (quoting *General Elec. Co.,* 522 U.S. at 146).

Although a life care planning expert is not required to review his/her life care plan with the person's treating physician(s) and obtain the approval of the plan, the Court maintains that it is on its strongest footing to admit testimony by a life care planner when the opinions are consistent with and rooted in the medical records of a treating physician(s) and his/her recommendations. See, e.g., *Cunningham v. Harmon*, No. 15-CV-159-ABJ, 2017 WL 2129731, at *3 (D. Wyo. Feb. 17, 2017) ("Life care estimates routinely rely on underlying medical diagnosis that the life care expert would be unqualified to offer independently. This reliance is, however, an industry-wide accepted standard, and life care opinions based on an underlying doctor's evaluation are permissible."); *Thomas v. T.K. Stanley, Inc.*, No. 9-12-CV-158, 2014 WL 12910539, at *3 (E.D. Tex. Oct. 27, 2014) ("The medical records and opinions

of treating physicians and other medical providers are the sort of evidence that would be reasonably relied upon to create a life care plan."); *Matter of Kirby Inland Marine, LP*, No. 1:23-CV-168-MJT-ZJH, 2024 WL 5256494, at *5 (E.D. TX Dec. 11, 2024) ("[Claimant] provides no reason to depart from the long-standing principle that a life-care expert should base their conclusions only on the records of an independent treating physician.").

The Court finds that Plaintiffs have not met their burden of showing by a preponderance of the evidence that the following costs included by Dr. Snyder in his life care plan for Mrs. Wadsworth are reliable within the meaning of Rule 702, *Daubert* and its progeny and further finds that there is simply too great an analytical gap between the facts and the opinions proffered:

1. Equipment

    a. Motorized Scooter - $19,263.20;

    b. Motorized Scooter Maintenance - $7,705.28;

    c. All Terrain Scooter - $47,071.20;

    d. All Terrain Scooter Maintenance - $18,828.48;

    e. Scooter Backpack - $1,364.00;

    f. Portable Ramps: 3' and 5' - $2,188.21;

    g. Walker - $457.73;

2. Transportation

    a. Standard Van: Initial Purchase - $47,035.00;

    b. Standard Van: Replacement Purchase - $118,950.00;

    c. Van Modifications - $313,500.00;

    d. Van Modifications Maintenance - $12,760.00;

     e.  Automobile Association Membership - $4,399.56;

   3.  Home Modifications

     a.  Handicapped Home Modifications - $32,956.52;

     b.  Home Security Monitoring - $26,040.96;

   4.  Homemaker Care

     a.  Housekeeper - $274,000.00;

     b.  Personal Care Attendant - $1,375,256.08;

     c.  Home Maintenance - $169,936.80.

ECF No. 107-2 at 7–8.

The equipment, transportation and home modification items, as well as the housekeeper and personal care attendant services listed above are predicated on alleged physical limitations affecting Mrs. Wadsworth's mobility and the need to use a walker and/or scooter, whereas the home maintenance services are predicated on the potential that Mr. Wadsworth may divorce his wife in the future because of the injuries she sustained in the fire. ECF No. 128-1 at 152:14–153:5, 153:20–23. However, Plaintiffs have failed to identify what physical limitations Mrs. Wadsworth suffers from[5] and that any of the equipment, transportation, home modifications and homemaker care has been prescribed or indicated in her medical records. Additionally, Plaintiffs' response does not cite to any portion of Dr. Snyder's report or his deposition transcript which explains the basis for the items and services not prescribed or recommended by Mrs. Wadsworth's treating physicians.[6] Further, Dr. Snyder's subjective belief and

---

[5] Mrs. Wadsworth testified in her deposition that she is able to engage in all physical activities that she was able to before the February 1, 2022 fire. ECF Doc. 107-6 at 3:18–23.

[6] For example, when asked whether any of Mrs. Wadsworth's treating physicians have discussed the need for a "Personal Care Attendant," Dr. Snyder testified "[n]o, I don't think they've ever been asked that question. That's why

speculation that Mr. Wadsworth may divorce his wife sometime in the future, thus necessitating the need for home maintenance services, is insufficient to form a reliable opinion. *Goebel*, 346 F.3d at 991. In summary, the life care specific and traditional *Daubert* factors weigh in favor of finding that Dr. Snyder's life care plan regarding the items and services listed above are not supported by reliable medical foundation. Consequently, they are inadmissible and must be excluded.

Defendants argue that Dr. Snyder should be precluded from testifying at trial about the five (5) medications included in Mrs. Wadsworth's Life Care Plan because his opinion is unreliable. Specifically, Defendants assert Dr. Snyder's medication opinion is not supported by any medical foundation and is contradicted by Mrs. Wadsworth's testimony that she does not take any medications. ECF No. 107 at 11; ECF No. 128 at 4. The Court finds that even though Mrs. Wadsworth may not currently be prescribed or using the five medications listed in the life care plan, during the interview conducted by Dr. Snyder of Mrs. Wadsworth she did indicate some complaints/symptoms of pain, GERD and insomnia for which the medications could be prescribed. *See* ECF No. 73-1 at 24–26.  To the extent that Defendants disagree with Dr. Snyder's medication opinion, as well as his opinions regarding the other items and services included in Mrs. Wadsworth's Life Care Plan that are NOT addressed above, such issues are a matter of credibility and weight to be brought out in "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Goebel*, 346 F.3d at 994 (quoting *Daubert*, 509 U.S. at 596).

---

I need to reach out to the treating doctors to ask that question." ECF No. 107-3 at 37:8-16. Yet, Dr. Snyder admitted he has not spoken with any of Mrs. Wadsworth's treating physicians. *Id*. at 3:5–7.

## CONCLUSION

**THEREFORE, IT IS ORDERED** Plaintiffs' Motions to Exclude the Testimony of Brian Strandjord [ECF No. 94], Joseph Filas [ECF No. 97], and Gregory Gorbett [ECF No. 108], are DENIED. Defendants' Motion to Exclude the Testimony of Ronald Snyder [ECF No. 106] is **GRANTED IN PART** and **DENIED IN PART**.

Dated this <u>24th</u> day of February, 2025.

Scott P. Klosterman
United States Magistrate Judge