# EXHIBIT 1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF WYOMING

3    _____

4    STEPHANIE WADSWORTH,              DOCKET NO. 23-CV-118-KHR
     individually and as parent and
5    legal guardian of W.W., K.W.,
     G.W., and L.W., minor children;
6    and MATTHEW WADSWORTH,

7         Plaintiffs,                  Cheyenne, Wyoming
                                       February 11, 2025
8         vs.

9    WALMART, INC., and JETSON
     ELECTRIC BIKES LLC,
10
          Defendants.
11

12   _____

13          TRANSCRIPT OF HEARING PROCEEDINGS
               FINAL PRETRIAL CONFERENCE

14       BEFORE THE HONORABLE KELLY H. RANKIN
             UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

         JANET DAVIS, RDR, FCRR, CRR
21         Federal Official Court Reporter
     2120 Capitol Avenue, Room 2226, Cheyenne, WY 82001
22         307.433.2154 * jbd.davis@gmail.com

23

24   Proceedings reported by realtime stenographic reporter;
     transcript produced with Computer-Aided Transcription.

25

```
 1   APPEARANCES:

 2   For the Plaintiffs:      Morgan & Morgan PA
                              BY: T. MICHAEL MORGAN
 3                            20 North Orange Avenue, 16th Floor
                              Orlando, FL  32801
 4
                              Paul Knopf Bigger
 5                            BY: ANDREW KNOPF
                              1560 North Orange Avenue, Suite 300
 6                            Winter Park, FL  32789

 7
     For the Defendants:      McCoy Leavitt Laskey LLC
 8                            BY: EUGENE M. LAFLAMME
                              N19 W24200 Riverside Drive, Suite 125
 9                            Waukesha, WI  53188
                              BY: JARED B. GIROUX
10                            202 US Route 1, Suite 200
                              Falmouth, ME  04105
11
                              Crowley Fleck PLLP
12                            BY: HOLLY L. TYSSE
                              111 West Second Street, Suite 220
13                            Casper, WY  82601

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Proceedings commenced 2:03 p.m., February 11, 2025.)

2                THE COURT:  Thank you.  Please be seated.

3                Good afternoon.  We are on the record in the matter of

4      Stephanie Wadsworth, et al., versus Walmart, Inc., et al.,

5      Case No. 23-CV-118-R.

6                We have a handful of attorneys for both sides.  It is

7      my understanding that we have Michael Morgan on behalf of the

8      plaintiffs; Andrew Knopf is here as well, and they're ably

9      assisted by their paralegal with them.

10               And for the various defendants, Eugene LaFlamme -- am

11     I pronouncing that correctly, sir?

12               MR. LAFLAMME:  You are, Your Honor.

13               THE COURT:  And Holly Tysse I note is here.

14               MS. TYSSE:  Yes, sir.

15               THE COURT:  And also Giroux.

16               I'm sorry we don't have a warmer day for you in

17     Cheyenne, but for those travelling from the south, this may be

18     an abrupt change.  Hopefully you'll adapt during the short time

19     you're here.

20               As you all know, this is the final pretrial conference

21     in this matter.  We're scheduled for a jury trial to begin on

22     March 3rd, scheduled for 12 days, here in this courtroom.

23               I have received and reviewed your joint proposed Final

24     Pretrial Order, and that certainly will aid us in our

25     discussion here today.

1          Big picture-wise what I intend to do is address very

2    briefly the pending matters before the Court.  We will go over

3    those, and then principally we'll talk about sort of what you

4    can expect on -- or during the course of the trial, the process

5    that we will use and just sort of the finer logistical details

6    that might be helpful to you as we think about the trial

7    upcoming.

8          So that's really what we'll tackle today.  Certainly,

9    if you have anything else that we need to address, you can let

10   me know.

11         Let me just begin with the matters that are still

12   pending.  You may have seen, we entered an order earlier today

13   that addresses the request for bifurcation and the defendants'

14   motions in limine.  I anticipate very soon, perhaps as early as

15   today, you'll see an order from Magistrate Judge Klosterman on

16   the outstanding motions to strike the various experts.  We

17   have, I think, three that were filed on behalf of the plaintiff

18   and one filed on behalf of the defendant.  But I think you'll

19   see some guidance on that yet either today or certainly very

20   soon.

21         That also leaves us with documents Nos. 151 and 152.

22   The plaintiffs had filed requests for the Court to take

23   judicial notice of various items.  There has not yet been a

24   written response filed by defendants, and so I want to check in

25   briefly to see what the position of the defendants might be

1   with respect to briefing and where we go from here with respect

2   to those two items.

3           And then, lastly, pending is the Court's own show

4   cause order.  It isn't my intention to address that matter here

5   today.  There are some tasks that have yet to be completed

6   later on in this week, and then we'll sort of go from there

7   with regard to that.

8           So I think those are the matters that are pending.  So

9   let me maybe begin with the defendants and the pending judicial

10  notice, documents 151 and 152, the preference of counsel on

11  behalf of the defendants in terms of how you would like to

12  respond.  I note in the filings themselves that they apparently

13  are opposed, so the position of the defendants in that regard.

14          Mr. LaFlamme.

15          And I might have you stand, if you would.

16          MR. LAFLAMME:  Absolutely, Your Honor.  The defendants

17  will oppose both requests for judicial notice.  We would

18  propose getting a brief in within the next five days, if that

19  is acceptable to Your Honor.  We were kind of waiting to see

20  how today went to see what Your Honor would like in the form of

21  a response in that regard, but that is our plan.

22          THE COURT:  All right.  And I think it was filed --

23  both of them were filed on February 5th, which under our local

24  rules would give you through -- or no later than February 19th.

25  So we will anticipate to see some written response on or before

1    that date.

2            Does that sound suitable?

3            MR. LAFLAMME:  Very good, Your Honor.

4            THE COURT:  Very well.

5            For the plaintiffs, we may have to file -- we might

6    have to expedite.  Normally we take seven days to file a reply

7    to the notice for judicial notice.

8            How would you like to respond?

9            MR. KNOPF:  Good afternoon, Judge.  I don't think we'd

10   need to file a response to those.  It appears as relatively

11   straightforward.

12           THE COURT:  It appears as such.  The one thing I would

13   point out in reviewing the requests or motions from plaintiff,

14   if the Court ultimately grants those requests or a portion of

15   those requests, I think, as I recall, one of them contains

16   attachments of approximately eight pages.  That's document

17   Number 152.  And the other one has in the neighborhood of 50

18   pages.  So we will need to think a little bit about

19   presentation and how all of that can be condensed and presented

20   in a suitable way before the jury.

21           MR. KNOPF:  Judge, typically -- I mean, we've used

22   this, particularly the one related to the cigarettes, in the

23   past, and I think we'll end up editing that down through the

24   drafting of the jury instructions, because obviously the last

25   thing we want for Your Honor to do is have to read 50 pages.

1   So I think we can kind of -- my hope is that we'll be able to

2   work through, in the event it is granted, narrowing the

3   language down to really include the relevant stuff.

4            THE COURT:  All right.  Very well.  Food for thought

5   for the defendants in terms of your response, but that was one

6   area that I wanted to get ahead of a little bit, again provided

7   that those requests are granted.

8            Okay.  Any other loose ends in terms of motions that

9   are pending or other matters pending?  I do recognize -- and

10  we'll talk about exhibits more specifically here shortly and

11  witnesses, and we will kind of take -- take it through the

12  process.

13           But are there any other substantive motions that are

14  pending that I may have missed or other matters of that sort

15  that we need to attend to or at least address somehow here

16  today?

