Christoper C. Voigt, Wyo. Bar No. 6-3313
Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
cvoigt@crowleyfleck.com
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

Eugene M. LaFlamme (Admitted pro hac vice)
Jared B. Giroux (Admitted pro hac vice)
Jillian L. Lukens (Admitted pro hac vice)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com

*Attorneys for Defendants,*
*Walmart Inc. and Jetson Electric Bikes, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STEPHANIE WADSWORTH Individually and as Parent and Legal Guardian of W.W., K.W., G.W., and L.W., minor children and MATTHEW WADSWORTH,<br><br>　　Plaintiffs,<br><br>v.<br><br>WALMART INC. and JETSON ELECTRIC BIKES, LLC,<br><br>　　Defendants. | Case No. 2:23-cv-00118-KHR<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S RULING ON PUNITIVE DAMAGES (ECF 143) AS TO WALMART** |

Defendants Walmart, Inc. ("Walmart") and Jetson Electric Bikes, LLC ("Jetson"), by and through their undersigned counsel, oppose *Plaintiffs' Motion for Reconsideration of Court's Ruling on Punitive Damages (ECF 143) As to Walmart* (ECF No. 216). This motion lacks merit and is nothing more than a continuation of Plaintiffs' attempt to redo their case after failing to properly plan and satisfy the Court's scheduling order and other deadlines imposed by the Rules of Civil Procedure.

Plaintiffs have known about the CPSC Safety Alert and testimony related to the same since at least May of 2024. Plaintiffs questioned both Walmart and Jetson's corporate representatives on

an earlier version of the CPSC Safety Alert dated 11/2017. Further, the CPSC Safety Alert was referenced in Derek King's expert report (ECF 73-3 pgs. 12 and 15) and was discussed in defense expert, Samuel Sudler's deposition.

Moreover, the testimony elicited during trial is entirely consistent with that elicited during discovery depositions. Plaintiffs should have included any and all evidence they believed supported a claim for punitive damages when they responded to Defendants' motion for summary judgment. There is no need to grant Plaintiffs a mulligan. Further, nothing about the CPSC Safety Alert or Walmart's response to the same rises to the level of willful and wanton misconduct warranting punitive damages.

## **PROCEDURAL BACKGROUND**

Plaintiffs filed this action on July 6, 2023. ECF No. 1. In their prayer for relief, Plaintiffs requested punitive damages. On May 17, 2024, Plaintiffs deposed Jetson's corporate representative, Sam Husain. **Ex. A**. During Mr. Husain's deposition, Plaintiffs presented and asked Mr. Husain about a CPSC Safety Alert (deposition exhibit 54). **Ex. B**. This is a publicly available document published by the Consumer Product Safety Commission ("CPSC"). An updated version, with near identical content, has been admitted into evidence as Plaintiffs' Exhibit 199 (in redacted form).[1] Plaintiffs' counsel had full opportunity to question Mr. Husain about the CPSC document during his deposition. Ex. A, 85:21-88:5.

On May 31, 2024, Plaintiffs deposed Walmart's corporate representative, Coryn Kremers.[2] **Ex. C**. Like Mr. Husain, Plaintiffs questioned Ms. Kremer about the CPSC Safety Alert.

---

[1] The Safety Alert presented during depositions is dated November 2017. The Plaintiffs' Trial Exhibit 199 is dated April 2018. The 2017 Alert references 250 incidents, while Exhibit 199 references 300 incidents. The November 2017 version includes examples of the labeling consumers should look for to ensure their product is UL 2272 compliant.

[2] Notably, Plaintiffs did not serve written discovery requests on Walmart until May 7, 2024. **Ex. D**. As such, Plaintiffs did not received Walmart's responses to discovery requests until *after* Walmart's corporate representative's deposition. F.R.C.P. 34(a)(2)(A) (allowing a party 30 days to response to requests for production). However, Plaintiffs were aware

> Q Okay. Prior to this recall, which has a recall date of March 30th, 2023, prior to this recall, were you familiar with CPSC safety alerts or warnings relating to hoverboards?
>
> **A I believe we have seen CPSC guidance on lithium-ion battery-containing products like micro-mobility products. Walmart has -- has been responsive to that guidance. We require in absence of regulatory requirement that the product not only meet those safety standards intended to address these types of products but are listed against them.**
>
> Q Okay. For instance, in November of 2017, CPSC issued a safety alert relating to hoverboard safety and in particular it related to the risk of fire associated with the lithium-ion batteries. Are you familiar with that safety alert?
>
> **A I do believe I recall that safety alert. Again, if you have it up, I'm happy -- or if you have it available, I'm happy to review it with you.**
>
> Q This was previously marked as Exhibit 54 to Mr. Hussein's deposition. It's a CPSC safety alert titled Hoverboard Safety Alert. Have you ever seen this before? And I can scroll down if you'd like me to.
> [ ]
> **A Yes. Yes, I believe I've seen this document before.**

Ex. C, 68:14-69:11; 20.

