# EXHIBIT E

```
 1           IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF WYOMING
 3    STEPHANIE WADSWORTH, ET AL,
 4           Plaintiffs              Case No.
 5      vs.                          2:23-CV-00118-NDF
 6    WALMART, INC., ET AL,
 7           Defendants
 8    _____/
 9          Pursuant to Notice, the videotaped
10    deposition of SAMUEL SUDLER, III was taken on
11    Friday, November 22, 2024, commencing at 10:05
12    a.m., at the offices of Veritext Legal
13    Solutions, 36 S. Charles Street, Suite 2002,
14    Baltimore, Maryland before David C. Corbin, a
15    Registered Professional Reporter and Notary
16    Public.
17
18
19
20
21          REPORTED BY:  David Corbin, RPR
```

Page 69

1  A. Yes. Typically what happens in -- with UL
2  it's the same. This is the way it works. CPSC may
3  say they have a concern, they have a problem. They
4  will be -- depending on what the committee is,
5  technical committee, we will have meetings with
6  them, they will talk about it and say, okay, I think
7  there should be a standard. And they start to
8  discuss it and we go through it and evaluate it.
9  But they are there. Interesting thing is they are
10 nonvoting member but they have just as much input as
11 anybody else. And typically CSA is involved. I
12 apologize, Canadian Standards Association. You get
13 a couple of Government entities that get involved.
14 Sometimes NFPA people. But typically that's the way
15 it works. CPSC may see an issue and they say, look,
16 we may need to create a standard, or we may need to
17 modify the current standard depending on what they
18 are looking at.
19 Q. Okay. Around the time that CPSC, and
20 you're certainly familiar with, you referenced it in
21 your report, the CPSC safety alert that they

Page 70

1  published?

2      A.   Yes, I am familiar with it.  Yes.

3      Q.   You appreciate at least according to CPSC

4  that despite their push to have hoverboards be UL

5  2272 compliant, they have acknowledged that UL 2272

6  compliance doesn't guarantee a hoverboard will not

7  overheat or catch fire.  You're familiar with at

8  least their position on that?

9      A.   Yeah, I'm familiar with their position.

10 But as I pointed out to Jake Alawalla and the rest

11 of them, we need to know the specifics.  And I know

12 that from dealing with different investigations

13 there could be an explanation that you may not know

14 about.  What I found out, which was interesting, is

15 sometimes they may pull complaints from Amazon

16 without actually verifying it.  So I've always said

17 I need to see the case itself and evaluate the

18 information without generalizing.  And it's for that

19 reason.

20     Q.   Have you seen any references either

21 through the UL website or any of the materials they

Page 71

1   have published that also acknowledges that UL
2   certification does not guarantee that a hoverboard
3   will not overheat or catch fire?
4        A.   I haven't seen it.  But it wouldn't
5   surprise me.  Depending on the circumstances, you
6   can have an issue.  And I think it's important to
7   look at it this way.  When we talk about
8   certification, it's certifying that certain tests
9   were performed on that item.  And the failure may be
10  related to something that goes beyond the scope of
11  that standard.  And I think that's why I always say
12  you need to look at that case and the information
13  before you make a statement that may not be
14  justified based on the actual evidence.
15       Q.   Got it.  Got it.
16       A.   Excuse me, I need some water.
17       Q.   Of course.  And we have been going -- why
18  don't we do this.  We have been going on for almost
19  an hour and a half.  Let's take five minutes,
20  stretch out, look at the flurries coming down and
21  we'll assume back.