17           For the plaintiffs, Mr. Morgan?

18           MR. MORGAN:  Yes, Your Honor.  Before I get started, I

19  do want to apologize personally to the Court and to the staff

20  and, again, to opposing counsel for the motion in limine.  I

21  know today is not the time to get into it.  I don't plan to.

22           But I would say that in addition to what the Court has

23  required, which will be provided on the 13th, we do welcome any

24  other inquiry to walk you through the actual videos, the

25  training, or anything else that you might require or want.

1            So I do apologize again.

2            THE COURT:  Very well.  I appreciate the apology,

3    Mr. Morgan, and we will await the further filings and sort of

4    go from there.

5            So thank you.

6            MR. MORGAN:  Thank you, Your Honor.  From the

7    plaintiff, just a couple of loose ends that we do have to

8    address today is the availability to have certain witnesses

9    appear by Zoom.  I know that that is something that we need to

10   ask permission from the Court.

11           It would two types of witnesses.  It would be the

12   doctors from the University of Utah and also the potential for

13   rebuttal witnesses.  I understand that we are not required to

14   list rebuttal witnesses, but to the extent the Court finds it

15   helpful, we need to file a motion to have them appear by Zoom,

16   we'd seek guidance on how to do that, whether it is in camera

17   or how you prefer.

18           The other thing that we have is as far as exemplars in

19   this case, the exemplars obviously contain battery packs, and

20   the allegations of the plaintiffs in this case are those are

21   potential fire hazards.  Some of them have been recalled such

22   as for the Rogue, for the potential of fire hazard in the same

23   condition they were, as well as the battery packs.  We would

24   seek guidance.

25           We have looked into fireproof bags and boxes and

1    things of that nature that we can store them in, but what, if

2    any, permissions we need to keep them in the courthouse or to

3    bring them in the courthouse, we're unsure.  We've looked and

4    it kind of rises to the level of a different kind of hazardous

5    material, and so we would seek the Court's guidance on that as

6    well.

7            The only other thing that I have in front of us is our

8    local counsel has made us aware, and we are asking them to do

9    everything to move that they can, but they have a trial

10   scheduled in Jackson Hole.  It is a state court case.  But I

11   just want to make the Court aware that is supposed to start on

12   February 24th, but we're moving everything we can to make sure

13   that local counsel is present at that, Your Honor.

14           THE COURT:  All right.  Very well.  Mr. Morgan, thank

15   you.

16           Let me just briefly and very broadly touch on a couple

17   of the items that you raised.

18           Our general practice when it comes to Zoom

19   witnesses -- and I note in the proposed Final Pretrial Order

20   that there are references to either deposition testimony or

21   live Zoom-type witnesses.

22           The first thing to keep in mind is that we need as

23   much notice, either before or certainly during the trial, about

24   which witnesses and approximately when they might be called so

25   that we can send the link out to those witnesses.  And, of

1    course, the onus will be on you all to ensure that they have

2    the proper technology and they are able to utilize Zoom in a

3    way that we can hear and see them during the course of the

4    trial.

5            Ms. Bowden is our courtroom deputy.  You've probably

6    met her by now.  But she is the point of contact for that

7    information.  As a courtesy, I would recommend that you let

8    Ms. Davis know, our court reporter, as well, so that we all are

9    not delayed or caught off guard by proposed Zoom witnesses.

10           So that's sort of the first point I want to make about

11   that.

12           We'll talk more about witness issues and timing of,

13   sort of, notifying not only the Court, but opposing counsel

14   about when those witnesses will be called here in a moment.

15           With respect to the exemplars, do you anticipate that

16   those will be demonstrative only or are they exhibits of the

17   plaintiffs?

18           MR. MORGAN:  I believe more likely than not they would

19   be exemplar in nature only used by the experts in explanation.

20   I don't foresee them being admitted into evidence as something

21   that would go back with the jury.

22           THE COURT:  All right.

23           MR. KNOPF:  No, Your Honor.

24           THE COURT:  I'm not -- certainly no expert about the

25   risk considerations that come with those devices.  I want to

1   make sure that both sides have every opportunity to utilize

2   such devices in the presentation or defense of their cases.

3   And so what I would suggest is that you take, with the

4   assistance of your expert, every precaution to make sure --

5   whether they're bagged or whatever sort of the standard

6   protocol is for ensuring that they are, in fact, safe.  Of

7   course, the last thing any of us want is to have a device or

8   item in court that is not safe and has risk considerations.

9           So whatever that may be, as long as somebody can

10   assure us, perhaps your expert that may be testifying, that it

11   is contained or packaged in such a way that is absolutely safe.

12   We will need to probably let the court security officers know

13   as those things are brought in the building that they're not

14   destructive devices or some other dangerous device that creates

15   some concern on their end.

16           But the bottom line is I think whatever it takes to

17   make sure that they're -- they don't present a risk or danger

18   is fine with me.  And it may be we need more detail about what

19   you propose in terms of these exemplars, but I think that's

20   sort of the broad guidance I can give you for now.

21           MR. MORGAN:  Thank you, Your Honor.

22           THE COURT:  You're welcome.

23           And local counsel, we'll see what sort of develops

24   there and hopes that he or she is present with you, and if not,

25   just let us know and we will see what we need to do in that

1    respect.

2            On those subjects, Mr. LaFlamme, anything else you

3    would like to add?

4            MR. LAFLAMME:  Yes, Your Honor.

5            Just touching on the exemplars that Mr. Morgan just

6    mentioned, obviously we are going to object to any exemplars

7    above and beyond the Plasma.  Just for the Court's own

8    awareness, these hoverboards are sold at retail stores.  They

9    do not present a fire risk.  They're brought into court.

10   Counsel should not be bringing these in in a fireproof bag in

11   front of the jury and pulling them out just for sensationalist

12   purposes.  We would certainly object to that.

13           On the legal issues, Your Honor, we know from your

14   order on our summary judgment motion, there was certainly some

15   discussion on the inference issue in a product liability claim

16   for inference of a defect.  We would like the opportunity to

17   present Your Honor with a trial brief in advance of trial on

18   that issue.

19           We don't think that the inference of a defect is

20   applicable here, as plaintiffs have a -- identified through

21   their expert a specific defect, and there is also evidence of a

22   reasonable secondary cause of the lithium-ion batteries

23   releasing, which would be the secondary fire attack.

24           So with that, Your Honor, we would request the

25   opportunity to provide a trial brief in advance of trial for

1  you.

2          THE COURT:  I think the sooner the better to give the

3  plaintiffs an opportunity to respond to your further position

4  in that regard.  I don't want to continue on the briefing

5  that's already occurred and the decision that's been made, but

6  I certainly -- you know, if there's an area that we need to

7  visit specific to that order, then I want to make sure, again,

8  that both sides have that opportunity.

9          So I guess my question back to you, Mr. LaFlamme, is

10  how quickly can you tee that issue up so that we can afford

11  plaintiffs the same opportunity?

12          MR. LAFLAMME:  It is already in the works, Your Honor.

13  We should be able to get that to you within the next couple of

14  days.

15          THE COURT:  All right.  Very well.

16          And then in response to that, I'll propose -- or let

17  you propose, Mr. Knopf or Mr. Morgan, a time frame for some

18  sort of written response.

19          MR. KNOPF:  It is kind of hard to -- I mean, I would

20  say that whatever is permitted by the local rules, but we would

21  obviously expedite that as quickly as we possibly can.

22          And forgive my ignorance, Your Honor, but do you

23  typically read the -- all of the jury instructions at the

24  beginning of the case, the substantive instructions?

25          THE COURT:  So we will work our way through that, but

1    just to tip my hand a little bit about how that works, we will

2    have a set of preliminary instructions that are read before

3    opening statements are made.  And then we will, of course, have

4    an instruction conference in advance of closing arguments.  And

5    then we will read the final substantive instructions in advance

6    of the closing arguments so you can refer to them or display

7    them as given.