> Q This safety alert states that there have been more than 250 self-balancing scooter hoverboard incidents relating to fires or overheating. This is at least as of November 2017 when they put out the safety alert. Were you, meaning Walmart, aware of instances of hoverboard fires or overheating as of this date?
>
> **A I can't answer to when Walmart might've become aware. We're a very large organization. I think Walmart took a position late 2016, early 2017 to proactively in absence of a regulatory requirement adopt a Walmart standard requiring these types of product to be listed to 2272, which is the industry safety standard.**

*Id.* at 71:1-12.

Ms. Kremers went on to explain Walmart's knowledge and awareness of potential overheating of the batteries used in products such as micro-mobility products:

---

and in possession of the CPSC Safety Alert at the time of the deposition and able to question Walmart's corporate representative regarding the same.

> **A I don't know what you mean by all of these instances. Walmart is aware of potential overheating associated with the batteries used in these types of product. We have proactively in absence of regulatory requirements adopted a Walmart standard requiring these products to be listed against the industry safety standard as a result.**

*Id.* at 71:24-72:5.

Plaintiffs' counsel continued to ask Ms. Kremers about Walmart's investigation or requirements after learning of the CPSC Safety Alert:

> Q (BY MR. AYALA) Walmart didn't do anything to investigate further what the CPSC was referring to more than 250 incidents of fires and overheating in hoverboards, correct?
>
> **A Since Walmart has -- had already at the time of this alert proactively adopted a requirement for product that we were selling to be listed against the standard, I don't know as a retailer that we have any expertise to do anything further.**
>
> Q Okay. Despite not knowing whether as a retailer Walmart has the expertise to do anything further, Walmart did not do anything further, correct?
> [ ]
>
> **A Walmart -- Walmart continues to require that the product we sell be listed against UL 2272, which is the industry safety standard for these types of product that are battery-powered.**
>
> Q (BY MR. AYALA) Yes, ma'am. But you stated that Walmart did that even before this safety alert went out, correct?
>
> **A Correct.**
> [ ]
>
> Q Okay. And so my question was, what, if anything, Walmart did following receipt of this safety alert from the CPSC?
>
> **A We continued to drive a requirement for products sold by Walmart to be listed against the industry accepted safety standard.**
>
> Q In reviewing this CPSC safety alert relating to hoverboards, did Walmart do anything to gain any type of clarification on this last bullet point on the screen that states that even UL 2272 compliance cannot guarantee that a hoverboard will not overheat or catch fire?
> [ ]

4

> **A Walmart doesn't have the expertise to investigate component level failures in product that we're making available for sale. We continued to require voluntarily that all the product in our assortment met -- not only met, but was listed against UL 2272. We have engaged with the CPSC, they understand our position. We would have been responsive to any additional guidance or recommendations from the CPSC, but we continue to rely on our suppliers and manufacturers and their expertise in supplying these products.**
>
> Q (BY MR. AYALA) But Walmart did not reach out to any of its approved labs to confirm whether or not this statement by the CPSC was true, that even with UL 2272 compliance, the hoverboard could still catch fire or overheat, correct?
>
> **A Walmart did not reach out to further investigate that statement by the CPSC. We continue to drive a listing requirement for our product against UL 2272. Had there been additional guidance provided either from CPSC and based on their safety expertise or any of our manufacturers and suppliers, we would have been responsive to that guidance. We have not received any.**

*Id.* at 72:17-73:25; 74:6-75:2.

This line of questioning continued even further. *Id.* at 75:3-81:14.

Plaintiffs' expert, Derek King, addressed the CPSC Safety Alert in his July 12, 2024 Report. ECF No. 73-3, pp. 12, 15. Additionally, Defendants' expert, Samuel Sudler, discussed the CPSC Safety Alert both in his report (ECF No. 80-7, at pp. 6, 29, 37, 38) and deposition. **Ex. E**, 69:19-71:14.