8            Does that answer your question?

9            MR. KNOPF:  It does.  And the reason I was asking is

10   because I think that your point, the sooner they can file that

11   motion, the sooner we can tee up that issue so we can determine

12   what actually needs to be included in those instructions.

13           THE COURT:  I hate to put the pressure on you.  Seven

14   days from the time it is filed ample time to provide us with a

15   response?

16           MR. KNOPF:  Yes, Your Honor.

17           THE COURT:  All right.  I won't invite a reply just

18   because of our timing, so whenever you file that, plaintiffs

19   will have seven days and we will take a look at it.

20           MR. LAFLAMME:  Okay.  Understood, Your Honor.

21           THE COURT:  Very well.

22           Anything else you would like to add?

23           MR. LAFLAMME:  Yes, Your Honor, just quickly.  On the

24   order we received today on the motions in limine, with respect

25   to motion in limine 1 which relates to the Rogue recall and the

1   Kaufman case -- or Kaufman fire, before any of that evidence is

2   put before a jury, we would suggest that there be a hearing on

3   that issue out of the presence of the jury before it is deemed

4   actually admissible before a jury to consider.

5           The considerations of the recall and the Kaufman fire

6   under Rule 403 are just so great, Your Honor, that it should

7   not be put in front of a jury absent an actual hearing in front

8   of Your Honor until -- until it can be deemed admissible in

9   that regard.

10          THE COURT:  Well, I suspect there will be some

11  reference to it early on in the case, and I'm only speculating,

12  but if we're going to do that, then we probably ought to plan

13  on some hearing either on the eve of trial -- perhaps Thursday

14  or Friday before trial.  I'm not sure we will have enough time

15  to sort all of that out and prepare for the jury selection on

16  the morning of trial.

17          So, Mr. LaFlamme, your thoughts about that.

18          MR. LAFLAMME:  We would certainly be willing to have a

19  hearing before trial, Your Honor.  Just in looking at the order

20  and still digesting it, obviously, since we just got it this

21  morning, the thought process was that given the nature of that

22  evidence that there should be a hearing to determine whether

23  there is substantial similarity, because I think even Your

24  Honor in the order had indicated that plaintiffs still have the

25  burden to prove that substantial similarity before it is put

1  into evidence.  And they haven't necessarily done that at this

2  point, but that that would be done through witness testimony,

3  and that witness testimony shouldn't be given in front of a

4  jury until that hurdle is overcome.

5          THE COURT:  Response from the plaintiffs, Mr. Morgan.

6          MR. MORGAN:  Yes, Your Honor.  I would say at this

7  point -- obviously we just received that order, so it is not as

8  though we have built our whole case around whether or not that

9  piece of evidence is coming in or not.  I would anticipate at

10 this point, you know, barring any ruling from the Court, that

11 it would be brought up during opening as we will preview the

12 evidence that we expect to be shown to the jury.

13         In the event that that evidence is not shown and

14 ultimately not allowed by the Court because we're not able to

15 meet our burden to lay it, that's on us, and that's when they

16 can point out that was not brought to them.

17         But as far as the evidence stands as openings goes, I

18 would say we're allowed to present evidence that has not and

19 excluded, or at least what we believe the evidence to be.

20         As far as the eve of trial, I'm not sure which day we

21 would do it.  We're happy to do it.  We're happy to make sure

22 that the trial is as clean as possible.  To the extent you have

23 time, we're happy to argue it then as well, Your Honor.

24         THE COURT:  I think if we did, as you just mentioned,

25 we would sort of have a proffered hearing on anticipated

1    evidence.  I'm not sure you would necessarily need to call

2    witnesses, but proffer what you anticipate witnesses would say,

3    and then we would anticipate that would be their testimony, if

4    we have a trial -- excuse me -- a hearing in advance.

5            Mr. LaFlamme, your thoughts about either of those

6    approaches.

7            MR. LAFLAMME:  I certainly agree that there should be

8    some sort of a hearing before this evidence is proffered, even

9    in opening before the jury, because you can't unring that bell

10   once it's put out there.

11           So whatever works for the Court, Your Honor, we will

12   do our best to make sure that it works on our end to get

13   whatever sort of evidence you are anticipating you would need

14   to consider on that issue.  And whether that's witness

15   testimony or if that's just various offers of proof, we can

16   handle however Your Honor would like.

17           THE COURT:  All right.  Well, let's do this.  Out of

18   an abundance of caution -- and, again, the theme that you'll

19   hear shortly from me is that we want to minimize as much

20   downtime for the jury as possible, and so I would much prefer

21   we sort this sort of thing out in advance of the trial itself.

22   It is either that or we work, you know, into the evening, which

23   is fine, or early in the morning, but that puts a lot of

24   pressure on court staff to be ready to do those extra, sort of,

25   curricular things.

1           So why don't we for now tentatively schedule a hearing

2    on this subject maybe the Friday before.  And I would

3    suggest -- which is February 28th.  We may have to do that in

4    the afternoon, which may actually be better for your travel, in

5    any event.

6           Why don't we say 1:30 Friday afternoon to address the

7    so-called Kaufman issue.  And if you would like to include in

8    your trial memorandum your thoughts about how that should play

9    out, I might invite you to do that.  And certainly you can

10   respond in your briefing seven days later.

11          Mr. Morgan.

12          MR. MORGAN:  Your Honor, I hate to ever ask the Court

13   for accommodations for any reason, but based off the schedule

14   and family obligations, is there any way that the Court could

15   accommodate this hearing by Zoom?  If not, I will be here.  But

16   just an ask.

17          THE COURT:  If we're not taking evidence, I don't have

18   any strong objection to that.

19          Mr. LaFlamme, your thoughts about that concern or that

20   request.

21          MR. LAFLAMME:  Your Honor, I know I will be here in

22   person.  I have no problem with that.  I think it is an

23   important issue that should be addressed probably in person,

24   Your Honor.

25          THE COURT:  Is there co-counsel that can assist with

1    that, Mr. Morgan?  I hate to put that pressure on you.

2         MR. KNOPF:  And I would say but for the fact I have

3    family commitments on that Friday -- I think we're similarly

4    situated in terms of those obligations, being here for two

5    weeks.  I can't envision there being any prejudice to the

6    defense in the event that we attend by Zoom if it is simply

7    going to be a proffer.

8         MR. MORGAN:  And I will say this, Your Honor.  I will

9    be here to make sure -- if that's what the Court prefers, I

10   will absolutely be here.  Two weeks, I'm already in trouble, so

11   an extra weekend, I can make it happen if you prefer.

12        THE COURT:  Well, I hate to do that to you, but I

13   think it is awkward enough if we have half of the room here in

14   person and then others by Zoom.  I'm happy to move it up a day

15   or two, but that probably creates more hassle for travel and

16   logistics than having it on Friday.

17        So why don't we -- I'm sorry to do that to anyone, but

18   it is an important issue in this case, and so let's plan on

19   1:30 in person on Friday the 28th.

20        MR. MORGAN:  Yes, Your Honor.

21        MR. LAFLAMME:  And, Your Honor, just as a point of

22   clarification, for the trial brief do we have any page limits?

23   We will obviously be as brief and succinct as we can and don't

24   want to overcome the Court with paper, but to the extent there

25   is a specific page limit, let us know.

1      THE COURT:  Why don't we say no more than 15 per side.

2   That ought to be consolidated and condensed adequately, I

3   think, given what I've heard.  So why don't we say 15 pages.

4   Again, seven days for responding or including your own

5   information in your trial brief responsive to the defendants.