Defendants moved for summary judgment on various claims and theories, including Plaintiffs' claim for punitive damages. (ECF No. 99, at pp. 24-27). In response, Plaintiffs merely argued that Mr. "Hussain (sic) testified it had prior complaints relating to the Plasma hoverboard overheating concerns or fire hazard concerns." ECF No. 123, at p. 24.[3] They then argued this evidence was enough to present punitive damages to a jury. *Id.* Plaintiffs presented no evidence or argument related to Walmart as it relates to punitive damages. Notably, they never mentioned nor raised anything to do with the CPSC Safety Alert noted above or Walmart's actions, or inactions,

---

[3] Notably, Plaintiffs failed to cite any Wyoming authority regarding punitive damages. ECF No. 123, p. 24.

even though it was well established in the discovery record. Instead, they merely cited to a prior wrongful death lawsuit involving the Rogue model and two prior fire complaints about the Plasma model – of which one of those complaints turned out to be related to an RC car that was located adjacent to the hoverboard. They argued these circumstances could support a jury finding that Defendants acted with "recklessness warranting a potential award of punitive damages[.]" *Id.*

On January 29, 2025, the Court granted Defendants' motion for summary judgment as to punitive damages. ECF No. 143, at pp. 20-23. The Court noted that Plaintiffs relied exclusively on "reckless indifference."[4] Even without the benefit of the purported deposition testimony from Mr. Husain, the Court found no evidence to support a punitive damages award. *Id.* "At worst, Defendants failed to investigate whether two complaints of overheating or a fire hazard for the Plasma model." *Id.* The Court aptly noted that the fire which related to the Rogue model occurred after the Wadsworth fire, and therefore cannot be considered for purposes of punitive damages. *Id.* at pp. 22-23. The Court also noted that one prior complaint about a product and a failure to act or remediate would not support the "outrageous behavior" necessary for a punitive damages claim. *Id.* at n. 12. Most importantly, the Court found that Plaintiffs wholly failed to address the Defendants' *intent*, which is the primary consideration for punitive damages. Even considering the evidence in the light most favorable to Plaintiffs, the Court found "insufficient evidence to demonstrate Defendants willfully or wantonly disregarded consequences that, in a high degree of probability, would have occurred." *Id.* at p. 23.

## SUMMARY OF PLAINTIFFS' MOTION

Now, after five days of trial, Plaintiffs ask the Court to reconsider its January 29, 2025, ruling. ECF No. 216. Plaintiffs claim there is "subsequent evidence" rendering the Court's prior

---

[4] The Court noted that Plaintiffs failed to provide the deposition testimony upon which they relied. *Id.* at p. 22.

ruling "premature." *Id.* at p. 2. They cite the admission (not discovery) of Plaintiffs' Exhibit 199—the CPSC Safety Alert and Ms. Kremer's trial testimony regarding the same. *Id.* at p. 3. Plaintiffs claim a jury could find "that Walmart recklessly disregarded the risk that UL-certified lithium-ion powered hoverboards could catch fire." *Id.*

## STANDARD OF REVIEW

Plaintiffs are correct that this Court has the discretion to revise an order that resolves less than all claims. F.R.C.P. 54(b). Missing from Plaintiffs' briefing, however, is the standard of review for the relief they specifically request: reconsideration. This Court has explained the limited circumstances justifying reconsideration:

> "The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration." *James Wilcox, et al. v. Andrew Magill, et al.*, 2011 WL 13193110, at *1 (D. Wyo. 2011). However, courts may consider motions to reconsider in a narrow set of circumstances which specifically exclude issues and arguments which could have been brought to the court's attention on the first consideration. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The Tenth Circuit has consistently held "[g]rounds for warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.*

*Sinclair Wyoming Refinery Co. v. A&B Builders, Ltd*, No. 15-CV-91-ABJ, 2018 WL 4697067, at *1 (D. Wyo. Apr. 3, 2018) (unreported decision).

## ARGUMENT

Here, there is no alleged change in the law. There is no newly discovered evidence. And there is no need to correct this Court's prior ruling to prevent any injustice. Instead, Plaintiffs simply wish to have another bite at responding to Defendants' summary judgment motion. That desire falls outside the narrow set of circumstances warranting reconsideration.

**A. Plaintiffs knew about the CSPC Safety Alert and Walmart's testimony regarding its response to the same in May of 2024.**

It is very frustrating for not only Defendants, but likely the Court, to cross reference testimony from the trial and compare it to the deposition testimony provided by Ms. Kremer to identify what exactly, if anything, is "new." Rather than address such testimony, Plaintiffs rely upon their characterizations of Ms. Kremer's testimony. However, it is clear even through a preliminary comparison of the deposition testimony quoted above and the Plaintiffs' characterizations that there is nothing substantively new.