6   Seven days, of course, after it is filed by the defendants.

7      Mr. LaFlamme, any --

8      MR. LAFLAMME:  And last thing, Your Honor.  And sorry

9   to go a little long here.

10     On the exhibit numbering, we have the lettered

11  exhibits.  I think you probably have seen how many exhibits at

12  least are potentially going to be proffered.  Would Your Honor

13  have any objection to us starting at 500 as opposed to using

14  letters just because it gets awkward in saying, Put up triple

15  A, put up 4B, those types of references.  It is just a little

16  more difficult to follow as opposed to numbers.

17     THE COURT:  I don't have any concern about that.

18     MR. LAFLAMME:  Okay.  Thank you, Your Honor.

19     THE COURT:  Any other loose ends before we talk sort

20  of logistics of the trial?  And then at the end, if you have

21  any other questions, please, I invite them then as well.

22     MR. MORGAN:  Not at this time, Your Honor.

23     THE COURT:  All right.  Very well.

24     Okay.  Well, let's begin with the trial starting

25  times.  We will begin, as you see, on March 3rd at 9:00 a.m.

1  Subsequent days you can anticipate that we'll begin at

2  8:30 a.m.  We will go until roughly 5:00 or 5:30 each day.  And

3  I will do my best to try to avoid any unrelated hearings or

4  matters during the trial period.

5         If we get behind a little bit, we may start earlier

6  and may go later, so we will be flexible in that regard, but

7  generally you can anticipate somewhere in the neighborhood of

8  8:30 a.m. until 5:00 or 5:30 p.m.  We will give you and the

9  jurors an hour and 15 minutes for lunch each day, and we will

10 typically have about a 15-minute midmorning and midafternoon

11 break.

12        As far as the jury selection process goes, we will

13 bring in approximately 25 to 30 members of our juror pool.  You

14 can anticipate receiving general jury questionnaires for each

15 of those prospective jurors the Wednesday before trial, so you

16 will get some generalized information.

17        When you come in on Monday morning at 9:00 a.m., you

18 will note that all of the jurors are identified by number.  We

19 try to maintain their anonymity, and so please, during the

20 course of jury selection and otherwise, refer to them by

21 number, even though you'll have their names from that

22 questionnaire.

23        The jurors will be preselected randomly.  There will

24 be 14 in the jury box behind us -- or behind plaintiff, I

25 should say, and ultimately the goal is to have 8 jurors

1    selected to listen to the case.  And that means that you each

2    will get three peremptory -- peremptory challenges, I should

3    say.

4              Jumping ahead a little bit, but how the peremptory

5    challenge process works, here in court we will turn on some

6    white noise.  Plaintiff will get the singular sheet.  They will

7    fill out their first peremptory exercise.  They will pass it

8    off to the defendants.  You will write down your -- the number

9    that you would like to exercise, and then it goes back and

10   forth until such time as you both have exercised three total

11   peremptory challenges.  That will then constitute the jury of

12   eight.

13             We can go down as many as six, and even further if we

14   had to by agreement, but we sort of incorporate alternates into

15   the eight, hoping that all eight will serve and deliberate and

16   render a verdict.

17             But occasionally, because this is a little longer

18   trial, we may lose one, and hopefully no more, but whatever

19   happens in that respect, all of them will deliberate and all of

20   them will be part of the unanimous jury determination.

21             So that's generally how that will work.

22             Now, backing up a little bit, our practice in this

23   court is to let me ask during voir dire and the jury selection

24   process kind of the bigger picture items.  You will need to

25   present and file, along with other items, seven days before the

1    trial your proposed voir dire questions, and from those

2    questions, I may pluck out a few for me to ask.  But then I'll

3    turn it over initially to counsel for the plaintiffs, and you

4    will have -- we will talk about the time, but normally we

5    default to 30 minutes per side.  After you -- plaintiffs pass

6    for cause, we will hand it over to the defendants for them to

7    do the same.

8         And then if there are challenges for cause during the

9    course of the jury selection process, unless it is a

10   particularly sensitive area -- we can always approach sidebar

11   if that's necessary, or you can let us know -- and, in fact,

12   when you actually make the motion, I do prefer you come to

13   sidebar.  You can just announce that you'd like to approach,

14   come to sidebar; we will hear your argument, the position of

15   the other side, and then determine whether we need to replace

16   somebody from out in the gallery to one of the 14 seated in the

17   jury box.

18        And if somebody is replaced, we'll kind of start anew

19   with that particular juror, and we'll go through my questions

20   and then each of yours, and then we will pick up where we left

21   off.

22        So 30 minutes is normally what we -- what we do.  Is

23   there any reason that 30 minutes won't be adequate in this

24   matter for the plaintiffs, Mr. Morgan?

25        MR. MORGAN:  I do have some general questions about

1   jury selection that can wait, but as far as the direct question

2   about 30 minutes, obviously we would prefer more.  If we were

3   indulged an hour -- I think just to ask them each less than

4   five minutes' worth of question would put us, you know, over

5   that.  So that would be our request.  We do have some issues

6   that we're dealing with such as the fire, such as the extreme

7   injuries.  And I know that Your Honor will cover most of those

8   big picture items for us, but we would request that.

9            THE COURT:  On the timing piece, Mr. LaFlamme.

10           MR. LAFLAMME:  Your Honor, I think 30 minutes is more

11  than sufficient.  It's what this Court's standard practice is

12  regardless of case.  We have full faith that Your Honor will do

13  a good voir dire in the opening process, and then 30 minutes is

14  more than enough for the parties to clean it up.

15           THE COURT:  All right.

16           Recognizing that there are some complexities to the

17  case and this case is going to have a good number of witnesses

18  and exhibits, potentially, why don't we extend that to, say, 40

19  minutes.  If you're in the middle of sort of wrapping up, I

20  won't cut you off, but hopefully 40 minutes, and the pressure

21  will be on me to make sure I do a thorough enough job to cover

22  those areas.  But you can ask the particularized questions in

23  that time period.

24           I would point you to our local rules.  There's some

25  guidance in our local rules, among other things, about jury

1    selection and questions posed during voir dire.

2           But while we're on that subject, Mr. Morgan, I'm happy

3    to entertain any other questions on jury selection.

4           MR. MORGAN:  Thank you, Your Honor.

5           The first one is in the local rules I was unable to

6    find anything regarding external jury research.  I know that

7    certain courts have rules about research on potential jurors

8    and I would -- and if I missed it, I apologize.  But I didn't

9    know the Court's preference on that.

10          THE COURT:  We don't have -- we don't have -- to

11   answer your first question, we do not have a rule that

12   addresses external research, as you mentioned.  You are going

13   to be limited to, certainly, the bounds of ethics, but you will

14   also be limited to the generalized questionnaire that I

15   mentioned a moment ago.

16          And so it goes without saying that we don't want to

17   harass or bother potential jurors because that creates a whole

18   set of different issues, but -- I think there's no preclusion

19   about that, but just be mindful of disturbing the jurors,

20   impacting the jurors, and their privacy concerns, things of

21   that sort.

22          So it is sort of like we'll know it when we see it,

23   but we don't have any particular prohibition here in this court

24   when it comes to independent research.

25          MR. MORGAN:  Understood, Your Honor.

1          The other mention -- and I apologize if this is in

2    there -- is that the voir dire questions asked by counsel, you

3    mentioned that you may take some, but what we ask is also only

4    from what is submitted to the Court?

5          THE COURT:  Correct.  That way there's no surprise for

6    the other side, generally.  And I appreciate that you may need

7    to drill down on a topic, but please be sure that you cover

8    those topics.