Ms. Kremer testified in her deposition that Walmart was aware of the Safety Alert. Ex. C, 68:14-69:11; 19-20. She testified that she knew the Safety Alert included reports of more than 250 self-balancing scooter hoverboard incidents relating to fires or overheating. *Id.* at 71:1-12. She testified about Walmart's awareness of potential overheating associated with batteries in these types of products. *Id.* at 71:24-72:5. Ms. Kremer answered extensive questions about what Walmart did in response to the Safety Alert and the potential investigation or things Walmart could have done in response. *Id.* at 72-81. She testified about Testcoo (the third-party inspection company Jetson used to inspect the Plasma product) and the lack of any relationship with Walmart. *Id.* at 58:15-59:17. She testified about Walmart's relationships with manufacturers and the fact that Walmart does not, itself, audit or inspect facilities. *Id.* at 60:5-16. She explained all this in the context of Walmart's overall program of vetting and partnering with suppliers for specific products and the testing and certifications or documentation required from third-party laboratories.

In short, nothing elicited from Ms. Kremer on the stand on March 6, 2025 is new or should come as a surprise to anyone who reviewed her May 31, 2024 deposition. As noted above, Plaintiffs never raised any of these circumstances in response to Defendants' motion for summary judgment as to punitive damages. A motion for reconsideration "is not appropriate to revisit issues

already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). This Court should not waste any more of its time or resources on this matter.

    **B. The facts and circumstances are still insufficient to support punitive damages.**

Even if the CSPS Safety Alert and Ms. Kremer's testimony are now considered, there is still no basis for punitive damages. The CPSC Safety Alert acknowledged reports of incidents related to fires or overheating associated with self-balancing scooter/hoverboards. Notably, there is no evidence that these reports involved Jetson products and certainly not the Plasma model. The CPSC did not tell consumers to stop buying hoverboards. It did not tell retailers to stop selling hoverboards. Instead, it provided guidance and recommendations to reduce the risk of fire. Those recommendations included only using chargers provided with the product, only charging the product when attended, keeping the product away from flammable items, checking for recalls, ensuring smoke alarms are working, reporting incidents of overheating or smoking or fire, and ensuring the product is "complaint with the UL 2272 safety standard." Plaintiffs' Trial Ex. 199. The Safety Alert went on to explain to consumers how to ensure their product is UL 2272 compliant. It cannot be considered outrageous, willful or nearly criminal to comply with CPSC's guidance. *Weaver v. Mitchell*, 715 P.2d 1361, 1369 (Wyo. 1986). Walmart's testimony that it requires hoverboards it sells to be UL 2272 compliant directly follows the CPSC's recommendations outlined in the Safety Alert. This Court's prior analysis and conclusion should stand.

## CONCLUSION

As noted above, Plaintiffs' motion is without merit. They fail to acknowledge the standard of review for their own motion, and certainly have not met their burden. Ms. Kremer did not testify

to anything new. Plaintiffs knew, or should have known, based upon a review of her deposition, Walmart's position and response to the CPSC Safety Alert. They wholly failed to raise this issue when responding to summary judgment and should not get a second bite through motions practice in the midst of trial. Moreover, the CPSC Safety Alert evidence does not even support a claim for punitive damages in the first place, as Walmart followed CPSC's guidance and required the hoverboards it offered for sale (the subject Plasma model included) to be UL 2272 certified. For these reasons, Defendants respectfully request that the Court deny the Motion.

Dated this 9th day of March, 2025.

          /s/ Holly L. Tysse
Timothy M. Stubson, Wyo. Bar No. 6-3144
Brandon E. Pryde, Wyo. Bar No. 8-6883
Holly L. Tysse, Wyo. Bar No. 7-5553
Crowley Fleck PLLP
111 West 2nd Street, Suite 220
Casper, WY 82601
(P) 307-232-6901
tstubson@crowleyfleck.com
bpryde@crowleyfleck.com
htysse@crowleyfleck.com

Christopher C. Voigt, Wyo. Bar No. 6-3313
Crowley Fleck PLLP
PO Box 2529
Billings, MT 59103-2529
Ph: (406-255-7239)
cvoigt@crowleyfleck.com

Eugene M. LaFlamme *(pro hac vice)*
Jared B. Giroux *(pro hac vice)*
Jillian L. Lukens (*pro hac vice*)
McCoy Leavitt Laskey, LLC
N19 W24200 Riverwood Drive, Suite 125
Waukesha, WI 53188
(P) 262-522-7000
elaflamme@MLLlaw.com
jgiroux@MLLlaw.com
jlukens@MLLlaw.com
*Attorneys for Defendants*