9          Now, having said that, if there is a response from a

10   group of prospective jurors -- I've elicited some responses

11   that are sort of off our script, if you will, then I'll give

12   you some reasonable latitude, so long as we're not conditioning

13   the jurors to a result, things of that sort.

14         MR. MORGAN:  Understood.

15         And last question and then I will sit down.  You

16   mentioned that we would ask each juror -- is it individual, we

17   would go down and ask each juror our question?  If we move for

18   cause, we'd do it in the middle of the questioning, or would we

19   wait until we question the entire panel and then move for

20   cause?

21         THE COURT:  Okay.  Fair question.  If, for instance, a

22   prospective juror says, Gee, I'm adverse to the plaintiffs

23   because, whatever, X, Y and Z reasons, and you've done your

24   best to follow up with questions or I have or the defendants

25   have, and there's just no way that they're going to be

1   rehabilitated to be fair and impartial jurors, then I think at

2   that moment in time you can request a sidebar.  We will have

3   that discussion here, and then we'll remove that juror at that

4   point in time.  So you don't have to wait until the end.

5           MR. MORGAN:  Understood.  Thank you, Your Honor.

6           THE COURT:  You're welcome.

7           Questions regarding the jury selection process,

8   Mr. LaFlamme.

9           MR. LAFLAMME:  No questions, Your Honor.

10          THE COURT:  No pressure.  Normally we get a jury by

11  lunch, and, of course, you can say lunch can be at 2:00 in the

12  afternoon, but I appreciate that, again, there's some

13  complexities here.  We will do our best to move things along

14  and we will take the time that is necessary to make sure we've

15  got a fair jury for both sides.

16          Okay.  Opening statements, obviously, as I mentioned,

17  we will read the preliminary set of instructions, usually in

18  the neighborhood of 12 to 15 instructions, in advance of

19  opening statements so that if you need to, you can refer to

20  them.

21          Thirty minutes is, again, our default for opening

22  statements, but if you think it is going to take a little

23  longer to lay out, I will consider a longer period of time.

24          Mr. Morgan.

25          MR. MORGAN:  I hate to keep asking for more time, but

1   I would request 40 minutes, Your Honor.  I think that would be

2   sufficient to lay out both the liability and the damage

3   portion; 20 minutes for each is where I would position that.

4           THE COURT:  Mr. LaFlamme, can you live with 40

5   minutes?

6           MR. LAFLAMME:  Yes, Your Honor, 40 minutes is fine.

7           THE COURT:  All right.  Let's do 40 minutes there as

8   well.

9           While we're on a roll, not knowing exactly what might

10  occur leading up to our closing arguments, 45 minutes enough,

11  or do we think we're going to need more time than that?  Again,

12  we can adapt if need be, but I would like to put something in

13  the Final Pretrial Order that gives you some boundaries.

14          MR. MORGAN:  Now I'm going to sound absolutely greedy

15  and ask for an hour and a half.  Given the complexity of this

16  case, given the amount of witnesses that are in this case,

17  there's going to be a lot of ground to cover.  There's going to

18  be a lot of documents to cover.  There's going to be a lot of

19  evidence.  We anticipate this case is going to go close to

20  almost two weeks, maybe longer, and we would ask for an hour

21  and a half, Your Honor.

22          THE COURT:  Mr. LaFlamme.

23          MR. LAFLAMME:  Your Honor, I was thinking a hour

24  myself for closing, so that's what we would suggest.

25          THE COURT:  Well, let's do this.  Let's default to 60

1   minutes, and, Mr. Morgan, don't let me forget that I promised

2   you we would reconsider that.  But I think we'll know more, in

3   fairness to everyone involved, as we go through the case a

4   little bit.

5           So we'll say 60 minutes, and if it looks like that's

6   adequate, that's great.  If we need a little more time and

7   everyone is in agreement, or I need to make a further

8   determination about that, then I'm happy to do so.

9           Okay.  Just a couple of things to think about.  When

10  you're giving your opening and closing statements, and, really,

11  for anything, please be sure that you're in front of a

12  microphone.  It is really important that all of our jurors can

13  hear.  Sometimes they're, you know, having trouble hearing.  It

14  is important our court reporter can hear, and it is important

15  that I can hear, and everyone involved.  So please be mindful

16  of that.

17          We will have a small podium that you can see there in

18  front of the jury and so that will sort of keep you in that

19  general area because you need to be near the microphone.  In

20  other words, I don't want you walking and wandering in front of

21  the jury.

22          If you need to show exhibits or demonstrative

23  exhibits, things of that sort, then maybe in advance of your

24  presentation you can prop them up in a way that doesn't impede

25  the view of others in the courtroom and, most importantly, to

1    make sure that the jurors can see.

2            So, again, for closing, jury selection, opening, use

3    either one of the two.  If you want to stand at the larger

4    lectern, you can do that, but that smaller one will be faced

5    toward the jury and available to you.

6            Each day I would ask that you advise opposing counsel

7    and, importantly, our court reporter of the general lineup for

8    the following day.  And you will see this language in the Final

9    Pretrial Order, but that, I think, helps everyone in terms of

10   smoothly moving things along.  So please give everyone the

11   courtesy of letting us know, you know, you anticipate the

12   following four witnesses the following day, or whatever the

13   number may be.

14           When it comes to objections, please no speaking

15   objections.  Hearsay; not relevant, those things are fine.  But

16   if we need to have a longer discussion -- and I don't encourage

17   that, but if we do, and there are occasions when that may need

18   to occur, then, again, I will invite you to the side of the bar

19   here, the side of the bench, and we will have a sidebar and we

20   will try to move things along.

21           If it is a more complex determination that needs to be

22   made, then we may have to take an early break or early recess

23   of some sort to accommodate that.  But, again, I want to

24   minimize as best we can any downtime for the jurors as we go

25   along.

1       Let's see.  Oh, just a gentle reminder to tell your

2  witnesses to speak loudly, clearly and slowly, so that -- you

3  know, obviously, everyone can hear and understand what they

4  have to say.  That is particularly important for the Zoom

5  witnesses.

6       Then let me check in on sequestration of witnesses.

7  Other than company representatives or party representatives

8  and, potentially, experts that may need to listen in to the

9  fact testimony, does either side request a sequestration order

10 during the pendency of the case?  And I will default -- if one

11 says yes, then that's what we will do.  If both say it is not

12 necessary, then that's what we will do.

13      Thoughts about sequestration of other fact witnesses

14 in the matter, Mr. Morgan.

15      MR. MORGAN:  The plaintiff would not request one, Your

16 Honor.

17      THE COURT:  Very well.

18      Mr. LaFlamme.

19      MR. LAFLAMME:  Your Honor, actually during the

20 meet-and-confer process with Attorney Ayala, we had agreed to a

21 sequestration order which is why it was not part of the motion

22 in limine order because we had met and conferred on that.

23      THE COURT:  If one or both sides request an order,

24 then we will adopt a sequestration order.  What that means is

25 you will be responsible for your own witnesses.  Be sure

1   they're not in the courtroom, be sure they're aware of the

2   Court's rulings on the motions in limine, anything that would

3   cross the line could create issues.  So you will have to police

4   your own witnesses regarding that sequestration order.  Of

5   course, the exceptions include party representatives, corporate

6   representatives, in this case both corporations, if necessary,

7   and any experts that ought to be listening in the gallery

8   pertaining to fact witnesses or fact testimony that might be

9   helpful to their own testimony.

10           MR. MORGAN:  Excuse me, Your Honor.

11           THE COURT:  I'm sorry, Mr. Morgan.

12           MR. MORGAN:  As far as the experts, when other experts

13  are testifying, I'm not sure if that applies.  You mentioned

14  the fact witnesses and also in the event rebuttal witnesses

15  that may not be necessary, may not be called, would they fall

16  into that same bucket as well?

17           THE COURT:  In terms of the obligation, sequestration

18  obligation?

19           MR. MORGAN:  Yes, Your Honor.

20           THE COURT:  Well, if you think there's -- let me put

21  it this way:  If there's the prospect of calling a rebuttal

22  witness that's not otherwise been called in the case, then you

23  will want to keep them away from the courthouse, away from this

24  courtroom, in any event.  So I hope that we can adhere to that.

25           I recognize sometimes that's unanticipated and you

1   don't know -- but I suspect you probably do know who you might

2   need.  They're may call witnesses, presumably.

3            And then with respect -- well, Mr. LaFlamme, your

4   thoughts about listening in on the other experts.

5            MR. LAFLAMME:  Yes, Your Honor.  My understanding was

6   the sequestration order would only apply to fact witnesses.

7            THE COURT:  Yeah, that's normally what we do.  If

8   there's a particular reason as we go along that one expert

9   wants to hear from another expert, why don't you bring that to

10  my attention in advance of that testimony and we can --

11           MR. KNOPF:  You know, Judge, my only issue and concern

12  with that is typically the concern about some new opinions that

13  are borne out of that, you know, in terms of our obligations

14  under Rule 26.  And so when there's -- when the rule has been

15  invoked, typically, in order to ensure that we're not going to

16  have new opinions that are based upon testimony -- I just want

17  to make sure we're all playing by the same rules in terms of

18  being able to provide that information to our experts and, you

19  know, how that all plays out.

20           THE COURT:  Well, one thing I would say about that is

21  if the opinion is not laid out in their designation or their

22  report, and there's an objection, it is likely to be excluded

23  anyway.  But I appreciate that something -- sometimes things of

24  that sort happen.

25           I'd like to play it by ear and sort of wait and see.

1    If you have a particular concern or request as the opposing

2    side's expert is testifying that you want your expert to listen

3    in, then let's tackle that issue in advance of opposing side's

4    expert's testimony.  I may agree to it, but I think, for the

5    most part, hopefully that won't be necessary.  But let's --

6              MR. KNOPF:  Understood.

7              THE COURT:  -- see how that plays out.

8              Anything else on that general subject of experts?

9              Mr. LaFlamme.

10             MR. LAFLAMME:  Your Honor, since we're on the topic of

11   witnesses, one of our -- our corporate witness for Jetson,

12   Mr. Husain, is -- you're probably aware of the tariff issues

13   currently going on in this country, which has kind of thrown

14   his job for a loop since he deals with purchasing from Asia a

15   lot.  His availability -- he will be here to testify, but his

16   availability the first week of trial may be somehow limited due

17   to international travel.  We're working with him on that, but I

18   just want to raise that with the Court in the event it does

19   cause a snafu.  I don't know if plaintiffs are going to call

20   him in their case-in-chief or not.

21             THE COURT:  Well, from your standpoint it is an optics

22   thing --

23             MR. LAFLAMME:  Correct.

24             THE COURT:  -- and sort of an issue of his

25   availability, but as long as he is available for any testimony

1    of either side, that's all I care about.  Whether he's here to

2    sit at the table or not is entirely up to you.

3             MR. LAFLAMME:  Understood.  Thank you.

4             THE COURT:  You're welcome.

5             MR. LAFLAMME:  And then, Your Honor, openings,

6    closings, PowerPoints used, not used?

7             THE COURT:  I think visuals are a good thing, as long

8    as everyone has a good faith basis in the opening statements to

9    believe that will be admissible evidence, so be mindful that

10   you're careful of that concern.

11            And for exhibits that are disputed, demonstrative

12   exhibits, I would highly recommend that you share with the

13   other side what you generally intend to display so that if

14   there is a dispute, we can resolve that, not in the middle of

15   someone's opening statement or closing argument, but in

16   advance.  So hopefully, you know, be mindful of that concern

17   and maybe be a little conservative if you can.  But I will

18   leave that up to you.

19            Mr. Morgan.

20            MR. MORGAN:  Yes, Your Honor.  Going back to just the

21   issue of Mr. Husain -- hope springs eternal and we're hopeful

22   that we're going to be able to put on the majority if not all

23   of our case within the first week of this Court's docket.  We

24   are planning to call Mr. Husain in our case-in-chief, and so to

25   the extent he's not available, we would ask that we are able to

1    call him out of order without resting our case, due to

2    unavailability.

3              THE COURT:  Yeah.  And I think on top of that, you

4    will want to coordinate with each other about your estimated

5    ideal time for his testimony, but if he's not here and they

6    otherwise are ready and they've given you fair warning,

7    Mr. LaFlamme, then I would grant that request.

8              MR. LAFLAMME:  Understood.

9              THE COURT:  But hopefully you can coordinate with one

10   another.  There's going to be some out-of-place witnesses, I'm

11   sure, as we go along.  Things come up and it just happens.

12             But the important thing, I think, is communicating

13   with each other about that, let us know, and then, of course,

14   for any Zoom witness, be sure that you let Ms. Bowden and

15   Ms. Davis know so that we can -- at least a day in advance, so

16   that we can be prepared for that and get the Zoom invite out.

17             Okay.  Anything else on that general topic?

18             Seeing none, when it comes to witnesses, also -- we've

19   talked about Zoom witnesses.  Do we anticipate some deposition

20   witnesses, non --

21             MR. KNOPF:  We haven't yet made that decision, Judge.

22             THE COURT:  Okay.

23             MR. KNOPF:  And we would hope, honestly, that we do,

24   just because I think that it ensures we can have some filler if

25   we need it.  But we will be complying with the scheduling order

1    in terms of --

2            THE COURT:  Yeah.  And you'll see in the Final

3    Pretrial Order what we refer as the 10-5-3 rule.  I think

4    that's on page 7 of the draft order.  At least ten business

5    days before trial you need to notify opposing counsel of the

6    need for using deposition testimony, and then if objections are

7    to be made, you need to let the party calling that particular

8    deposition witness know five business days before, and then

9    any -- any objections that are not resolved by the parties need

10   to be presented to me three business days before the trial so

11   that we can rule on those for you.

12           But, anyway, just be mindful of the 10-5-3, business

13   days, by the way.

14           Okay.  Anything else on the Zoom witnesses, deposition

15   witnesses, live witnesses, that general category that anyone

16   needs to address?

17           Okay.  Hearing none, again, please advise your

18   witnesses of any motions in limine that pertains to them so

19   that they don't inadvertently cross the line and we've got to

20   kind of deal with that.

21           I would ask along with -- actually, let's take a

22   moment and I will just run down what you've already seen in the

23   proposed Final Pretrial Order, the deadlines that you need to

24   be mindful of leading up to the trial.

25           At least three business days before the trial -- and

1    this is a little different than what you saw in your joint

2    proposed order -- I would ask that both parties supply the

3    Court with one hard copy version -- you don't need two or

4    three, just one hard copy version of your proposed exhibits and

5    one electronic, or digital, copy.  So just remember one of

6    each, if it you would, please, no later than three days,

7    meaning the Wednesday before trial.

8              Fourteen days before trial, if anyone is interested in

9    realtime transcription, daily copy or other court

10   reporter-related services, please let Ms. Davis know.  There's

11   an email that you can reach her and make those requests of her.

12             This is a really important one -- they all are, but

13   JERS, that's our Jury Evidence Recording System.  For those of

14   you who have tried cases in federal court, I'm sure this is

15   familiar to you.  But at least seven days prior to the start of

16   trial, you will need to provide your trial exhibits in the

17   proper electronic format to Ms. Bowden, and then she will

18   upload those exhibits to our JERS system.  And, of course, the

19   purpose of the JERS system is that once the jury deliberates,

20   they're back in the jury room with a big monitor and a mouse,

21   and they can scroll through any and all exhibits that they want

22   to electronically.

23             So they won't have any hard copies unless there's a

24   compelling reason to allow that in a particular instance.  But,

25   otherwise, all of that is electronic.  And if you have

1    questions about how to format those exhibits, the instruction

2    and site location on the Internet, to our Court's Internet --

3    rather, website -- I'm sorry -- will be in the order, and it is

4    in the draft order as well.

5           Couple of other deadlines to be mindful of, seven days

6    before trial there's several things that we will need from you:

7    An estimate of time for each witness, and you can send that to

8    our court chambers email.  You don't have to -- you don't have

9    to file that, but just give us an estimate, approximate

10   estimate, so that as we go through the trial, we kind of know

11   this is a two-hour witness, this is a ten-minute witness, that

12   sort of thing.  Again, if you could kindly do that seven days

13   before the trial itself.

14          Also, seven days before trial, proposed voir dire,

15   jury instructions, verdict form, and then also your joint

16   statement setting forth, briefly and simply in a noncontentious

17   manner, the facts of the case and the claims and defenses being

18   asserted.  In a perfect world, that should be roughly a page

19   total.  If it goes a little longer, that's fine.

20          The purpose of that is I like to read at the very

21   outset of the jury selection process just a summary of what the

22   case is about.  And your words are better than mine.  You guys

23   have been living and breathing this matter.  And so I hope that

24   I can very succinctly talk about in a summary statement what

25   this case is about, and that will also get incorporated into

1    our instruction packet as well.  So you will have to work

2    together to do a half a page or so each in order to make that

3    happen.

4            So those are the deadlines.

5            Any questions about the deadlines that, again, will be

6    incorporated into the Final Pretrial Order following today's

7    discussion?

8            Okay.  If there are stipulations of facts that we need

9    to include in an instruction, you can submit that with your

10   proposed instructions.  We can also incorporate that as the

11   trial goes along.  So if you do have stipulations of facts that

12   might streamline our effort, I encourage that, but I will leave

13   that up to you, and you will want to work together on those

14   things.

15           Exhibits:  Importantly, sometime before Monday morning

16   please familiarize yourself with the technology.  It is very

17   helpful and very useful, but as you all, I'm sure, have seen,

18   when it doesn't work or someone is unfamiliar with the

19   technology, it brings everything to a screeching halt.

20           And, again, we don't want to do that, so please set up

21   a time with Ms. Bowden, you know, perhaps in advance of our

22   Friday afternoon hearing or after that's over, whenever it

23   works for everyone, including Ms. Bowden, and she will happily

24   show you how this works to make sure it connects with your

25   laptops and all the other tools that are certainly beneficial

1   and, I think, helpful to the jurors.

2           The jurors have individual monitors in front of their

3   chairs.  We have the big monitors.  When an exhibit is

4   presented or offered, we will not display, of course, to the

5   jurors that proposed exhibit.  You will lay whatever foundation

6   needs to be laid, and once I rule that the exhibit has been

7   received and may be published, then the lights come on, if you

8   will, and then they can see on their individual monitors the

9   exhibit and then you may go from there.  But it is important

10  that we're not inadvertently displaying any particular exhibit

11  until that ruling has been made.

12          Okay.  And I note in your submission that you've got a

13  number of exhibits, some of which are contested.  I think it's

14  too early, until we start to really get into the case, for me

15  to make any preliminary rulings on some of those.  I recognize

16  that in almost every case not all of those are offered, so I'm

17  not sure that's a good use of our time in any event, but I will

18  certainly start to familiarize myself with the areas where

19  there are concerns or objections that may be made and then

20  we'll just rule on them after the objection has been made, if

21  any, during the course of the trial.

22          Any questions about exhibits generally that we need to

23  address?  For the plaintiffs?

24          MR. MORGAN:  I just have one general issue, and I'm

25  not sure how to deal with it yet.  And we've spoken -- so we

1   have agreed to waive records custodians for all medical

2   records.  However, we have not had an agreement on the Jetson

3   records, the drawings of the board, the documents produced by

4   them, as to waiving records custodians.  And so I'm not sure

5   how Your Honor wants to generally deal with that.

6          I don't think there's any authenticity -- they came

7   from them in their production.  They're Bates stamped from

8   Jetson.  They have been produced in this case and other cases.

9   That would be something that would be in opening statement.  So

10  I'm not sure how to deal with that generally at this point.

11         THE COURT:  The nature of the objection to those

12  drawings would be what, roughly?  I won't hold you to it.

13         MR. MORGAN:  I'm not sure yet, Your Honor.  I think

14  authenticity.  They won't have somebody here that would say

15  they're authentic, even though they were produced as the

16  drawings for this board that we've relied upon throughout this

17  case, but we honestly don't know.

18         THE COURT:  Okay.  I'm not sure -- Mr. LaFlamme, do

19  you have a preliminary thought about that?  My gut is that we

20  can't do much about it today, but if you -- if there's an

21  opportunity to work together to try to make that agreeable,

22  then great.  If not, then I think we just have to deal with it

23  at trial.  In terms of your opening statements, again, you just

24  have to have a good faith basis that those things are going to

25  be received.

1          MR. LAFLAMME:  Yeah.  And, Your Honor, I think a lot

2     of it depends on is it documents that were produced in this

3     case, or is Mr. Morgan talking about documents that Jetson has

4     produced in other cases?  I just don't know exactly what the

5     situation is.

6          On the topic of exhibits -- and I know we're not going

7     to get into really discussing them in detail, but I did want to

8     note that a number of exhibits are -- from plaintiffs' side are

9     media reports of fairly, I guess, random hoverboard alleged

10    incidents that don't even involve Jetson that are on their

11    exhibit list.

12         Certainly we've raised objections to them.  There's a

13    large category of them, so I didn't know if that would be

14    appropriate to discuss today since it is a big block of

15    exhibits, but however Your Honor wants to handle it is fine.

16         THE COURT:  Mr. Morgan.

17         MR. MORGAN:  So twofold, Your Honor.  One, as far as

18    the exhibits we're seeking to waive authenticity objection, it

19    would be the ones produced in this case.  Obviously, we would

20    need to lay the foundation for any exhibits that are not.

21         As far as the news articles and things of that nature

22    talking about hoverboards and the propensity of them to catch

23    on fire, those are listed in an abundance of caution for

24    potential impeachment so we don't have a surprise, but they're

25    not something that we're generally asking the Court to move in

1   in bulk.

2          THE COURT:  All right.  I think, with that

3   understanding, if they're used or offered as impeachment, then

4   we'll address it.  But I think there's some solace for you that

5   they're not going to be offered in their case-in-chief, and so

6   I'm not sure what else we can do today.

7          MR. LAFLAMME:  Sure.  I'm not sure how they would be

8   used for impeachment, but we will deal with that at a later

9   time.

10          THE COURT:  Very well.  Okay.

11          Anything else on exhibits?  Anyone?

12          MR. MORGAN:  No, Your Honor.

13          MR. LAFLAMME:  Nothing here, Your Honor.

14          THE COURT:  All right.  Jury note-taking, we do allow.

15   There will be an instruction that talks about how.  We don't

16   want to put too much influence on their note-taking, but the

17   standard instruction will apply.  So we will hand them

18   notebooks, pens, and they will, of course, leave those in their

19   jury room each evening.

20          But, just so you know, they will be permitted, if they

21   choose, to take notes.  And, again, our standard instruction

22   will address that.

23          I'm not a big fan of asking questions, for a variety

24   of reasons, so we will forgo the process of asking questions.

25   That puts the onus and pressure on you all to present your case

1    in a way that they understand and won't have to ask questions

2    about.

3              So we'll forgo any questions in this matter, and jury

4    note-taking, on the other hand, will be permitted.

5              I think we touched briefly on jury instructions.

6    You'll see particular details on what you need to provide seven

7    days before trial.  There are three separate sets.  Again, to

8    the extent that there's agreement on those instructions, I

9    certainly would encourage that.  The bottom line is you all

10   will have to speak to one another a fair amount between now and

11   trial and during the course of trial, and anything you can do

12   by way of agreement certainly will make things go smoother.

13             And, again, you don't want to leave it up to me or you

14   never know what you might get.

15             Okay.  Settlement prospects:  Are there any efforts

16   afoot to try to resolve this matter, or do we anticipate we

17   will be ready to go to trial without any further efforts on

18   March 3rd?

19             Mr. Morgan.

20             MR. MORGAN:  As far as settlement talks, there hasn't

21   been much in the way of formal discussions, and I am unhopeful,

22   based off the amount of coverage primary on this case, that we

23   would be able to resolve.

24             THE COURT:  All right.  Mr. LaFlamme, anything else

25   you would like to add?

1          MR. LAFLAMME:  Your Honor, we have never gotten a

2     demand, so we've never been able to respond.

3          THE COURT:  Well, wearing my old mediator hat, and --

4     I would encourage, if you would like to make a demand, you

5     never know what might occur.  We have a few weeks.  I realize

6     there's a parallel effort here and you need to focus on

7     preparing for an important trial, but there's a lot of

8     advantages, of course, to resolving the case short of that

9     effort.  You never know what can happen at trial, lots of risk.

10          But I'm here, we're all here on March 3rd, and we will

11    be ready to proceed to trial, but I would encourage at least

12    some communication or dialogue regarding a demand and then,

13    hopefully, a response soon thereafter.

14          MR. MORGAN:  We will take the Court's guidance on

15    that, Your Honor, and will do so.

16          THE COURT:  All right.  Very well.  I appreciate that.

17          Do we need based on -- I realize you haven't had a

18    chance to carefully review the order entered today and we're

19    anticipating further orders on these experts.

20          Are we looking at still 12 days, or might we be lucky

21    enough to just do 10 days or less?  I've given you 12 days, so

22    if you tell me 12 days, that is what it is.  So I'm just

23    curious if you have any further thoughts or estimates on the

24    time we may need for trial.

25          Mr. Morgan.

1          MR. MORGAN:  Your Honor, from the plaintiffs' side, we

2    would still request for 12 days with the hopes to over deliver

3    and get it in in 10, but we would request that time from the

4    Court.

5          THE COURT:  All right.  I won't take it away from you,

6    but I will hold you to the 12 days.

7          Mr. LaFlamme, your thoughts.

8          MR. LAFLAMME:  Your Honor, I am in agreement with

9    Mr. Morgan.  I'm hopeful we can get it in ten, but it might

10   spill over a little bit.

11         THE COURT:  All right.  Very well.

12         Okay.  And again, to my point earlier, if it looks

13   like we're behind for some reason, then you can anticipate long

14   hours.  So two-week plus trial takes its toll, so you want to

15   be sure to get your rest and nutrition, because a lot, as you

16   all know, goes into this in advance and during the course of

17   trial.  And so let's try to keep up with our estimates so that

18   we don't make things doubly challenging for you all and your

19   witnesses and so forth.

20         Okay.  I think that's it on my list, but I certainly

21   open it up for any further questions, concerns, thoughts,

22   before we depart for now.

23         Anything for the United States [sic], Mr. Knopf?

24         MR. KNOPF:  I see a clock here.  Do you typically use

25   that?

1          THE COURT:  We use it for -- yes, you will be timed

2    during the voir dire process, openings and closings.  And you

3    can tell us if, for instance, closings, or any of it, if you

4    want a warning.  You will see it.  It will be readily apparent.

5    And -- but if you would like a verbal warning or notification,

6    just let us know.

7          MR. KNOPF:  Very helpful.  Thank you, Judge.

8          THE COURT:  Sure.

9          Any other loose ends for the defendants?

10         MR. LAFLAMME:  Yes, Your Honor, just one.  With the

11   Court's order excluding any opinion testimony from Robinson and

12   Sheaman, we just want to make sure that that opinion testimony

13   is not admissible through any other avenue.  For instance,

14   Mr. King who is their expert, when he was deposed, he said that

15   he relied not just on Mr. Schulz's area of origin, but also on

16   these two gentlemen's area of origin.

17         Your Honor has already excluded that opinion evidence.

18   I don't think it should come in any way, whether it is through

19   another witness or even through another exhibit.

20         THE COURT:  I can't think of any reason the excluded

21   opinion testimony of those two gentlemen would otherwise come

22   in through another witness.  I may be missing something, and if

23   so, you can bring that to my attention, but that's the way I

24   see it.

25         MR. MORGAN:  We agree, Your Honor.  We don't seek to

1  obfuscate the Court's order in that way.

2           THE COURT:  All right.  Very well.

3           MR. LAFLAMME:  Your Honor, some of the exhibits that

4  have been proffered or could be proffered by plaintiffs are

5  some of the interviews which were recorded of the children,

6  which Mr. Sheaman certainly lists his opinions throughout those

7  interviews.

8           So is that -- it's those types of exhibits that I was

9  referring to, Your Honor.

10          THE COURT:  Mr. Morgan.

11          MR. MORGAN:  Again, we will take all caution as far as

12 the opinions and editing of videos to exclude anything.  I do

13 think those videos are relevant and have been a focal point of

14 Mr. LaFlamme's questioning, especially of the children, about

15 what those interviews show.  We will need to use some of it.

16 We will take all caution and share with you ahead of time the

17 playing and the redactions as they're necessary.

18          THE COURT:  I think that's advisable.  I can't give

19 you advisory opinion, but if it is edited out and it is just

20 somebody just asking benign generic questions so you can elicit

21 factual, important testimony from the children or whomever,

22 then that may work.  But I encourage you to share your editing,

23 and if there are objections, you can raise them in advance.

24          MR. LAFLAMME:  Yeah, Your Honor, certainly to the

25 extent it is edited out, I think we might be able to work with

FINAL PRETRIAL CONFERENCE                                    50

1   that.  But I was just raising that as an issue with Your Honor.

2           THE COURT:  Very well.  Sounds like that's the

3   trajectory, so we will hope that works okay.

4           MR. MORGAN:  Yes, Your Honor.

5           THE COURT:  Okay.  Anything else for the plaintiffs?

6           MR. MORGAN:  No, Your Honor.

7           THE COURT:  And for the defendants?

8           MR. LAFLAMME:  I think we're all set, Your Honor.

9   Thank you.

10          THE COURT:  All right.  Well, thank you all for your

11  time this afternoon.  Safe travels back.  And it sounds like we

12  will see some of you, at least, on Friday the 28th, I think we

13  said at 1:30.  And be ready to go in earnest on Monday morning.

14  Thanks, everyone.

15          We will stand in recess.

16      (Proceedings concluded 3:13 p.m., February 11, 2025.)

17

18

19

20

21

22

23

24

25

1                   C E R T I F I C A T E

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth and that the foregoing pages constitute a

12   full, true and correct transcript.

13

14          Dated this 21st day of February, 2025.

15

16

17

18                          /s/ *Janet Davis*

19                   _____

20                    JANET DAVIS, RDR, FCRR, CRR
                      Federal Official Court Reporter

21

22

23

24

25